## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) ) ) Plaintiff, ) ) v. ) ) DEPARTMENT OF JUSTICE ) ) ) Defendant. ) ) ) ) | Civil Action No: 1:07-cv-00656 (JDB) |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
## FOR PRELIMINARY INJUNCTION

Plaintiff Electronic Frontier Foundation ("EFF" or "plaintiff") asks the Court to invoke its extraordinary powers to award temporary emergency relief by issuing a preliminary injunction aimed at requiring defendant the, the United States Department of Justice ("DOJ" or "the Department") to complete the processing of plaintiff's requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, within the next twenty days and to provide a <u>Vaughn</u> index ten days thereafter. Plaintiff's request for such relief by way of a preliminary injunction – which is not preliminary in any sense but rather is an attempt to use a procedural mechanism intended to provide emergency relief as a scheduling tool – is generally inappropriate in FOIA cases for the reasons discussed below. Plaintiff offers the Court no reason that justifies granting the extraordinary relief it seeks.

Indeed, the relief plaintiff seeks is inconsistent with the plain language of the expedited processing provision of the FOIA. The Department has already granted plaintiff's request to

expedite processing under 5 U.S.C. § 552(a)(6)(e), and the Federal Bureau of Investigation

("FBI") has already has begun the searches required to identify responsive documents.  Contrary

to the claims made by plaintiff, the expedited processing provision of FOIA provides that

expedited FOIA requests are to be processed by the agency "as soon as practicable," id.

§ 552(a)(6)(e)(iii), and imposes no time limits on such processing.  The Department is

proceeding under that standard, and plaintiff – who bears the burden on a motion for preliminary

injunction – offers no proof to the contrary.  Indeed, far from being supported by either proof or

precedent, plaintiff's request is fundamentally incompatible with the statute, which requires that

expedited FOIA requests be processed "as soon as practicable" and not on any one plaintiff's

artificial time frame.

Plaintiff makes its request for emergency preliminary relief while at the same time failing

to meet its essential burden of identifying any irreparable harm that it might suffer if responsive,

non-exempt documents are not immediately ordered to be produced.  Plaintiff identifies no

reason why the agency must be required to complete the processing of plaintiff's request – which

seeks an extraordinary volume of documents spanning a five-year period, from multiple locations

within FBI Headquarters ("FBIHQ"), the majority of which are classified – within the artificial

period proposed in plaintiff's injunctive demand as opposed to "as soon as practicable" as

specifically set forth in FOIA.

Instead, it is plain that plaintiff seeks to use the preliminary injunction provisions of

Federal Rule of Civil Procedure 65, which are intended to provide a shield against imminent

injury while a court considers the merits of a dispute, to artificially accelerate the proceedings in

this case.[1]  This is nothing more than a litigation tactic, and it should not be indulged.

Preliminary injunctions are an extraordinary remedy that are ordinarily intended to preserve the status quo pending a court's resolution of a case on the merits.  The injunction proposed by plaintiff, on the other hand, does not seek to maintain any status quo but rather seeks a version of ultimate relief – the immediate disclosure of non-exempt documents.  See 5 U.S.C. § 552(a) (4)(B) (under FOIA, court has "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld").[2]  Moreover, plaintiff seeks such relief on an emergency basis despite the fact that it has been granted the special dispensation of being moved to the front of the FBI's FOIA queue, ahead of other non-expedited requesters.  Awarding plaintiff the relief it seeks at this early stage of these proceedings, before defendant is even required to answer plaintiff's complaint and before the FBI has completed searches and necessary document reviews, is without any basis in law.  Plaintiff relies heavily on one recent district court decision in which a court granted a preliminary injunction in a case where Plaintiff's FOIA request had been accorded expedited processing. See Electronic Privacy Information Center v. DOJ, 416 F. Supp. 2d 30 (D.D.C. 2006) ("EPIC").  As

---

[1]  Congress has specifically recognized that litigation involving FOIA claims is to be accelerated.  See 5 U.S.C. § 552(a)(4)(C) (providing that government defendants have 30 days in which to answer a FOIA complaint as opposed to the ordinary 60 days provided by Fed. R. Civ. P. 12).  Plaintiff's effort to seek a preliminary injunction is nothing more than an effort to bypass these already-accelerated procedures.

[2]  Indeed, because FOIA permits a Court to exercise jurisdiction to compel the release of documents only after determining that there has been an improper withholding, see Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980), analytically, the granting of the preliminary injunctive relief demanded here is at odds with the jurisdictional provisions of FOIA, since the Court can make no determination as to "improper" withholding until the Department has completed its searches and claimed any appropriate exemptions.

discussed below, however, <u>EPIC</u> was wrongly decided and it's reasoning should not be followed here.  Instead, plaintiff's motion should be denied.

## BACKGROUND

1.    <u>Statutory and Regulatory Framework</u>

     a.    <u>FOIA's Expedited Processing Provision</u>

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories of requests.  <u>See</u> Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L. No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, entitles requesters to move immediately to the front of an agency processing queue, ahead of requests filed previously by other persons.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for expedited processing of requests for records (i) "in cases in which the person requesting the records demonstrates a compelling need"; 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases determined by the agency."  <u>Id.</u> § 552(a)(6)(E)(i)(II).  FOIA defines "compelling need" to mean:

> (I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

> (II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E)(v).[3]  The requester bears the burden of showing that expedition is

---

[3]  Both Congress and the Court of Appeals have recognized that the expedition categories are to be "narrowly applied" because, "[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would

appropriate.  See Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 305 n.4 (D.C. Cir.

2001).  FOIA provides that "[a]n agency shall process as soon as practicable any request for

records to which the agency has granted expedition."  5 U.S.C. § 552(a)(6)(E)(iii).

   b.  The Department's Regulations

   DOJ implemented EFOIA by final rule effective July 1, 1998.  See Revision of Freedom

of Information Act and Privacy Act Regulations and Implementation of Electronic Freedom of

Information Act Amendments of 1996, 63 Fed. Reg. 29591 (1998), codified at 28 C.F.R. Part 16.

This regulation, which governs FOIA requests to all DOJ components, see 28 C.F.R. § 16.1(b),

states that "[r]equests and appeals" will be "taken out of order and given expedited treatment

whenever it is determined that they involve":

> (i)  Circumstances in which the lack of expedited treatment could reasonably
> be expected to pose an imminent threat to the life or physical safety of an
> individual;
>
> (ii)  An urgency to inform the public about an actual or alleged federal
> government activity, if made by a person primarily engaged in
> disseminating information;
>
> (iii)  The loss of substantial due process rights; or
>
> (iv)  A matter of widespread and exceptional media interest in which there exist
> possible questions about the government's integrity which affect public
> confidence.

28 C.F.R. § 16.5(d)(1)(i)-(iv).  Categories (i) and (ii) implement the FOIA's "compelling need"

standard; categories (iii) and (iv) define additional categories for expedition.  See 63 Fed. Reg. at

29592.  Requests for expedition based on categories (i), (ii), and (iii) must be submitted to the

_____

unfairly disadvantage other requesters who do not qualify for its treatment."  Al-Fayed v. Central
Intelligence Agency, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795,
reprinted at 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)).

component that maintains the records requested.  See 28 C.F.R. § 16.5(d)(2).  Requests for

expedition based on category (iv) – the Department's "special media-related standard," see 63

Fed. Reg. at 29592 – must be submitted to the Director of the Department's Office of Public

Affairs ("OPA").  See 28 C.F.R. § 16.5(d)(2).  This enables "the Department's media specialists

[to] deal directly with matters of exceptional concern to the media."  63 Fed. Reg. at 29592.

Within ten calendar days of receiving a request for expedited processing, the component

must "decide whether to grant it and . . . notify the requester of the decision."  28 C.F.R.

§ 16.5(d)(4); see also 5 U.S.C. § 552(a)(6)(E)(ii)(I) (requiring notice of decision within ten days

of request).  If the request is granted, "the request shall be given priority and shall be processed

as soon as practicable."  28 C.F.R. § 16.5(d)(4).  If the request is denied, "any appeal of that

decision shall be acted on expeditiously."  Id.; see also 5 U.S.C. § 552(a)(6)(E)(ii)(II) (requiring

"expeditious consideration of administrative appeals of such determinations of whether to

provide expedited processing").

      2.    Factual Background.

By letter dated March 12, 2007, plaintiff submitted a request to FBI Headquarters

("FBIHQ")  for the following records, "from January 1, 2003 to the present,"concerning the

FBI's use of National Security Letters ("NSLs")":

    1.    All records discussing or reporting violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs, including, but not limited to:

        a.    Correspondence or communications between the FBI and the Privacy and Civil Liberties Oversight Board concerning violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs; and

     b.     Correspondence or communications between the FBI and Department of Justice Office of the Inspector General concerning violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs;

2.     Guidelines, memoranda or communications addressing or discussing the integration of NSL data into the FBI's Investigative Data Warehouse;

3.     Contracts between the FBI and three telephone companies (as referenced in page 88 of the Inspector General's report), which were intended to allow the Counterterrorism Division to obtain telephone toll billing data from the communications industry as expeditiously as possible;

4.     Any guidance, memoranda or communications discussing the FBI's legal authority to issue exigent letters to telecommunications companies, and the relationship between such exigent letters and the FBI's authority to issue NSLs under the Electronic Communications Privacy Act;

5.     Any guidance, memoranda or communications discussing the application of the Fourth Amendment to NSLs issued under the Electronic Communications Privacy Act;

6.     Any guidance, memoranda or communications interpreting "telephone toll billing information" in the context of the Electronic Communications Privacy Act;

7.     Any guidance, memoranda or communications discussing the meaning of "electronic communication" in the context of the Electronic Communications Privacy Act;

8.     Copies of sample or model exigent letters used by the FBI's Counterterrorism Division;

9.     Copies of sample or model NSL approval requests used by the FBI's Counterterrorism Division; and

10.     Records related to the Counterterrorism Division's Electronic Surveillance Operations and Sharing Unit (EOPS).

Pl's Ex. 1; Declaration of David M. Hardy ("Hardy Dec."), n. 1 & Ex. A. Also on March 12,

2007, Plaintiff wrote to OPA seeking expedited processing of its request, invoking 28 C.F.R. §

16.5(d)(1)(iv), and asserting that "the FBI's 'improper or illegal use' of NSL authority has engendered 'widespread and exceptional media interest'" since the release on March 9, 2008 of a report by DOJ's Inspector General entitled "A Review of the Federal Bureau of Investigation's Use of National Security Letters."  See Pl's Ex 2; Hardy Dec., Ex. B.  On March 29, 2007 the FBI acknowledged receipt of plaintiff's FOIA request and indicated that it had begun to search it's Central Records System ("CRS") at FBIHQ for the requested information.  See Pl's Ex 3; Hardy Dec., Ex. C.  On March 30, 2007, the FBI informed plaintiff that the Director of OPA had concluded that the subject matter of plaintiff's FOIA was indeed a "matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence," pursuant to 28 C.F.R. § 16.5(d)(1)(iv) , and accordingly had granted plaintiff's request for expedited processing.  See Pl's Ex. 4; Hardy Dec., Ex. D.

On April 10, 2007, plaintiff filed the instant suit as well as a Motion for a Preliminary Injunction asking that the Court order that DOJ "complete the processing of Plaintiff's March 12, 2007 Freedom of Information Act request and produce or identify all responsive records, within 20 days of the date of this order" and to "provide [p]laintiff with a document index and declaration . . . stating defendant's justification for the withholding of any document responsive to plaintiff's request, within 30 days."  See Pl's Proposed Order.

At the time that the Department granted plaintiff's request for expedited processing, there were already two pending FOIA requests before the agency which were entitled to expedited processing.  See Hardy Dec. ¶¶ 15-17.  Although expedited processing entitled plaintiff to have its request processed ahead of those requesters in the normal FOIA queue, to whom no expedited

processing had been accorded, plaintiff was not accorded any special right to have its request processed before the already-pending expedited requests.  See id. ¶ 15.  Indeed, given the substantial volume of documents to be processed in the two prior expedited cases, the FBI currently has only limited resources available to work on expedited processing of plaintiff's request.  See Hardy Dec. ¶¶  15-17.

The FBI has begun the process of collecting documents responsive to plaintiff's sweeping FOIA requests, see id. ¶¶ 21-27,  and currently estimates responsive documents to number approximately 172,000 pages, see id. ¶ 28, all of which must undergo at least a classification review. This tremendous volume is due to both the sweeping temporal scope of the requests (the request spans five years while the Inspector General's report covered only three years), see id. ¶ 4, and to the broad wording of the requests to include "any guidance, memoranda, or communications" concerning various topics.  See id. ¶¶ 4-6.  Because the FBI's search is not yet completed, and its processing of these documents has just begun, it is not yet in a position to provide the Court or plaintiff with an estimate of exactly how long it will take the FBI to complete its expedited processing of plaintiff's request.  However, the FBI believes that, within 120 days, it should have a better sense of the volume of documents and the time that will be needed to process them.  See id. ¶ 36.  Furthermore, if plaintiff is interested in receiving documents faster, it can work with the FBI to narrow the scope of these extremely broad requests.  See id. ¶ 10.

## ARGUMENT

Preliminary injunctive relief such as that demanded by plaintiff is "an extraordinary measure, and . . . the power to issue such exceptional relief 'should be sparingly exercised.'"

Experience Works, Inc. v. Chao, 267 F. Supp. 2d 93, 96 (D.D.C. 2003) (quoting Dorfmann v.

Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969)) (internal quotes omitted); accord Boivin v. US

Airways, Inc., 297 F. Supp. 2d 110, 116 (D.D.C. 2003) ("It frequently is observed that a

preliminary injunction is an extraordinary and drastic remedy, one that should not be granted

unless the movant, by a clear showing, carries the burden of persuasion") (quoting Mazurek v.

Armstrong, 520 U.S. 968, 972 (1997) ( per curiam)) (emphasis in original).  "[I]n considering a

plaintiff's request for a preliminary injunction a court must weigh four factors: (1) whether the

plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would

suffer irreparable injury were an injunction not granted; (3) whether an injunction would

substantially injure other interested parties; and (4) whether the grant of an injunction would

further the public interest."  Al-Fayed, 254 F.3d at 303; accord Serono Labs., Inc. v. Shalala, 158

F.3d 1313, 1317-18 (D.C. Cir. 1998).

# I.    PRELIMINARY INJUNCTIONS ARE GENERALLY INAPPROPRIATE IN FOIA CASES.

Plaintiff's request for a preliminary injunction is even more extraordinary than in the

usual case because plaintiff seeks such relief in a FOIA case where, for a variety of reasons, such

motions are generally inappropriate.[4]  *First*, absent truly dire emergencies, use of the preliminary

---

[4]  Indeed, courts in this district routinely deny requests for such relief.  See, e.g., Electronic Privacy Info. Center v. U.S. Dept. of Justice, slip op., No. 03-2078 (D.D.C., Oct. 20., 2003) (Robertson, J.) (attached as Ex. 1), vacated as moot 2004 WL 2713119 (D.C. Cir. 2004). (denying, *sua sponte*, a request for preliminary injunction "'enjoining defendant Department of Justice from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request'" because such relief "would effectively grant all the relief plaintiff seeks" and was in the nature of a request for mandamus); Al-Fayed v. CIA, 2000 WL 34342564, *6 (D.D.C. 2000) (Kollar-Kotelly, J.) (attached as Ex. 2) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests); Judicial

injunction mechanism should not be encouraged because it unnecessarily adds an additional layer of procedure to FOIA litigation when available existing procedural mechanisms are entirely adequate for managing that process.  Ideally for the Court and the parties, the parties can agree among themselves on a reasonable production schedule.  If the parties fail to agree, the Court can enter an order setting a production schedule at an initial conference.  There is no legitimate reason for complicating these straightforward procedures by resorting to the more drastic preliminary injunction remedy.

   *Second*, FOIA plaintiffs will seldom meet the standard for irreparable harm.  See infra at 22-27.  As discussed infra, it is the plaintiff's burden to make a "clear showing" that denial of the requested relief will result in harm that is "certain and great" rather than "speculative."  In cases where a plaintiff purports to be seeking documents to contribute to a public debate, that plaintiff frequently (if not by definition) does not know whether the request will produce responsive, non-exempt documents that will significantly contribute to a public debate.  Thus, even assuming that the inability to use certain documents in a public debate constitutes irreparable harm, the typical FOIA plaintiff will generally only be guessing as to whether such irreparable harm exists because the plaintiff will not know whether there will be responsive, non-exempt documents and whether,

---

Watch v. U.S. Dept. of Justice, slip op., No. 00-1396  (D.D.C., June 27, 2000) (Robertson, J.) (attached as Ex. 3) (denying plaintiff's "emergency motion for expedited treatment" to "compel defendant to respond to plaintiff's Freedom of Information Act request"); Assassination Archives and Research Ctr., Inc. v. CIA, No. 88-2600, 1988 U.S. Dist. LEXIS 18606, *1 (D.D.C., Sept. 29, 1988) (Revercomb, J.) (attached as Ex. 4) (rejecting motion for preliminary injunction asking the Court to order expedited processing of a FOIA request).  But see EPIC, 416 F. Supp. 2d 30; Judicial Watch v. Dep't of Energy, 191 F. Supp. 2d 138 (D.D.C. 2002); Nat'l Resources Defense Councel v. Dep't of Energy, 191 F. Supp. 2d 41 (D.D.C. 2002); American Civil Liberties Union v. Dep't of Defense, 339 F. Supp. 2d 501 (S.D.N.Y. 2004); Electronic Privacy Info. Center v. Dep't of Justice, Civ. NO. 05-845, 2005 U.S. Dist. LEXIS 40318, at ** 5-6 (D.D.C. Nov. 16, 2005) (Kessler, J.) (attached as Ex. 5) (discussed below).

if so, the response will contribute in any meaningful way to the public debate.  See The Nation
Magazine v. Dep't of State, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding no irreparable harm
because even if the Court "were to direct the speed up of the *processing* of their requests,"
plaintiffs had not shown that they were "entitled to *release* of the documents they" were seeking)
(emphasis in original). Accordingly, the preliminary injunction procedure is generally
incompatible with FOIA lawsuits.

