# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 07-0656 (JDB) |
| | ) |
| **DEPARTMENT OF JUSTICE,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

## REPLY IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff Electronic Frontier Foundation ("EFF") initiated this action and moved for entry

of a preliminary injunction on April 10, 2007.  Defendant Department of Justice ("DOJ") filed an

opposition on April 24, 2007.[1]  DOJ opposes the motion on the grounds that 1) a preliminary

injunction is not an appropriate vehicle for the relief Plaintiff seeks; 2) the FOIA does not

mandate any specific time frame for the processing of an expedited request; and 3) no harm will

result if the agency is permitted to process the documents on its own, undefined schedule,

---

[1] Defendant's opposition was untimely filed; pursuant to Local Rule 65.1(c), the government's opposition was due no later than April 17, 2007.  On April 19, Defendant filed an untimely motion for extension of time, asserting that "counsel mistakenly calculated the due date for the government's opposition . . . due to counsel's erroneous application of [the Local Rules]." Defendant's Motion for Extension of Time, *Nunc Pro Tunc*, to Respond to Motion for Preliminary Injunction, ¶ 4.  While Plaintiff does not intend to file an opposition to Defendant's extension motion, we note that an enlargement request "made after the expiration of the specified period" may only be granted "where the failure to act was the result of excusable neglect," Fed. R. Civ. P. 6(b), and that this Court recently noted that "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."  *Howard v. Gutierrez*, No. 05-1968, 2007 U.S. Dist. LEXIS 8249, at *44 (D.D.C. February 6, 2007), quoting *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003) (internal quotation marks omitted).

without the Court's intervention.  Plaintiff respectfully submits this reply to address those

contentions.

## I.  This Court has Consistently Recognized that Preliminary Injunctions are Appropriate in FOIA Cases

Defendant DOJ asserts that motions for preliminary relief in FOIA cases "are generally

inappropriate" and that "courts in this district routinely deny requests for such relief."

Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction ("Def. Opp.") at 10; *id*.

n.4.  To the contrary, this Court has long entertained and, when appropriate, granted requests for

preliminary relief in FOIA cases.  For instance, in *Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C.

1976), this Court issued a preliminary injunction requiring, within 21 days, the production of all

documents responsive to a FOIA request and the filing of an index detailing and justifying any

withholdings.  The injunction was predicated upon the Court's finding of an "exceptional and

urgent need" for disclosure of the requested information.  *Id*. at 81-82.  Likewise, in *Aguilera v.*

*FBI*, 941 F. Supp. 144 (D.D.C. 1996), this Court granted plaintiff's motion for a preliminary

injunction and ordered the agency to "comply with plaintiff's FOIA requests" and file a *Vaughn*

index within 30 days.  As in *Cleaver*, the injunction was based upon a finding of "exceptional

and urgent need" for disclosure.  *Id*. at 152.[2]

Even in those cases where this Court *denied* applications for preliminary injunctions

seeking expedited processing of FOIA requests, the Court has never suggested, as Defendant

implies, that such relief is somehow improper.  DOJ has cited several cases in which the Court

merely determined that the specific facts before it did not warrant expedited processing.  Def.

Opp. at 10, n.4; *see, e.g., Assassination Archives and Research Ctr. v. CIA*, No. 88-2600, 1988

---

[2] Both *Cleaver* and *Aguilera* were decided before Congress enacted the 1996 FOIA amendments and created the statutory right to expedited processing at issue in this case.

U.S. Dist. LEXIS 18606 (D.D.C., Sept. 29, 1988) (denying preliminary injunction motion after

conducting four-part analysis); *Al-Fayed v. CIA*, No. 00-2092, 2000 U.S. Dist. LEXIS 21476

(D.D.C. Sept. 20, 2000) (same).[3]  While DOJ suggests that the range of judicial remedies in

FOIA cases is somehow limited, there is no such restriction.  As the D.C. Circuit has noted,

"[t]he FOIA imposes no limits on courts' equitable powers in enforcing its terms."  *Payne*

*Enterprises v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988), citing *Renegotiation Bd. v.*

*Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974). "[U]nreasonable delays in disclosing non-

exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to

prevent [such] abuses."  *Id.*, 837 F.2d at 494 (citation omitted).[4]

This Court recently recognized the propriety of preliminary relief in circumstances

identical to those present here in *Electronic Privacy Information Center v. Dep't of Justice*

*("EPIC")*, 416 F. Supp. 2d 30 (D.D.C. 2006), a case that Defendant can only overcome by

describing as "wrongly decided" and "at odds with the statute."  Def. Opp. at 13.  Indeed, as we

discuss below, the government is attempting to relitigate the *EPIC* case here, regurgitating the

precise arguments that were considered – and rejected – by the Court little more than a year ago.

Defendant's tactic is clearly inappropriate.  It is axiomatic that "[a] court should give

considerable weight to its own previous decisions unless and until they have been overruled or

undermined by the decision of a higher court or a statutory overruling," *Louisiana Wholesale*

---

[3] Indeed, the D.C. Circuit, in its only discussion of the FOIA expedited processing provision, itself applied the preliminary injunction standard in affirming the district court decision in the *Al-Fayed* case.  *Al-Fayed v. CIA*, 254 F.3d 300, 304 (D.C. Cir. 2001) (court conducted merits review of "whether plaintiffs are entitled to a preliminary injunction").

[4]  Similarly, in *Open America v. Watergate Special Prosecution Force*, 547 F. 2d 605, 615-616 (D.C. Cir. 1976), the D.C. Circuit found that "Congress wished to reserve the role of the courts for two occasions" involving agency processing practices, one of which is "when plaintiff can show a genuine need and reason for urgency in gaining access to Government records."

*Drug Co., Inc. v. Biovail Corp.*, 437 F. Supp. 2d 79, 83 n. 3 (D.D.C. 2006) (citation omitted), and

that "considerations of stare decisis weigh heavily in the area of *statutory construction*," *In re*

*Lorazepam & Clorazepate Antitrust Litigation*, 202 F.R.D. 12, 20 (D.D.C. 2001) (citation

omitted; emphasis in original).

In *EPIC*, the Justice Department granted a request for expedited FOIA processing upon a

finding that, *inter alia*, the request satisfied the same regulatory standard at issue in this case – "a

matter of widespread and exceptional media interest in which there exist possible questions

about the government's integrity which affect public confidence." 416 F. Supp. 2d at 34

(quoting 28 C.F.R. § 16.5(d)(1)(iv)). As in this case, despite its decision to grant "expedited

processing," the agency had "neither completed the processing of EPIC's FOIA requests nor

informed EPIC of an anticipated date for the completion of the processing" and the requester

moved for a preliminary injunction. 416 F. Supp. 2d at 34-35. In an argument that Defendant

repeats *verbatim* in this case, DOJ "question[ed] the propriety of EPIC seeking preliminary

injunctive relief," and "accuse[d] EPIC of using the motion for a preliminary injunction, which

according to the DOJ seeks 'a version of the ultimate relief' in the case, as a litigation tactic 'to

artificially accelerate the proceedings in this case.'" *Id*. at 35; *see also* Def. Opp. at 2-3 (EFF

attempts "to artificially accelerate the proceedings in this case" and motion seeks "a version of

ultimate relief").

Citing the same settled authority that Plaintiff relies upon here, *see supra*, the Court

rejected DOJ's argument:

> DOJ's argument that EPIC acts improperly in seeking a preliminary injunction is
> unavailing. On numerous occasions, federal courts have entertained motions for a
> preliminary injunction in FOIA cases and, when appropriate, have granted such
> motions. *See ACLU v. Dep't of Defense*, 339 F. Supp. 2d 501, 503 (S.D.N.Y.
> 2004) (granting preliminary injunction motion in FOIA case and requiring
> production within one month); *Aguilera v. FBI*, 941 F. Supp. 144, 152-53 (D.D.C.

1996) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately one month); *Cleaver v. Kelley*, 427 F. Supp. 80, 81-82 (D.D.C. 1976) (granting preliminary injunction in FOIA case and requiring expedited processing to be completed within approximately twenty days); *see also Al-Fayed v. CIA*, 2000 U.S. Dist. LEXIS 21476, at *19-20 (D.D.C. Sept. 20, 2000) (denying preliminary injunction in FOIA case after conducting four-part analysis); *Assassination Archives & Research Ctr. v. CIA*, 1988 U.S. Dist. LEXIS 18606, at *1-3 (D.D.C. Sept. 29, 1988) (same).

416 F. Supp. 2d at 35 (footnote omitted).[5]

Consistent with its obligation to abide by its own precedent – and in keeping with the clear logic of the numerous cases recognizing the propriety of injunctive relief in FOIA cases similar to this one – the Court should reject DOJ's invitation to relitigate an issue that is now well-settled in this district.

## II.  **Plaintiff has Demonstrated A Likelihood of Success on the Merits**

Defendant DOJ next argues that Plaintiff is not entitled to relief because the FOIA "does not require agencies to process expedited requests within a specified time limit."  Def. Opp. at 16.  In advancing this argument, Defendant once again seeks to relitigate an issue that it lost in *EPIC* – indeed, DOJ's argument here parrots word for word the argument it presented to the Court in that case.  *Compare* Def. Opp. at 16-21 *with* Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction (*EPIC v. Dep't of Justice*, Civ. No. 06-0096) (attached hereto as Exhibit A) at 11-15.  The Court carefully considered DOJ's argument little more than a year ago and, upon a comprehensive review of the statutory scheme, rejected it:

---

[5] Defendant suggests that, in considering the manner in which motions for preliminary relief in FOIA cases have been previously handled, the Court may consider dispositions that were subsequently vacated.  Def. Opp. at 10 n.4.  If the Court deems such consideration appropriate, Plaintiff submits that *Washington Post v. Dep't of Homeland Security*, 459 F. Supp. 2d 61 (D.D.C. 2006), *vacated as moot*, 2007 U.S. App. LEXIS 6682 (D.C. Cir. Feb. 27, 2007), provides instructive guidance.  *See, e.g., id.* at 66 ("[t]o afford the plaintiff less than expedited judicial review would all but guarantee that the plaintiff would not receive expedited agency review of its FOIA request").

> Under DOJ's view of the expedited processing provisions of FOIA, the government would have carte blanche to determine the time line for processing expedited requests, with the courts playing no role whatsoever in the process. . . . DOJ's position is easily rejected.

> . . . DOJ's reading of the statute would give the agency unchecked power to drag its feet and "pay lip service" to a requester's "statutory and regulatory entitlement to expedition." Further, such a reading runs counter to the language of the statute and relevant case law. FOIA, as amended, envisions the courts playing an important role in guaranteeing that agencies comply with its terms. . . . Adopting the government's position – that an agency has unfettered discretion to determine how long is practicable for processing expedited requests – would require the court to abdicate its "duty" to prevent "unreasonable delays in disclosing non-exempt documents."

> Furthermore, relevant case law establishes that courts have the authority to impose concrete deadlines on agencies that delay the processing of requests meriting expedition. These cases implicitly reject the notion that the decision of practicability is to be determined solely by the agency and support the contention that courts have the authority, and perhaps the obligation, to scrutinize closely agency delay.