In addition, the assumption that a document will lose its value to the public debate absent
a preliminary injunction will seldom be justified.  It is just as likely that significant new
information will reinvigorate a story.  It is, again, the plaintiff's burden to establish (rather than
merely assert) that failure to grant a preliminary injunction will have this effect, and the
requester's inability to do anything other than offer conclusory assertions is another reason why
preliminary injunctions will seldom be appropriate in FOIA cases.  This analysis applies equally
to cases like this one where the Department has recognized that plaintiff has a right to expedited
processing.  Plaintiff merely asserts in a conclusory manner that "time is of the essence in this
matter," Memorandum In Support of Plaintiff's Motion For Preliminary Injunction ("Pl. Mem.")
at 13, because what it considers to be "delay in processing of FOIA requests 'may well result in
disclosing the relevant documents after the need for them in the formulation of national . . .
policy has been overtaken by events," id. at n. 13 (citation omitted).   However, plaintiff offers no
support for its assertion that either media interest or the public debate regarding NSLs will have
waned by the time the requested documents are processed on an expedited schedule.  As stated
above, the standard for requests that are entitled to expedited processing is "as soon as
practicable," not a specific time period.  The purpose is to ensure that certain requests are

prioritized over others.  Nothing in the Electronic FOIA Amendments ("EFOIA") suggests that

Congress believed that the normal rules of civil procedure were inadequate to the task of

ensuring that agencies prioritize certain requests over others.  While plaintiff relies heavily upon

the recent district court decision in EPIC, 416 F. Supp. 2d 30 (D.D.C. 2006), in which a

preliminary injunction was granted in the FOIA context, it fails to note that the preliminary

injunction entered in that case was later modified upon reconsideration.  See EPIC, slip op., No.

06-0096 (D.D.C. Mar. 24, 2006) (Kennedy, J.) (attached as Ex. 6) (granting in part the

government's expedited motion for relief from the February 16, 2006 Order, extending the

deadline for several DOJ components to process plaintiff's FOIA request by 60 days or 120 days,

respectively; and ordering that no Vaughn index would be required before a dispositive motion

was filed).  Defendant respectfully submits that the EPIC decision relied on by plaintiff was

wrongly decided.  See EPIC, 416 F. Supp. 2d at 39 (holding that an agency is presumed to have

violated FOIA's expedited processing provisions when it fails to process the request within 20

days.).  As discussed below, no requirement that an expedited FOIA request be processed within

a specific time frame is found in the FOIA statute and, indeed, such a requirement is at odds with

the statute.

     Each of the other cases that plaintiff cites in support of its claim that "this Court and

others have imposed specific processing deadlines on agencies, requiring prompt delivery of non-

exempt FOIA records to requesters," see Pl. Mem. at 16, is inapposite.  None of those cases

sought preliminary injunctions within weeks of a FOIA request being made and all of these

decisions were issued following litigation on the merits, where the relevant agencies had

opportunities to provide the Court with necessary information regarding processing needs.

Moreover, each case allowed the agency far more time to complete processing the FOIA requests at issue than plaintiff demands in this case. See, e.g., Judicial Watch v. Dept. of Energy, 191 F. Supp. 2d 138 (D.D.C. 2002) (ordering that responsive non-exempt documents, and Vaughn indices, be produced within approximately a year of fiing of the complaint), Natural Resources Defense Council v. DOE, 191 F. Supp. 2d 41 (D.D.C. 2002) (ordering responsive non-exempt documents and Vaughn index to be filed within approximately one year date the FOIA request was made to agency and within approximately 4 months of filing complaint); American Civil Liberties Union v. DOD, 339 F. Supp. 2d 501 (S.D.N.Y. 2004) (ordering the identification or production of responsive documents within approximately one year of submitting FOIA request and three months of filing of complaint); Electronic Privacy Info. Center v. DOJ, Civ. No. 05-845, LEXIS 40318, at ** 5-6 (D.D.C., Nov. 16, 2005) (ordering processing and release of documents on a rolling basis until processing complete). These cases are thus wholly unlike this one, where plaintiff seeks "preliminary" relief demanding processing at an artificial pace despite the fact that defendant is not even required to answer plaintiff's Complaint for another several weeks, and less than seven weeks have passed since plaintiff's FOIA requests were received by the Department.

Third, it is generally inappropriate to seek, purportedly by way of a "preliminary" remedy, the relief which it will ultimately seek on the merits, i.e. the grant of plaintiff's requests for expedition and a fee waiver and the disclosure of non-exempt documents. See Univ. of Texas v. Camenisch, 451 U.S. 390, 397 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits"). Although the district court in EPIC, 416 F. Supp. 2d 30, granted a preliminary injunction setting deadlines for expedited

processing under FOIA similar to the ones that plaintiffs seek here, that injunction was later modified to create deadlines that reflected the time needed by the agency to process and release the documents.  See EPIC, slip op., No. 06-0096 (D.D.C. Mar. 24, 2006).  Furthermore, defendant respectfully submits that the EPIC decision relied on by plaintiff erroneously held that an agency has an obligation to process an expedited FOIA request on a schedule other than "as soon as practicable."  See EPIC v. DOJ, 416 F. Supp. 2d at 39 (holding that an agency is presumed to have violated FOIA's expedited processing provisions when it fails to process the request within 20 days.).  As discussed below, such a requirement is not found in the FOIA statute and indeed is at odds with it.

Apart from plaintiff's failure to meet the basic preliminary injunction requirements, discussed as discussed infra, this case provides a particularly apt example of the poor fit between the preliminary injunction procedure and the Freedom of Information Act.  Plaintiff's proposed order, for example, asks that the Court order defendants to provide Vaughn indexes within 30 days of the Court's order even though courts generally do not require Vaughn indexes until dispositive motions are filed.[5]  See Proposed Order.  Plaintiff does not even attempt to explain why, for example, the failure to obtain a Vaughn index would result in irreparable harm.

---

[5] See, e.g., Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993) (The "early attempt in litigation of this kind to obtain a Vaughn index . . . is inappropriate until the government has first had the chance to provide the court with the information necessary to make a decision on the applicable exemptions."); United States Committee on Refugees v. Department of State, No. 91-3303, 1992 WL 35089, *1 (D.D.C. Feb. 7, 1992) ("the preparation of a Vaughn index is unwarranted before the filing of dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents") (internal quotation marks and citation omitted); Stimac v. U.S. Dep't of Justice, 620 F. Supp. 212, 213 (D.D.C. 1985) ("the preparation of a Vaughn Index would be premature before the filing of dispositive motions").

There is also no indication in this case of significant delay in the processing of plaintiff's request.  To the contrary, the FBI has timely begun its work in of gathering, reviewing, and processing potentially responsive documents despite the fact that it continues to ork on two expedited requests that pre-dated plaintiff's request.  See Hardy Dec. ¶¶ 15-16, 21-27.  Had plaintiff met and conferred with defendant, as required by Local Rule 7(m), prior to filing its Motion for Preliminary Injunction, the parties could potentially have agreed (and still can agree) upon a schedule for completing the processing of the request.  Use of the preliminary injunction procedure accomplishes nothing that could not be achieved through the standard procedures that generally apply in FOIA cases.

## II.    PLAINTIFF FAILS TO DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE FOIA'S EXPEDITED PROCESSING PROVISIONS DO NOT REQUIRE PROCESSING TO BE COMPLETED WITHIN A TIME CERTAIN.

Plaintiff's allegation that DOJ has violated FOIA is predicated on the assumption that the expedited processing provision of FOIA requires an agency to complete its processing within a specific period of time.  The statute, however, does not require agencies to process expedited requests within a specific time limit.  Instead, the statute directs agencies to "process as soon as practicable any request for records to which [they have] granted expedited processing."  5 U.S.C. § 552(a)(6)(E)(iii) (emphasis added); see also 28 C.F.R. § 16.5(d)(4) ("If a request for expedited treatment is granted, the request shall be given priority and shall be processed as soon as practicable") (emphasis added).  As the Senate Report accompanying the FOIA amendments which inserted the expedited processing procedures explains, the intent of the expedited processing provision was to give certain requests priority, not to require that such requests be processed within a specific period of time:

16

> [Once] the request for expedited processing is granted, the agency must then
> proceed to process the request "as soon as practicable." <u>No specific number of
> days for compliance is imposed by the bill</u> since depending on the complexity of
> the request, the time needed for compliance may vary. <u>The goal is not to get the
> request processed within a specific time period, but to give the request priority in
> processing more quickly than would otherwise occur.</u>

S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996) (emphasis added); <u>see also</u> H. R. Rep.

No. 104-795, <u>reprinted at</u> 1996 U.S.C.A.A.N. 3448, 3461 (Sept. 17, 1996) ("certain categories of

requesters would receive priority treatment of their requests . . . ."). Thus, the expedited

processing provision of FOIA is an ordering mechanism, allowing certain FOIA requesters to

jump to the head of the line and avoid the ordinary "first in, first out" processing queue. Once a

request is at the front of the line, however, "practicability" is the standard that governs how

quickly any particular request can be processed.

Consistent with the plain language of the statute, and Congress's clearly stated intent, this

Court has repeatedly recognized that when expedited processing of a FOIA request is granted, the

appropriate standard to be applied to determine when documents might be identified for release

is "as soon as practicable." <u>See</u> <u>American Civil Liberties Union v. DOJ</u>, 321 F. Supp. 2d 24, 38

(D.D.C. 2004) (Huvelle, J.) (granting request for expedited processing and ordering that DOJ

"shall process plaintiffs' requests for all records relating to section 215 consistent with 5 U.S.C.

§ 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4) ('as soon as practicable')"); <u>Edmonds v. FBI</u>, 2002

WL 32539613, *4 (D.D.C. 2002) (Huvelle, J.) (attached as Ex. 7) (directing defendants to advise

the Court "of the date when the request will be processed consistent with 5 U.S.C.

§ 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4) ('as soon as practicable')"); <u>see also</u> <u>Leadership

Conf. on Civil Rights v. Gonzales</u>,404 F. Supp. 2d 246, 260 (D.D.C. 2005) (Lamberth, J.)

(ordering DOJ to "expedite processing plaintiff's FOIA requests and produce the requested

documents to plaintiff as soon as practicable, but no later than . . . two years from the date on which the complaint was initially filed").

Plaintiff ignores the plain language of the statute and clear legislative intent, and instead, attempts to invent a time limit applicable to its expedited requests by citing 5 U.S.C. § 552(a)(6)(A)(i), which it characterizes as the "20 working day time frame for processing of <u>any</u> FOIA request."[6]  Pl. Mem. at 7.  That provision has no bearing on when expedited processing must be <u>completed</u>.  <u>See</u> <u>American Civil Liberties Union v. DOD</u>, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004) ("While it would appear that expedited processing would necessarily require compliance in fewer than 20 days, Congress provided that the executive was to 'process as soon as practicable' any expedited request.").  An agency's inability to respond within the 20-day period simply means that the requester may, before a response has been made, file suit and be found to have constructively exhausted administrative remedies.  <u>See</u> <u>The Nation Magazine v. Dep't of State</u>, 805 F. Supp. 68, 72 (D.D.C. 1992).  The provision does not purport to establish an "outside" time limit on what is "practicable" in responding to an expedited request.

Indeed, courts have found that the 20-working day response time is not itself a rigid requirement, and have routinely allowed agencies to process FOIA requests under the "first in, first out" rule.  <u>See</u> <u>Judicial Watch v. Rossotti</u>, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (Collyer, J.) ("Certainly, it took longer than twenty days to respond to Judicial Watch's FOIA requests, but that is explained by the nature of these requests, the many offices to which they were directed, the number of FOIA requests [the agencies] regularly receive, and the treatment of FOIA requests

---

[6]  5 U.S.C. § 552(a)(6)(i) provides that an agency shall "determine within twenty working days (except Saturdays, Sundays, and legal public holidays) after the receipt of the request whether to comply with such request."

on a first in/first out basis."); see also id. ("there are often instances where an agency will not be able to meet [the twenty-day] deadline").  Thus, under FOIA, a court may grant an extension to allow the agency to finish its search and processing where the agency has been unable to meet the deadline because of exceptional circumstances.  See 5 U.S.C. § 552(a)(6)(c); see also Open America v. Watergate Special Prosecution Force, 547 F. 2d 605, 615 (D.C. Cir. 1976).[7]  Such circumstances make the 20-day deadline "not mandatory but directory."  Id. at 616.  As such, the 20-day requirement can hardly be found to establish a mandatory deadline as to the "practicability" of responding to expedited requests.

Instead, what is practicable will vary depending on the size, scope, detail, number of offices with responsive documents, other agencies or components which must be consulted or to which documents might have to be referred for additional review, and exemption issues. Plaintiff has made broad FOIA requests seeking "any guidance, memoranda or communications discussing" numerous topics related to NSLs.  See Pl's Ex. 1.

Plaintiff's request seeks documents spanning five years, covering subject matter which, by its very nature, is largely classified.  See Hardy Dec. ¶ 26.  The existence of any significant volume of classified materials contributes mightily to the complexities attendant to processing a FOIA request.  See Hardy Dec.  ¶ 30.  Thus, classified documents responsive to plaintiff's request must be evaluated for release under 5 U.S.C. § 552(b)(1), and Executive Order 12958, as

---

[7]  As the Court of Appeals explained in Ogelsby v. United States Dep't of Army, 920 F.2d 57 (D.C. Cir. 1990), "[f]requently if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination."  Id. at 64.

amended, 68 Fed. Reg. 15315 (March 25, 2003); see also 28 C.F.R. § 16.4(e), § 16.7.[8]  As

Congress has recognized, such review may require additional time.  See H. R. Rep. No. 104-795,

1996 U.S.C.A.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests

in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA

exemptions.  Agencies processing some requests may need additional time to adequately review

requested material to protect these exemption interests.  For example, processing some requests

may require additional time to properly screen material against the inadvertent disclosure of

material covered by the national security exemption").  Moreover, documents subject to other

exemptions, see generally 5 U.S.C. § 552(b), must similarly be identified and, where necessary,

redacted, and documents generated by other agencies or authorities must be referred for review

back to those same agencies or authorities.  Plaintiff offers no reason to believe that the agency is

not performing these tasks as soon as practicable, and thus fails to meet its burden of

demonstrating, "by a clear showing," Mazurek, 520 U.S. at 972, that relief of any kind is

---

[8]  Executive Order 13292, 68 Fed. Reg. 15315, sets forth the amended text of Executive Order 12958, which establishes a uniform system for classifying, safeguarding, and declassifying national security information, and specifically provides that "[w]hen an agency receives any request for documents in its custody that contain information that was originally classified by another agency . . . it shall refer copies of any request and the pertinent documents to the originating agency for processing, and may, after consultation with the originating agency, inform any requester of the referral unless such association is itself classified under this order or its predecessors."  Id. § 3.6(b).  Department regulations similarly provide that "[w]henever a request is made for a record containing information that has been classified, or may be appropriate for classification, by another component or agency under Executive Order 12958 or any other executive order concerning the classification of records, the receiving component shall refer the responsibility for responding to the request regarding that information to the component or agency that classified the information, should consider the information for classification, or has the primary interest in it, as appropriate."  28 C.F.R. § 16.4(e).  Those regulations further provide that "[i]n processing a request for information that is classified under Executive Order 12958 . . . or any other executive order, the originating component shall review the information to determine whether it should remain classified."  28 C.F.R § 16.7.

warranted at this juncture.

### III.   PLAINTIFF FAILS TO IDENTIFY THE EXISTENCE OF ANY IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

"The basis of injunctive relief in the federal courts has always been irreparable harm." CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir.1995) (citing Sampson v. Murray, 415 U.S. 61, 88 (1974)).  In order for a plaintiff to meet its burden of demonstrating irreparable harm sufficient to warrant the entry of preliminary injunctive relief, the injury complained of must be both certain and great; it must be actual and not theoretical. Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time."  Wisc. Gas. Co. v. Federal Energy Regulatory Comm'n, 758 F.2d 669, 764 (D.C. Cir. 1985) (citation omitted).  Instead, the party seeking injunctive relief must show that "[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm."  Id. (citations and internal quotations omitted).  It is a "well known and indisputable principle[]" that a vague or speculative harm cannot constitute "irreparable harm" sufficient to justify injunction relief.  Id.  A plaintiff's failure to meet its burden of establishing irreparable harm is sufficient, in itself, to deny emergency relief.  CityFed Fin. Corp., 58 F.3d at 747.

Plaintiff seeks an order compelling the Department to release records that the FBI is still in the process of identifying and reviewing within the narrow time frame of twenty days.  Yet, plaintiff has identified no "certain and great" harm it will incur if the records are not processed within that time frame.  First, plaintiff claims that its statutory right to expedition will be "irretrievably lost"  if the preliminary injunction it seeks is not granted.  Pl. Mem. at 12.  This argument is specious.  The Department has granted plaintiff expedited processing.  Thus,

21

plaintiff's requests have been prioritized over other requests pending when plaintiff's were filed, and have moved to the front of the FBI's queue for immediate processing.  Plaintiff's statutory right to expedited processing entitles it to nothing more.  Rather, as is plain from the terms of the statute, "[a]n agency shall process <u>as soon as practicable</u> any request for records to which the agency has granted expedited processing."  5 U.S.C. § 552(a)(6)(e)(iii) (emphasis added).  Thus, the expedited processing provision is an ordering mechanism only – intended to give certain requesters priority over all other requesters who remain subject to the ordinary "first in, first out" processing queues.  That provision does not – and indeed, could not in light of the various factors that must be taken into account by an agency processing a FOIA request – guarantee any FOIA requester a response to its request in any particular time.