416 F. Supp. 2d at 37-38 (citations omitted).

The Court further held that "a *prima facie* showing of agency delay exists when an agency fails to process an expedited FOIA request within the time limit applicable to standard FOIA requests." *Id*. at 39. As the Court explained,

> [t]he legislative history of the [1996 FOIA] amendments makes clear that, although Congress opted not to impose a specific deadline on agencies processing expedited requests, its intent was to "give the request priority for processing *more quickly than otherwise would occur*." S. Rep. No. 104-272, at 17 (1996) (emphasis added). Interpreting FOIA to allow the agency *more* time than that provided in situations involving standard FOIA requests neither hastens the release of information nor does it allow for processing "more quickly than otherwise would occur." For these reasons, this court is of the view that the phrase "as soon as practicable," in the context of a provision of FOIA allowing for *expedited* processing, cannot be interpreted to impose a lower burden on the agency than would otherwise exist. Doing so would not be "consistent with the legislative purpose" of FOIA and would "produce absurd results." Therefore, the court concludes that an agency that violates the twenty-day deadline applicable to standard FOIA requests presumptively also fails to process an expedited request "as soon as practicable."

*Id*. (footnote and citation omitted; emphasis in original). Defendant DOJ does not even attempt to explain how the Court's analysis was incorrect, instead merely recycling the argument the

Court described as "easily rejected."  While DOJ might wish otherwise, there is simply no reason for the Court to disturb its well-reasoned and controlling precedent.[6]

Defendant does not even attempt to meet the standard the Court established in *EPIC* for rebutting the presumption of agency delay: "credible evidence that disclosure [within twenty working days] is truly not practicable."  *Id*. (footnote omitted).  DOJ does not cite the standard anywhere in its brief, let alone explain how the circumstances set forth in the proffered agency declaration might rebut the "*prima facie* showing of agency delay" present in this case.

Even if it had attempted to present "credible evidence that disclosure [within twenty working days] is truly not practicable," Defendant would have fallen short.  First, DOJ states that "[a]t the time that the Department granted plaintiff's request for expedited processing, there were already two pending FOIA requests before the agency which were entitled to expedited processing."  Def. Opp. at 8, *citing* Hardy Decl. ¶¶ 15-17.  Processing of one of the two requests (per court order in *Gerstein*), however, was scheduled to be completed on April 27.  Hardy Decl. ¶ 15.  With respect to the second pending request, the FBI merely asserts without elaboration that "[a]pproximately 3,000 more pages need to be processed."  *Id*. ¶ 16.  The additional factor DOJ implicitly suggests as a justification for delay is the "sweeping temporal scope" and "broad wording" of Plaintiff's FOIA request.  Def. Opp. at 9.  Plaintiff respectfully disagrees with

---

[6] Ironically, the FBI asserts that one of the reasons why it cannot process Plaintiff's FOIA request more quickly is that it is attempting to comply with a court order to expedite processing in *Gerstein v. CIA, et al*., Civ. A. No. 06-4643 (N.D. Cal.).  Declaration of David M. Hardy ("Hardy Decl.") ¶ 15.  The order in *Gerstein* was based, in large part, on that court's application of this Court's holding in *EPIC*.  *See* Exhibit E (attached to Hardy Decl.).  Defendant thus appears to be suggesting that a plaintiff in this district can be *disadvantaged* by another court's reliance upon *EPIC*, but cannot *benefit* from this Court's application of its own precedent.

Defendant's characterization and refers the Court to the request itself for a determination of whether the request is somehow unreasonable or unduly burdensome.[7]

### III. Both Plaintiff and the Public Interest Will Be Irreparably Harmed in the Absence of a Preliminary Injunction

As with the bulk of its opposition, Defendant's contentions with respect to irreparable harm and the public interest are word-for-word repetitions of the arguments it put forward in *EPIC*, the same arguments the Court flatly rejected. *Compare* Def. Opp. at 21-27 *with* Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction (*EPIC v. Dep't of Justice*, Civ. No. 06-0096) (attached hereto as Exhibit A) at 15-22. Given that the Court has already considered – and decided – these issues, we quote DOJ's arguments and the Court's response in the *EPIC* decision.

### A. Irreparable Harm

Asserting an absence of irreparable harm, DOJ argues here:

First, plaintiff claims that its statutory right to expedition will be "irretrievably lost" if the preliminary injunction it seeks is not granted. This argument is specious. The Department has *granted* plaintiff expedited processing. Thus,

---

[7] Defendant asserts that, due to the "sweeping" nature of Plaintiff's request, the FBI "currently estimates responsive documents to number approximately 172,000 pages." Def. Opp. at 9. The Bureau's methodology is shaky, at best. As Mr. Hardy explains, "[t]o date, the FBI *estimates* that *approximately* 25% of the *potentially* responsive material has been located," that material consists of "*approximately*" 43,254 pages, and the Bureau "therefore currently *anticipates* locating *approximately* 172,000 pages of material *potentially* responsive to plaintiff's request." Hardy Decl. ¶¶ 26-27 (emphasis added). Similar estimates made in other cases – and cited as justifications for delay – have proven to be notoriously unreliable. For example, in *Electronic Privacy Information Center v. Dep't of Justice*, Civ. No. 05-845, 2005 U.S. Dist. LEXIS 40318 (D.D.C. Nov. 16, 2006) (attached hereto as Exhibit B), the FBI initially estimated that 130,000 pages of documents were potentially responsive to the plaintiff's request for records concerning the renewal of the USA PATRIOT Act. Declaration of David M. Hardy ¶ 20 (filed June 29, 2005) (attached hereto as Exhibit C). In that case, as here, the FBI had not yet located or reviewed all potentially responsive documents to determine whether they were in fact responsive to the plaintiff's request. *Id.* Ultimately, the FBI determined that only 18,000 pages actually fell within the scope of the plaintiff's request — just 14% of the originally estimated universe of documents. Def.'s Response to Pl.'s Notice of Filing at 1 (filed Nov. 14, 2005) (attached hereto as Exhibit D).

> plaintiff's requests have been prioritized over other requests pending when plaintiff's were filed, and have moved to the front of the FBI's queue for immediate processing. Plaintiff's statutory right to expedited processing entitles it to nothing more.

Def. Opp. at 21-22 (citation omitted; emphasis in original).

The Court in *EPIC* rejected this argument:

> DOJ insists that EPIC will suffer no harm if the court were to deny EPIC's motion for a preliminary injunction because DOJ has already afforded EPIC all the relief to which it is entitled. Because it has already expedited EPIC's FOIA requests by administratively granting them expedited status and prioritizing them over other pending requests, DOJ argues that EPIC is entitled to "nothing more." This argument stretches the limits of plausibility. EPIC's right to expedition is certainly not satisfied by DOJ's *decision* to give priority to EPIC's requests. What matters to EPIC is not how the requests are labeled by the agency, but rather when the documents are actually released. As EPIC contends, "merely paying lip service" to EPIC's statutory right does not negate "the harm that results from the agency's failure to *actually* expedite its processing. Unless the requests are processed without delay, EPIC's right to expedition will be lost.

416 F. Supp. 2d at 41 (citation omitted; emphasis in original).

DOJ further argues here:

> Plaintiff's second claimed injury is similarly insufficient to establish a right to the extraordinary remedy of a preliminary injunction. Plaintiff argues that its ability "and that of the public to obtain in a timely fashion information vital to the current and ongoing debate surrounding the FBI's improper use of NSLs" will be irreparably harmed if preliminary relief is not awarded. This formulation begs the question: What certain and great harm will plaintiff suffer in the immediate future as a result of not having this information in the artificial time frame that plaintiff demands, as opposed to the time frame that Congress has established ("as soon as practicable").
>
> . . . [P]laintiff's claim that it cannot adequately participate in the public debate concerning the program [sic] rings substantially hollow. As noted by plaintiff, the DOJ Inspector General has recently released a 126-page report on the subject of DOJ's use of NSL authority. Based upon the information that the government has already made public, therefore, plaintiff is fully able to participate in the current public debate and can demonstrate no harm stemming from the absence of the injunctive relief it seeks.

Def. Opp. at 22-23 (citations omitted).

Again, the Court rejected the same argument in *EPIC*:

Beyond losing its right to expedited processing, EPIC will also be precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate . . . .   [A meaningful debate] can only occur if DOJ processes its FOIA requests in a timely fashion and releases the information sought.

DOJ argues that "based upon the information that the government has already made public  . . . plaintiff is fully able to participate in the current public debate." This argument is quickly rejected, for as EPIC correctly argues, "a meaningful and truly democratic debate [. . .] cannot be based solely upon information that the Administration voluntarily chooses to disseminate."

416 F. Supp. 2d at 41 & *id*. n.9 (citations omitted).

### B.  Public Interest

With respect to the public interest, DOJ argues here:

Plaintiff's request for the proposed preliminary injunction . . . threatens to compromise the delicate balancing of the public interest that Congress undertook in enacting FOIA between the general interest in disclosure of government information and the necessity of ensuring that certain types of documents, the disclosure of which would cause harm, were not to be disclosed.

Def. Opp. at 26.

The Court rejected the same argument in *EPIC*:

. . . DOJ suggests that requiring the agency to finish its processing within twenty days will increase the chances that the agency will inadvertently disclose exempted documents.

To be sure, the court does not wish for DOJ to inadvertently release exempted materials.  . . .  However, "merely raising national security concerns cannot justify unlimited delay."  Congress has already weighed the value of prompt disclosure against the risk of mistake by an agency and determined that twenty days is a reasonable time period, absent exceptional circumstances, for an agency to properly process *standard* FOIA requests.  . . .  Vague suggestions that inadvertent release of exempted documents *might* occur are insufficient to outweigh the very tangible benefits that FOIA seeks to further — government openness and accountability.

416 F. Supp. 2d at 42 (citation omitted; emphasis in original).

In summary, it is clear that Defendant DOJ seeks to oppose Plaintiff's motion with

nothing more than a rehash of meritless arguments the Court has already considered and rejected.

Plaintiff merely asks the Court to do what it has done before in similar circumstances, consistent with the D.C. Circuit's directive that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Payne Enterprises*, 837 F.2d at 494 (citation omitted). Plaintiff is clearly entitled to the relief it seeks.[8]

<u>**Conclusion**</u>

For the foregoing reasons, and those set forth in our opening brief, Plaintiff's motion for a preliminary injunction should be granted.

Respectfully submitted,


____/s/_____
MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue NW
Suite 650
Washington, DC 20009
(202) 797-9009

Counsel for Plaintiff

---

[8] It is apparent that, in the absence of an injunction, the processing of Plaintiff's "expedited" FOIA request will be left to the unfettered discretion of the agency and will languish. The most concrete statement Defendant is willing to offer with respect to processing time is that "the FBI believes that, within 120 days, it should have a better sense of the volume of documents and the time that will be needed to process them." Def. Opp. at 9 (citation omitted). In other words, the Bureau intends to wait until the request has been pending for *five and a half months* before even estimating a date for the completion of processing.

# Exhibit A

**Reply in Support of Plaintiff's Motion for a Preliminary Injunction**

***Electronic Frontier Foundation v. Dep't of Justice, C.A. No. 07-0656 (JDB)***

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) | |
| | ) | Civil Action No. 06-0096 (HHK) |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR
## A PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff asks the Court to invoke its extraordinary powers to award temporary emergency relief by issuing a preliminary injunction aimed at requiring defendant the Department of Justice ("DOJ" or "the Department") to complete the processing of plaintiff's requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in the next twenty days and to provide a Vaughn index ten days thereafter.  Plaintiff's request for such relief by way of a preliminary injunction – which is not preliminary in any sense but rather is an attempt to use a procedural mechanism intended to provide emergency relief as a scheduling tool – is unprecedented and, unsurprisingly, plaintiff cites no similar case where such extraordinary and draconian emergency relief has ever been awarded against a government defendant subject to suit under FOIA.