Plaintiff's second claimed injury is similarly insufficient to establish a right to the extraordinary remedy of a preliminary injunction.  Plaintiff argues that its ability "and that of the public to obtain in a timely fashion information vital to the current and ongoing debate surrounding the FBI's improper use of NSLs" will be irreparably harmed if preliminary relief is not awarded.  Pl. Mem. at 12.  This formulation begs the question:  What certain and great harm will plaintiff suffer in the immediate future as a result of <u>not</u> having this information in the artificial time frame that plaintiff demands, as opposed to the time frame that Congress has established ("as soon as practicable").  For one thing, plaintiff appears to be describing a harm that is suffered primarily by the public, not by plaintiff itself.  The public interest is properly considered as its own factor in the injunction analysis – and, as explained below, in this case the public interest counsels against the award of the preliminary injunction plaintiff seeks – but it

cannot be substituted for a showing that plaintiff itself will be harmed.[9]

Plaintiff's argument that it requires disclosure in order to inform the "meaningful" public debate or in order to know "what the Government is up to," see Pl. Mem. at 12-13 simply fails to demonstrate any irreparable harm that plaintiff will suffer if the documents it demands are not processed within the next twenty days.  As a preliminary matter, plaintiff's claim that it cannot adequately participate in the public debate concerning the program rings substantially hollow. As noted by plaintiff, the DOJ Inspector General has recently released a 126-page report on the subject of DOJ's use of NSL authority.  Pl. Mem. at 3.  Based upon the information that the government has already made public, therefore, plaintiff is fully able to participate in the current public debate and can demonstrate no harm stemming from the absence of the injunctive relief it seeks.

Moreover, in light of the fact that plaintiff cannot now show what non-exempt information – if any – it may eventually receive as a result of the completed processing of its FOIA requests, plaintiff cannot meet its burden of demonstrating that it will be irreparably harmed if it fails to receive that information in the next twenty days.  See The Nation Magazine, 805 F. Supp. at 74 (denying motion for preliminary injunction on ground that plaintiff had failed to demonstrate irreparable harm because "[e]ven if this Court were to direct the speed up of processing of their requests, [plaintiffs] have not shown at this time that they are entitled to the

---

[9]  Plaintiff notes that a bill addressing "the issue of NSL reform" has been introduced in the U.S. House of Representatives and notes that "[t]his Court has found that the existence of pending legislation related to the subject of a FOIA request weighs in favor of a grant of expedited processing."  Pl. Mem. at 12.  Plaintiff's observation is immaterial here, however, because plaintiff has already been granted expedited processing.  Plaintiff could not and does not maintain that the pendency of related legislation mandates that an expedited FOIA request be expedited within a time frame other than "as soon as practicable."

release of the documents that they seek.  To the contrary, it is undisputed that at least some of the documents are probably exempt from production under FOIA").  Even with respect to any non-exempt documents that may be released once processing is complete, plaintiffs' ability to inform the public about the subject matter of its FOIA requests will not be precluded, but merely postponed (and, as already noted, plaintiff's requests have already been granted expedition and thus, any such release will occur as soon as practicable).  Thus, even if a delay in the discussion would cause some unidentified harm – and plaintiff makes no showing of such – that harm, which can be cured at a later date, is hardly irreparable.  Wisc. Gas Co., 758 F.2d at 674 ("[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm") (quoting Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Plaintiff's claim that preliminary injunctive relief is necessary because DOJ granted plaintiff's request for expedited processing, thereby recognizing the urgency of the matter, is circular.  If plaintiff's view prevailed, anyone who sought to have their FOIA request processed on an expedited basis would automatically have a claim of irreparable injury regardless of whether any real harm existed.  This was not the result contemplated by Congress when it authorized a limited exception for expedited processing.  Instead, Congress deferred to the necessity for ensuring adequate time for appropriate agency. Thus, while the purported urgency of plaintiff's request may be a factor in determining whether a request for expedited treatment will be granted, see 5 U.S.C. § 552(a)(6)(E)(v)(ii), it is not a factor in determining the speed by which an agency needs to complete the request, nor does it mean that plaintiff will suffer any harm by adhering to the statute, let alone irreparable harm.  As previously explained, the statute

24

does not require an agency to complete the processing "as soon as a requester needs it" or "as soon as possible."  Plaintiff makes no showing of irreparable harm, and has demonstrated no resaon for the Court to invoke its emergency powers even before the agency has had the opportunity to answer the complaint.

Finally, plaintiff's exaggerated claim that preliminary injunctive relief must be granted because "time is of the essence" and, if it is not, "all opportunity to grant the requested relief [is] foreclosed," Pl. Mem. at 13, is perplexing if not utterly nonsensical.  Plaintiff appears to be suggesting that if this Court does not step in to hurry the processing of documents, neither plaintiff nor the public will ever gain access to any non-exempt documents responsive to plaintiff's FOIA requests that are in the possession of defendants.  It is scarcely necessary to point out that this Court will be just as capable of ordering production of any documents it might find to be improperly withheld later as it is now.  Because plaintiff has failed to establish irreparable harm stemming from denial of the preliminary injunction that it seeks, its motion should be denied.  Plaintiff made the same claim in EPIC, yet, although the documents requested in that case could not be processed in the twenty days plaintiff requested, plaintiff was not prevented from participating in public debate.  The same holds true here.

## IV.    THE REQUESTED PRELIMINARY INJUNCTION WILL HARM THE PUBLIC INTEREST.

Plaintiff's failure to show that it would be irreparably harmed if the requested injunction is not granted is by itself sufficient to defeat their motion for preliminary injunction.  CityFed Fin. Corp., 58 F.3d at 747.  There is further reason, however, not to grant the injunction.  In addition to any harm that may befall plaintiff in the absence of the requested injunction, the court must consider whether an injunction of the sort demanded by plaintiff would be in the public

25

interest.  See Al-Fayed, 254 F.3d at 303; accord Serono Labs., Inc., 158 F.3d at 1317-18.

Although plaintiff claims that it seeks merely to have DOJ adhere to its own statutory mandate,

Pl. Mem. at 14, it in fact seeks much more.  As already described, FOIA requires that expedited

requests be processed by the agencies "as soon as practicable," a principle that this Court has

repeatedly recognized.  See American Civil Liberties Union, 321 F. Supp. 2d at 38; Edmonds,

2002 WL 32539613, at *4; Leadership Conference on Civil Rights, 404 F. Supp. 2d at 260.

Plaintiff's effort to impose an artificial time frame on DOJ does not take account of the realities

attendant to processing a request like plaintiff's, including the necessity to search for and identify

responsive materials, get those materials electronically scanned for processing, to identify,

review a significant volume of classified materials, review the responsive materials for applicable

FOIA exemptions and redactions, and to consult with the appropriate operational divisions prior

to releasing any non-exempt, responsive documents. See, e.g., Hardy Dec. ¶¶ 11-14, 28-33.

That process simply cannot be completed in the twenty-day time frame plaintiff proposes.

       Plaintiff's request for the proposed preliminary injunction ignores these realities, and, as a

result, threatens to compromise the delicate balancing of the public interest that Congress

undertook in enacting FOIA between the general interest in disclosure of government

information and the necessity of ensuring that certain types of documents, the disclosure of

which would cause harm, were not to be disclosed.  The exemptions listed in § 552(b) embody a

judgment by Congress that the public interest would best be served by allowing the agencies to

withhold certain records – for example, those records whose disclosure would interfere with

other vital public interests such as national security, 5 U.S.C. § 552(b)(1); efficient and frank

intra- and inter-agency deliberations and attorney-client communications, 5 U.S.C. § 552(b)(5);

or effective law enforcement, 5 U.S.C. § 552(b)(7).  As noted above, Congress specifically noted that even with respect to expedited requests, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised.  <u>See</u> H. R. Rep. No. 104-795, 1996 U.S.C.A.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA exemptions.  Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.  For example, processing some requests may require additional time to properly screen material against the inadvertent disclosure of material covered by the national security exemption").  As Congress acknowledged, those concerns are only heightened in a case such as this one, where numerous classified documents are at issue, and the Department has independent obligations under federal regulations and Executive Order to ensure that no unwarranted disclosure occurs.

Ordering the Department to disclose documents not "as soon as practicable" as dictated by FOIA, but rather on plaintiff's artificial timetable, causes significant harm to this delicate balancing of these competing public interests.  The bare fact that the records may shed light on "what the government is up to," Pl. Mem. at 13, does not outweigh the harm to the public interest that would be caused by compelling disclosure before appropriate agency review, intended to protect material that is subject to statutory exemptions from disclosure, can be completed.

## CONCLUSION

For all the foregoing reasons, plaintiff's motion for preliminary injunction should be denied.

Dated: April 24, 2007                    Respectfully submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General

                                         JEFFREY A. TAYLOR
                                         United States Attorney

                                         ELIZABETH J. SHAPIRO
                                         Assistant Branch Director


                                         _/s Elisabeth Layton_
                                         ELISABETH LAYTON (D.C. Bar No.462227)
                                         Trial Attorney
                                         U.S. Department of Justice, Civil Division
                                         P.O. Box 883, 20 Massachusetts Ave., NW
                                         Washington, D.C.  20044
                                         Telephone: (202) 514-3183
                                         Fax: (202) 616-8470
                                         elisabeth.layton@usdoj.gov

                                         Counsel for Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 1:07-CV-00656 (JDB) |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DECLARATION OF DAVID M. HARDY</u>

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 201 employees who staff a total of ten (10) units and a field operational service center unit whose collective mission is to effectively plan, develop, direct and manage responses to requests for access to FBI records and information pursuant to the FOIA; Privacy Act; Executive Order

12958, as amended; Presidential, Attorney General and FBI policies and procedures; judicial decisions and other Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 12958, as amended,[1] and the preparation of affidavits/declarations in support of Exemption 1 claims asserted under the FOIA.[2] I have been designated by the Attorney General of the United States as an original Classification Authority and a Declassification Authority pursuant to Executive Order 12958, as amended, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded the March 12, 2007, FOIA request of plaintiff Electronic Frontier Foundation ("EFF") seeking access to records concerning the FBI's use of National Security Letters ("NSLs") in connection with the March 2007 report of the Office of the Inspector General, United States Department of Justice, entitled "A Review of the Federal Bureau of Investigation's Use of National Security Letters" ("OIG report"); and, more generally, internal FBI policies governing the use of NSLs.[3] See

---

[1]    60 Fed. Reg. 19825 (1995) and 69 Fed. Reg. 15315 (2003).

[2]    5 U.S.C. § 552(b)(1).

[3]    In a letter dated March 12, 2007, plaintiff submitted a request to FBIHQ for the following records:

2

1.    All records discussing or reporting violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs, including, but not limited to:

    a.    Correspondence or communications between the FBI and the Privacy and Civil Liberties Oversight Board concerning violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs; and

    b.    Correspondence or communications between the FBI and Department of Justice Office of the Inspector General concerning violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs;

2.    Guidelines, memoranda or communications addressing or discussing the integration of NSL data into the FBI's Investigative Data Warehouse;

3.    Contracts between the FBI and three telephone companies (as referenced in page 88 of the Inspector General's report), which were intended to allow the Counterterrorism Division to obtain telephone toll billing data from the communications industry as expeditiously as possible;

4.    Any guidance, memoranda or communications discussing the FBI's legal authority to issue exigent letters to telecommunications companies, and the relationship between such exigent letters and the FBI's authority to issue NSLs under the Electronic Communications Privacy Act;

5.    Any guidance, memoranda or communications discussing the application of the Fourth Amendment to NSLs issued under the Electronic Communications Privacy Act;

6.    Any guidance, memoranda or communications interpreting "telephone toll billing information" in the context of the Electronic Communications Privacy Act;

7.    Any guidance, memoranda or communications discussing the meaning of "electronic communication" in the context of the Electronic Communications Privacy Act;

8.    Copies of sample or model exigent letters used by the FBI's Counterterrorism Division;

9.    Copies of sample or model NSL approval requests used by the FBI's

http://www.usdoj/gov/oig/reports/FBI/index.htm.

(4)    Plaintiff's request is enormous in scope. It covers the five-year time period from January 1, 2003 to March 29, 2007,[4] which is much longer than the three-year time-period from January 1, 2003 to December 31, 2005 covered in the OIG report.

(5)    In addition, plaintiff's request covers ten broad categories of documents. For example, plaintiff seeks "all records discussing or reporting violations or potential violations" of "statutes, Attorney General guidelines, and internal FBI policies" governing the use of NSLs. Moreover, plaintiff requests "any guidance, memoranda, or communications" with regard to four categories of information. Plaintiff then requests an undefined number of "records" related to the Counterterroism Division's Electronic Surveillance Operations and Sharing Unit ("EOPS").

(6)    Because plaintiff's request is expansively worded to request "any guidance

---

Counterterrorism Division; and

10.    Records related to the Counterterrorism Division's Electronic Surveillance Operations and Sharing Unit (EOPS).

See Exhibit A.

On March 12, 2007, plaintiff also submitted a request to the Office of Public Affairs ("OPA"), United States Department of Justice, for expedited processing of its FOIA request. See Exhibit B. On March 29, 2007, the FBI acknowledged receipt of the FOIA request, provided a request number, and indicated that the FBI was currently searching the indices to the central records system at FBI Headquarters for the requested information, and would inform plaintiff of the results as soon as possible. See Exhibit C. In a letter dated March 30, 2007, the FBI advised plaintiff that OPA had granted plaintiff's request for expedited processing. See Exhibit D.

[4]    Although plaintiff's request states "to the present," March 29, 2007 is the FBI's search cut-off date because it is the date on which the FBI first ran a search of the Central Records System ("CRS") using the Automated Case Support System ("ACS").

4

memoranda, or communications," plaintiff's request involves tens of thousands of pages of potentially responsive e-mail trails, which, coupled with the tremendous amount of classified material covered by the request, creates an immense FOIA case.

(7)    This declaration is being submitted in support of defendant's opposition to plaintiff's motion for a preliminary injunction seeking an order requiring the FBI "to expedite the processing of Plaintiff's March 12, 2007 Freedom of Information Act request to the Bureau to complete its processing within 20 days, and to serve on Plaintiff a Vaughn index 10 days thereafter."

## **BACKGROUND**

### A.    **Overview of how a FOIA request is processed in RIDS.**

(8)    The mission of RIDS is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information. RIDS currently employs approximately 201 people, most of whom are Legal Administrative Specialists ("LASs"), and who are assigned among the 11 units within RIDS. RIDS employees intake, review, process, and release information in response to FOIA and Privacy Act requests. To accomplish this mission, RIDS consists of the following 11 Units: one Service Request Unit ("SRU"), two Work Process Units ("WPU), three Classification Units ("CU"),  four FOIPA Units ("FOIPA Disclosure Units),[5] and the Litigation Support Unit ("LSU").

(9)    Service Request Unit: Among its various sections, the SRU includes the Negotiation Team, which works with individuals whose requests generate a large volume of

---

[5]    One of the four FOIPA Disclosure Units operates at an off-site location in Savannah, Georgia.

records in an attempt to narrow the scope of the responsive records and facilitate a more rapid response. Since 1995, this team has eliminated over 13 million pages from FOIA/Privacy Act requests.

(10)    In this case, the FBI has not had the opportunity to use its Negotiation Team to narrow the request, nor has there been any attempt by this requester to narrow the time period covered by this request, even though doing so could potentially enable the FBI to process the request significantly faster. For example, narrowing the request to the three year period covered by the OIG report, would significantly accelerate the FBI's response. Likewise, narrowing the focus of the request to particular categories of material or certain types of documents would speed up the FBI's processing. Given that the plaintiff's request for expedition was only recently granted, on March 30, 2007, the FBI's negotiation team had not yet had the opportunity to contact plaintiff to initiate discussions of the possibility of narrowing the request before plaintiff initiated this litigation. However, if plaintiff indicates willingness to narrow the request, the processing time may still be reduced.

(11)    Work Process Units: The WPUs handle various administrative tasks such as acknowledging requests and searching for identifiable documents. The WPUs are also responsible for preparing "perfected" requests for transfer to the four FOIPA Disclosure Units. A request is considered "perfected" when all administrative tasks have been completed and all responsive documents have been scanned into the FDPS.

(12)    Classification Units: The three CUs are responsible for complying with the classification/declassification review of FBI records under Executive Order 12958, as amended. In addition, the CUs review and prepare classified material for review by the Department of

6

Justice Review Committee ("DRC").[6]

(13)    <u>FOIPA Units</u>:  After CU review is complete, the four FOIPA Disclosure Units

prepare documents for disclosure pursuant to the provisions of the FOIA and Privacy Act.  A

page-by-page, line-by-line review of the responsive documents to determine which, if any FOIA

and/or Privacy Act exemptions may apply.  This includes redaction of the exempt material and

notation of the applicable exemptions(s) in the margin of each page and/or preparation of deleted

page information sheets when pages are withheld in their entireties, which is now done

electronically in the FOIPA Document Processing System ("FDPS").  The FOIPA Disclosure

Units ensure that FOIA and/or Privacy Act exemptions have been applied properly, no

releaseable material has been withheld, no material meriting protection has been released, and all

necessary classification reviews have been completed.  After both the Classification Units and

the FOIPA Units have completed their work, the proposed release package is sent to the

appropriate operational division(s) for a final review prior to release.

(14)    <u>Litigation Support Unit</u>:  The LSU is responsible for providing legal support and

administrative assistance to the FBI's Office of the General Counsel and Chief Division Counsels

and Assistant Division Counsels in the FBI's field offices, in all FOIA/Privacy Act requests that

result in federal litigation.

**B.    Expedited processing.**

(15)    Prior to receipt of plaintiff's FOIA request in this case, the FBI had two requests

that were subject to expedited processing and remain pending to date.  Because these expedited

---

[6]       The DRC is the FBI's appellate authority with regard to the implementation and
administration of Executive Order 12958, as amended, and related directives and guidelines
concerning classified information.  <u>See</u> 28 C.F.R. § 17.14.

cases pre-date plaintiff's request, plaintiff's request may not receive priority over these previous expedited requests, particularly in light of RIDS's limited resources. In the first of these requests, Gerstein v. CIA, et al., Civ. A. No. 06-4643 (N.D. Cal.), plaintiff seeks, inter alia, access to all documents related to criminal referrals submitted to the U.S. Department of Justice or the FBI since January 1, 2001 regarding unauthorized disclosures of classified information to the press or public. The court in that case has ordered the FBI to expedite plaintiff's request. See Exhibit E (Order Granting Plaintiff's Motion to Compel Responses to FOIA Requests; Setting Deadline for Production; Denying Without Prejudice Request fo Vaughn Index; Vacating Hearing (November 29, 2006). This expedition order has resulted in the FBI's intense search and identification of approximately 6,000 pages of potentially responsive records, most of which are classified. Processing has been demanding. The number of employees working on Gerstein at any given time has varied. Twenty-six employees are now working on it, and 106 hours of overtime have been used. The FBI sought and received an additional 120 days from the original January 5, 2007 date initially ordered by the Court to complete its review and processing of this material. The FBI must now complete its review, processing, and release approximately 6,000 pages by April 27, 2007.