Indeed, the relief plaintiff seeks is inconsistent with the plain language of the expedited processing provision of the FOIA.  Each component of the Department to which plaintiff has made a FOIA request already has granted plaintiff's request to expedite processing under 5 U.S.C. § 552(a)(6)(e), and already has begun the searches required to identify responsive

documents.  The expedited processing provision of FOIA, however, provides that expedited

FOIA requests are to be processed by the agency "as soon as practicable," id. § 552(a)(6)(e)(iii),

and imposes no time limits on such processing.  The Department is proceeding under that

standard, and plaintiff – who bears the burden on a motion for preliminary injunction – offers no

proof to the contrary.  Indeed, far from being supported by either proof or precedent, plaintiff's

request is fundamentally incompatible with the past practice of this Court, which has routinely

required that expedited FOIA requests be processed according to the terms of the statute ("as

soon as practicable") and not on any plaintiff's artificial time frame.

    Plaintiff makes its extraordinary – and wholly unsupported – request for emergency

preliminary relief while at the same time failing meet its essential burden of identifying any

irreparable harm that it might suffer if responsive, non-exempt documents are not immediately

ordered to be produced.  Plaintiff identifies no reason why the agency must be required to

complete the processing of plaintiff's request – which seeks documents spanning a four-plus year

period from four different components of the Department relating to a program that remains

largely classified – within the artificial period proposed in plaintiff's injunctive demand as

opposed to "as soon as practicable" as specifically set forth in FOIA.

    Instead, it is plain that plaintiff seeks to use the preliminary injunction provisions of

Federal Rule of Civil Procedure 65 – which are intended to provide a shield against imminent

injury while a court considers the merits of a dispute – to artificially accelerate the proceedings in

this case.[1]  This is nothing more than a litigation tactic, and it should not be indulged.

---

[1] Congress has specifically recognized that litigation involving FOIA claims is to be
accelerated.  See 5 U.S.C. § 552(a)(4)(C) (providing that government defendants have 30 days in
which to answer a FOIA complaint as opposed to the ordinary 60 days provided by Fed. R. Civ.
P. 12).  Plaintiff's effort to seek a preliminary injunction is nothing more than an effort to bypass
these already-accelerated procedures.

Preliminary injunctions are an extraordinary remedy that are ordinarily intended to preserve the status quo pending a court's resolution of a case on the merits. The injunction proposed by plaintiff, on the other hand, does not seek to maintain any status quo but rather seeks a version of ultimate relief – the immediate disclosure of non-exempt documents. See 5 U.S.C. § 552(a)(4)(B) (under FOIA, court has "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld").[2] Moreover, plaintiff seeks such relief on an emergency basis despite the fact that it has been granted the rare dispensation of being moved to the front of each DOJ component's FOIA queue ahead of other non-expedited requestors and where the Department has had barely a month (and, then, only a month encompassing the end-of-the year holidays) to attempt to respond to plaintiff's broad request for documents. Awarding plaintiff the relief it seeks at this early stage of these proceedings, before defendant is even required to answer plaintiff's complaint and before the agency components involved have completed searches and necessary document reviews, is without any basis in law. Plaintiff's motion should be denied.

## BACKGROUND

1. <u>Statutory and Regulatory Framework</u>

    a. <u>FOIA's Expedited Processing Provision</u>

Agencies ordinarily process FOIA requests for agency records on a first-in, first-out basis. In 1996, Congress amended the FOIA to provide for "expedited processing" of certain categories

---

[2] Indeed, because FOIA permits a Court to exercise jurisdiction to compel the release of documents only after determining that there has been an improper withholding, see Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980), analytically, the granting of the preliminary injunctive relief demanded here is at odds with the jurisdictional provisions of FOIA, since the Court can make no determination as to "improper" withholding until the Department has completed its searches and claimed any appropriate exemptions.

of requests.  See Electronic Freedom of Information Amendments of 1996 ("EFOIA"), Pub. L.

No. 104-231, § 8 (codified at 5 U.S.C. § 552(a)(6)(E)).  Expedition, when granted, entitles

requestors to move immediately to the front of an agency processing queue, ahead of requests

filed previously by other persons.

As part of EFOIA, Congress directed agencies to promulgate regulations providing for

expedited processing of requests for records (i) "in cases in which the person requesting the

records demonstrates a compelling need"; 5 U.S.C. § 552(a)(6)(E)(i)(I); and (ii) "in other cases

determined by the agency."  Id. § 552(a)(6)(E)(i)(II).  FOIA defines "compelling need" to mean:

> (I) that a failure to obtain requested records on an expedited basis under this
> paragraph could reasonably be expected to pose an imminent threat to the life or
> physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating
> information, urgency to inform the public concerning actual or alleged Federal
> Government activity.

5 U.S.C. § 552(a)(6)(E)(v).[3]  The requestor bears the burden of showing that expedition is

appropriate.  See Al-Fayed v. Central Intelligence Agency, 254 F.3d 300, 305 n.4 (D.C. Cir.

2001).  FOIA provides that "[a]n agency shall process as soon as practicable any request for

records to which the agency has granted expedition."  5 U.S.C. § 552(a)(6)(E)(iii).

b.      The Department's Regulations

DOJ implemented EFOIA by final rule effective July 1, 1998.  See Revision of Freedom

of Information Act and Privacy Act Regulations and Implementation of Electronic Freedom of

---

[3]  Both Congress and the Court of Appeals have recognized that the expedition categories
are to be "narrowly applied" because, "[g]iven the finite resources generally available for
fulfilling FOIA requests, unduly generous use of the expedited processing procedure would
unfairly disadvantage other requestors who do not qualify for its treatment."  Al-Fayed v. Central
Intelligence Agency, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795,
reprinted at 1996 U.S.C.A.A.N. 3448, 3469 (Sept. 17, 1996)).

Information Act Amendments of 1996, 63 Fed. Reg. 29591 (1998), <u>codified</u> <u>at</u> 28 C.F.R. Part 16.

This rule, which governs FOIA requests to all DOJ components, <u>see</u> 28 C.F.R. § 16.1(b), states

that "[r]equests and appeals" will be "taken out of order and given expedited treatment whenever

it is determined that they involve":

(i)    Circumstances in which the lack of expedited treatment could reasonably
       be expected to pose an imminent threat to the life or physical safety of an
       individual;

(ii)   An urgency to inform the public about an actual or alleged federal
       government activity, if made by a person primarily engaged in
       disseminating information;

(iii)  The loss of substantial due process rights; or

(iv)   A matter of widespread and exceptional media interest in which there exist
       possible questions about the government's integrity which affect public
       confidence.

28 C.F.R. § 16.5(d)(1)(i)-(iv).   Categories (i) and (ii) implement the FOIA's "compelling need"

standard; categories (iii) and (iv) define additional categories for expedition.  <u>See</u> 63 Fed. Reg. at

29592.   Requests for expedition based on categories (i), (ii), and (iii) must be submitted to the

component that maintains the records requested.  <u>See</u> 28 C.F.R. § 16.5(d)(2).  Requests for

expedition based on category (iv) – the Department's "special media-related standard," <u>see</u> 63

Fed. Reg. at 29592 – must be submitted to the Director of the Department's Office of Public

Affairs.  <u>See</u> 28 C.F.R. § 16.5(d)(2).  This enables "the Department's media specialists [to] deal

directly with matters of exceptional concern to the media."  63 Fed. Reg. at 29592.

Within ten calendar days of receiving a request for expedited processing, the component

must "decide whether to grant it and . . . notify the requestor of the decision."  28 C.F.R.

§ 16.5(d)(4); <u>see also</u> 5 U.S.C. § 552(a)(6)(E)(ii)(I) (requiring notice of decision within ten days

of request).  If the request is granted, "the request shall be given priority and shall be processed

- 5 -

as soon as practicable." 28 C.F.R. § 16.5(d)(4).  If the request is denied, "any appeal of that

decision shall be acted on expeditiously."  Id.; see also 5 U.S.C. § 552(a)(6)(E)(ii)(II) (requiring

"expeditious consideration of administrative appeals of such determinations of whether to

provide expedited processing").

       2.     Plaintiff's FOIA Requests and Requests for Expedited Processing.

       By letters dated December 16, 2005, plaintiff requested under FOIA agency records

"from September 11, 2001, to the present concerning a presidential order or directive authorizing

the National Security Agency ('NSA'), or any other component of the intelligence community, to

conduct domestic surveillance without the prior authorization of the Foreign Intelligence

Surveillance Court ('FISC')".  See Pl's Exs. 7, 8, 9 & 10.  Plaintiff stated that the records it

sought included "but were not limited to" the following:

     a.     an audit of NSA domestic surveillance activities;

     b.     guidance or a "checklist" to help decide whether probable cause exists to
            monitor an individual's communications;

     c.     communications concerning the use of information obtained through NSA
            domestic surveillance as the basis for DOJ surveillance applications to the
            FISC; and

     d.     legal memoranda, opinions or statements concerning increased domestic
            surveillance, including one authored by John C. Yoo shortly after
            September 11, 2001 discussing the potential for warrantless use of
            enhanced electronic surveillance techniques.

Id.  Plaintiff's FOIA requests were directed to four components of the Department of Justice –

the Office of the Attorney General, Pl's Ex. 7, the Office of Intelligence and Policy Review

("OIPR"), Pl's Ex. 8, the Office of Legal Counsel ("OLC"), Pl's Ex. 9, and the Office of Legal

Policy ("OLP"), Pl's Ex. 10.  In each of these components, plaintiff sought expedited processing

of its request, invoking 28 C.F.R. § 16.5(d)(1)(ii) & (iv), and made a similar request to the

Department's Office of Public Affairs, see Pl's Ex. 11.  On December 21, 2005, the

Department's Office of Information and Privacy ("OIP"), on behalf of the Office of the Attorney

General and OLP, acknowledged receipt of plaintiff's FOIA request on that same date and

notified plaintiff that its request for expedited processing had been granted under 28 C.F.R.

§ 16.5(d)(1)(ii).  Pl's Ex. 12.  OIP also informed plaintiff that, although a search for responsive

records had begun, it would not be completed within "the twenty-working-day time limit in this

case, as well as the additional ten days provided by the statute."  Id.  On January 6, 2006, OIPR

acknowledged receipt of plaintiff's FOIA request and advised plaintiff that the Office of Public

Affairs had granted plaintiff's request for expedited treatment and that "[a]ccordingly, your

request will be reviewed ahead of others routinely processed on a first-in, first-out basis."  Pl's

Ex. 13.  In a letter dated January 25, 2006, OLC similarly advised plaintiff that its request for

expedited processing had been granted and that processing had begun.  Attached as Ex. A. Thus,

all four DOJ components to which plaintiff sent its request have jumped the request to the

beginning of their queues and are in the process of identifying responsive documents.

On January 19, 2006, plaintiff filed the instant suit as well as a Motion for Preliminary

Injunction asking that the Court "preliminarily" enjoin the Department to "complete the

processing of plaintiff's December 16, 2005, Freedom of Information Act requests, and produce

or identify all responsive records, within 20 days," and to "provide plaintiff with a document

index and declaration . . . stating defendant's justification for the withholding of any document

responsive to plaintiff's request, within 30 days."  See Pl's Proposed Order.

## ARGUMENT

Preliminary injunctive relief such as that demanded by plaintiff is "an extraordinary

measure, and . . . the power to issue such exceptional relief 'should be sparingly exercised.'"

Experience Works, Inc. v. Chao, 267 F. Supp. 2d 93, 96 (D.D.C. 2003) (quoting Dorfmann v. Boozer, 414 F.2d 1168, 1173 (D.C. Cir. 1969)) (internal quotes omitted); accord Boivin v. US Airways, Inc., 297 F. Supp. 2d 110, 116 (D.D.C. 2003) ("It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion") (quoting Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) ( per curiam)) (emphasis in original) . "[I]n considering a plaintiff's request for a preliminary injunction a court must weigh four factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction not granted; (3) whether an injunction would substantially injure other interested parties; and (4) whether the grant of an injunction would further the public interest." Al-Fayed, 254 F.3d at 303; accord Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998).