(16)    The second expedited case involves a FOIA request submitted on behalf of a requester convicted of capital murder and who is on death row. The FBI has identified approximately 4,200 responsive pages. The FBI granted expedited processing based on a finding that the lack of expedited treatment could reasonably be expected to pose an imminent threat to the life or physical safety of the subject of the records. Approximately 3,000 more pages need to processed in this request.

(17)    RIDS is in the process of relocating from FBIHQ to Frederick County, Virginia. Many employees have chosen not to transfer with their unit functions, choosing either to retire or find other jobs rather than relocate to Frederick County, Virginia. Unfortunately, many of these employees were among the most senior and experienced in their area of expertise. Since RMD announced its off-site relocation plans, a total of 58 RIDS employees have either resigned, retired, or found other jobs in the Washington, D.C. Metropolitan area, rather than relocate with their unit. To date, a total of 64 RIDS employees from FBIHQ have relocated with their unit to Frederick County, Virginia.

(18)    The FBI is engaged in aggressive and intense recruitment and hiring efforts in the Frederick County, Virginia area. The new RIDS employees who have less experience are in various stages of professional development, but none yet operating as experienced employees. It takes an average of three years to adequately train a new employee in the FOIA/Privacy Act process to be able to work independently in a productive, efficient, and effective manner. Accordingly, RIDS has only a limited number of experienced employees processing FOIA/Privacy Act requests at this time.

(19)    To promote administrative efficiency, RIDS employees work on more than one case at a time. Sometimes, processing may be halted midstream. This can occur for a variety of reasons, including the resolution of classification issues or the location of additional records. In the interest of efficiency during this waiting period, the RIDS employees may work on other requests. Accordingly, the shortfall of RIDS employees limits the resources available for expedited cases as well as non-expedited cases at any given time. The FBI therefore has only a limited quantity of resources available for plaintiff's expedited request.

9

(20)    Due to the volume of material that must be reviewed and processed in response to this request, the FBI intends to process and release documents on a rolling basis. As soon as the WPU completes the administrative work on a significant number of documents, the Classification Unit and FOIPA Disclosure Unit will begin the processing for release. The FBI expects to be able to more accurately assess the amount of time necessary to expeditiously process plaintiff's request, and when it will be able to begin its rolling release of responsive records, within 120 days of the date of this declaration.

## SEARCH FOR RECORDS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST

(21)    In this case, the FBI has employed several mechanisms as part of its search to identify documents responsive to plaintiff's request. As a threshold matter, it is important to note that, due to the extraordinary breadth and depth of plaintiff's FOIA request, the request does not lend itself readily or naturally to the searches that the FBI routinely conducts in response to FOIA requests seeking access to FBI investigative files.

(22)    The standard FBI search for responsive records pursuant to a FOIA request involves using terms indexed in the FBI's Central Records System ("CRS"), which is an investigative tool primarily managed and used by Special Agents to aid them in investigations. The files are indexed by Special Agents with terms useful to an investigation such as names of individuals, organizations, companies, publications, activities, or foreign intelligence matters (or programs). The index therefore may not contain terms that one would use in a more generalized search such as the search in this case for NSL-related material.

(23)    The FBI has conducted a standard search of the CRS. On March 29, 2007, the WPU staff initiated a search in the CRS to find records responsive to plaintiff's requests. The

specific search inquiry in CRS included the following search terms: "National Security Letters," "National Security Letters and Business Records Requests," "NSL Authorized Issued by Other Field Offices," "NSL Control files," "NSL," "Cingular Wireless,""NSL Guidance," and "NSL Letters." The date parameters for the search were January 1, 2003 to March 29, 2007 -- the search cut-off date of the current request. This search located no FBIHQ main files.

(24)    The WPU staff also conducted an individualized inquiry (outside of the CRS system) of the offices at FBIHQ which are reasonably likely to have potentially responsive records. On April 5, 2007, the WPU prepared and circulated an Electronic Communication ("EC") (internal memorandum) to FBIHQ divisions most likely to possess responsive records, including the Director's Office , National Security Branch, Counterterrorism Division, Inspection Division, and Office of the General Counsel. The EC requested the personnel of the designated divisions to conduct a thorough search of any documents in their possession, including e-mails, responsive to plaintiff's request.

(25)    Preliminary responses to the EC from the Director's Office, Inspection Division, and the Office of General Counsel indicate that potentially responsive material includes an enormous amount of electronic material, including numerous lengthy e-mail trails, that is difficult and time-consuming to retrieve.

(26)    To date, the FBI estimates that approximately 25% of the potentially responsive material has been located. This material consists of twelve file drawers full of documents containing approximately 41,000 pages (approximately 3,400 pages per drawer) of potentially responsive information and fifteen CDs found to contain a total of approximately 2,254 pages of potentially responsive material. This potentially responsive material contains a significant

amount of classified information.

(27)    The FBI therefore currently anticipates locating approximately 172,000 pages of material potentially responsive to plaintiff's request.

## EXPEDITED PROCESSING OF PLAINTIFF'S FOIA REQUEST

(28)    The documents that have been located to date are currently being reviewed for responsiveness. A team of ten RIDS employees is currently working full-time to determine whether particular documents fall into any of the ten categories of documents requested by plaintiff. This team of employees will continue reviewing documents for responsiveness until all the documents have been reviewed.

(29)    The next step will be to scan the responsive documents into the FOIPA Document Processing System ("FDPS") which provides for online processing. Priority scanning will occur shortly after documents are reviewed for responsiveness.

(30)    Scanned documents are ready for processing, which is accomplished in three stages. First, the Classification Unit will conduct a separate, and time-intensive, review to ensure that all documents are appropriately classified in accordance with the current Executive Order, E.O. 12958, as amended. Even though some of the documents that are responsive to plaintiff's request have been provided to the OIG, pursuant to an agreement with the OIG, the documents provided to the OIG did not first undergo a classification review. Generally, one Classification Unit employee reviews documents at a rate of approximately 1,000 pages per person per month.

(31)    The second stage involves a page-by-page, line-by-line review of the responsive documents to determine which, if any, FOIA, exemptions may apply. This includes redaction of the exempt material and notation of the applicable exemption(s) in the margin of each page

12

and/or preparation of deleted page information sheets when pages are withheld in their entireties, which is now done electronically in FDPS. Depending on the flow of material from the Classification Unit, one to eight FOIPA Disclosure Unit employees will process the responsive documents. Generally, 800 pages of material per month can be reviewed by one FOIPA Disclosure Unit employee.

(32)    The final stage of processing includes review of the proposed release packages by the operational division which has substantive equities in the material to ensure that no processing errors have been made and that no improper disclosures are made. Due to the sensitive nature of the documents related to NSLs in this case, the FBI anticipates that several different divisions at FBI Headquarters with equities in the documents will need to review the release packages. The particularly sensitive and classified nature of the documents necessitates a review by senior FBI personnel prior to any release.

(33)    As described above, due to the volume of the material, which includes a substantial amount of classified information as well as lengthy e-mail trails all of which needs to be carefully reviewed prior to release, the FBI intends to release documents on a rolling basis. As the processing of a significant number of documents is complete, the FBI will make regular periodic releases until the production is complete, rather than delay the releases until the entire production is ready.

## CONCLUSION

(34)    The FBI is in the process of conducting a thorough search designed to uncover all documents potentially responsive to plaintiff's request. In light of the number of pages the FBI has located to date, and its continuing search and review efforts the FBI requires an additional

13

120 days from the date of this declaration in which to more accurately assess the amount of time it will take to expeditiously respond to plaintiff's FOIA request.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A-E attached hereto are true and correct copies.

Executed this _24th_ day of April, 2007.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
    Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. Action No. 1:07-CV-00656 (JDB) |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# EXHIBIT A



**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

March 12, 2007

**BY FACSIMILE — (202) 324-3752**

David M. Hardy, Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Department of Justice
935 Pennsylvania Avenue NW
Washington, DC 20535-0001

### RE: Freedom of Information Act Request and Request for Expedited Processing

Dear Mr. Hardy:

This letter constitutes an expedited request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and is submitted to the Federal Bureau of Investigation ("FBI") on behalf of the Electronic Frontier Foundation ("EFF"). We make this request as part of EFF's FOIA Litigation for Accountable Government ("FLAG") Project, which works to obtain government documents and make them widely available to the public.

By separate letter to the Department of Justice's Director of Public Affairs, we have requested the expedited processing of this request pursuant to 28 C.F.R. § 16.5(d)(1)(iv). For your convenience, we are including a copy of that letter here (without attachments).

In a report issued on March 9, 2007, the Department of Justice's Inspector General documented numerous instances of the FBI's "improper or illegal use" of National Security Letter ("NSL") authority. Specifically, the Inspector General "found that the FBI used NSLs in violation of applicable NSL statutes, Attorney General Guidelines, and internal FBI policies." U.S. Department of Justice, Office of the Inspector General, "Λ Review of the Federal Bureau of Investigation's Use of National Security Letters" (March 2007), at xlvii.

We are seeking the following agency records (including but not limited to electronic records) from January 1, 2003 to the present:

1. All records discussing or reporting violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs, including, but not limited to:

    a. Correspondence or communications between the FBI and the Privacy and Civil Liberties Oversight Board concerning violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs; and

1875 Connecticut Ave., NW · Suite 650 · Washington, DC 20009
☏ 202 797 9009   📠 202 797 9066   🌐 www.eff.org   ✉ information@eff.org

      b. Correspondence or communications between the FBI and Department of
         Justice Office of the Inspector General concerning violations or potential
         violations of statutes, Attorney General guidelines, and internal FBI policies
         governing the use of NSLs;

2. Guidelines, memoranda or communications addressing or discussing the integration
  of NSL data into the FBI's Investigative Data Warehouse;

3. Contracts between the FBI and three telephone companies (as referenced in page 88
  of the Inspector General's report), which were intended to allow the Counterterrorism
  Division to obtain telephone toll billing data from the communications industry as
  expeditiously as possible;

4. Any guidance, memoranda or communications discussing the FBI's legal authority to
  issue exigent letters to telecommunications companies, and the relationship between
  such exigent letters and the FBI's authority to issue NSLs under the Electronic
  Communications Privacy Act;

5. Any guidance, memoranda or communications discussing the application of the
  Fourth Amendment to NSLs issued under the Electronic Communications Privacy
  Act;

6. Any guidance, memoranda or communications interpreting "telephone toll billing
  information" in the context of the Electronic Communications Privacy Act;

7. Any guidance, memoranda or communications discussing the meaning of "electronic
  communication" in the context of the Electronic Communications Privacy Act;

8. Copies of sample or model exigent letters used by the FBI's Counterterrorism
  Division;

9. Copies of sample or model NSL approval requests used by the FBI's
  Counterterrorism Division; and

10. Records related to the Counterterrorism Division's Electronic Surveillance
   Operations and Sharing Unit (EOPS).

We believe that records responsive to this request are likely to be located within the FBI's Office
of General Counsel, National Security Law Branch, and Counterterrorism Division.

**Request for News Media Fee Status**

EFF asks that it not be charged search or review fees for this request because EFF qualifies as a
"representative of the news media" pursuant to the FOIA and 28 C.F.R. § 16.11(b)(6).  In
requesting this classification, we note that both the Department of Homeland Security and the
National Security Agency have recognized that EFF qualifies as a "news media" requester, based

upon the publication activities set forth below (see DHS stipulation and NSA letter, attached hereto). We further note that the U.S. Court of Appeals for the D.C. Circuit has stressed that "different agencies [must not] adopt inconsistent interpretations of the FOIA." *Al-Fayed v. CIA*, 254 F.3d 300, 307 (D.C. Cir. 2001), quoting *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1287 (D.C. Cir. 1983).

EFF is a non-profit public interest organization that works "to protect and enhance our core civil liberties in the digital age."[1] One of EFF's primary objectives is "to educate the press, policymakers and the general public about online civil liberties."[2] To accomplish this goal, EFF routinely and systematically disseminates information in several ways.

First, EFF maintains a frequently visited web site, http://www.eff.org, which received 40,,042,510 hits in February 2007 — an average of 59,587 per hour. The web site reports the latest developments and contains in-depth information about a variety of civil liberties and intellectual property issues.

EFF has regularly published an online newsletter, the EFFector, since 1990. The EFFector currently has more than 77,000 subscribers. A complete archive of past EFFectors is available at http://www.eff.org/effector/.

Furthermore, EFF publishes a blog that highlights the latest news from around the Internet. DeepLinks (http://www.eff.org/deeplinks/) reports and analyzes newsworthy developments in technology. It also provides miniLinks, which direct readers to other news articles and commentary on these issues. DeepLinks had 451,585 hits in February 2007.[3]

In addition to reporting hi-tech developments, EFF staff members have presented research and in-depth analysis on technology issues in no fewer than eighteen white papers published since 2002. These papers, available at http://www.eff.org/wp/, provide information and commentary on such diverse issues as electronic voting, free speech, privacy and intellectual property.

EFF has also published several books to educate the public about technology and civil liberties issues. *Everybody's Guide to the Internet* (MIT Press 1994), first published electronically as *The Big Dummy's Guide to the Internet* in 1993, was translated into several languages, and is still sold by Powell's Books (http://www.powells.com). EFF also produced *Protecting Yourself Online: The Definitive Resource on Safety, Freedom & Privacy in Cyberspace* (HarperEdge 1998), a "comprehensive guide to self-protection in the electronic frontier," which can be purchased via Amazon.com (http://www.amazon.com). Finally, *Cracking DES: Secrets of Encryption Research, Wiretap Politics & Chip Design* (O'Reilly 1998) revealed technical details on encryption security to the public. The book is available online at http://cryptome.org/cracking-des.htm and for sale at Amazon.com.

---

[1] Guidestar Basic Report, Electronic Frontier Foundation, http://www.guidestar.org/pqShowGs Report.do?npoId=561625 (last visited March 10, 2007).
[2] *Id.*
[3] These figures include hits from RSS feeds through which subscribers can easily track updates to DeepLinks and miniLinks.

Most recently, EFF has begun broadcasting podcasts of interviews with EFF staff and outside experts. *Line Noise* is a five-minute audio broadcast on EFF's current work, pending legislation, and technology-related issues. A listing of *Line Noise* podcasts is available at feed://www.eff.org/rss/linenoisemp3.xml and feed://www.eff.org/rss/linenoiseogg.xml. These podcasts were downloaded more than 2,700 times from EFF's web site last month.

These extensive publication activities show that EFF is a "representative of the news media" under the FOIA and agency regulations.

**Request for a Public Interest Fee Waiver**

EFF is entitled to a waiver of duplication fees because disclosure of the requested information is in the public interest within the meaning of 5 U.S.C. § 552(a)(4)(a)(iii) and 28 C.F.R. § 16.11(k). To determine whether a request meets this standard, Department of Justice components determine whether "[d]isclosure of the requested information is likely to contribute significantly to public understanding of the operations or activities of the government," and whether such disclosure "is not primarily in the commercial interest of the requester." 28 C.F.R. §§ 16.11(k)(i), (ii). This request clearly satisfies these criteria.

First, the FBI's issuance of NSLs concerns "the operations or activities of the government." 28 C.F.R. § 16.11(k)(2)(i). The agency's interpretation and use of legal authority to issue NSLs unquestionably constitutes government operations or activities.

Second, disclosure of the requested information will "contribute to an understanding of government operations or activities." 28 C.F.R. § 16.11(k)(2)(ii) (internal quotation marks omitted). EFF has requested information that will shed light on how the FBI exercises its power to issue NSLs.

Third, the requested material will "contribute to public understanding" of the FBI's use of NSL authority. 28 C.F.R. § 16.11(k)(2)(iii) (internal quotation marks omitted). This information will contribute not only to EFF's understanding of the way that the FBI exercises its power to issue NSLs, but to the understanding of a reasonably broad audience of persons interested in the subject. EFF will make the information it obtains under the FOIA available to the public and the media through its web site and newsletter, which highlight developments concerning privacy and civil liberties issues, and/or other channels discussed more fully above.

Fourth, the disclosure will "contribute significantly" to the public's knowledge and understanding of the FBI's use of its authority to collect investigative data through NSLs. 28 C.F.R. § 16.11(k)(2)(iv) (internal quotation marks omitted). Disclosure of the requested information will help inform the public about the FBI's interpretation of the laws and policies that govern issuance of NSLs, as well as contribute to the public debate about how this authority should be exercised.

Furthermore, a fee waiver is appropriate here because EFF has no commercial interest in the disclosure of the requested records. 28 C.F.R. § 16.11(k)(3). EFF is a 501(c)(3) nonprofit

organization, and will derive no commercial benefit from the information at issue here.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 CFR 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

Sincerely,

Marcia Hofmann
Staff Attorney

Attachments

Case 1:06-cv-01988-ESH    Document 15    Filed 02/27/2007    Page 1 of 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER                    )
FOUNDATION                             )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )        Civil Action No.  06-1988 (ESH)
                                       )
DEPARTMENT OF HOMELAND                 )
SECURITY,                              )
                                       )
            Defendant.                 )
_____)

### STIPULATED DISMISSAL OF PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff Electronic Frontier Foundation (EFF) and Defendant Department of Homeland

Security (DHS), by counsel, hereby stipulate and agree as follows:

1.      Defendant DHS has granted news media status to Plaintiff EFF based on the

representations contained in EFF's FOIA requests, which demonstrate that EFF is an "entity that

is organized and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

Defendant DHS will continue to regard Plaintiff EFF as a "representative of the news media"

absent a change in circumstances that indicates that EFF is no longer an "entity that is organized

and operated to publish or broadcast news to the public." 6 C.F.R. § 5.11(b)(6).

2.      Accordingly, the parties herewith agree to the dismissal of Plaintiff EFF's Second

Cause of Action, related to EFF's status as a "representative of the news media."

3.      The parties further agree that each will pay its own fees and costs for work on the

dismissed claim.

SO STIPULATED AND AGREED this 27th day of February, 2007.