Plaintiff's request for a preliminary injunction is even more extraordinary than in the usual case because plaintiff seeks such relief in a FOIA case and seeks, purportedly by way of a "preliminary" remedy, that relief which it will ultimately seek on the merits, i.e. the immediate disclosure of non-exempt documents. See Univ. of Texas v. Camenisch, 451 U.S. 390, 397 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits"). Plaintiff cites no case that authorizes the grant of such relief by way of preliminary injunction in a FOIA case.[4] Indeed, it is well-established in this

---

[4] Each of the cases that plaintiff cites in support of its claim that "this Court and others have imposed specific processing deadlines on agencies, requiring prompt delivery of non-exempt FOIA records to requestors," see Pl's Mem. at 19-20, is inapposite. None of those cases sought preliminary injunctions within weeks of a FOIA request being made and all of these decisions were issued following litigation on the merits, where the relevant agencies had their opportunities to provide the Court with necessary information regarding processing needs. Moreover, each case allowed the agency far more time to complete processing the FOIA requests

district that such relief is wholly improper.  See, e.g., Electronic Privacy Info. Center v. U.S.

Dept. of Justice, slip op., No. 03-2078 (D.D.C., Oct. 20., 2003) (Robertson, J.) (attached as Ex.

B) (denying, sua sponte, request for preliminary injunction "enjoining defendant Department of

Justice from continuing to deny plaintiff expedited processing of plaintiff's Freedom of

Information Act request" because such relief was in nature of a request for mandamus and was

without merit)[5]; Al-Fayed v. CIA, 2000 WL 34342564 (D.D.C. 2000) (Kollar-Kotelly, J.)

(attached as Ex. C) (finding that "upon consideration of the parties' arguments, the statutory and

regulatory context, and the applicable case law," emergency relief was not warranted despite

agency's delay in responding to FOIA requests); Judicial Watch v. U.S. Dept. of Justice, slip op.,

---

at issue than plaintiff demands in this case.  See, e.g., Judicial Watch v. Dept. of Energy, 191 F.
Supp. 2d 138 (D.D.C. 2002) (with respect to FOIA request served April 9, 2001, and lawsuit
filed May 9, 2001, ordering responsive non-exempt documents to be produced between March
25, 2002, and May 3, 2002, and ordering Vaughn indices to be produced between April 25, 2002,
and May 15, 2002); Natural Resources Defense Council v. Dept. of Energy, 191 F. Supp. 2d 41
(D.D.C. 2002) (with respect to FOIA request made April 26, 2001, and lawsuit filed December
11, 2001, ordering responsive non-exempt documents to be produced between March 25, 2002,
and April 10, 2002, and ordering Vaughn index to be produced by April 25, 2002); American
Civil Liberties Union v. Dept. of Defense, 339 F. Supp. 2d 501 (S.D.N.Y. 2004) (with respect to
FOIA request made October 7, 2003, and lawsuit filed July 2, 2004, ordering defendants to
produce or identify responsive records by October 15, 2004); Electronic Privacy Info. Center v.
Dept. of Justice, Civ. No. 05-845 (D.D.C., Nov. 16, 2005) (Pl's Ex. 19) (with respect to FOIA
request made March 29, 2005, ordering agency to process 1500 pages of documents every fifteen
days on a rolling basis "until processing is complete" and to notify plaintiff of the total number of
responsive pages by January 2006).  These cases are thus wholly unlike this one, where plaintiff
seeks "preliminary" relief demanding processing at an artificial pace despite the fact that
defendant is not even required to answer plaintiff's Complaint for another several weeks, and
barely a month has passed (including end-of-the-year holidays) since plaintiff's FOIA requests
were received by the Department.

    [5]  Plaintiff attempts to distinguish Judge Robertson's decision on the ground that FOIA
expressly allows for injunctive relief, see Pl's Mem. at 18 (citing 5 U.S.C. § 552(a)(4)(B)).  As
noted above, however, see supra note 2, FOIA allows injunctive relief when an agency is
determined to have "improperly withheld" documents.  No such determination can be made in
these preliminary injunction proceedings where the agencies have not completed their search and
review and no documents have yet been identified as withheld.

No. 00-1396 (D.D.C., June 27, 2000) (Robertson, J.) (attached as Ex. D) (denying plaintiff's

"emergency motion for expedited treatment" to "compel defendant to respond to plaintiff's FOIA

request"); Assassination Archives and Research Ctr. v. CIA, No. 88-2600, 1988 U.S. Dist.

LEXIS 18606, *1 (D.D.C., Sept. 29, 1988) (Revercomb, J.) (attached as Ex. E) (rejecting motion

for preliminary injunction asking Court to order expedited processing of FOIA request). As

these cases establish, under the standard formulation governing the grant of preliminary

injunctive relief, plaintiff's motion must be denied.

**I.    PLAINTIFF FAILS TO DEMONSTRATE LIKELIHOOD OF SUCCESS ON THE MERITS BECAUSE FOIA'S EXPEDITED PROCESSING PROVISIONS DO NOT REQUIRE PROCESSING TO BE COMPLETED WITHIN A TIME CERTAIN.**

As a preliminary matter, although FOIA confers jurisdiction upon this Court to review an

agency denial of expedited processing of a FOIA request, see 5 U.S.C. § 552(a)(6)(E)(iii); see

also Al-Fayed, 254 F.3d at 301, no such denial is at issue here. Instead, all four components to

which plaintiff's FOIA requests were directed have granted plaintiff's request for expedited

processing and have moved plaintiff's request to the front of their queues, displacing earlier-filed

requests that were not similarly expedited. Thus, to the extent that plaintiff claims that it is being

denied its statutory right to expedited processing, plaintiff is simply wrong. All four components

have expedited plaintiff's requests, and plaintiff can seek no further review of these decisions.[6]

---

[6] Thus, plaintiff's argument that it is entitled to processing on its timetable because "claims involving entitlement to expedited processing are appropriately addressed through motions for preliminary relief," Pl's Mem. at 17, misses the point. Although a Court can review a claim that expedited processing was improperly denied, 5 U.S.C. § 552(a)(6)(e)(iii), and it may need to do so in a timely manner so as to ensure that if it reverses an agency's decision to deny expedited processing the FOIA requestor gets the benefit of its decision, in this case, all of plaintiff's requests for expedited processing were granted. The judicial review provisions relating to expedited processing, accordingly, have no bearing whatsoever. See id. (limiting judicial review to "[a]gency action to deny or affirm denial of a request for expedited processing . . . and failure by an agency to respond in a timely manner to such a request").

More to the point, plaintiff's allegation that DOJ has violated FOIA is predicated on the assumption that the expedited processing provision of FOIA requires an agency to complete its processing within a specific period of time. The statute, however, does not require agencies to process expedited requests within a specific time limit. Instead, the statute directs agencies to "process <u>as soon as practicable</u> any request for records to which [they have] granted expedited processing." 5 U.S.C. § 552(a)(6)(E)(III) (emphasis added); <u>see</u> <u>also</u> 28 C.F.R. § 16.5(d)(4) ("If a request for expedited treatment is granted, the request shall be given priority and shall be processed <u>as soon as practicable</u>") (emphasis added). As the Senate Report accompanying the FOIA amendments which inserted the expedited processing procedures explains, the intent of the expedited processing provision was to give certain requests <u>priority</u>, not to require that such requests be processed within a specific period of time:

> [Once] the request for expedited processing is granted, the agency must then proceed to process the request "as soon as practicable." <u>No specific number of days for compliance is imposed by the bill</u> since depending on the complexity of the request, the time needed for compliance may vary. <u>The goal is not to get the request processed within a specific time period, but to give the request priority in processing more quickly than would otherwise occur.</u>

S. Rep. 104-272, 1996 WL 262861, *17 (May 15, 1996) (emphasis added); <u>see</u> <u>also</u> H. R. Rep. No. 104-795, <u>reprinted at</u> 1996 U.S.C.A.A.N. 3448, 3461 (Sept. 17, 1996) ("certain categories of requesters would receive priority treatment of their requests . . . ."). Thus, the expedited processing provision of FOIA is an ordering mechanism, allowing certain FOIA requestors to jump to the head of the line and avoid the ordinary "first in, first out" processing queue. Once a request is at the front of the line, however, "practicability" is the standard that governs how quickly any particular request can be processed.

Consistent with the plain language of the statute, and Congress's clearly stated intent, this Court has repeatedly recognized that when expedited processing of a FOIA request is granted, the

appropriate standard to be applied to determine when documents might be identified for release

is "as soon as practicable."  See American Civil Liberties Union v. U.S. Dept. of Justice, 321 F.

Supp. 2d 24, 38 (D.D.C. 2004) (Huvelle, J.) (granting request for expedited processing and

ordering that DOJ "shall process plaintiffs' requests for all records relating to section 215

consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4) ('as soon as

practicable')"); Edmonds v. Fed. Bureau of Investigation, 2002 WL 32539613, *4 (D.D.C. 2002)

(Huvelle, J.) (attached as Ex. F) (directing defendants to advise the Court "of the date when the

request will be processed consistent with 5 U.S.C. § 552(a)(6)(E)(iii) and 28 C.F.R. § 16.5(d)(4)

('as soon as practicable')"); see also Leadership Conf. on Civil Rights v. Gonzales, ___ F. Supp.

2d ___, 2005 WL 3360884, *11 (D.D.C. 2005) (Lamberth, J.) (attached as Ex. G) (ordering DOJ

to "expedite processing plaintiff's FOIA requests and produce the requested documents to

plaintiff as soon as practicable, but no later than . . . two years from the date on which the

complaint was initially filed").

Plaintiff ignores the plain language of the statute, the clear legislative intent, and the past

practice of this Court, and instead, attempts to invent a time limit applicable to its expedited

requests by citing 5 U.S.C. § 552(a)(6)(A)(i), which it characterizes as the "20 working day time

frame for processing a standard FOIA request not entitled to expedited treatment."[7]  Pl's Mem.

at 1.  That provision has no bearing on when expedited processing must be completed.  See

American Civil Liberties Union v. Dept. of Defense, 339 F. Supp. 2d 501, 503 (S.D.N.Y. 2004)

("While it would appear that expedited processing would necessarily require compliance in fewer

than 20 days, Congress provided that the executive was to 'process as soon as practicable' any

---

[7]  5 U.S.C. § 552(a)(6)(i) provides that an agency shall "determine within twenty working days (except Saturdays, Sundays, and legal public holidays) after the receipt of the request whether to comply with such request."

expedited request."). An agency's inability to respond within the 20-day period simply means that the requestor may, before a response has been made, file suit and be found to have constructively exhausted administrative remedies. See The Nation Magazine v. Dept. of State, 805 F. Supp. 68, 72 (D.D.C. 1992). The provision does not purport to establish an "outside" time limit on what is "practicable" in responding to an expedited request.

Indeed, courts have found that the 20-working day response time is not itself a rigid requirement, and have routinely allowed agencies to process FOIA requests under the "first in, first out" rule. See Judicial Watch v. Rossotti, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (Collyer, J.) ("Certainly, it took longer than twenty days to respond to Judicial Watch's FOIA requests, but that is explained by the nature of these requests, the many offices to which they were directed, the number of FOIA requests [the agencies] regularly receive, and the treatment of FOIA requests on a first in/first out basis."); see also id. ("there are often instances where an agency will not be able to meet [the twenty-day] deadline"). Thus, under FOIA, a court may grant an extension to allow the agency to finish its search and processing where the agency has been unable to meet the deadline because of exceptional circumstances. See 5 U.S.C. § 552(a)(6)(c); see also Open America v. Watergate Special Prosecution Force, 547 F. 2d 605, 615 (D.C. Cir. 1976).[8]  Such circumstances make the 20-day deadline "not mandatory but directory." Id. at 616. As such, the 20-day requirement can hardly be found to establish a mandatory deadline as to the "practicability" of responding to expedited requests.