_/s/ David L. Sobel_
DAVID L. SOBEL
D.C. Bar 360418

MARCIA HOFMANN
D.C. Bar 484136

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue, N.W.
Suite 650
Washington, D.C. 20009
(202) 797-9009

_Counsel for Plaintiff_

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
D.C. Bar 418925
Assistant Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

_/s/ John R. Coleman_
JOHN R. COLEMAN
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW, Room 6118
Washington, D.C. 20530
(202) 514-4505

_Counsel for Defendant_

-2-



NATIONAL SECURITY AGENCY
CENTRAL SECURITY SERVICE
FORT GEORGE G. MEADE, MARYLAND 20755-6000

FOIA Case:  52276
6 February 2007

Ms. Marcia Hofmann
Electronic Frontier Foundation
1875 Connecticut Avenue, NW
Suite 650
Washington, DC  20009

Dear Ms. Hofmann:

    This is an initial response to your Freedom of Information Act (FOIA)
request submitted via facsimile on 23 January 2007, which was received by
this office on 24 January 2007, for all agency records (including, but not
limited to, electronic records) related to the NSA's review of and input on the
configuration of the Microsoft Windows Vista operating system ("Vista").  Your
request has been assigned Case Number 52276.

    As we began to process your request, we realized that the first page of the
actual request was missing from your 18-page facsimile package.  On
1 February 2007, a member of my staff contacted you to advise you of this fact.
As a result, you submitted another facsimile of your original five-page request,
which we received and have begun to process.  There is certain information
relating to this processing about which the FOIA and applicable Department of
Defense (DoD) and NSA/CSS regulations require we inform you.

    For purposes of this request and based on the information you provided
in your letter, you are considered a representative of the media.  Unless you
qualify for a fee waiver or reduction, you must pay for duplication in excess of
the first 100 pages.  Your request for a fee waiver has been granted.  In
addition, please be advised your request for expedited treatment has been
accepted.  We are currently in the process of searching for responsive
documents and will notify you of the status of your request as soon as that
search has been completed.

    Correspondence related to your request should include the case number
assigned to your request, which is included in the first paragraph of this letter.
Your letter should be addressed to National Security Agency, FOIA Office

FOIA Case:  52276


(DC34), 9800 Savage Road STE 6248, Ft. George G. Meade, MD  20755-6248
or may be sent by facsimile to 443-479-3612.  If sent by fax, it should be
marked for the attention of the FOIA office.  The telephone number of the FOIA
office is 301-688-6527.

Sincerely,

*Marianne Stupar*

PAMELA N. PHILLIPS
Chief
FOIA/PA Office

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,   ) | |
|                                 ) | |
|      Plaintiff,                  ) | |
|                                   ) | |
|            v.                 ) | Civ. Action No. 1:07-CV-00656 (JDB) |
|                                   ) | |
| DEPARTMENT OF JUSTICE,         ) | |
|                                   ) | |
|      Defendant.               ) | |

# EXHIBIT B

03/12/2007  15:05    20279790                    EFF DC                          PAGE  07/13


**Electronic Frontier Foundation**
Protecting Rights and Promoting Freedom on the Electronic Frontier

March 12, 2007

BY FACSIMILE – (202) 514-5331

Tasia Scolinos
Director of Public Affairs
Office of Public Affairs
U.S. Department of Justice
Room 1128
950 Pennsylvania Avenue, N.W.
Washington DC 20530-0001

    RE:   **Request For Expedited FOIA Processing**

Dear Ms. Scolinos:

This is a request for expedited processing of a Freedom of Information Act ("FOIA") request, made pursuant to 28 C.F.R. § 16.5(d)(1). By separate letter (attached hereto), the Electronic Frontier Foundation ("EFF") today submitted an FOIA request to the Federal Bureau of Investigation ("FBI") seeking the disclosure of FBI records about policies, procedures and practices concerning the Bureau's issuance of National Security Letters ("NSLs").

We believe this request meets the criteria for expedited processing under 28 C.F.R. § 16.5(d)(1)(iv), as "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv).

In a report issued on March 9, 2007, the Department of Justice's Inspector General documented numerous instances of the FBI's "improper or illegal use" of NSL authority. Specifically, the Inspector General "found that the FBI used NSLs in violation of applicable NSL statutes, Attorney General Guidelines, and internal FBI policies." U.S. Department of Justice, Office of the Inspector General, "A Review of the Federal Bureau of Investigation's Use of National Security Letters" (March 2007), at xlvii.

There can be no question that the FBI's "improper or illegal use" of NSL authority has engendered "widespread and exceptional media interest" since the Inspector General's report was released three days ago. According to a search of the Lexis-Nexis "News, Most Recent 90 Days" database, more than 125 articles containing the terms "FBI" and "National Security Letters" appeared in the first three days since the report was released (search results attached hereto). A search of Google News using the same terms indicates that 1,235 online articles have appeared during the same period (search results listing first 50 hits attached hereto).

Lest there be any doubt that there has been "widespread and exceptional media interest" in the issue, we note that FBI Director Mueller convened a press conference to answer questions about the IG's report less than two hours after it was released. *See* http://www.fbi.gov/pressrel/ pressrel07/nsl_ transcript030907.htm. In addition, the FBI's homepage currently features a link to the Bureau's "response to the DOJ Inspector General's report on the use of National Security

1875 Connecticut Ave., NW · Suite 650 · Washington, DC 20009
☎ 202 797 9009   📠 202 797 9066   🌐 www.eff.org   ✉ information@eff.org

Letters and our answers to questions about their use and investigative value" (image of FBI homepage attached hereto).

It is equally clear that "there exist possible questions about the government's integrity which affect public confidence." Such questions are exemplified in the following exchange at Director Mueller's press conference:

> QUESTION: Director, you talked about how critically important these letters are to the mission of the FBI. And we also know that the FBI's allowed to do this without seeking a court order for the information. Is part of your frustration that this is about trust; that Congress gives you this authority to go out and do this, (inaudible) in dealing with these issues?

> MUELLER: Well, I think Congress and the American people should have a lot of trust in the FBI. Occasionally, there are areas where we need to admit mistakes that we've made – this is one of them; areas where we should've done a better job – this is one of them. And I think Congress and ourselves should both trust but also verify.

Similarly, in remarks made shortly after the release of the IG report, the Attorney General acknowledged that "we must act quickly and decisively to restore the public's confidence." Prepared Remarks of Attorney General Alberto R. Gonzales at the International Association of Privacy Professionals Privacy Summit Washington, D.C., March 9, 2007 (available at http://www.usdoj.gov/ag/speeches/2007/ag_speech_070309.html).

In addition, editorials in the country's leading newspapers are raising questions about "integrity" and "public confidence." See, e.g., The Washington Post, "Abuse of Authority; The FBI's gross misuse of a counterterrorism device," March 11, 2007, p. B6 ("The report depicts an FBI cavalierly using its expanded power to issue 'national security letters' without adequate oversight or justification."); The New York Times, "The Failed Attorney General," March 11, 2007, p. 13, Section 4 ("[The] inspector general exposed the way the Federal Bureau of Investigation has been abusing yet another unnecessary new power . . .").

The American public is deeply concerned about potential government intrusions into personal affairs, particularly those involving (as some NSLs do) private communications. While the Inspector General, Attorney General and FBI Director have acknowledged and addressed these concerns, there is no substitute for the disclosure of internal agency records detailing the policies, procedures and practices concerning the Bureau's issuance of NSLs. Indeed, the very purpose of the FOIA is to lessen the public's dependence on official agency statements and open the underlying documentation to public scrutiny. This is clearly an instance in which expedited processing of an FOIA request is warranted.

Thank you for your consideration of this request. As applicable Department regulations provide, we will anticipate your determination within ten (10) calendar days. 28 C.F.R. § 16.5(d)(1). Please be advised that, given the urgency of this matter, EFF intends to seek immediate judicial relief if a response to this request for expedition is not issued in a timely manner.

2

Under penalty of perjury, I hereby affirm that the foregoing is true and correct to the best of my knowledge and belief.

Sincerely,

Marcia Hofmann
Staff Attorney

Attachments

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. Action No. 1:07-CV-00656 (JDB) |
| ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |

# EXHIBIT C



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

March 29, 2007

MS. MARCIA HOFMANN
ELECTRONIC FRONTIER FOUNDATION
SUITE 650
1875 CONNECTICUT AVENUE, N.W.
WASHINGTON, DC 20009

Request No.:  1073946- 000
Subject:  NATIONAL SECURITY LETTERS

Dear Requester:

☒     This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request to the FBI. The FOIPA number listed above has been assigned to your request.

☐     For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐     To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐     If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒     We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐     Processing delays have been caused by the large number of requests received by the FOIPA. We will process your request(s) as soon as possible.

    Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELECTRONIC FRONTIER FOUNDATION,          )
                                         )
        Plaintiff,                       )
                                         )
            v.                           )     Civ. Action No. 1:07-CV-00656 (JDB)
                                         )
DEPARTMENT OF JUSTICE,                   )
                                         )
        Defendant.                       )
                                         )

# EXHIBIT D



U.S. Department of Justice

Federal Bureau of Investigation

Washington, D. C. 20535-0001

March 30, 2007

Ms. Marcia Hofmann
Staff Attorney
Electronic Frontier Foundation
Suite 650
1875 Connecticut Avenue, N.W.
Washington, DC 20009

RE: FOIPA Request No. 1073946-000

Dear Ms. Hofmann:

   This letter is in response to your request to the U.S. Department of Justice ("DOJ"), Office of Public Affairs ("OPA"), for expedition of your Freedom of Information Act ("FOIA") request dated March 12, 2007 to FBI Headquarters ("FBIHQ"). Your March 12, 2007 FOIA request seeks access to "records discussing or reporting violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of National Security Letters." In your March 12, 2007 FOIA request you sought expedited processing pursuant to 28 C.F.R. § 16.5 (d)(1)(iv) ("[a] matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence."). We have been advised that the Director of OPA has concluded that the subject matter of your request is in fact a "matter of widespread and exceptional media interest in which there exists possible questions about the government's integrity which affects public confidence," and has therefore concluded that your request for expedited processing should be granted.

   By separate letter dated March 29, 2007, the FBI acknowledged your March 12, 2007 FOIA request and advised you that your FOIA request has been assigned FOIPA Request No. 1073946, and we have begun to conduct a search for potentially responsive records. Once the FBI completes its search for all records potentially responsive to your FOIA request, you will be advised as to the outcome of this search effort.

   With respect to the portion of your letter seeking a waiver of the customary fees, we will make a decision once our records search is completed. In the event that your request for a fee waiver is denied, you will be notified of any applicable fees prior to the processing of any responsive records.

      Sincerely yours,

      *David M. Hardy/das*

      David M. Hardy
      Section Chief
      Record/Information
      Dissemination Section
      Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>    Plaintiff,<br><br>          v.<br><br>DEPARTMENT OF JUSTICE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Civ. Action No. 1:07-CV-00656 (JDB)<br>)<br>)<br>)<br>)<br>) |

# EXHIBIT E



United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8                  IN THE UNITED STATES DISTRICT COURT

9                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   JOSHUA A. GERSTEIN,                    No. C-06-4643 MMC

12              Plaintiff,                  **ORDER GRANTING PLAINTIFF'S**
                                            **MOTION TO COMPEL RESPONSES TO**
13        v.                                **FOIA REQUESTS; SETTING DEADLINE**
                                            **FOR PRODUCTION; DENYING**
14   CENTRAL INTELLIGENCE AGENCY, et al.,   **WITHOUT PREJUDICE REQUEST FOR**
                                            **VAUGHN INDEX; VACATING HEARING**
15              Defendants.

16   _____/       (Docket No. 8)

17

18        Before the Court is plaintiff Joshua A. Gerstein's ("Gerstein") motion to compel

19   defendants Department of Defense ("DOD"), Department of Justice ("DOJ") and Federal

20   Bureau of Investigation ("FBI") to respond to Gerstein's requests under the Freedom of

21   Information Act ("FOIA"). Defendants have filed joint opposition to the motion; Gerstein has

22   filed a reply. Having considered the papers filed in support of and in opposition to the

23   motion, the Court finds the matter appropriate for decision without oral argument, see Civil

24   L.R. 7-1(b), hereby VACATES the December 1, 2006 hearing, and rules as follows.

25                                    **BACKGROUND**

26        Gerstein alleges he is a professional journalist employed full-time as a reporter

27   covering legal and political issues for the New York Sun, a daily newspaper published in

28   New York City. (See Compl. ¶ 2.)

          Gerstein alleges that "[f]rom mid-2005 to the present, President Bush, executive

1   branch officials, members of Congress, and the press have participated in an escalating

2   public debate about unauthorized disclosures, often called 'leaks,' of classified information."

3   (See Compl. ¶ 13.) According Gerstein, such debate "has been spurred and fueled by a

4   series of highly-publicized news reports, including stories about alleged secret CIA prisons

5   overseas, about the warrantless surveillance by the NSA of certain telephone calls placed

6   or received by Americans, about an alleged decision by President Bush and Vice President

7   Cheney to declassify an intelligence estimate on Iraq without notifying personnel normally

8   notified in such declassification, and about the alleged tracking by government agencies of

9   billions of long-distance telephone calls made within the United States." (See id.)

10          On March 16 and 17, 2006, Gerstein sent separate, but similar, FOIA requests to

11  the Central Intelligence Agency ("CIA"), National Security Agency ("NSA"), DOD, DOJ,

12  Department of State ("DOS"), FBI, and the National Reconnaissance Office ("NRO"),

13  pursuant to which Gerstein sought certain records relating to unauthorized disclosures of

14  classified information, and asked that the processing of each such request be expedited, on

15  the ground that a compelling need exists for disclosure of the records sought. (See

16  Gerstein Decl. ¶¶ 1, 5, 7-10, 13-14, and 16-18 and Exs. A, E, G-J, M-N, and P-R.) As an

17  example, Gerstein's request to the CIA seeks the following records:

18          1. All so-called criminal referrals submitted by CIA to the Department of
            Justice ("DOJ") since January 1, 2001 regarding unauthorized disclosure of
19          classified information to the press or public.

20          2. All responses from DOJ to CIA indicating the outcome of the
            investigations, inquiries, or legal analyses related to the incidents referenced
21          in No. 1 above.

22          3. All records reflecting the outcome of disciplinary proceedings instituted in
            connection with the incidents referenced in No. 1 above.
23
            4. All records reflecting the outcome of damage assessments conducted in
24          connection with the incidents referenced in No. 1 above.

25          5. All logs, lists, tallies, tabulations, summary reports, compilations, and the
            like pertaining to the referrals described in No. 1 above, whether or not
26          composed solely of those referrals.

27          6. All records pertaining to published reports in or about August 1998 that the
            United States was aware of or tracking a satellite telephone used by Osama
28          Bin Laden, the source or sources of that alleged leak, all referrals by DOJ in

                                              2

1    connection with that alleged leak, all replies from DOJ thereto, and any
     damage assessment conducted in connection with that alleged leak.

2

3    (See id. Ex. A at 1-2.)

     The DOD, DOJ, FBI, and DOS granted Gerstein's request for expedited processing.

4

5    (See id. Exs. F, L, O.)  The CIA and NSA denied Gerstein's request for expedited

     processing.[1]  (See id. Exs. B, and S.)  As of the date of the complaint, Gerstein alleges, he

6

7    has received no records from any of the defendants in response to his FOIA requests.

     (See id. ¶¶ 15, 16, 20, 21, 22, 23.)[2]

8

9    Gerstein filed the instant action on July 31, 2006.  Gerstein alleges, inter alia, that

10   (1) the CIA, DOD, DOJ, DOS, FBI, and NSA have violated FOIA by failing to disclose the

11   requested records, or to justify their withholding, within 20 business days of the receipt of

12   the requests; (2) the NRO has violated FOIA by failing to act on plaintiff's administrative

13   appeal within 20 business days of receipt; and (3) the CIA and NSA have violated FOIA by

14   failing to grant Gerstein's request for expedited processing.  (See id. ¶¶ 27-29.)

### LEGAL STANDARD

15   Except in "unusual circumstances," an agency receiving a FOIA request must

16   "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after

17   the receipt of any such request whether to comply with such request[.]"  See 5 U.S.C.

18   § 552(a)(6)(A), (B).  "Upon any determination by an agency to comply with a request for

19

20   _____

21   [1] According to Gerstein, the NRO rejected his request for expedited processing, but
     shortly thereafter advised him that it had located 31 pages of records responsive to his
22   request and was withholding all records in their entirety pursuant to FOIA exemptions.
     (See Compl. ¶ 22.)  Gerstein alleges he has filed an administrative appeal of the NRO's
23   withholding of responsive records, but, as of the date of the complaint, has received no
     response to the appeal.  (See id.)

24   [2] In a letter dated September 25, 2006, the DOJ Office of Professional Responsibility
     ("OPR") responded to Gerstein's FOIA request.  (See attachment to Second Gerstein
25   Decl.)  In that response, OPR stated it had identified 328 responsive documents, 70 of
     which were duplicates; of the remaining 258 documents, OPR produced 59 documents in
26   full and an additional 76 documents in part.  (See id.)  OPR referred 102 documents for
     review by the other agencies or other DOJ "components" from which they originated, and
27   referred an additional nine documents because they "contain information that is of interest
     to other agencies or DOJ components."  (See id.)  OPR withheld the remaining information
28   pursuant to various FOIA exemptions.  (See id.)

3

1 records, the records shall be made promptly available to such person making such

2 request." See 5 U.S.C. § 552(a)(6)(C)(i).

3      Where "unusual circumstances" exist,[3] the 20-day time limit "may be extended by

4 written notice to the person making such request setting forth the unusual circumstances

5 for such extension and the date on which a determination is expected to be dispatched,"

6 but "[n]o such notice shall specify a date that would result in an extension for more than ten

7 working days." See 5 U.S.C. § 552(a)(6)(B)(i). Where such written notice has been

8 provided, "the agency shall notify the person making the request if the request cannot be

9 processed within the time limit specified and shall provide the person an opportunity to limit

10 the scope of the request so that it may be processed within that time limit or an opportunity

11 to arrange with the agency an alternative time frame for processing the request or a

12 modified request." See 5 U.S.C. § 552(a)(6)(B)(ii).