Instead, what is practicable will vary depending on the size, scope, detail, number of

---

[8] As the Court of Appeals explained in Ogelsby v. United States Dept. of Army, 920 F.2d 57 (D.C. Cir. 1990), "[f]requently if the agency is working diligently, but exceptional circumstances have prevented it from responding on time, the court will refrain from ruling on the request itself and allow the agency to complete its determination." Id. at 64.

offices with responsive documents, other agencies or components which must be consulted or to which documents might have to be referred for additional review, and exemption issues. Plaintiff has made broad FOIA requests seeking "agency records (including but not limited to electronic records) from September 11, 2001, to the present concerning a presidential order or directive authorizing the National Security Agency ('NSA'), or any other component of the intelligence community, to conduct domestic surveillance without the prior authorization of the Foreign Intelligence Surveillance Court ('FISC')."

Plaintiff's request seeks documents spanning four-plus years relating to a program which, by its very nature and as the exhibits attached to plaintiff's motion make clear, is classified. See Pl's Ex. 1 at 4 ("The legal opinions that support the N.S.A. operations remain classified. . . ."); Pl's Ex. 3 at 1 ("The program remains highly classified"); Pl's Ex. 4 at 1 ("These critical national security activities remain classified").  The existence of any significant volume of classified materials, however, contributes mightily to the complexities attendant to processing a FOIA request.  Thus, classified documents responsive to plaintiff's request must be identified by a person within the limited universe of those with appropriate clearances, and must be evaluated for release under 5 U.S.C. § 552(b)(1), and Executive Order 12958, as amended, 68 Fed. Reg. 15315 (March 25, 2003); see also 28 C.F.R. § 16.4(e), § 16.7.[9]  As Congress has

---

[9]  Executive Order 13292, 68 Fed. Reg. 15315, sets forth the amended text of Executive Order 12958, which establishes a uniform system for classifying, safeguarding, and declassifying national security information, and specifically provides that "[w]hen an agency receives any request for documents in its custody that contain information that was originally classified by another agency . . . it shall refer copies of any request and the pertinent documents to the originating agency for processing, and may, after consultation with the originating agency, inform any requester of the referral unless such association is itself classified under this order or its predecessors." Id. § 3.6(b).  Department regulations similarly provide that "[w]henever a request is made for a record containing information that has been classified, or may be appropriate for classification, by another component or agency under Executive Order 12958 or any other executive order concerning the classification of records, the receiving component shall

recognized, such review may require additional time.  See H. R. Rep. No. 104-795, 1996

U.S.C.A.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a

timely manner, the Committee does not intend to weaken the interests protected by the FOIA

exemptions.  Agencies processing some requests may need additional time to adequately review

requested material to protect these exemption interests.  For example, processing some requests

may require additional time to properly screen material against the inadvertent disclosure of

material covered by the national security exemption").  Moreover, documents subject to other

exemptions, see generally 5 U.S.C. § 552(b), must similarly be identified and, where necessary,

redacted, and documents generated by other agencies or authorities must be referred for review

back to those same agencies or authorities.  Plaintiff offers no reason to believe that the agency is

not performing these tasks as soon as practicable, and thus fails to meet its burden of

demonstrating, "by a clear showing," Mazurek, 520 U.S. at 972, that relief of any kind is

warranted at this juncture.

## II.    PLAINTIFF FAILS TO IDENTIFY THE EXISTENCE OF ANY IRREPARABLE HARM IN THE ABSENCE OF A PRELIMINARY INJUNCTION.

"The basis of injunctive relief in the federal courts has always been irreparable harm."

CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir.1995) (citing

Sampson v. Murray, 415 U.S. 61, 88 (1974)).  In order for a plaintiff to meet its burden of

demonstrating irreparable harm sufficient to warrant the entry of preliminary injunctive relief, the

injury complained of must be both certain and great; it must be actual and not theoretical.

---

refer the responsibility for responding to the request regarding that information to the component
or agency that classified the information, should consider the information for classification, or
has the primary interest in it, as appropriate."  28 C.F.R. § 16.4(e).  Those regulations further
provide that "[i]n processing a request for information that is classified under Executive Order
12958 . . . or any other executive order, the originating component shall review the information
to determine whether it should remain classified."  28 C.F.R § 16.7.

Injunctive relief "will not be granted against something merely feared as liable to occur at some indefinite time." Wisc. Gas. Co. v. Federal Energy Regulatory Comm'n, 758 F.2d 669, 764 (D.C. Cir. 1985) (citation omitted). Instead, the party seeking injunctive relief must show that "[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm." Id. (citations and internal quotations omitted). It is a "well known and indisputable principle[]" that a vague or speculative harm cannot constitute "irreparable harm" sufficient to justify injunction relief. Id. A plaintiff's failure to meet its burden of establishing irreparable harm is sufficient, in itself, to deny emergency relief. CityFed Fin. Corp., 58 F.3d at 747.

Plaintiff seeks an order compelling the Department to release records that it is still processing within the narrow time frame of twenty days. Yet, plaintiff has identified no "certain and great" harm it will incur if the records are not processed within that time frame. First, plaintiff claims that its statutory right to expedition will be lost if the preliminary injunction it seeks is not granted. Pl's Mem. at 13. This argument is specious. All four DOJ components to which plaintiff's FOIA requests were directed have granted plaintiff expedited processing. Thus, plaintiff's requests have been prioritized over other requests pending when plaintiff's were filed, and have moved to the front of each component's queue for immediate processing. Plaintiff's statutory right to expedited processing entitles it to nothing more. Rather, as is plain from the terms of the statute, "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedited processing." 5 U.S.C. § 552(a)(6)(e)(iii). Thus, the expedited processing provision is an ordering mechanism only – intended to give certain requestors priority over all other requestors who remain subject to the ordinary "first in, first out" processing queues. That provision does not – and indeed, could not in light of the various factors

that must be taken into account by an agency processing a FOIA request – guarantee any FOIA requestor a response to its request in any particular time.

Plaintiff's second claimed injury is similarly insufficient to establish a right to the extraordinary remedy of a preliminary injunction. Plaintiff argues that its ability "and that of the public to obtain in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program" will be irreparably harmed if preliminary relief is not awarded. Pl's Mem. at 14-15. This formulation begs the question: What certain and great harm will plaintiff suffer in the immediate future as a result of not having this information in the artificial time frame that plaintiff demands, as opposed to the time frame that Congress has established ("as soon as practicable"). For one thing, plaintiff appears to be describing a harm that is suffered primarily by the public, not by plaintiff itself. The public interest is properly considered as its own factor in the injunction analysis – and, as explained below, in this case the public interest counsels against the award of the preliminary injunction plaintiff seeks – but it cannot be substituted for a showing that plaintiff itself will be harmed.[10]

Plaintiff's argument that it requires disclosure in order to inform the "meaningful" public debate or in order to know "what the Government is up to," see Pl's Mem. at 15, simply fails to demonstrate any irreparable harm that plaintiff will suffer if the documents it demands are not processed within the next twenty days. As a preliminary matter, plaintiff's claim that it cannot adequately participate in the public debate concerning the program rings substantially hollow. To the extent possible, given the level of classification to which the program is subject, the

---

[10] As plaintiff notes, Congress plans to hold hearings on the matter. See Pl's Exs. 5, 6. Such hearings present yet another vehicle for public discourse and consideration of the public's interest.

President has more than once addressed the program publicly.[11]  Similarly, Principal Deputy

National Intelligence Director Michael Hayden has recently spoken on the subject,[12] as has the

Attorney General.[13]  And a 42-page White Paper, detailing the legal underpinnings of the

program has been made available to Congress and the public.[14]  Each of these public statements

had emphasized the classified nature of the program, and yet, in each case, the government has

been as forthcoming as it can be – without compromising classified information or the national

security of the United States – in an effort to provide the public with information that plaintiff

seeks by way of its FOIA request.  Based upon the information that the government has already

made public, therefore, plaintiff is fully able to participate in the current public debate and can

demonstrate no harm stemming from the absence of the injunctive relief it seeks.

      Moreover, in light of the fact that plaintiff cannot now show what non-exempt

information – if any – it may eventually receive as a result of the completed processing of its

FOIA requests, plaintiff cannot meet its burden of demonstrating that it will be irreparably

harmed if it fails to received that information in the next twenty days.  See The Nation Magazine,

---

[11]  See, e.g.,"President Discusses Global War on Terror at Kansas State University," January 23, 2006, transcript available at http://www.whitehouse.gov/news/releases/2006/01/20060123-4.html; Pl's Ex. 2;

[12]  See Remarks by General Michael V. Hayden, Principal Deputy Director of National Intelligence and Former Director of the National Security Agency, Address to the National Press Club, What American Intelligence & Especially the NSA Have Been Doing to Defend the Nation, January 23, 2006, available at http://www.dni.gov/release_letter_012306.html; see also Pl's Ex. 3.

[13]  See Prepared Remarks for Attorney General Alberto R. Gonzalez at the Georgetown University Law Center, January 24, 2006, available at http://www.usdoj.gov/ag/speeches/2006/ag_speech_0601241.html; see also Pl's Exs. 3, 4.

[14]  See U.S. Department of Justice, "Legal Authorities Supporting the Activities of the National Security Agency Described by the President," January 19, 2006, available at http://news.findlaw.com/hdocs/docs/nsa/dojnsa11906wp.pdf.

805 F. Supp. at 74 (denying motion for preliminary injunction on ground that plaintiff had failed

to demonstrate irreparable harm because "[e]ven if this Court were to direct the speed up of

<u>processing</u> of their requests, [plaintiffs] have not shown at this time that they are entitled to the

<u>release</u> of the documents that they seek.  To the contrary, it is undisputed that at least some of the

documents are probably exempt from production under FOIA").  Even with respect to any non-

exempt documents that may be released once processing is complete, plaintiffs' ability to inform

the public about the subject matter of its FOIA requests will not be precluded, but merely

postponed (and, as already noted, plaintiff's requests have already been granted expedition and

thus, any such release will occur as soon as practicable).  Thus, even if a delay in the discussion

would cause some unidentified harm – and plaintiff makes no showing of such – that harm,

which can be cured at a later date, is hardly irreparable.  <u>Wisc. Gas Co.</u>, 758 F.2d at 674 ("[t]he

possibility that adequate compensatory or other corrective relief will be available at a later date,

in the ordinary course of litigation weighs heavily against a claim of irreparable harm") (quoting

<u>Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n</u>, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Plaintiff's claim that preliminary injunctive relief is necessary because "time is of the

essence" and because DOJ granted plaintiff's request for expedited processing, thereby

recognizing the urgency of the matter, is circular.  If plaintiff's view prevailed, anyone who

sought to have their FOIA request processed on an expedited basis would automatically have a

claim of irreparable injury regardless of whether any real harm existed.  Because all who seek

expedited processing subjectively believe they are legitimately entitled to it, the request itself

would be a proxy for the required showing of irreparable harm.  This was not the result

contemplated by Congress when it authorized a limited exception for expedited processing.