13      "Any person making a request to any agency for records . . . shall be deemed to

14 have exhausted his administrative remedies with respect to such request if the agency fails

15 to comply with the applicable time limit provisions." See 5 U.S.C. § 552(a)(6)(C)(i). "If the

16 Government can show exceptional circumstances exist and that the agency is exercising

17 due diligence in responding to the request, the court may retain jurisdiction and allow the

18 agency additional time to complete its review of the records." See id. "[T]he term

19 'exceptional circumstances' does not include a delay that results from a predictable agency

20 workload of requests . . . , unless the agency demonstrates reasonable progress in

21 reducing its backlog of pending requests." See 5 U.S.C. § 552(a)(6)(C)(ii). "Refusal by a

22 person to reasonably modify the scope of a request or to arrange an alternative time frame

23

24     [3] FOIA provides that "'unusual circumstances' means, but only to the extent
reasonably necessary to the proper processing of the particular requests – (I) the need to
25 search for and collect the requested records from field facilities or other establishments that
are separate from the office processing the request;(II) the need to search for, collect, and
26 appropriately examine a voluminous amount of separate and distinct records which are
demanded in a single request; or (III) the need for consultation, which shall be conducted
27 with all practicable speed, with another agency having a substantial interest in the
determination of the request or among two or more components of the agency having
28 substantial subject-matter interest therein." See 5 U.S.C. § 552(a)(6)(B)(iii).

1   for processing a request (or a modified request) . . . after being given an opportunity to do

2   so by the agency to whom the person made the request shall be considered as a factor in

3   determining whether exceptional circumstances exist." See 5 U.S.C. § 552(a)(6)(C)(iii).

4         Although FOIA provides for expedited processing of certain requests, see 5 U.S.C. §

5   552(a)(6)(C)(iii), the statute does not set forth a specific deadline by which expedited

6   processing of a FOIA request must be concluded. Rather, the statute provides: "An agency

7   shall process as soon as practicable any request for records to which the agency has

8   granted expedited processing[.]" See 5 U.S.C. § 552(a)(6)(E)(iii). Nonetheless, "an agency

9   that violates the twenty-day deadline applicable to standard FOIA requests presumptively

10  also fails to process an expedited request 'as soon as practicable.'" See Electronic Privacy

11  Information Center v. Department of Justice, 416 F. Supp. 2d 30, 39 (D.D.C. 2006). "The

12  presumption of agency delay raised by failing to respond to an expedited request within

13  twenty days" is, however, "rebuttable if the agency presents credible evidence that

14  disclosure within such time period is truly not practicable." See id. at 39; see also 5 U.S.C.

15  § 552(a)(6)(C)(i) (authorizing courts to grant agency additional time to complete review of

16  records responsive to FOIA request "[i]f the Government can show exceptional

17  circumstances exist and that the agency is exercising due diligence in responding to the

18  request"). "[V]ague assertions, unsupported by credible evidence, are insufficient to

19  demonstrate that further delay is . . . necessitated." See Electronic Privacy Information

20  Center v. Department of Justice, 416 F. Supp. 2d at 39.

21        "Agency action to deny or affirm denial of a request for expedited processing . . . ,

22  and failure by an agency to respond in a timely manner to such a request [is] subject to

23  judicial review . . . based on the record before the agency at the time of the determination."

24  See 5 U.S.C. § 552(a)(6)(E)(iii). Additionally, "the district court . . . has jurisdiction to enjoin

25  the agency from withholding agency records and to order the production of any agency

26  records improperly withheld from the complainant." See 5 U.S.C. § 552(a)(4)(B). In such a

27  case the district court "determine[s] the matter de novo, . . . and the burden is on the

28  agency to sustain its action." See id.

5

## DISCUSSION

Gerstein moves to compel the DOD, DOJ, and FBI to release "all non-exempt responsive records and portions of records within 30 days of the Court's ruling." See Motion at 5:4-6.) Gerstein notes that although the DOD, DOJ, and FBI granted expedited processing of his FOIA requests, those requests have been pending for more than eight months and he has received no substantive response to his requests. Gerstein argues that because FOIA requires non-expedited requests to be processed within 20 days, defendants are in violation of FOIA by taking more than eight months to respond to FOIA requests that have been granted expedited processing.

As discussed above, defendants have the burden of demonstrating both the existence of exceptional circumstances, and that they are exercising due diligence in responding to Gerstein's FOIA requests, before the Court may grant defendants an extension of FOIA's time limits. See 5 U.S.C. § 552(a)(6)(C)(i) ("If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."). Here, defendants have submitted no evidence as to the reasons for their delay in processing Gerstein's requests, and no evidence that they are exercising due diligence. Accordingly, defendants have not demonstrated a need for additional time to complete their review. See, e.g., Electronic Privacy Information Center v. Department of Justice, 416 F. Supp. 2d at 39-40 (granting preliminary injunction by which DOJ required to complete processing of expedited FOIA request within 20 days because defendant submitted no evidence that timely processing was impracticable); see also Fiduccia v. United States Department of Justice, 185 F.3d 1035 (9th Cir. 1999) (rejecting defendant's request for eight-year extension of time to respond to non-expedited FOIA request where defendant's "own affidavits show[ed] that the circumstances were unexceptional").

Defendants do not contend otherwise. Rather, defendants argue that Gerstein cannot meet the requirements for a preliminary injunction. Assuming Gerstein's "Motion to

6

1  Compel" is, in effect, a motion for a preliminary injunction, he has satisfied the

2  requirements thereof.  In determining whether to grant a motion for a preliminary injunction,

3  the Court weighs "four equitable factors: the movant's likelihood of success on the merits;

4  the possibility of irreparable injury to the moving party; the extent to which the balance of

5  hardships favors each party; and whether the public interest will be advanced by granting

6  the preliminary relief."  See Overstreet v. United Brotherhood of Carpenters and Joiners of

7  America, Local Union No. 1506, 409 F.3d 1199, 1207 (9th Cir. 2005).  To obtain a

8  preliminary injunction, "a moving party must show either a combination of probable success

9  on the merits and the possibility of irreparable harm or serious questions going to the

10  merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of

11  success on the merits."  See id. (internal quotation and citations omitted).  As set forth

12  below, Gerstein has made the requisite showing.

13       First, Gerstein has demonstrated a likelihood of success on the merits of his claim

14  that defendants are violating FOIA by failing to timely respond to his FOIA requests,

15  because defendants have submitted no evidence as to the reasons for such delay.  See

16  Electronic Privacy Information Center v. Department of Justice, 416 F. Supp. 2d at 39 n.8

17  (rejecting argument that plaintiff, on motion for preliminary injunction, bears burden of

18  demonstrating agency is not processing request as soon as practicable).  Indeed, in the

19  absence of relevant evidence as to the reasons for their delay in processing Gerstein's

20  requests, defendants have no likelihood of success on the merits.  See id. at 39-40 (finding

21  likelihood of success on merits of claim for untimely processing of expedited FOIA request

22  where defendants submitted no evidence of reasons for delay).

23       Next, Gerstein has demonstrated a likelihood of irreparable injury if an injunction is

24  not granted, because, as Gerstein argues, (see Motion at 4:14-18), "[t]he ongoing debate

25  about how to respond to classified leaks and how aggressively to investigate them cannot

26  be restarted or wound back."  See Electronic Privacy Information Center v. Department of

27  Justice, 416 F. Supp. 2d at 41 (finding adequate showing of irreparable injury to support

28  preliminary injunction where plaintiff would be precluded, in absence of injunction, "from

7

1  obtaining in a timely fashion information vital to the current and ongoing debate surrounding

2  the legality of the Administration's warrantless surveillance program").

3      Third, with respect to the balance of hardships, defendants fail to submit any

4  evidence that they would incur any hardship by being ordered to respond to Gerstein's

5  FOIA requests in accordance with the proposed timeline. Accordingly, the balance of

6  hardships tips entirely in Gerstein's favor.

7      Finally, the public interest is advanced by an injunction because, as Gerstein notes,

8  a core purpose of FOIA is to allow the public to be informed about "what their government

9  is up to," and "[o]fficial information that sheds light on an agency's performance of its

10  statutory duties falls squarely within that statutory purpose." See United States Department

11  of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 772-73 (1989);

12  see also Electronic Privacy Information Center v. Department of Justice, 416 F. Supp. 2d at

13  42 (internal quotation and citation omitted) (finding public interest prong met because

14  expedited release of requested documents "furthers FOIA's core purpose" and because of

15  an "overriding public interest . . . in the general importance of an agency's faithful

16  adherence to its statutory mandate"). Moreover, by granting Gerstein's request for

17  expedited processing, defendants have effectively conceded that Gerstein has

18  demonstrated an "urgency to inform the public" about the government activity that is the

19  subject of his requests. See 5 U.S.C. § 552(a)(6)(E)(v)(II) (defining "compelling need"

20  justifying request for expedited processing of FOIA request to include "urgency to inform

21  the public concerning actual or alleged Federal Government activity").

22      Accordingly, the Court will GRANT Gerstein's motion to compel the DOD, DOJ, and

23  FBI to process Gerstein's FOIA requests and to produce all non-exempt responsive records

24  and non-exempt portions of records within 30 days.[4]

25      Lastly, Gerstein seeks an order requiring the DOD, DOJ, and FBI, as well as the

26

27  [4] The Court, by this order, does not preclude the DOD, DOJ, and/or FBI from
   withholding responsive documents pursuant to relevant FOIA exemptions. The question of
28  whether any responsive documents may properly be withheld from production is not
   currently before the Court.

8

1   NRO, to provide, within 60 days of the date of this order, a <u>Vaughn</u> index of withheld

2   records. A <u>Vaughn</u> index, <u>see</u> <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), "must

3   identify each document withheld, and provide a particularized explanation of how disclosure

4   would violate an exemption" under FOIA. <u>See</u> <u>Minier v. Central Intelligence Agency</u>, 88

5   F.3d 796, 803 (9th Cir. 1996). The Ninth Circuit has held, however, that production of a

6   <u>Vaughn</u> index is not necessary in all FOIA cases, <u>see id.</u> at 804, and in particular, is

7   unnecessary where an "affidavit submitted by an agency is sufficient to establish that the

8   requested documents should not be disclosed," or where "a FOIA requester has sufficient

9   information to present a full legal argument." <u>See id.</u> In the instant case, as the DOD,

10  DOJ, and FBI have not yet responded to Gerstein's FOIA requests, and Gerstein has not

11  identified any deficiency in the NRO's response, Gerstein has not demonstrated the

12  necessity of a <u>Vaughn</u> index. Accordingly, the Court will DENY Gerstein's request for a

13  <u>Vaughn</u> index, without prejudice to Gerstein's seeking such relief at a later date.

**CONCLUSION**

15          For the reasons set forth above, Gerstein's motion to compel the DOD, DOJ, and

16  FBI to respond to Gerstein's FOIA requests within 30 days is hereby GRANTED. The

17  DOD, DOJ, and FBI are hereby ORDERED to process Gerstein's FOIA requests and to

18  produce all non-exempt records and non-exempt portions of records that are responsive to

19  Gerstein's FOIA requests within 30 days of the date of this order. Gerstein's request for a

20  <u>Vaughn</u> index is hereby DENIED without prejudice.

21          This order terminates Docket No. 8.

22          **IT IS SO ORDERED.**

23  Dated: November 29, 2006                    MAXINE M. CHESNEY
                                                United States District Judge

24

25

26

27

28

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ELECTRONIC PRIVACY INFORMATION    :
CENTER,                           :
                                  :
            Plaintiff,            :
                                  :
      v.                          :    Civil Action No. 03-2078 (JR)
                                  :
U.S. DEPARTMENT OF JUSTICE,       :
                                  :
            Defendant.            :

**ORDER**

Plaintiff moves for a preliminary injunction "enjoining defendant Department of Justice from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request." An injunction restraining the denial of a request -- once the double negatives are sorted out -- is a writ of mandamus. A <u>preliminary</u> mandatory injunction would effectively grant all the relief plaintiff seeks. The showing offered by plaintiff in support of its motion does not address the quintessential element of mandamus, that the official act demanded by the movant be nondiscretionary. The motion for preliminary injunction [3] is accordingly **denied**, without prejudice to plaintiff's right to seek an expedited form of the de novo judicial review contemplated by FOIA. As it does not appear from the docket that the government has yet been served

with plaintiff's motion, counsel are directed to serve this order upon government counsel by conventional means.   It is **SO ORDERED**.


                                        JAMES ROBERTSON
                              United States District Judge

# EXHIBIT 2

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Al-Fayed v. C.I.A.
D.D.C.,2000.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Mohamed AL-FAYED, et al., Plaintiffs,
v.
CENTRAL INTELLIGENCE AGENCY, et al.,
Defendants.
No. Civ.A. 00-2092(CKK).

Sept. 20, 2000.

Mark Steven Zaid, Krieger & Zaid, PLLC,
Washington, DC, for Plaintiffs.
Alan Stuart Modlinger, Anne L. Weismann, Diane
Kelleher, U.S. Department of Justice, Washington,
DC, for Defendants.

MEMORANDUM OPINION
KOLLAR-KOTELLY, J.
*1 This case comes before the Court on Plaintiffs'
Motion for a Temporary Restraining Order and
Preliminary Injunction. Plaintiffs, Mohamed Al
Fayed and Punch Limited, a British magazine of
political satire that Mr. Al Fayed owns and
publishes, seek expedited processing of their
requests for agency records which they submitted in
July and August, 2000, pursuant to the Freedom of
Information Act ("FOIA"), 5 U.S.C. § 552. These
requested records pertain to the tragic deaths of
Diana Francis Spencer, Princess of Wales, Emad
"Dodi" Al Fayed, and Henri Paul, all of whom were
killed in an automobile crash in Paris on August 31,
1997, and subsequent related events. When
Plaintiffs filed their Complaint and motion in this
Court, certain of the agencies had issued denials of
their application for expedited processing, and
others had not responded at all to these requests.
Since Plaintiffs initiated this lawsuit, though, all of
the agencies have responded with denials.
Therefore, Plaintiffs now ask this Court to grant
emergency relief by compelling some or all of the
agencies to engage in expedited processing and
release of the desired records. For the reasons
elaborated below, the Court finds that such
emergency relief is not warranted.

I BACKGROUND

The facts surrounding the deaths of Princess Diana,

Dodi, and their driver Henri Paul have received
extensive coverage in the international and national
media, and require little elaboration here. The three
died while driving through a tunnel under the Place
d'Alma in Paris, France, leaving bodyguard Trevor
Rees-Jones as the sole survivor of the crash. *See*
Compl. ¶ 14. Plaintiffs' Complaint describes the
ensuing French investigation, which concluded that
Mr. Paul's intoxication and excessive speed on a
dangerous stretch of road were responsible for the
crash, *see id.* ¶ 15, the testimony of a former British
foreign intelligence officer and member of MI6 in
the course of the investigation, *see id.* ¶ 18, and a
subsequent scheme to defraud Mr. Al Fayed out of
millions of dollars in exchange for bogus CIA
document. *See id.* 24-51.

In particular, Plaintiffs detail the alleged
involvement of Oswald LeWinter, who claims
connections to United States intelligence operations,
in the scheme to sell Mr. Al Fayed fabricated CIA
documents suggesting that the crash represented a
successful assassination of the Princess and her
companion by British intelligence (MI6). *See id.* ¶¶
21-23. Legal representatives of Mr. Al Fayed
alerted the FBI and the CIA to the proposed
transaction, whereby putative former CIA agents
and others would exchange various documents
pointing to MI6 involvement in the crash, and
American knowledge of this involvement, for a
large sum of money. Subsequently, Mr. Al Fayed's
representatives proceeded to arrange the transaction
with the knowledge of American law enforcement
officials, ultimately designating Vienna, Austria as
the site for the exchange, which was to take place on
April 22, 1998. *See id.* ¶ 39. Austrian authorities
apprehended LeWinter in the course of the
transaction, and he has since remained incarcerated
there. *See id.* ¶ 45. At the time of his arrest, Mr.
LeWinter was in possession of a variety of forged
materials purporting to be CIA documents, and he
allegedly implicated one or more actual CIA
employees in the fraud scheme. *See id.* ¶¶ 46, 48.

*2 Since these events, Mr. Al-Fayed has sought the
prosecution of other participants in the fraud
scheme, and has attempted unsuccessfully to procure
additional information by subpoena in actions filed
in the United States Court for the District of
Columbia and the United States District Court for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the District of Maryland. *See id.* ¶¶ 52-58. Mr. Al Fayed engaged former Senator George W. Mitchell to pursue any information in the possession of the CIA or the Department of Defense concerning the crash and related events. *See id.* 59-67. After failing to secure information through all of these venues, Mr. Al Fayed and Punch Limited submitted FOIA requests to twenty one (21) separate branches of ten federal agencies, seeking information pertaining to the crash. Plaintiffs divided their requests into twenty categories of names and events relating to these events. *See* Zaid Aff. ¶ 4. Shortly after submitting these FOIA requests, they filed a Complaint in this Court, asking for judicial review of the various agencies' failure to respond to, or denial of, their application for expedited processing of their FOIA requests. Plaintiffs bring their action under FOIA and under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*

## II. DISCUSSION

For Plaintiffs to obtain the injunctive relief they seek,FN1 they must establish (1) that they possess a substantial likelihood of success on the merit; (2) that they would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. *See Serono Lab v. Shalala,* 158 F.3d 1313, 1317-18 (D.C.Cir.1998); *CityFed Fin. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995); *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). No single factor is dispositive; rather the Court "must balance the strengths of the requesting party's arguments in each of the four required areas." *CityFed,* 58 F.3d at 747. This calculus reflects a sliding-scale approach in which an injunction may issue if the arguments for one factor are particularly strong "even if the arguments in other areas are rather weak." *Id.* Thus, this Circuit has held that "[a]n injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.*

FN1. The same factors apply to a temporary restraining order ("T.R.O.") as to a preliminary injunction. *See Vencor Nursing Ctr. v. Shalala,* 63

F.Supp.2d 1, 7 n. 5.