Instead, Congress deferred to the necessity for ensuring adequate time for appropriate agency

processing, and mandated only that expedited requests be processed "as soon as practicable." Thus, while the purported urgency of plaintiff's request may be a factor in determining whether a request for expedited treatment will be granted, see 5 U.S.C. § 552(a)(6)(E)(v)(ii), it is not a factor in determining the speed by which an agency needs to complete the request.  As previously explained, the statute does not require an agency to complete the processing "as soon as a requestor needs it" or "as soon as possible."  The standard articulated in the statute is "as soon as practicable," which must be judged solely by the complexity of the request and the resources available to the agency.  Plaintiff makes no showing that the Department is not meeting that standard; nor could it do so in the light of the short time that has elapsed since plaintiff's broad requests were received.

Finally, plaintiff's exaggerated claim that preliminary injunctive relief must be granted because if it is not "all opportunity to grant the requested relief [is] foreclosed," Pl's Mem. at 15, is perplexing if not utterly nonsensical.  Plaintiff appears to be suggesting that if this Court does not step in to hurry the processing of documents, neither plaintiff nor the public will ever gain access to any non-exempt documents responsive to plaintiff's FOIA requests that are in the possession of defendants.  It is scarcely necessary to point out that this Court will be just as capable of ordering production of any documents it might find to be improperly withheld later as it is now.  Because plaintiff has failed to establish irreparable harm stemming from denial of the preliminary injunction that it seeks, its motion should be denied.

## III.   THE REQUESTED PRELIMINARY INJUNCTION WILL HARM THE PUBLIC INTEREST.

Plaintiff's failure to show that it would be irreparably harmed if the requested injunction is not granted is by itself sufficient to defeat their motion for preliminary injunction.  CityFed Fin. Corp., 58 F.3d at 747.  There is further reason, however, not to grant the injunction.  In

addition to any harm that may befall plaintiff in the absence of the requested injunction, the court

must consider whether an injunction of the sort demanded by plaintiff would be in the public

interest.  See Al-Fayed, 254 F.3d at 303; accord Serono Labs., Inc., 158 F.3d at 1317-18.

Although plaintiff claims that it seeks "nothing more of the government than what the law

already mandates – the expedited processing of plaintiff's FOIA requests," Pl's Mem. at 15, it in

fact seeks much more.  As already described, FOIA requires that expedited requests be processed

by the agencies "as soon as practicable," a principle that this Court has repeatedly recognized.

See American Civil Liberties Union, 321 F. Supp. 2d at 38; Edmonds, 2002 WL 32539613, at *4

(Ex. F); Leadership Conference on Civil Rights, 2005 WL 3360884, at *11 (Ex. G).  Plaintiff's

effort to impose an artificial time frame on DOJ does not take account of the realities attendant to

processing a request like plaintiff's, including the necessity to identify responsive materials, to

identify and review a significant volume of classified materials, to consult with other component

or agencies, as well as to make appropriate referrals, claims of exemption and redactions.  That

process simply cannot be completed in the twenty-day time frame plaintiff proposes.  See, e.g.,

Pl's Ex. 12.

    Plaintiff's request for the proposed preliminary injunction ignores these realities, and, as a

result, threatens to compromise the delicate balancing of the public interest that Congress

undertook in enacting FOIA between the general interest in disclosure of government

information and the necessity of ensuring that certain types of documents, the disclosure of

which would cause harm, were not to be disclosed.  The exemptions listed in § 552(b) embody a

judgment by Congress that the public interest would best be served by allowing the agencies to

withhold certain records – for example, those records whose disclosure would interfere with

other vital public interests such as national security, 5 U.S.C. § 552(b)(1); efficient and frank

intra- and inter-agency deliberations and attorney-client communications, 5 U.S.C. § 552(b)(5); or effective law enforcement, 5 U.S.C. § 552(b)(7).  As noted above, Congress specifically noted that even with respect to expedited requests, in certain cases, depending on the subject matter of the request, additional time would be required to ensure that the public's interest in preventing the public disclosure of these exempted documents was not compromised.  See H. R. Rep. No. 104-795, 1996 U.S.C.A.A.N. at 3466 ("In underscoring the requirement that agencies respond to requests in a timely manner, the Committee does not intend to weaken the interests protected by the FOIA exemptions.  Agencies processing some requests may need additional time to adequately review requested material to protect these exemption interests.  For example, processing some requests may require additional time to properly screen material against the inadvertent disclosure of material covered by the national security exemption").  As Congress acknowledged, those concerns are only heightened in a case such as this one, where classified documents are at issue, and the Department has independent obligations under federal regulations and Executive Order to ensure that no unwarranted disclosure occurs.

Ordering the Department to disclose documents not "as soon as practicable" as dictated by FOIA, but rather on plaintiff's artificial timetable, causes significant harm to this delicate balancing of these competing public interests.  The bare fact that the records may shed light on "what the government is up to," Pl's Mem. at 15, does not outweigh the harm to the public interest that would be caused by compelling disclosure before appropriate agency review intended to protect material that is subject to statutory exemptions from disclosure can be completed.

## CONCLUSION

For the reasons stated herein, plaintiff has failed to demonstrate any entitlement to a preliminary injunction.  Plaintiff's motion should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General, Civil Division

KENNETH J. WAINSTEIN
United States Attorney

JOSEPH H. HUNT
Director, Federal Programs Branch

ELIZABETH J. SHAPIRO
Assistant Director, Federal Programs Branch


_____/s/ Rupa Bhattacharyya_____
RUPA BHATTACHARYYA (VA# 38877)
Senior Trial Counsel
Federal Programs Branch, Civil Division
United States Department of Justice
P.O. Box 883, 20 Massachusetts Ave., N.W.
Washington, D.C.  20044
Tel: (202) 514-3146
Fax: (202) 318-7593
Email: rupa.bhattacharyya@usdoj.gov

Dated:   January 26, 2006.

# Exhibit B

**Reply in Support of Plaintiff's Motion for a Preliminary Injunction**

*Electronic Frontier Foundation v. Dep't of Justice, C.A. No. 07-0656 (JDB)*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
ELECTRONIC PRIVACY           :
INFORMATION CENTER,          :
                             :
          Plaintiff,         :
                             :
     v.                      :     Civil Action No. 05-845 (GK)
                             :
DEPARTMENT OF JUSTICE,       :
                             :
                             :
          Defendant.         :
_____:
```

MEMORANDUM ORDER

Plaintiff is a public interest research organization which, among other things, reviews federal law enforcement activities and policies to determine their potential impact on privacy interests and civil liberties. On March 29, 2005, Plaintiff filed a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for the release of various information related to the "USA PATRIOT ACT of 2001," Pub. L. No. 107-56, 115 Stat. 272 (2001). Compl. ¶ 8. Plaintiff sought expedited processing of its FOIA request. Id. ¶ 9.

By letter dated April 12, 2005, the Federal Bureau of Investigation ("FBI"), a component of Defendant, granted Plaintiff's request for expedited processing. Pl's Mot. to Compel, Ex. 3. Thereafter, Plaintiff filed this lawsuit claiming Defendant failed to process Plaintiff's FOIA request in a timely manner. On

June 14, 2005, Plaintiff filed a Motion to Compel Expedited Processing of Plaintiff's FOIA Request ("Plaintiff's Motion").

On November 8, 2005, a Status Conference was held, during which the parties reiterated their positions with respect to the processing of Plaintiff's FOIA request. That same day, the Court granted Plaintiff's Motion, and ordered the parties to submit a Joint Praecipe with a proposed timeline for processing the remaining pages, or notify the Court that they were unable to come to an agreement. The parties were informed that if they were unable to come to an agreement, the Court would enter an order based on the record before it. On November 14, 2005, the parties informed the Court that they were unable to reach an agreement regarding the remaining pages.

The Court is unable to determine, based on the Government's representations at the Status Conference and various written submissions made during this litigation, how many pages it can actually process within a given time frame. At the Status Conference, the Government represented that the universe of potentially responsive pages had been narrowed from approximately 130,000 to 18,000. As early as June 29, 2005, the Government had already determined that 5,000 pages of the 18,000 were potentially responsive. Def.'s Opp'n to Pl.'s Mot. to Compel, Att. A ¶ 20. Yet the Government has not stated that any of those 5,000 pages

have been completely processed,[1] nor that any of those pages have been turned over to Plaintiff.

To provide another example of the inadequacy of the Government's responses to Plaintiff's Motion, it filed, in support of its Opposition to Plaintiff's Motion, the Declaration of David M. Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, FBI Headquarters. Hardy attested that the FBI should be able to process 1,000 pages per month for responsiveness. Opp'n, Att. A ¶ 26. However, at the Status Conference, almost seven months after the FBI agreed to process Plaintiff's FOIA request on an expedited basis, the Government was still unable to give even an estimate as to how far along in the review process it was. Nor could the Government provide an estimate as to when processing would be completed.

What is clear is that Plaintiff's FOIA request, which should have been processed on an expedited basis, has been pending for nearly eight months. An incredibly small amount of pages has been released to Plaintiff.[2] While the Court recognizes the difficulty the Government has had in processing Plaintiff's request, the

---

[1]   The Government represents that "because of the nature of plaintiff's request, identification of responsive records has proven much more difficult than initially anticipated."  Def.'s Resp. to Pl.'s Notice of Filing at 1.

[2]   The Government represented at the Status Conference that only about 250 pages had been released to Plaintiff.

record shows that Defendant's efforts have been unnecessarily slow and inefficient.

Upon consideration of the Motion, Opposition, and Reply, the representations made during the Status Conference, the parties' submissions in response to the Court's November 8, 2005 Order, and the entire record herein, it is hereby

**ORDERED** that Defendant shall complete the processing of 1500 pages every 15 calendar days, and provide to Plaintiff all responsive non-exempt pages contained therein, until processing is complete;[3] it is further

**ORDERED** that Defendant shall notify Plaintiff of the total number of pages responsive to Plaintiff's FOIA request within 60 calendar days; and it is further

**ORDERED** that Defendant is not required to categorize responsive documents according to Plaintiff's different FOIA requests.

---

[3]    The Court recognizes that there are several layers of review, each of which take time.    However, the Government has represented that it is processing Plaintiff's FOIA request on a rolling basis, _i.e.,_ after a group of documents are reviewed for responsiveness, they are immediately moved to the next stage of review.    Therefore, at this point, there should be a number of documents at various stages of the review process, and Defendant should be able to comply with this Order without the need for an initial grace period.