### A. *Ripeness*

Defendants argue first that Plaintiffs' claim challenging the denial of expedited processing is not yet ripe for judicial review because Plaintiffs have not exhausted their administrative remedies. *See* Defs.' Opp'n to Mot. for T.R.O. at 5. Specifically, the statute provides for "expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing." *Id.* § 552(a)(6)(E)(ii)(II). In Defendants' view, this provision mandates administrative appeals for all denials of expedited processing before an applicant may seek judicial review. Nothing in the statute or its legislative history, however, points to such a reading. Instead, the statute authorizes judicial review for challenges to "Agency action *to deny or affirm denial of* a request for expedited processing pursuant to this subparagraph...." *Id.* § 552(a)(6)(E)(iii) (emphasis added). This language of alternatives clearly indicates that judicial review is appropriate at either of two moments: when the agency has denied a request for expedited processing, or when the agency has, upon administrative appeal, affirmed the denial of such a request.

\*3 Moreover, as Plaintiffs aptly argue, the statute further specifies that "judicial review shall be based on the record before the agency at the time of the determination." *Id; see also* Pl.'s Reply to Defs.' Opp'n at 5-6. "[T]he determination," in this provision, signifies the agency's decision to deny expedited processing, whether that decision is based on the applicant's initial request, or on the applicant's supplemental materials submitted in anticipation of an administrative appeal. Accordingly, the Court finds that judicial review of an agency's denial of a request for expedited processing is appropriate, under the statute, either at the point when the agency denies the request, or after the applicant has failed in its administrative appeal.

### B. *Substantial likelihood of success on the merits*

The Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires agencies to "make available to the public information." *Id.* FOIA provides public access to government documents in order "to ensure

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
(Cite as: Not Reported in F.Supp.2d)

an informed citizenry, vital to the functioning of a democratic society...." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). Although FOIA does not apply to information that falls within one or more of nine exemptions, *see* § 552(b)(1-9), "these limited exemptions do not obscure the basic policy that disclosure, not secrecy is the dominant objective of the Act." *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Not only does FOIA promote the dissemination of information, but the Electronic Freedom of Information Act Amendments of 1996, Pub.L. 104-231, 110 Stat. 3046, added to FOIA an expedited processing provision which prioritizes expediency where warranted. *See* 5 U.S.C. § 552 ((a)(6)(E). As amended, the statute provides, in relevant part, that:
(E)(i) Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records-
(I) in cases in which the person requesting the records demonstrates a compelling need; and
(II) in other cases determined by the agency.
....
(v) For purposes of this subparagraph, the term 'compelling need' means-
(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or
(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.

5 U.S.C. § 552(a)(6)(E). Agencies may therefore find compelling need based on the statutorily prescribed conditions, or on conditions enumerated under the agencies' own regulations.

Pursuant to the statutory mandate, the Department of Justice, the Central Intelligence Agency, the Department of Treasury, and the Department of State have promulgated regulations governing when expedited processing of requests for agency documents is warranted. Within the statutory framework and under these regulations, each of the agencies to which Plaintiffs submitted their request for expedited processing determined that Plaintiffs had not demonstrated a "compelling need" or other

basis sufficient to justify such expedited treatment. *See, e.g.,* Exs. to Pls.' Mot. for T.R.O., Nat'l Sec. Agency, Central Sec. Serv. Aug. 11, 2000 letter to Mr. Zaid (denying expedited processing on the grounds that "[t]here is no compelling need to respond to this request in an expeditious manner since there is no threat to life or physical safety and the value of the information would not be lost if not disseminated quickly."); Dep't of Defense Aug. 4, 2000 letter to Mr. Zaid (denying expedited processing under DoD Regulations 5400-7.R because requested information does not involve "breaking news"); Dep't of Justice, Office of Information and Privacy, Aug. 7, 2000 letter to Mr. Zaid (denying expedited processing under DOJ Regulation 28 C.F.R. § 16.5(d)(1)(ii) because there is neither a "particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally" nor " 'widespread media interest' regarding the issues raised" by the requests).

*\*4* Plaintiffs, however, maintain that they have met these criteria. Not only are they "primarily engaged in disseminating information," a status that is not significantly disputed by Defendants,FN2 but Plaintiffs emphasize that they seek information potentially pointing to Federal Government activity (*e.g.,* knowledge of British intelligence involvement in the crash and of the attempted fraud), information relating to an event that has captured enormous media attention, and information that could possibly impact on the French investigation, which shall reach a final conclusion imminently. *See* Pls.' Mot. for T.R.O. at 13-15; Zaid Aff. ¶ 5 (reproducing the portion of Plaintiffs' submission to the agencies which addresses the reasons for expedited processing).

FN2. Defendants do, however, raise "questions" about whether Mr. Al Fayed himself can be said to fall into this category. *See* Defs.' Opp'n at 8 n. 6. The Court sees no need to address this issue at this early stage in the litigation, since Punch Limited clearly and undisputedly is "primarily engaged in disseminating information ."

Thus, Plaintiffs challenge the agencies' determinations that the information related to the crash and the subsequent fraud scheme constitutes neither a breaking news story under DoD Regulation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5400-7.R, nor an issue involving "widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," under DOJ regulations, 28 C.F.R. § 16.5(d)(1)(iv). *See* Pls.' Reply at 8-9; Defs.' Opp'n at 8-9. Plaintiffs quarrel not with the agency regulations under which the agencies rendered these determinations, but with the agencies' application of their regulations to Plaintiffs' requests. In particular, Count Eleven of Plaintiffs' Complaint maintains that Plaintiffs have "met the requisite requirements as set forth in the respective agency regulations to be entitled to expedited processing of their FOIA requests ...," and that they therefore have "a legal right under the respective regulations of the agency defendants to be granted expedited processing, and there is no legal basis for the denial by [the ten agencies] of said right." Compl. ¶ 185.

The Administrative Procedure Act empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although the judiciary bears the responsibility under the APA to set aside agency decisions that meet this description, *see MD Pharmaceutical, Inc. v. Drug Enforcement Admin.,* 133 F.3d 8, 16 (D.C.Cir.1998), "[t]he scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In particular, an agency's application of its own regulations, such as those at issue here, merits considerable deference. *See DSE, Inc. v. United States,* 169 F.3d 21, 27 (D.C.Cir.1999); *Consarc Corp. v. United States Treasury Dep't,* 71 F.3d 909, 914 (D.C.Cir.1995).

On the limited record before the Court on this motion for emergency relief, the Court cannot say that the agencies' denials of Plaintiffs' applications for expedited processing of their requests violate agency regulations or the statute itself. The agencies involved measured Plaintiffs' applications against their regulatory criteria, and found them wanting. In their denial letters, each agency offers legitimate reasons for why it did not deem Plaintiffs' request to meet the regulatory and statutory guidelines for expedited processing. Thus affording the agencies

deference to apply their own regulations interpreting § 552(a)(6)(E), the Court concludes that Plaintiffs have not shown a substantial likelihood of success on the merits of their claims regarding the denial of expedited processing.

### C. *Other factors weighing against preliminary relief*

*\*5* The Court's conclusion that Plaintiffs are "not likely to succeed on the merits effectively decides the preliminary injunction issue." *Serono Lab., Inc. v. Shalala,* 158 F.3d 1313, 1326 (D.C.Cir.1998). Although the calculus for emergency relief reflects a sliding-scale approach in which a strong argument in favor of one factor may excuse a relatively weaker showing on another factor, *see CityFed. Fin. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C.Cir.1995), absent a "substantial indication of probable success [on the merits], there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *see also Demjanjuk v. Meese,* 784 F.2d 1114, 1117-18 (D.C.Cir.1986) (per Bork, J.) (denying equitable relief where, despite threat of irreparable harm, petitioner failed to demonstrate likelihood of success on the merits). Without any probability of prevailing on the merits, any purported injury Plaintiffs may allege would not justify such injunctive relief.

In any event, not only have Plaintiffs failed to demonstrate a substantial likelihood of success on the merits, but they have similarly failed to make a showing of irreparable injury, should the Court decline to grant the T.R.O. and preliminary injunction. In his affidavit attached to Plaintiffs' Motion, Plaintiffs' counsel explains that "any further delay in the processing of Al Fayed and Punch's FOIA requests will irreparably harm their ability to engage in informed discussion and debate on the issue of government misconduct or intentional neglect with respect to events and individuals associated with the August 31, 1997 tragedy...." Zaid Aff. ¶ 11. Though impassioned, this statement remains conclusory, never explaining why this information will not retain its value if procured through the normal FOIA channels.

In addition, to compel the agencies to provide expedited processing is to place Plaintiffs' requests

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    **Page   5**
(Cite as: Not Reported in F.Supp.2d)

in front of a whole queue of others. Such a result would inflict injury on others who, according to the agencies' determinations, have presented more meritorious applications for expedited processing. At best, then, the balance of the harms is in equipoise. For the same reasons, it remains unclear whether or not emergency relief would run contrary to the public interest. Although the expedited processing provision prioritizes expediency, it does so only in very limited circumstances, recognizing that agencies cannot possibly give expedited treatment to each and every FOIA request. Accordingly, the public interest is best furthered by channeling the agencies' resources such that only certain urgent requests receive immediate treatment, while the rest are processed in the usual manner. Of course, disclosure of non-exempt material under the FOIA almost always serves the public interest, but in the world of limited resources contemplated by the EFOIA, such material may not in every case receive immediate processing.

**\*6** Nonetheless, the Court recognizes that many of the agencies to which Plaintiffs submitted their requests did not even meet their statutory and regulatory obligation to respond to Plaintiffs within ten days by either granting or denying their application for expedited processing.FN3 *See* 5 U.S.C. § 552(a)(6)(E)(ii)(I) ("regulations under this subparagraph must ensure ... that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request ..."). When enacting the EFOIA, Congress identified as one of the purposes of the Act to "ensure agency compliance with statutory time limits...." 142 Cong. Rec. S10713-03, S10714. Neither the FOIA, nor its amendments in the EFOIA, has managed to accomplish this goal. As Senator Patrick Leahy, one of the sponsors of the amendments, remarked, "[t]he current time limits in the FOIA are a joke. Few agencies actually respond to FOIA requests within the 10-day limit required in the law. Such routine failure to comply with the statutory time limits is bad for morale in the agencies and breeds contempt by citizens who expect government officials to abide by, not routinely break, the law." 142 Cong. Rec. at S10715. The Court notes that the agencies' delay in responding to Plaintiffs has done little to boost this morale. Still, upon consideration of the parties' arguments, the statutory and regulatory context, and

the applicable case law, the Court determines that it cannot grant the relief Plaintiffs seek.

FN3. Those agencies which still had not responded to these requests at the time Plaintiffs filed their Complaint eventually produced responses, seemingly under pressure from this litigation.

### III. CONCLUSION

For the foregoing reasons, the Court shall deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. An order accompanies this memorandum opinion.

D.D.C.,2000.
Al-Fayed v. C.I.A.
Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,                          :
                                               :
          Plaintiff,                           :
                                               :
     v.                                        :   Civil Action No. 00-1396 (JR)
                                               :
UNITED STATES DEPARTMENT OF                    :
JUSTICE, et al.,                               :           **FILED**
                                               :
          Defendant.                           :        JUN 2 7 2000

                              ORDER                NANCY MAYER WHITTINGTON, CLERK
                                                        U.S. DISTRICT COURT

     Upon consideration of plaintiff's "emergency motion for

expedited treatment to, in part, compel defendant to respond to

plaintiff's Freedom of Information Act request,"[1] it is this

_27th_ day of June, 2000,

     **ORDERED** that the motion is **denied**.  The Freedom of

Information Act was not designed and does not operate as a

vehicle to provide immediate and continuing access to government

records through litigation.

     "Congress wished to reserve the role of the courts for

two occasions, (1) when the agency was not showing due diligence

in processing plaintiff's individual request or was lax overall

in meeting its obligations under the Act with all available

resources, and (2) when plaintiff can show a genuine need and

reason for urgency in gaining access to Government records ahead

of prior applicants for information." Open America, Inc. v.

_____

     [1]    This case was reassigned to the undersigned judge on
June 26, 2000, as related to No. 2000cv0723. See LCvR 40.5(c).

(N)                                                            X

Watergate Special Prosecution Force, 547 F.2d 606, 615-16 (D.C. Cir. 1976). The cases finding "emergency" conditions in a FOIA context have been few, and the claims to "emergency" status in those cases were different from and more focused than the claim presented by this plaintiff.[2] See Exner v. FBI, 443 F. Supp. 1349, 1353 (S.D. Cal. 1978) (allegation of exposure to harm from organized crime figures); Cleaver v. Kelley, 427 F. Supp. 80, 81 (D.D.C. 1976) (plaintiff facing criminal charges carrying possible death penalty in state court).

The Department of Justice is required to act upon a request for expedited access within ten calendar days of receipt by the FOIA office if a "person primarily engaged in disseminating information" can demonstrate that there is an "urgency to inform the public concerning actual or alleged Federal Government activity," 28 C.F.R. § 16.5(d). This plaintiff did not make such a request.

_____
JAMES ROBERTSON
United States District Judge

---

[2]     The motion reveals some confusion about the identity, or the role, of the actual plaintiff. The stated "emergency" is that a motion is to be filed tomorrow in the Eleventh Circuit (by Judicial Watch? by Larry Klayman, Esq?) on behalf of Lazaro Gonzales.

- 2 -

Copies to:

Larry Klayman
501 School Street, S.W.
Suite 725
Washington, D.C. 20024

Counsel for Plaintiff

Ben Cooper
U.S. Department of Justice
Civil Division
901 E Street, N.W., Room 905
Washington, D.C. 20044

Counsel for Defendant

# EXHIBIT 4

LEXSEE 1988 U.S. DIST. LEXIS 18606

**ASSASSINATION ARCHIVES AND RESEARCH CENTER, INC., Plaintiff v.
CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civil Action No. 88-2600**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*1988 U.S. Dist. LEXIS 18606*

**September 29, 1988, Decided
September 29, 1988, Filed**

**DISPOSITION:** [*1] ORDERED that plaintiff's petition for preliminary injunction and for expedited treatment is denied.

**COUNSEL:** NATHAN DODELL, Assistant United States Attorney, 555 4th Street, N.W. Fourth Floor, Washington, D.C. 20001.

JAMES H. LESAR, 918 F. Street N.W., Suite 509, Washington, D.C. 20004.

DANIEL S. ALCORN, Fensterwald, Alcorn & Vangellow, 1000 Wilson Boulevard, Suite 900, Arlington, VA 22209.

**JUDGES:** REVERCOMB

**OPINION BY:** GEORGE H. REVERCOMB

**OPINION:**

ORDER

Plaintiff seeks a preliminary injunction to expedite the processing of a FOIA request. In order to grant a preliminary injunction, plaintiff must 1) make a strong showing that it is likely to prevail on the merits; 2) show that it will be irreparably harmed in the absence of the relief sought; 3) show that issuance of the stay would not substantially harm others; and 4) show that the public interest would not be harmed by the injunctive relief. *Virginia Petroleum Jobbers Association v. Federal Power Comm'n, 104 U.S. App. D.C. 106, 259 F.2d 921, 925 (D.C. cir. 1958); American Federation of Government Employees v. O.P.M., 618 F. Supp. 1254,* 1258 (1985). The Court concludes that plaintiff has not met this burden.

As to likelihood of [*2] success on the merits, the Court entertains strong misgivings about whether plaintiff has exhausted its administrative remedies. See *Spannaus v. Dept. of Justice, 262 U.S. App. D.C. 325, 824 F.2d 52, 59 (D.C. Cir. 1987).* Furthermore, the Court is unpersuaded that plaintiff has shown that circumstances exist which are so exceptional as to justify expediting its FOIA application.

As to irreparable harm, plaintiff has not shown that it would suffer injury. "The movant must show that the alleged harm will directly result from the actions which the movant seeks to enjoin." *Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n, 244 U.S. App. D.C. 349, 758 F.2d 669, 673-74 (D.C. Cir. 1985).* The injury which plaintiff claims will occur is speculative and indirect.

Clearly, granting plaintiff expedited treatment would injure others who have filed FOIA requests ahead of plaintiff.

As to the public interest, the Court finds that the public interest in an orderly processing of FOIA requests is not outweighed by the "urgency" of the request plaintiff has made. Therefore, it is by the Court, this 29th day of September, 1988,

ORDERED that plaintiff's petition for a preliminary injunction [*3] and for expedited treatment is denied.

GEORGE H. REVERCOMB

1988 U.S. Dist. LEXIS 18606, *3

United States District Judge

# EXHIBIT 5

LEXSEE 2005 U.S. DIST. LEXIS 40318

**ELECTRONIC PRIVACY INFORMATION CENTER, Plaintiff, v. DEPARTMENT OF JUSTICE, Defendant.**

**Civil Action No. 05-845 (GK)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

*2005 U.S. Dist. LEXIS 40318*

**November 16, 2005, Decided**
**November 16, 2005, Filed**

**COUNSEL:** [*1] For ELECTRONIC PRIVACY INFORMATION CENTER, Plaintiff: Marcia Clare Hofmann, David L. Sobel, ELECTRONIC PRIVACY INFORMATION CENTER, Washington, DC.

For DEPARTMENT OF JUSTICE, Defendant: Marcia Kay Sowles, U.S. DEPARTMENT OF JUSTICE, Washington, DC; Benton Gregory Peterson, ASSISTANT UNITED STATES ATTORNEY, Civil Division, Washington, DC.

**JUDGES:** Gladys Kessler, United States District Judge.

**OPINION BY:** Gladys Kessler

**OPINION:**

### MEMORANDUM ORDER

Plaintiff is a public interest research organization which, among other things, reviews federal law enforcement activities and policies to determine their potential impact on privacy interests and civil liberties. On March 29, 2005, Plaintiff filed a request under the Freedom of Information Act ("FOIA"), *5 U.S.C. § 552*, for the release of various information related to the "USA PATRIOT ACT of 2001," Pub. L. No. 107-56, 115 Stat. 272 (2001). Compl. P 8. Plaintiff sought expedited processing of its FOIA request. Id. P 9.

By letter dated April 12, 2005, the Federal Bureau of Investigation ("FBI"), a component of Defendant, granted Plaintiff's request for expedited processing. Pl's Mot. to Compel, Ex. 3. Thereafter, Plaintiff [*2] filed this lawsuit claiming Defendant failed to process Plaintiff's

FOIA request in a timely manner. On June 14, 2005, Plaintiff filed a Motion to Compel Expedited Processing of Plaintiff's FOIA Request ("Plaintiff's Motion").