```
                                          /s/
                                      _____
                                      Gladys Kessler
                                      United States District Judge
```

November 16, 2005


**Copies to**: **attorneys of record via ECF**

# Exhibit C

**Reply in Support of Plaintiff's Motion for a Preliminary Injunction**

***Electronic Frontier Foundation v. Dep't of Justice, C.A. No. 07-0656 (JDB)***

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Civil Action No.  05-CV-845 (GK) ECF |
| U.S. DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C.  I have held this position since August 1,

2002.  Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the

Assistant Judge Advocate General of the Navy for Civil Law.  In that capacity, I had

direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals,

and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy

Judge Advocate at various commands and routinely worked with FOIA matters.  I am

also an attorney and have been licensed to practice law in the State of Texas since

1980.

(2)     In my current capacity as Section Chief, I supervise the Freedom of

Information/Privacy Acts ("FOIPA") Litigation Support Unit ("LSU").  The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a.  Specifically, I am aware of the treatment which has been afforded plaintiff's FOIA request to FBIHQ for the expedited release of agency records related to the FBI's use of certain provisions of the USA PATRIOT Act.

(4)    The purpose of this declaration is to provide the Court and plaintiff with an explanation of the FBI's record-keeping system, FBI FOIA processing procedures, the FBI's efforts to expedite plaintiff's request, and to respond to the arguments raised by plaintiff in *Plaintiff's Motion to Compel Expedited Processing of Plaintiff's Freedom of Information Act Request.*

**OVERVIEW OF FBI'S FOIA PROCEDURE**

A. **HOW A FOIA REQUEST IS PROCESSED IN RIDS**

(5)    Over the years, the FOIA Section at FBIHQ  has engaged in a continuing effort to improve its procedures in order to  better serve the needs of requesters who seek information from the FBI.  In 2002, reorganization of various divisions at FBIHQ resulted in the formation of the RMD, which now handles all FOIA and Privacy Act

–2–

requests through RIDS. These most recent efforts have resulted in the following organizational plan which will be discussed in more detail below.

(6)     The mission of RIDS is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information. RIDS is responsible for providing program and policy management pertaining to the researching, reviewing, analyzing, processing, and classification/declassification work relating to FOIA and Privacy Act, Executive Order 12958, as amended, Presidential, Attorney General, and FBI policies and procedures, judicial decisions, and other Presidential and Congressional directives. RIDS also provides prepublication review of material written by current and/or former FBI employees concerning FBI matters as mandated by the FBI's employment agreement. RIDS currently employs 247 employees, most of whom are Legal Administrative Specialists ("LASs"), and who are assigned among the ten (10) Units within RIDS, whose shared function is to intake, review, process, and release information in response to FOIA and Privacy Act requests. To accomplish this mission, RIDS consists of the following ten Units: the Service Request Unit ("SRU"), two Work Process Units ("WPU"), three Classification Units ("CU"), three Freedom of Information and Privacy Acts ("FOIPA") Units ("Disclosure Units"), and the Litigation Support Unit ("LSU").

(a)     The **Service Request Unit** ("SRU") is responsible for reviewing and sorting all correspondence/incoming requests for information from the public, Congress, Presidential Libraries, foreign governments, other federal and state agencies, and other FBI entities (i.e., FBI field offices, Legats). The SRU handles various initial tasks required to "perfect" a FOIA/Privacy Act request, including sending

-3-

letters to acknowledge requests, advising a requester to provide identifying data so that
an accurate records search can be made and/or to submit a notarized signature/Privacy
Act waiver, or advising a requester when no responsive records are located; opens new
requests and assigns a FOIPA Request Number; and enters the perfected requests into
the FOIPA Document Processing System ("FDPS") tracking system. The Negotiation
Team, also a part of SRU, works with requesters whose requests generate a large
volume of records in an attempt to narrow the scope of responsive records and facilitate
a more rapid response. Finally, the Government Response Team ("GRT"), also a part
of SRU, provides timely feedback to other federal agencies and other DOJ components
with regard to referrals of documents – either sent for a consultation or for direct
response to the requester – which are either FBI-originated or contain FBI-originated
information.[1]

       (b)     The two **Work Process Units** ("WPUs") are responsible for
preparing SRU's "perfected" requests for transfer to the three Disclosure Units. The
WPUs conduct searches of the general indices for identifiable records, confirm
responsive documents, stamp files for retention, forward files requiring classification
review to the three Classification Units, address fee issues (other than fee waiver
reviews), retrieve and forward files for scanning into FDPS, respond to status inquiries,

---

[1] The Government Response Team ("GRT") was formerly known as the "Government
Response & Prepublication Review Unit." However, an internal reorganization recently
resulted in shifting the GRT and its functions to the SRU, and shifting the Prepublication
Review Team and its functions of prepublication review of all material written by current
and/or former FBI employees concerning FBI matters as mandated by the FBI's
employment agreement to the RIDS front office.

handle administrative appeals, and maintain requests prior to their in-turn transfer to the Disclosure Units.

(c)     The three **Classification Units** ("CUs") are responsible for complying with the classification/declassification review of FBI records under Executive Order 12958, as amended, and the July 1995 DOJ Memorandum of Understanding. The CUs review documents responsive to FOIA/Privacy Act requests, criminal and civil discovery requests, Congressional and Presidential mandates, Presidential Library requests, mandatory declassification requests, Office of Inspector General Reports, and other federal agency requests in order to determine whether such material should remain classified or be declassified. In addition, the CUs review and prepare classified material for review by the Department of Justice Review Committee ("DRC").[2]

(d)     The three **FOIPA Units** ("Disclosure Units") perform the actual processing of all records pursuant to the provisions of the FOIA and Privacy Act. "Processing" involves a page-by-page, line-by-line review of the responsive documents to determine which, if any, FOIA and/or Privacy Act exemptions may apply. This includes redaction of the exempt material and notation of the applicable exemption(s) in the margins of each page and/or preparation of deleted page information sheets when pages are withheld in their entireties (now done electronically in FDPS). During the course of their review, the Disclosure Units consult with other government agencies for their determination as to the releasability of their information contained within FBI

---

[2] The DRC is the FBI's appellate authority with regard to the implementation and administration of Executive Order 12958, as amended, and related directives and guidelines concerning classified information. See 28 C.F.R. § 17.14 (2003).

records, or refer non-FBI documents to those originating agencies for processing and direct response. The Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been applied properly, that no releasable material has been withheld, that no material meriting protection has been released, that all necessary classification reviews have been completed, and that other government agency information and/or entire documents originating with other government agencies have been properly handled.

(e)     The **Litigation Support Unit** ("LSU") is responsible for providing legal support and administrative assistance to the FBI's Office of the General Counsel ("OGC") and Chief Division Counsels and Associate Division Counsels in the FBI's field offices, in all FOIA/Privacy Act requests that result in federal litigation. The LSU coordinates the progress of the FBI's response to a particular FOIA/Privacy Act request as it progresses through the units described above, coordinates the receipt of substantive litigation-related information from involved FBI Special Agents ("SAs") in the field offices and the operational Divisions at FBIHQ, and coordinates the referral of documents to other DOJ components and government agencies. The LSU prepares the administrative record, drafts both procedural and substantive declarations and court pleadings, codes documents processed by the Disclosure Units, and drafts detailed declarations justifying the assertion of all applicable FOIA/Privacy Act exemptions.

(7)     After SRU and WPU perfect a request, the request is sent to the "perfected backlog." To ensure fairness to all requesters and to equitably administer the large numbers of FOIA/Privacy Act requests received by the FBI, a request is assigned based on the date of receipt on a "first in/first out" basis from within each of

–6–

three queues according to sound administrative practices.[3] The FBI uses a three-queue system as a way to perfect and assign new requests.[4] The three-queue system establishes a "multi-track" processing system for requests, based on the amount of time and work involved in handling a particular request.[5] The system nevertheless preserves the principle that, within the three queues, requests are assigned and processed on a first-in/first out basis. The placement of a request in one of the three queues depends on the total amount of material responsive to that request – 500 pages or less ("small queue"), 501 to 2,500 pages ("medium queue"), or more than 2,500 pages ("large queue"). This standard operating procedure, coupled with the FBI's "first in/first out" policy, permits requests to be addressed in the order in which they are received, while obviating the inequities to other requesters whose interests relate only to a small number of documents. As described earlier, requesters whose requests have been placed in the large queue are given the opportunity, through contact with SRU's Negotiation Team, to reduce the scope of their requests and accelerate assignment of their requests by relocating them to a more advantageous queue.

(8)     LASs frequently work on more than one request at a time because it is not always administratively efficient to work only one request to completion before proceeding to the next. Processing of a complex case may be halted midstream for a variety of reasons, such as resolving a classification issue, locating records that may be

---

[3] See 28 C.F.R. § 16.5 (a) (2003).

[4] This system went into effect on July 10, 1997, superseding the previous system of two queues (one for 100 pages or less, the other for requests greater than 100 pages).

[5] See 5 U.S.C. § 552 (a) (6) (D) (I) and 28 C.F.R. § 16.5 (b) (2001).

missing, or consulting with other government agencies as to the nature and propriety of releasing certain information. In the interest of efficiency during this waiting period, other requests may be processed and released. Therefore, large requests are often processed in conjunction with smaller requests in an attempt to ensure that one requester does not consume a disproportionate share of RIDS resources.

(9)    Consistent with standard administrative procedure, any records referred to the FBI from other DOJ components in response to a particular request may be added to that pending FOIA/Privacy Act request. This process is an equitable way for RIDS to maintain administrative control of FOIA/Privacy Act requests. Under this system, the same LAS assigned to process a particular request will also handle the review of records referred by other DOJ components or government agencies. By ensuring continuity in the processing of FOIA requests, this system is not only fair to all persons seeking information under the FOIA, but is also administratively efficient, since the same issues presented by the referred records will already have been addressed by the LAS in processing the responsive FBI files.

## B. EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(10)    The Central Records System ("CRS"), which is used to conduct searches in response to FOIA and Privacy Act requests, enables the FBI to maintain all information which it has acquired in the course of fulfilling mandated law enforcement responsibilities. The records consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes. This system consists of a numerical sequence of files broken down according to subject matter. The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter. Certain records in this system are maintained at FBIHQ. Records that are pertinent to specific field offices are maintained in those field offices.

(11)    Access to the CRS is afforded by the General Indices, which are arranged in alphabetical order. The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices. The entries in the General Indices fall into two categories:

(a)  A "main" entry --- A "main" entry carries the name corresponding with a subject of a file contained in the CRS.

(b)  A "reference" entry — "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file.

(12)    Access to the CRS files at FBI field offices is also obtained by the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations. Searches made in the General Indices to locate records concerning a

–9–

particular subject are made by searching the subject requested in the index.  FBI field offices have automated indexing functions.

(13)    On or about October 16, 1995, the Automated Case Support ("ACS") was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ.  More than 105 million records were converted from automated systems previously utilized by the FBI.  ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a)    Investigative Case Management ("ICM") - ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads.  The Office of Origin ("OO"), which sets leads for itself and other divisions, as needed, opens a case.  The offices that receive leads are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices.  When a case is opened, it is assigned a Universal Case File Number ("UCFN"), such as "29-NY-240102," which is used by all FBI offices, including FBIHQ, that are conducting or assisting in the investigation.  The "29" indicates the type of investigation, "NY" indicates the Office of Origin of the investigation, in this example New York City, and "240102" denotes the individual case file number for that particular investigation.

(b)    Electronic Case File ("ECF") - ECF serves as the central electronic repository for the FBI's official text-based documents.  ECF supports the universal serial concept, where only the creator of a document serializes it into a file, providing single source entry of serials into the computerized system.  All original serials are maintained in the OO case file.

–10–

(c)    Universal Index ("UNI") - UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an 89.4 million record index, provides functions to index names to cases and to search names and cases for the FBI's investigative and administrative cases. Names of individuals or non-individuals are recorded with identifying information, such as sex, race, event date, date or place of birth, locality, Social Security number or address.

(14)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent, the supervisor in the field division conducting the investigation, and the supervising FBI Special Agent at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this mass of information, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to protect the Nation against terrorist attacks and investigate violations of federal criminal statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter.