On November 8, 2005, a Status Conference was held, during which the parties reiterated their positions with respect to the processing of Plaintiff's FOIA request. That same day, the Court granted Plaintiff's Motion, and ordered the parties to submit a Joint Praecipe with a proposed timeline for processing the remaining pages, or notify the Court that they were unable to come to an agreement. The parties were informed that if they were unable to come to an agreement, the Court would enter an order based on the record before it. On November 14, 2005, the parties informed the Court that they were unable to reach an agreement regarding the remaining pages.

The Court is unable to determine, based on the Government's representations at the Status Conference and various written submissions made during this litigation, how many pages it can actually process within a given time frame. At the Status Conference, the Government represented that the universe of potentially [*3] responsive pages had been narrowed from approximately 130,000 to 18,000. As early as June 29, 2005, the Government had already determined that 5,000 pages of the 18,000 were potentially responsive. Def.'s Opp'n to Pl.'s Mot. to Compel, Att. A P 20. Yet the Government has not stated that any of those 5,000 pages have been completely processed, n1 nor that any of those pages have been turned over to Plaintiff.

n1 The Government represents that "because

Case 1:07-cv-00656-JDB     Document 5-3     Filed 04/24/2007     Page 19 of 27

Page 2
2005 U.S. Dist. LEXIS 40318, *3

of the nature of plaintiff's request, identification of responsive records has proven much more difficult than initially anticipated." Def.'s Resp. to Pl.'s Notice of Filing at 1.

To provide another example of the inadequacy of the Government's responses to Plaintiff's Motion, it filed, in support of its Opposition to Plaintiff's Motion, the Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, FBI Headquarters. Hardy attested that the FBI should be able to process 1,000 pages per month for responsiveness. [*4] Opp'n, Att. A P 26. However, at the Status Conference, almost seven months after the FBI agreed to process Plaintiff's FOIA request on an expedited basis, the Government was still unable to give even an estimate as to how far along in the review process it was. Nor could the Government provide an estimate as to when processing would be completed.

What is clear is that Plaintiff's FOIA request, which should have been processed on an expedited basis, has been pending for nearly eight months. An incredibly small amount of pages has been released to Plaintiff. n2 While the Court recognizes the difficulty the Government has had in processing Plaintiff's request, the record shows that Defendant's efforts have been unnecessarily slow and inefficient.

n2 The Government represented at the Status Conference that only about 250 pages had been released to Plaintiff.

Upon consideration of the Motion, Opposition, and Reply, the representations made during the Status Conference, the parties' submissions in response to the [*5] Court's November 8, 2005 Order, and the entire record herein, it is hereby

**ORDERED** that Defendant shall complete the processing of 1500 pages every 15 calendar days, and provide to Plaintiff all responsive non-exempt pages contained therein, until processing is complete; n3 it is further

n3 The Court recognizes that there are several layers of review, each of which take time. However, the Government has represented that it is processing Plaintiff's FOIA request on a rolling basis, i.e., after a group of documents are reviewed for responsiveness, they are immediately moved to the next stage of review. Therefore, at this point, there should be a number of documents at various stages of the review process, and Defendant should be able to comply with this Order without the need for an initial grace period.

**ORDERED** that Defendant shall notify Plaintiff of the total number of pages responsive to Plaintiff's FOIA request within 60 calendar days; and it is further

**ORDERED** that Defendant is not [*6] required to categorize responsive documents according to Plaintiff's different FOIA requests.

Gladys Kessler

United States District Judge

November 16, 2005

# EXHIBIT 6

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC PRIVACY INFORMATION CENTER,**<br><br>                    **Plaintiff,**<br><br>           **v.**<br><br>**DEPARTMENT OF JUSTICE,**<br><br>                    **Defendant.** | **Civil Action 06-00096 (HHK)** |

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION, et al.,**<br><br>                    **Plaintiffs,**<br><br>           **v.**<br><br>**DEPARTMENT OF JUSTICE,**<br><br>                    **Defendant.** | **Civil Action 06-00214 (HHK)** |

**ORDER**

It is this 24th day of March, 2006, hereby

**ORDERED** that the expedited motion, filed by the Department of Justice ("DOJ"),

seeking relief from the court's February 16, 2006 order [#13] is granted in part and denied in

part; and it is further

**ORDERED** that DOJ's Office of Intelligence and Policy Review shall have an additional

60 days to complete the processing of the plaintiff Electronic Privacy Information Center's

("EPIC's") December 16, 2005 FOIA request, as measured from March 8, 2006—the original

deadline imposed by the court's February 16, 2006 order; and it is further

**ORDERED** that DOJ's Office of Legal Counsel shall have an additional 120 days to complete the processing of EPIC's December 16, 2005 FOIA request, as measured from March 8, 2006—the original deadline imposed by the court's February 16, 2006 order; and it is further

**ORDERED** that no *Vaughn* index of any responsive classified documents or declaration supporting the withholding of either responsive classified or unclassified documents shall be required before the point at which a dispositive motion is filed; and it is further

**ORDERED** that the clerk of the court shall schedule a status hearing sixty days from the date of this order, or as soon thereafter as the business of the court permits.

Henry H. Kennedy, Jr.
United States District Judge

2

# EXHIBIT 7

Not Reported in F.Supp.2d                                    Page   1
Not Reported in F.Supp.2d, 2002 WL 32539613 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)
**H**

Edmonds v. F.B.I.
D.D.C.,2002.
Only the Westlaw citation is currently available.
United States District Court,District of Columbia.
Sibel D. EDMONDS, Plaintiff,
v.
FEDERAL BUREAU OF INVESTIGATION,
Defendant.
No. Civ.A. 02-1294(ESH).

Dec. 3, 2002.

David K. Colapinto, Stephen Martin Kohn, Kohn, Kohn & Colapinto, P.C., Washington, DC, for Plaintiff.
Pamela D. Huff, U.S. Attorney's Office, Vesper Mei, U.S. Department of Justice Civil, Washington, DC, for Defendant.

### ORDER

HUVELLE, J.
*1 Before the Court are plaintiff's Motion for Partial Summary Judgment [11-1] and defendant's opposition and Cross Motion for Stay of Proceedings [18-1] pursuant to *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C.Cir.1976). At issue before the Court is the speed with which defendant must comply with plaintiff's Freedom of Information Act ("FOIA") request. *See* 5 U.S.C. § 552 *et seq.*

Plaintiff asserts that she is entitled to expedited processing of her FOIA request under 28 C.F.R. § 16.5(d)(1)(iv), which provides for expedited processing where a request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." Defendant disputes plaintiff's entitlement to expedited processing and moves for an *Open America* stay on the grounds that the FBI is exercising due diligence in responding to plaintiff's requests but that exceptional circumstances have prevented it from processing the requests within the statutory time limit.

### BACKGROUND

Plaintiff is a whistleblower who worked as a contract linquist for the FBI in counter-terrorism

and counter-intelligence investigations at the FBI Washington Field Office after September 11, 2001. By letter dated April 19, 2002, Ms. Edmonds has requested documents relating to herself, her allegations of wrongdoing at the FBI, and investigations of persons related to her. Plaintiff made a second FOIA request on April 29, 2002, seeking information pertaining to her security clearance and the purported investigation and/or adjudication thereof. In both requests, plaintiff asked for expedited processing. However, in response to these requests, defendant has failed to make any determination regarding whether her requests are entitled to expedited processing. *See* 28 C.F.R. § 16.5(d)(4); *see also* 5 U.S.C. § 552(a)(6)(E)(i)-(ii). Having exhausted her administrative remedies, plaintiff now moves for partial summary judgment, requesting that this Court order the FBI to expedite the processing of her requests.

In response, defendant argues that plaintiff does not qualify for expedited processing because her requests are "personal to her, and the documents that she seeks have nothing to do with any wider concerns of the American public." (Def.'s Opp. at 8.) According to defendant, her requests are being made in order to obtain information for her civil suit, *Edmonds v. Department of Justice,* Civil Action No. 02-1448(JR). Further, defendant seeks an *Open America* stay until April 1, 2003, on the grounds that although the FBI is exercising due diligence in responding to plaintiff's requests, there are exceptional circumstances, especially in light of September 11, 2001, that have prevented defendant from processing plaintiff's requests in a timely manner.

### *LEGAL ANALYSIS*

#### I. *Open America* Stay

Defendant FBI moves for an *Open America* stay until April 1, 2003.FN1 Under FOIA, a court may retain jurisdiction and give an agency additional time to respond to a FOIA request "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request...." 5 U.S.C.A. § 552(a)(6)(C)(i). Exceptional circumstances exist

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of ... [5 U.S.C. § 552(a)(6)(A) ], and when the agency can show that it 'is exercising due diligence' in processing the requests." *Open America,* 547 F.2d at 616. Such exceptional circumstances do not include "a delay that results from a predictable agency workload of requests ... unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C.A. § 552(a)(6)(C)(ii).

FN1. Plaintiff incorrectly argues that defendant has waived its right to an *Open America* stay by not raising it before now. *See* Pl.'s Opp. at 12. A request for a temporary stay does not constitute an affirmative defense, since it is unrelated to defendant's defenses to the merits of plaintiff's FOIA claims, and thus, there is no basis for plaintiff's waiver argument.

**\*2** The FBI has demonstrated that exceptional circumstances do exist, the agency is exercising due diligence in processing requests, and it is making reasonable progress in reducing its backlog. According to the declaration of Christine Kiefer, Acting Chief of the Litigation Unit, Freedom of Information Privacy Acts Section, Records Management Division at FBI Headquarters in Washington, D.C., the FBI is still confronted by over 1,300 requests each month even though it has drastically reduced its backlog. The FOIA personnel also spend time on administrative appeals, litigation, and large projects. For instance, as of September 30, 2002, the FBI was involved in 142 pending requests in various federal courts throughout the United States involving 650 FOIA requests. Finally, in response to the events of September 11, 2001, the FBI has had to divert personnel to assist in ongoing investigations of terrorist attacks. For these reasons, the FBI faces exceptional circumstances warranting an *Open America* stay.FN2

FN2. As indicated by the many cases cited by the defendant in its Opposition at 15-16 and 18-19, *Open America* stays of far greater time periods than requested here have been ordered by this Court on numerous occasions, and these stays have been granted subsequent to the passage of the Electronic FOIA Amendments of 1996. *See, e.g., Emerson v.*

*CIA,* 1999 U.S. Dist. Lexis 19511, at \*4 (D.D.C. Dec. 16, 1999) (Hogan, J.).

In addition to demonstrating "exceptional circumstances," defendant has also shown that it is exercising due diligence in responding to plaintiff's FOIA requests and has made reasonable progress in reducing its backlog despite the burdens on its resources. As attested to by Kiefer, the FBI's backlog has decreased significantly since 1996 (declining approximately 26%). Further, as evidenced by her declaration, the FBI has identified approximately 774 pages of responsive documents and it is in the process of reviewing these documents at this time. Based on the efforts to date, the Court is satisfied that the FBI is exercising due diligence in responding to plaintiff's requests.

Having found that defendant has satisfied the exceptional circumstances-due diligence test, however, this Court's inquiry is not complete, for *Open America* also recognized that where a requester shows exceptional need or urgency, that requester may be given priority over other requesters. *Open America,* 547 F.2d at 615-16. In particular, defendant itself has recognized several specific grounds for expediting requests, only one of which is relevant here, and it is this ground for expedition to which the Court must turn its attention.

## II. Expedited Processing

As noted, plaintiff moves for partial summary judgment, arguing that her requests involve "[a] matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence" and therefore are entitled to expedited processing under the Department of Justice's ("DOJ") regulations. 28 C.F.R. § 16.5(d)(1)(iv). Defendant responds that plaintiff has not satisfied this standard because she has failed to show that her requests concern a matter of current exigency to the American public, and she has not shown that " 'a delay in obtaining information can reasonably be foreseen to cause a significant adverse consequence to a recognized interest." ' (Def.'s Opp. at 9, quoting *Al-Fayed v. CIA,* 254 F.3d 300, 311 (D.C.Cir.2001).)

**\*3** The problem with defendant's position is that it

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

**(Cite as: Not Reported in F.Supp.2d)**

is attempting to graft onto the DOJ's regulation FOIA's definition of "compelling need." *See* 5 U.S.C. § 552(a)(6)(E)(v)(I) and (II). However, the regulation at issue here was not issued pursuant to this "compelling need" standard. As the D.C. Circuit recognized in *Al-Fayed*, FOIA directs agencies to provide "for expedited processing, not only 'in cases in which the person requesting the records demonstrates a compelling need,' but also 'in other cases *determined by the agency*.' " *Al-Fayed*, 254 F.3d at 307 n. 7, quoting 5 U.S.C. § 552(a)(6)(E)(i) (emphasis in original). Citing the statute's legislative history, the Court explained that this "latter provision gives an agency 'latitude to expand the criteria for expedited access' beyond cases of 'compelling need.' H.R.Rep. No. 104-795, at 26." *Id; see also Aguilera v. FBI*, 941 F.Supp. 144, 149 (D.D.C.1996); *Electronic Privacy Information Center v. FBI*, 865 F.Supp. 1, 2 (D.D.C.1984); *Whitehurst v. FBI*, Civil Action No. 96-572 (Feb. 5, 1997) (Kessler, J.).

DOJ promulgated the standard pertinent to this case pursuant to this discretionary authority. Because that standards falls outside and goes beyond FOIA's definition of "compelling need," the Court has no basis to demand that the requester satisfy the compelling need test in order to satisfy the regulation.FN3 Under DOJ's regulation, plaintiff need not show prejudice or a matter of current exigency to the American public; she need only demonstrate that the subject matter of her request involves "[a] matter of widespread and exceptional media interest in which there exist possible questions about the integrity of the government that affect public confidence." Plaintiff easily meets this standard and is thus entitled to expedited processing.

FN3. It is, of course, axiomatic that an "agency is required to follow its own regulations." *Cherokee National of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C.Cir.1997). In addition, the Court has no basis to accord deference to the agency's reasonable interpretation of its own regulations, *see Al-Fayed*, 254 F.3d at 307 n. 7, since defendant has not cited any interpretation of its regulations but only argues that plaintiff does not meet the standard because the "requests are personal to her, and the documents that she seeks have nothing to do with any wider concerns of the American public." (Def.'s Opp. at 8.)

First, as even defendant concedes (Def.'s Op. at 7-8) and is as amply demonstrated by the record before the Court, plaintiff's allegations have received extensive media coverage, including numerous newspaper articles in the printed press-*Associated Press, The Washington Post, Chicago Tribune*-and on TV. (*See, e.g.*, Pl.'s Mot. Exs. 5, 8, 9, 12, 13, 17-19.) Plaintiff's allegations regarding security lapses in the FBI's translator program have also fueled the interest of Senators Leahy and Grassley, both of whom have written to the Attorney General and spoken on the floor of the Senate about their concerns regarding the significant security issues raised by plaintiff's allegations and the integrity of the FBI. (*Id.* Ex. 10.) FN4 This flurry of articles and television coverage, which has continued at least until last month, cannot be cast aside by a sleight-of-hand as defendant attempts to do by categorizing plaintiff's requests as being merely "personal to her" and of no "wider public concern." (Def.'s Opp. at 8.)

FN4. As is clear from Pl.'s Reply Mem., her allegations continue to receive coverage in the press, including on *60 Minutes* (Pl.'s Reply Mem. Ex. 23), and attention from Senator Grassley. (*Id.* Ex. 24.)

While it is true-as defendant argues (Def.'s Opp. at 8)-that plaintiff's pending lawsuit against the DOJ may be the motivating force for her requests and that the documents that she seeks undoubtedly relate to that suit, these requests also relate to matters of wider public concern that directly implicate "possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). Nothing in the DOJ's regulation disqualifies a plaintiff from obtaining expedited processing where the documents may assist her in another lawsuit, nor is there any basis to conclude that a whistleblower who has brought suit against a government agency as a result of her firing cannot also satisfy the DOJ's regulations for expedited processing. Indeed, it would be illogical to conclude that where a whistleblower's allegations trigger "widespread and exceptional media interest" because of the questions raised regarding the "government's integrity," that person's requests can be rejected for expedited handling because they are also personal to her and her lawsuit against the defendant. *Cf. Halloran v. Veterans Admin.*, 874 F.2d 315, 323 (5 th Cir.1989) ("[T]he specific motives of the party

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                Page   4
**(Cite as: Not Reported in F.Supp.2d)**

making the FOIA request are irrelevant.. If the general public has a legitimate, albeit abstract, interest in the requested information and that disclosure is warranted, disclosure must be made despite the fact that the party actually requesting and receiving the information may use it for less-than-lofty purposes.")

**\*4** In sum, plaintiff has satisfied the criteria established by the DOJ for expediting FOIA requests. Plaintiff has offered ample evidence that her allegations have been (1) the subject of "widespread and exceptional media interest," and (2) call into question "the integrity of the ... [FBI] which affect[s] public confidence" in that institution. While defendant could justifiably argue that the Court's application of the relevant regulation will result in an even greater burden on its already strained resources and will disadvantage other FOIA requesters,FN5 the Court is constrained to enforce the regulation as written.

FN5. In this regard, the Court is mindful of the admonition in *Al-Fayed* that an " 'unduly generous use of the expedited processing procedure would unfairly disadvantage other requesters" ' whether they qualify for expedited treatment or not. 254 F.3d at 310 (citation omitted). Unlike *Al-Fayed,* the statutory requirement of "compelling need" is not applicable here, since the DOJ has " 'expand[ed] the criteria for expedited access' beyond cases of 'compelling need." ' *Id.* at 307 n. 7 (citation omitted).

CONCLUSION

Accordingly, plaintiff's motion for partial summary judgment is GRANTED, defendant's Motion for *Open America* Stay is DENIED, and a status hearing is set for December 13, 2002, at 11:00 a.m., at which time defendant must inform the Court of the date when the request will be processed consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4) ("as soon as practicable").

D.D.C.,2002.
Edmonds v. F.B.I.
Not Reported in F.Supp.2d, 2002 WL 32539613 (D.D.C.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.