**PLAINTIFF'S FOIA REQUEST**

**A. CORRESPONDENCE**

–11–

(15)    By letter dated March 29, 2005 to FBIHQ, plaintiff submitted an expedited request under FOIA for the following records:

> 1)  Any information concerning the FBI's use of authorities granted or expanded by Sections 201, 202, 203(b), 203(d), 204, 206, 207, 209, 212, 214, 217, 218, and 220 of the USA PATRIOT Act from October 26, 2001 to the present.
>
> 2)  Any information concerning the FBI's use of Section 215 of the USA PATRIOT Act from February 23, 2003 to the present.
>
> 3)  Any information or communications concerning sunset of USA PATRIOT Act provisions.

Plaintiff further requested expedited processing, stating that the subject matter of the request qualifies under the standard of an "urgency to inform the public about an actual or alleged federal government activity" and the request is made by "a person primarily engaged in disseminating information," citing 28 C.F.R.§ 16.5(d)(1)(ii).  The purpose of EPIC's request is to obtain information directly relevant to the upcoming decision by Congress whether or not to renew these provisions at the end of the year. **(See Exhibit 1.)**

(16)    By letter dated March 30, 2005, FBIHQ acknowledged receipt of plaintiff's request and advised that plaintiff's request was assigned Request Number 1017326-000. **(See    Exhibit 2.)**

(17)    By letter dated April 12, 2005, plaintiff was advised that the FBI granted its request for expedition pursuant to 28 C.F.R. § 16.5(d)(1)(ii).  Plaintiff was advised that its FOIA request would be assigned shortly and that a search  would be conducted for any potentially responsive records.  Plaintiff was further advised that the FBI was in the

–12–

process of evaluating plaintiff's fee waiver request and that plaintiff would be notified in the near future regarding this decision. (**See** Exhibit 3.)

**B.  SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST**

(18)    One of the difficulties in identifying records responsive to plaintiff's FOIA request has been the generalized nature of the subject matter, i.e., "FBI's use of authorities granted or expanded by Sections 201, 202, 203(b), 203(d), 204, 206, 207, 209, 212, 214, 217, 218 and 220 of the USA PATRIOT ACT." These subject matters do not lend themselves to the search methods normally used by the FBI to locate records responsive to FOIA requests. In response to plaintiff's FOIA request, the FBI first initiated a search of the automated general indices to the CRS at FBIHQ to identify any records pertaining to the relevant provisions of the USA PATRIOT Act. The following phrases were searched through the CRS: "US Patriot Act," "Patriot Act," "USA Patriot Act" and "Sunset Provision." As a result of this search, file 66F-HQ-C1364260 was located and determined to be potentially responsive to plaintiff's request.

(19)    In addition, RMD, in coordination with OGC, sent an Electronic Communication ("EC") to all FBIHQ divisions in order to determine what, if any, records they possessed responsive to plaintiff's FOIA request. The contacted offices were asked if they possessed any records responsive to plaintiff's request, or if they have knowledge as to where responsive records may be located. Those individuals and offices most likely to possess responsive records have undertaken searches of their files, including, but not limited to, responsive e-mails. Based on this request, positive responses were received from the Inspection Division, Laboratory Division, Office of

–13–

Congressional Affairs, and OGC. As a result of these search efforts, a voluminous amount of potentially responsive records have been located.

(20)    The process of collecting potentially responsive documents, (as well as negative responses) is ongoing. To date, approximately 5,000 pages of documents have been identified as potentially responsive to plaintiff's request. The FBI has begun its review of those documents located thus far in order to determine whether they are in fact responsive. Additionally, we estimate that there are more than 130,000 pages of potentially responsive documents that are being examined to ensure that they are within the scope of plaintiff's broad request. However, at this time, because search efforts and scope review are ongoing, the FBI is unable to state with any finality the number of pages that will ultimately be deemed responsive to plaintiff's request. Large amounts of documents continue to be produced as responding Divisions within the FBI identify and copy pages.

(21)    Because this request asks for documents which relate to national security issues, we anticipate that many of the responsive documents will be classified in whole or in part and therefore must be reviewed by the RIDS' Classification Unit ("CU") in accordance with the guidelines and directives for classification pursuant to Executive Order 12958, as amended. In evaluating whether to classify a document, the CU LAS considers information including, but not limited to, whether the information is already in the public domain or likely to be known or suspected by present or potential adversaries of the United States; whether information can be attributed to an intelligence source; and whether the information generally can threaten the national security of our country.

**EXPEDITED PROCESSING**

-14-

(22)    The FBI recognizes the importance of responding quickly to this expedited request and has been working diligently toward that goal. Documents located during the search process are currently being reviewed for responsiveness and scanned into the FDPS tracking system for processing and release. Once remaining scanning is completed, the request will be considered "perfected."

(23)    Under normal circumstances the case is then sent to the "perfected backlog" to wait its turn. However, since this case has been granted expedition, the FBI plans to immediately assign it to an LAS for processing and release.

(24)    While an accurate page count does not yet exist, the FBI roughly estimates that as many as 130,000 pages may be responsive to EPIC's request for USA PATRIOT Act documents. This clearly places the case in the large queue. As of June 24, 2005, there were 33 cases in the large queue backlog. Of those 33 cases, 9 were opened in 2003; the oldest of those cases was opened on June 13, 2003. Thus, expedition of plaintiff's request will result in should result in a minimum savings of approximately 730 days, or more than two years.

(25)    Plaintiff notes that the FBI recently reported in its annual report to Congress for 2004 that the median time to process an expedited case was 41 days from the date of the request (date opened in the system) to the date the release was made (date closed in the system). In 2004, 35 cases were granted expedition. Of those 35 cases, 28 were requests from prisoners on death row who are automatically granted expedition, and the average number of responsive pages was 16. Of the remaining seven requests, the range of pages was zero (no responsive records) to 3703, while the range of days to process was one day (for the "no records" request) to

–15–

341 days for the 3703- page request. Since the number of responsive records for this request will far exceed that number given the number of potentially responsive records, the processing time will undoubtedly exceed the 341 days. If we assume that nearly all of the records identified so far as potentially responsive are in fact responsive, which given the plaintiff's broad request we anticipate will be true, that means we will have 130,000 pages. I must emphasize this is a preliminary estimate. (See infra for a discussion regarding the backlog and processing times).

(26)    The number of  potentially responsive pages will likely exceed 130,000. Under current standards, an LAS should process 1,000 pages a month. By literally shutting down one of the three disclosure units – over which I have direct supervisory responsibility – of approximately 28 LASs each (two teams of 13 LASs per unit plus a team captain for each team, although vacancies exist)  to work on this request alone, it would still take more than four months to process 130,000 pages. The four-month figure does not account for time required by the CU, legal review, and final review by the document owners/originators for accuracy prior to release. For classification review alone, it is estimated that a review of 1,000 pages would take three reviewers approximately one week to process. This also does not take into account referrals and consultations which may need to be made with other agencies or DOJ components.[6]

---

[6]  During processing, if a document originating with another agency or DOJ component is located, or if information contained in an FBI document has originated with another agency or DOJ component, the FBI will refer that document and advise the requester that the referral was made.  The other agency/DOJ component then determines the applicability, if any, of the FOIA exemptions and then responds directly to the requester. If we discover an FBI document with information provided by another agency, we would consult with that agency as  to the applicability, if any, of FOIA exemptions to their information and we would either assert the applicable exemptions on their behalf

Moreover, because we anticipate that a significant portion of these documents will be classified, and/or contain material which is attorney/client, work product or deliberative process privileged, the actual amount of pages which will be released to plaintiff will be relatively small compared to the amount of pages withheld in full or in part. Thus, although an LAS may process 1,000 pages a month, the number of pages released will be significantly fewer. Let me once again emphasize that it is our belief that the 130,000-page count is a very conservative estimate. Should we be required to make additional shifts in personnel to comply with plaintiff's requested timetable, the effect would be devastating to the FBI's backlog of other cases.[7]

(27)    In addition, RIDS has taken all available steps to aid in the streamlining of the work and reduction of the FOIA/Privacy Act backlog. These include the use of direct on-line computer searches in order to locate responsive records, the use of forms which eliminate delays associated with word processing, the formation of specific teams to target backlog issues, the development of alternative methods to handle consultations with other government agencies, and the formation of the FOIPA LSU, which handles all FOIA/Privacy Act Litigation in RIDS.

---

or release the information.

[7] At this time, the FBI, through DOJ counsel, has been negotiating with plaintiff in order to reduce the scope of the request, and consequently the enormous impact the request in its current state would have on RIDS.

(28)    The FBI takes its responsibilities with regard to the administration of the FOIA/Privacy Act program very seriously, and all reasonable efforts will be made to continue to expedite plaintiff's request.

Pursuant to 28 U.S.C. § 1746, I declare the foregoing to be true and correct, and that Exhibits 1 through 3 attached hereto are true and correct copies.

Executed this ___29th___ day of June, 2005.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
 Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

–18–

# Exhibit D

**Reply in Support of Plaintiff's Motion for a Preliminary Injunction**

*Electronic Frontier Foundation v. Dep't of Justice, C.A. No. 07-0656 (JDB)*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER,<br><br>    Plaintiff<br><br>        v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
1:05CV00845 (GK)

## DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE OF FILING

Pursuant to this Court's order at the status conference on November 8, 2005, defendant attempted to reach an agreement with the plaintiff on a schedule for the processing of the remaining approximately 18,000 pages of potentially responsive documents to plaintiff's FOIA request. Unfortunately, defendant was not able to reach an agreement and hereby submits its alternative proposed order. See Attachment A. Defendant cannot agree to plaintiff's proposed order on two points.

1.    The rate of processing suggested by plaintiff in its proposed order – 3000 pages of responsive material (including both exempt and non-exempt material) every 15 days — is not reasonable. The standard for expedited processing set by FOIA is "as soon as practicable." 5 U.S.C. § 552(a)(6)(E). As defendant explained at the status conference, because of the nature of plaintiff's request, identification of responsive records has proven much more difficult than initially anticipated. While the FBI has completed the enormous task of narrowing the scope of potentially responsive pages of records from 130,000 to approximately 18,000 pages based on the time periods specified in plaintiff's FOIA request, attorneys familiar with the U.S. PATRIOT

Act provisions are still reviewing these 18,000 pages to determine which pages are actually responsive to plaintiff's request.

With enormous effort, FBI predicts that it could process approximately 3000 pages of records every 30 business days. To accomplish this rate, the FBI has assigned six attorneys (including a team leader) and three paralegals with expertise in the U.S. PATRIOT Act to review the records for responsiveness. In addition, the FBI has four paralegals plus a team leader working on a full-time basis to review the documents for exemptions. While the FBI predicted that an employee may be able to process approximately 1000 per month,[1] this does not mean that with four employees FBI can complete the processing of 4000 pages of records in one month. As Mr. Hardy explained in his declaration, this estimate did not include time required for classification review, legal review and final review by the document owners/originators for accuracy. Hardy Decl., ¶ 26. Because many of the records are classified, the FBI has assigned on a full-time basis four paralegals plus a team leader in its Declassification Review Unit to review these records. In addition, as Mr. Hardy explained in his declaration, once the documents have been reviewed for exemptions and declassification, the documents are subject to legal review to and final review by owners/originators for accuracy. This final review process adds additional time to the processing of the request.

2.    Plaintiff's proposed order requires FBI, within 45 days of the date of the order, to (a) make a final determination of the total number of pages of agency records responsive to plaintiff's request and (b) file with the Court a report "stating total number of pages responsive to each of the three categories of agency records identified in plaintiff's request." This demand

---

[1] Declaration of David M. Hardy, ¶ 26 (attached as Attachment 1 to Opposition to Plaintiff's Motion to Compel Expedited Processing of Plaintiff's Freedom of Information Act Request)

presents two problems.

a.    First, while the FBI is devoting a substantial amount of resources to its completion of the review of the records for responsiveness, 45 days is not sufficient. FBI estimate that it will take 60 business days to complete the process of reviewing the 18,000 pages of potentially responsive records to determine the number of pages of responsive records.

b.    Second, plaintiff's demand that FBI specify the number of pages responsive to each of the three categories of plaintiff's request adds an unnecessary burden on the FBI and slows down the process. It would require the FBI to re-review the records it has already determined to be responsive to determine which category or categories each record was responsive. Therefore, defendant could not agree to this additional and unnecessary burden.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L WAINSTEIN.
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

_Marcia Sowles_
MARCIA K. SOWLES, DC Bar No. 369455
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7108
Washington, D.C. 20530
Tel.: (202) 514- 4960
Fax: (202) 616- 8470
E-mail: marcia.sowles@usdoj.gov
Attorneys for Defendant