**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-656 (JDB) |
| | ) | |
| **DEPARTMENT OF JUSTICE,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF FILING OF PLAINTIFF'S PROPOSAL FOR A FREEDOM OF
INFORMATION ACT PRODUCTION SCHEDULE**

Pursuant to the Court's May 21, 2007 minute order, Plaintiff Electronic Frontier

Foundation ("EFF") reports that counsel for the parties in this action met in person on May 23,

2007, and conferred via telephone on May 24, 2007, in hopes of determining a mutually

agreeable processing schedule for EFF's March 12, 2007 Freedom of Information Act ("FOIA")

request for Federal Bureau of Investigation ("FBI") records concerning the Bureau's abuse of

investigative power.  The parties were unable to reach an agreement on processing, though EFF

has agreed to narrow the scope of its request to exclude material that comes from public sources.

At the Court's direction, EFF respectfully submits this report of additional relevant facts and its

proposal for a processing schedule for its FOIA request.

**ADDITIONAL FACTS**

The public urgency surrounding the subject of this request — the government's misuse of

National Security Letter ("NSL") investigative authority — has remained extraordinary since

Plaintiff filed its FOIA request on March 12, 2007.  The FBI's widespread abuse of NSLs

continues to be a subject of great interest to members of Congress, who have repeatedly raised

the issue in congressional hearings.  *See, e.g., The Inspector General's Independent Report of the*

*Federal Bureau of Investigation's Use of National Security Letters: Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Federal News Service March 20, 2007) (testimony of DOJ Inspector General Glenn Fine and FBI General Counsel Valerie Caproni on the FBI's abuse of NSLs); *Misuse of Patriot Act Powers: The Inspector General's Findings of Improper Use of the National Security Letters by the FBI: Hearing of the S. Comm. on the Judiciary,* 110th Cong. (Federal News Service March 21, 2007) (testimony of DOJ Inspector General Glenn Fine on his findings of NSL misuse); *Oversight of the Federal Bureau of Investigation: Hearing of the S. Comm. on the Judiciary,* 110th Cong. (Federal News Service March 27, 2007) (testimony of FBI Director Robert Mueller on the FBI's abuse of NSLs); *National Security Letters: Hearing of the H. Select Comm. on Intelligence*, 110th Cong. ( Federal News Service March 28, 2007) (two-panel hearing on the FBI's misuse of NSL authority); *Responding to the Inspector General's Findings of Improper Use of National Security Letters by the FBI: Hearing of the S. Comm. on the Judiciary, Subcomm. On the Constitution, Civil Rights and Property, Rights*, 110th Cong. (Federal News Service April 11, 2007) (testimony of privacy scholar, national security expert, and representatives of a non-profit organization and library consortium on the Inspector General's findings); *Department of Justice Oversight: Hearing of the S. Comm. on the Judiciary,* 110th Cong. (Federal News Service April 19, 2007) (Senator Leahy mentioning "widespread abuses of national security letters" as a problem compounding the effect of partisan politics); *The Foreign Intelligence Modernization Act of 2007: Hearing of the S. Intelligence Comm.*, 110th Cong. (Federal News Service May 1, 2007) (Senators Bond and Wyden questioning Assistant Attorney General for National Security Kenneth Wainstein and Director of National Intelligence Michael McConnell on the Bureau's response to the Inspector General's report and whether the standard for obtaining NSLs should be more strict); *Oversight of the U.S. Department of Justice:*

*Hearing of the H. Comm. on the Judiciary*, 110th Cong. (Federal News Service May 10, 2007) (Rep. Nadler questioning Attorney General Alberto Gonzales about the government's use of NSLs to conduct "fishing expeditions").

Furthermore, the National Security Letter Judicial and Congressional Oversight Act (H.R. 1739), which was introduced in reaction to the Inspector General's report revealing the Bureau's misuse of NSL authority, remains pending before the House Committees on Intelligence, the Judiciary, and Financial Services. *See* bill summary at http://thomas.loc.gov/cgi-bin/bdquery/z?d110:HR01739: (last visited May 24, 2007). These committees should have available as much information as possible about the FBI's misuse of NSLs as they weigh this legislative proposal.

## PROPOSAL FOR FOIA PROCESSING SCHEDULE

Pursuant to the Court's May 21, 2007 order, EFF proposes that the Court order the following processing schedule for EFF's March 12, 2007 request:

- Defendant DOJ and its component the FBI shall, within 20 calendar days of this Court's Order, complete the processing of no fewer than 1500 pages of agency records potentially responsive to Plaintiff's March 12, 2007 FOIA request, and provide to Plaintiff copies of all non-exempt material contained therein;

- Defendant DOJ and its component the FBI shall thereafter complete the processing of 1500 pages every 15 calendar days, and provide to Plaintiff all responsive non-exempt pages contained therein, until processing is complete.

- In an effort to minimize the number of exemption claims that must be litigated, Defendant DOJ shall produce a *Vaughn* index no later than 15 calendar days after processing is complete. EFF and Defendant DOJ shall then confer about the possibility

of removing any exemption claims from the scope of the litigation.

- No later than 45 calendar days after processing is complete, Defendant DOJ shall file its motion for summary judgment. No later than 15 calendar days thereafter, Plaintiff shall file its cross motion for summary judgment, if any, and/or its opposition to Defendant DOJ's motion for summary judgment. No later than 15 calendar days thereafter, Defendant DOJ shall file its opposition to Plaintiff's cross-motion for summary judgment, if any, and/or its reply to Plaintiff's opposition. No later than 15 calendar days thereafter, Plaintiff shall file its reply to Defendant DOJ's opposition to Plaintiff's cross-motion for summary judgment, if any.

The processing schedule that EFF proposes is modeled in part on Judge Kessler's order in *Electronic Privacy Information Center v. Dep't of Justice*, No. 05-845 (GK), 2005 U.S. Dist. LEXIS 40318, at * 5 (D.D.C. Nov. 16, 2005) ("*EPIC*"), a lawsuit concerning an expedited FOIA request for FBI records relevant to the reauthorization of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 ("PATRIOT Act"). Plaintiff believes these cases are factually similar in a number of important respects. First, both requests were relatively broad in scope and involved a search for a potentially voluminous number of agency records, the processing time for which the government had not determined at the time the processing schedule was ordered by the Court. *See EPIC* at ** 2-4; April 24, 2007 Declaration of David M. Hardy in Support of Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction, *Electronic Frontier Foundation v. Dep't of Justice*, No. 07-656 (JDB) ("April 24, 2007 Hardy Decl.") ¶¶ 4-6, 26. Furthermore, both requests sought records that require numerous stages of review, including for classification and withholdings under FOIA exemptions. June 29, 2005 Declaration of David M. Hardy in Support

4

of Defendant's Opposition to Plaintiff's Motion to Compel Expedited Processing of Plaintiff's

Freedom of Information Act Request, *Electronic Privacy Information Center v. Dep't of Justice*,

No. 05-845 (GK) ("June 29, 2005 Hardy Decl.") ¶¶ 21, 26 (attached hereto as Exhibit A); April

24, 2007 Hardy Decl.  ¶¶ 30-33. Finally, in both cases the DOJ was processing agency records

on a rolling basis, with groups of documents at various stages of review at any given time.  *See*

*EPIC* at * 5 n.3; April 24, 2007 Hardy Decl. ¶¶ 20, 33; Comments of DOJ Attorney Elisabeth

Layton at May 21, 2007 Status Conference.

      In *EPIC*, the FBI was able to meet each production deadline under Judge Kessler's

schedule, and did not seek a modification of Judge Kessler's order.  Due to the similarities in

these cases, EFF respectfully submits that a similar production schedule would be appropriate

here, and would not impose an undue burden on the FBI.[1]

      Respectfully submitted,

      /s/ *Marcia Hofmann*
      MARCIA HOFMANN
      D.C. Bar No. 484136

      DAVID L. SOBEL
      D.C. Bar No. 360418

      ELECTRONIC FRONTIER FOUNDATION
      1875 Connecticut Avenue NW
      Suite 650
      Washington, DC 20009
      (202) 797-9009

      Counsel for Plaintiff

---

[1]  We note that in FY 2006, the Bureau processed 133 FOIA requests that required expedited processing, and completed processing of those requests within a "median" of 62 days.  U.S. Department of Justice, Freedom of Information Act Report for Fiscal Year 2006, Compliance with Time Limits/Status of Pending Requests, http://www.usdoj.gov/oip/ annual_report/2006/ 06foiapg7.htm.  Here, EFF's request has already been pending for 78 days, and processing, even under the schedule that EFF proposes, will not be completed for many more months.

# Exhibit A

*Electronic Frontier Foundation v. Department of Justice*, C.A. No. 07-656 (JDB)

Notice of Filing of Plaintiff's Proposal for a
Freedom of Information Act Production Schedule

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No.  05-CV-845 (GK) ECF |
| U.S. DEPARTMENT OF JUSTICE, | ) ) |
| Defendant. | ) ) ) |

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C.  I have held this position since August 1,

2002.  Prior to my joining the FBI, from May 1, 2001 to July 31, 2002, I was the

Assistant Judge Advocate General of the Navy for Civil Law.  In that capacity, I had

direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals,

and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy

Judge Advocate at various commands and routinely worked with FOIA matters.  I am

also an attorney and have been licensed to practice law in the State of Texas since

1980.

(2)    In my current capacity as Section Chief, I supervise the Freedom of

Information/Privacy Acts ("FOIPA") Litigation Support Unit ("LSU"). The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)    Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment which has been afforded plaintiff's FOIA request to FBIHQ for the expedited release of agency records related to the FBI's use of certain provisions of the USA PATRIOT Act.

(4)    The purpose of this declaration is to provide the Court and plaintiff with an explanation of the FBI's record-keeping system, FBI FOIA processing procedures, the FBI's efforts to expedite plaintiff's request, and to respond to the arguments raised by plaintiff in *Plaintiff's Motion to Compel Expedited Processing of Plaintiff's Freedom of Information Act Request.*

**OVERVIEW OF FBI'S FOIA PROCEDURE**

A. **HOW A FOIA REQUEST IS PROCESSED IN RIDS**

(5)    Over the years, the FOIA Section at FBIHQ has engaged in a continuing effort to improve its procedures in order to better serve the needs of requesters who seek information from the FBI. In 2002, reorganization of various divisions at FBIHQ resulted in the formation of the RMD, which now handles all FOIA and Privacy Act

–2–

requests through RIDS. These most recent efforts have resulted in the following organizational plan which will be discussed in more detail below.

(6)    The mission of RIDS is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information. RIDS is responsible for providing program and policy management pertaining to the researching, reviewing, analyzing, processing, and classification/declassification work relating to FOIA and Privacy Act, Executive Order 12958, as amended, Presidential, Attorney General, and FBI policies and procedures, judicial decisions, and other Presidential and Congressional directives. RIDS also provides prepublication review of material written by current and/or former FBI employees concerning FBI matters as mandated by the FBI's employment agreement. RIDS currently employs 247 employees, most of whom are Legal Administrative Specialists ("LASs"), and who are assigned among the ten (10) Units within RIDS, whose shared function is to intake, review, process, and release information in response to FOIA and Privacy Act requests. To accomplish this mission, RIDS consists of the following ten Units: the Service Request Unit ("SRU"), two Work Process Units ("WPU"), three Classification Units ("CU"), three Freedom of Information and Privacy Acts ("FOIPA") Units ("Disclosure Units"), and the Litigation Support Unit ("LSU").

(a)    The **Service Request Unit** ("SRU") is responsible for reviewing and sorting all correspondence/incoming requests for information from the public, Congress, Presidential Libraries, foreign governments, other federal and state agencies, and other FBI entities (i.e., FBI field offices, Legats). The SRU handles various initial tasks required to "perfect" a FOIA/Privacy Act request, including sending

–3–

letters to acknowledge requests, advising a requester to provide identifying data so that an accurate records search can be made and/or to submit a notarized signature/Privacy Act waiver, or advising a requester when no responsive records are located; opens new requests and assigns a FOIPA Request Number; and enters the perfected requests into the FOIPA Document Processing System ("FDPS") tracking system. The Negotiation Team, also a part of SRU, works with requesters whose requests generate a large volume of records in an attempt to narrow the scope of responsive records and facilitate a more rapid response. Finally, the Government Response Team ("GRT"), also a part of SRU, provides timely feedback to other federal agencies and other DOJ components with regard to referrals of documents – either sent for a consultation or for direct response to the requester – which are either FBI-originated or contain FBI-originated information.[1]

        (b)       The two **Work Process Units** ("WPUs") are responsible for preparing SRU's "perfected" requests for transfer to the three Disclosure Units. The WPUs conduct searches of the general indices for identifiable records, confirm responsive documents, stamp files for retention, forward files requiring classification review to the three Classification Units, address fee issues (other than fee waiver reviews), retrieve and forward files for scanning into FDPS, respond to status inquiries,

---

[1] The Government Response Team ("GRT") was formerly known as the "Government Response & Prepublication Review Unit." However, an internal reorganization recently resulted in shifting the GRT and its functions to the SRU, and shifting the Prepublication Review Team and its functions of prepublication review of all material written by current and/or former FBI employees concerning FBI matters as mandated by the FBI's employment agreement to the RIDS front office.

handle administrative appeals, and maintain requests prior to their in-turn transfer to the Disclosure Units.

(c)     The three **Classification Units** ("CUs") are responsible for complying with the classification/declassification review of FBI records under Executive Order 12958, as amended, and the July 1995 DOJ Memorandum of Understanding. The CUs review documents responsive to FOIA/Privacy Act requests, criminal and civil discovery requests, Congressional and Presidential mandates, Presidential Library requests, mandatory declassification requests, Office of Inspector General Reports, and other federal agency requests in order to determine whether such material should remain classified or be declassified. In addition, the CUs review and prepare classified material for review by the Department of Justice Review Committee ("DRC").[2]

(d)     The three **FOIPA Units** ("Disclosure Units") perform the actual processing of all records pursuant to the provisions of the FOIA and Privacy Act. "Processing" involves a page-by-page, line-by-line review of the responsive documents to determine which, if any, FOIA and/or Privacy Act exemptions may apply. This includes redaction of the exempt material and notation of the applicable exemption(s) in the margins of each page and/or preparation of deleted page information sheets when pages are withheld in their entireties (now done electronically in FDPS). During the course of their review, the Disclosure Units consult with other government agencies for their determination as to the releasability of their information contained within FBI

---

[2] The DRC is the FBI's appellate authority with regard to the implementation and administration of Executive Order 12958, as amended, and related directives and guidelines concerning classified information. See 28 C.F.R. § 17.14 (2003).

records, or refer non-FBI documents to those originating agencies for processing and direct response. The Disclosure Units ensure that FOIA and/or Privacy Act exemptions have been applied properly, that no releasable material has been withheld, that no material meriting protection has been released, that all necessary classification reviews have been completed, and that other government agency information and/or entire documents originating with other government agencies have been properly handled.

(e)    The **Litigation Support Unit** ("LSU") is responsible for providing legal support and administrative assistance to the FBI's Office of the General Counsel ("OGC") and Chief Division Counsels and Associate Division Counsels in the FBI's field offices, in all FOIA/Privacy Act requests that result in federal litigation. The LSU coordinates the progress of the FBI's response to a particular FOIA/Privacy Act request as it progresses through the units described above, coordinates the receipt of substantive litigation-related information from involved FBI Special Agents ("SAs") in the field offices and the operational Divisions at FBIHQ, and coordinates the referral of documents to other DOJ components and government agencies. The LSU prepares the administrative record, drafts both procedural and substantive declarations and court pleadings, codes documents processed by the Disclosure Units, and drafts detailed declarations justifying the assertion of all applicable FOIA/Privacy Act exemptions.

(7)    After SRU and WPU perfect a request, the request is sent to the "perfected backlog." To ensure fairness to all requesters and to equitably administer the large numbers of FOIA/Privacy Act requests received by the FBI, a request is assigned based on the date of receipt on a "first in/first out" basis from within each of

-6-

three queues according to sound administrative practices.[3] The FBI uses a three-queue system as a way to perfect and assign new requests.[4] The three-queue system establishes a "multi-track" processing system for requests, based on the amount of time and work involved in handling a particular request.[5] The system nevertheless preserves the principle that, within the three queues, requests are assigned and processed on a first-in/first out basis. The placement of a request in one of the three queues depends on the total amount of material responsive to that request – 500 pages or less ("small queue"), 501 to 2,500 pages ("medium queue"), or more than 2,500 pages ("large queue"). This standard operating procedure, coupled with the FBI's "first in/first out" policy, permits requests to be addressed in the order in which they are received, while obviating the inequities to other requesters whose interests relate only to a small number of documents. As described earlier, requesters whose requests have been placed in the large queue are given the opportunity, through contact with SRU's Negotiation Team, to reduce the scope of their requests and accelerate assignment of their requests by relocating them to a more advantageous queue.

(8)    LASs frequently work on more than one request at a time because it is not always administratively efficient to work only one request to completion before proceeding to the next. Processing of a complex case may be halted midstream for a variety of reasons, such as resolving a classification issue, locating records that may be

---

[3] See 28 C.F.R. § 16.5 (a) (2003).

[4] This system went into effect on July 10, 1997, superseding the previous system of two queues (one for 100 pages or less, the other for requests greater than 100 pages).

[5] See 5 U.S.C. § 552 (a) (6) (D) (I) and 28 C.F.R. § 16.5 (b) (2001).

missing, or consulting with other government agencies as to the nature and propriety of releasing certain information. In the interest of efficiency during this waiting period, other requests may be processed and released. Therefore, large requests are often processed in conjunction with smaller requests in an attempt to ensure that one requester does not consume a disproportionate share of RIDS resources.

(9)    Consistent with standard administrative procedure, any records referred to the FBI from other DOJ components in response to a particular request may be added to that pending FOIA/Privacy Act request. This process is an equitable way for RIDS to maintain administrative control of FOIA/Privacy Act requests. Under this system, the same LAS assigned to process a particular request will also handle the review of records referred by other DOJ components or government agencies. By ensuring continuity in the processing of FOIA requests, this system is not only fair to all persons seeking information under the FOIA, but is also administratively efficient, since the same issues presented by the referred records will already have been addressed by the LAS in processing the responsive FBI files.

-8-

## B. EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(10)   The Central Records System ("CRS"), which is used  to conduct searches in response to FOIA and Privacy Act requests, enables the FBI  to maintain all information which it has acquired in the course of fulfilling mandated law enforcement responsibilities.  The records consist of administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes.  This system consists of a numerical sequence of files broken down according to subject matter.  The subject matter of a file may relate to an individual, organization, company, publication, activity, or foreign intelligence matter.  Certain records in this system are maintained at FBIHQ. Records that are pertinent to specific field offices are maintained in those field offices.

(11)   Access to the CRS is afforded by the General Indices, which are arranged in alphabetical order.  The General Indices consist of index cards on various subject matters that are searched either manually or through the automated indices.  The entries in the General Indices fall into two categories:

(a)  A "main" entry --- A "main" entry carries the name corresponding with a subject of a file contained in the CRS.

(b)  A "reference" entry — "Reference" entries, sometimes called "cross-references," are generally only a mere mention or reference to an individual, organization, etc., contained in a document located in another "main" file.

(12)   Access to the CRS files at FBI field offices is also obtained by the General Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an index on various subjects, including the names of individuals and organizations.  Searches made in the General Indices to locate records concerning a

–9–

particular subject are made by searching the subject requested in the index. FBI field offices have automated indexing functions.

(13)    On or about October 16, 1995, the Automated Case Support ("ACS") was implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ. More than 105 million records were converted from automated systems previously utilized by the FBI. ACS consists of three integrated, yet separately functional, automated applications that support case management functions for all FBI investigative and administrative cases:

(a)    Investigative Case Management ("ICM") - ICM provides the ability to open, assign, and close investigative and administrative cases as well as set, assign, and track leads. The Office of Origin ("OO"), which sets leads for itself and other divisions, as needed, opens a case. The offices that receive leads are referred to as Lead Offices ("LOs"), formerly known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number ("UCFN"), such as "29-NY-240102," which is used by all FBI offices, including FBIHQ, that are conducting or assisting in the investigation. The "29" indicates the type of investigation, "NY" indicates the Office of Origin of the investigation, in this example New York City, and "240102" denotes the individual case file number for that particular investigation.

(b)    Electronic Case File ("ECF") - ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept, where only the creator of a document serializes it into a file, providing single source entry of serials into the computerized system. All original serials are maintained in the OO case file.

(c)    Universal Index ("UNI") - UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an 89.4 million record index, provides functions to index names to cases and to search names and cases for the FBI's investigative and administrative cases. Names of individuals or non-individuals are recorded with identifying information, such as sex, race, event date, date or place of birth, locality, Social Security number or address.

(14)    The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the investigative FBI Special Agent, the supervisor in the field division conducting the investigation, and the supervising FBI Special Agent at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this mass of information, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is to protect the Nation against terrorist attacks and investigate violations of federal criminal statutes. Therefore, the General Indices to the CRS files are the means by which the FBI can determine what retrievable information, if any, the FBI may have in its CRS files on a particular subject matter.

**PLAINTIFF'S FOIA REQUEST**

**A. CORRESPONDENCE**

-11-

(15)    By letter dated March 29, 2005 to FBIHQ, plaintiff submitted an expedited

request under FOIA for the following records:

> 1) Any information concerning the FBI's use of authorities granted or
> expanded by Sections 201, 202, 203(b), 203(d), 204, 206, 207, 209, 212,
> 214, 217, 218, and 220 of the USA PATRIOT Act from October 26, 2001
> to the present.
>
> 2) Any information concerning the FBI's use of Section 215 of the USA
> PATRIOT Act from February 23, 2003 to the present.
>
> 3) Any information or communications concerning sunset of USA
> PATRIOT Act  provisions.

Plaintiff further requested expedited processing, stating that the subject matter of the

request qualifies under the standard of an "urgency to inform the public about an actual

or alleged federal government activity" and the request is made by "a person primarily

engaged in disseminating information," citing 28 C.F.R.§ 16.5(d)(1)(ii).  The purpose of

EPIC's request is to obtain information directly relevant to the upcoming decision by

Congress whether or not to renew these provisions at the end of the year. **(See Exhibit**

**1.)**

(16)    By letter dated March 30, 2005,  FBIHQ acknowledged receipt of plaintiff's

request and advised that plaintiff's request was assigned Request Number 1017326-

000. **(See        Exhibit 2.)**

(17)    By letter dated April 12, 2005, plaintiff was advised that the FBI granted its

request for expedition pursuant to 28 C.F.R. § 16.5(d)(1)(ii).  Plaintiff was advised that

its FOIA request would be assigned shortly and that a search  would be conducted for

any potentially responsive records.  Plaintiff was further advised that the FBI was in the

–12–

process of evaluating plaintiff's fee waiver request and that plaintiff would be notified in the near future regarding this decision. (**See** Exhibit 3.)

**B. SEARCHES FOR RECORDS RESPONSIVE TO PLAINTIFF'S REQUEST**

(18)    One of the difficulties in identifying records responsive to plaintiff's FOIA request has been the generalized nature of the subject matter, i.e., "FBI's use of authorities granted or expanded by Sections 201, 202, 203(b), 203(d), 204, 206, 207, 209, 212, 214, 217, 218 and 220 of the USA PATRIOT ACT." These subject matters do not lend themselves to the search methods normally used by the FBI to locate records responsive to FOIA requests. In response to plaintiff's FOIA request, the FBI first initiated a search of the automated general indices to the CRS at FBIHQ to identify any records pertaining to the relevant provisions of the USA PATRIOT Act. The following phrases were searched through the CRS: "US Patriot Act," "Patriot Act," "USA Patriot Act" and "Sunset Provision." As a result of this search, file 66F-HQ-C1364260 was located and determined to be potentially responsive to plaintiff's request.

(19)    In addition, RMD, in coordination with OGC, sent an Electronic Communication ("EC") to all FBIHQ divisions in order to determine what, if any, records they possessed responsive to plaintiff's FOIA request. The contacted offices were asked if they possessed any records responsive to plaintiff's request, or if they have knowledge as to where responsive records may be located. Those individuals and offices most likely to possess responsive records have undertaken searches of their files, including, but not limited to, responsive e-mails. Based on this request, positive responses were received from the Inspection Division, Laboratory Division, Office of

–13–

Congressional Affairs, and OGC. As a result of these search efforts, a voluminous amount of potentially responsive records have been located.

(20)   The process of collecting potentially responsive documents, (as well as negative responses) is ongoing. To date, approximately 5,000 pages of documents have been identified as potentially responsive to plaintiff's request. The FBI has begun its review of those documents located thus far in order to determine whether they are in fact responsive. Additionally, we estimate that there are more than 130,000 pages of potentially responsive documents that are being examined to ensure that they are within the scope of plaintiff's broad request. However, at this time, because search efforts and scope review are ongoing, the FBI is unable to state with any finality the number of pages that will ultimately be deemed responsive to plaintiff's request. Large amounts of documents continue to be produced as responding Divisions within the FBI identify and copy pages.

(21)   Because this request asks for documents which relate to national security issues, we anticipate that many of the responsive documents will be classified in whole or in part and therefore must be reviewed by the RIDS' Classification Unit ("CU") in accordance with the guidelines and directives for classification pursuant to Executive Order 12958, as amended. In evaluating whether to classify a document, the CU LAS considers information including, but not limited to, whether the information is already in the public domain or likely to be known or suspected by present or potential adversaries of the United States; whether information can be attributed to an intelligence source; and whether the information generally can threaten the national security of our country.

**EXPEDITED PROCESSING**

-14-

(22)    The FBI recognizes the importance of responding quickly to this expedited request and has been working diligently toward that goal. Documents located during the search process are currently being reviewed for responsiveness and scanned into the FDPS tracking system for processing and release. Once remaining scanning is completed, the request will be considered "perfected."

(23)    Under normal circumstances the case is then sent to the "perfected backlog" to wait its turn. However, since this case has been granted expedition, the FBI plans to immediately assign it to an LAS for processing and release.

(24)    While an accurate page count does not yet exist, the FBI roughly estimates that as many as 130,000 pages may be responsive to EPIC's request for USA PATRIOT Act documents. This clearly places the case in the large queue. As of June 24, 2005, there were 33 cases in the large queue backlog. Of those 33 cases, 9 were opened in 2003; the oldest of those cases was opened on June 13, 2003. Thus, expedition of plaintiff's request will result in should result in a minimum savings of approximately 730 days, or more than two years.

(25)    Plaintiff notes that the FBI recently reported in its annual report to Congress for 2004 that the median time to process an expedited case was 41 days from the date of the request (date opened in the system) to the date the release was made (date closed in the system). In 2004, 35 cases were granted expedition. Of those 35 cases, 28 were requests from prisoners on death row who are automatically granted expedition, and the average number of responsive pages was 16. Of the remaining seven requests, the range of pages was zero (no responsive records) to 3703, while the range of days to process was one day (for the "no records" request) to

–15–

341 days for the 3703- page request.  Since the number of responsive records for this request will far exceed that number given the number of potentially responsive records, the processing time will undoubtedly exceed the 341 days.  If we assume that nearly all of the records identified so far as potentially responsive are in fact responsive, which given the plaintiff's broad request we anticipate will be true, that means we will have 130,000 pages.  I must emphasize this is a preliminary estimate.  (See infra for a discussion regarding the backlog and processing times).

(26)    The number of  potentially responsive pages will likely exceed 130,000.  Under current standards, an LAS should process 1,000 pages a month.  By literally shutting down one of the three disclosure units – over which I have direct supervisory responsibility – of approximately 28 LASs each (two teams of 13 LASs per unit plus a team captain for each team, although vacancies exist)  to work on this request alone, it would still take more than four months to process 130,000 pages.  The four-month figure does not account for time required by the CU, legal review, and final review by the document owners/originators for accuracy prior to release.  For classification review alone, it is estimated that a review of 1,000 pages would take three reviewers approximately one week to process. This also does not take into account referrals and consultations which may need to be made with other agencies or DOJ components.[6]

---

[6]  During processing, if a document originating with another agency or DOJ component is located, or if information contained in an FBI document has originated with another agency or DOJ component, the FBI will refer that document and advise the requester that the referral was made.  The other agency/DOJ component then determines the applicability, if any, of the FOIA exemptions and then responds directly to the requester.  If we discover an FBI document with information provided by another agency, we would consult with that agency as  to the applicability, if any, of FOIA exemptions to their information and we would either assert the applicable exemptions on their behalf

–16–

Moreover, because we anticipate that a significant portion of these documents will be classified, and/or contain material which is attorney/client, work product or deliberative process privileged, the actual amount of pages which will be released to plaintiff will be relatively small compared to the amount of pages withheld in full or in part. Thus, although an LAS may process 1,000 pages a month, the number of pages released will be significantly fewer. Let me once again emphasize that it is our belief that the 130,000-page count is a very conservative estimate. Should we be required to make additional shifts in personnel to comply with plaintiff's requested timetable, the effect would be devastating to the FBI's backlog of other cases.[7]

     (27)  In addition, RIDS has taken all available steps to aid in the streamlining of the work and reduction of the FOIA/Privacy Act backlog. These include the use of direct on-line computer searches in order to locate responsive records, the use of forms which eliminate delays associated with word processing, the formation of specific teams to target backlog issues, the development of alternative methods to handle consultations with other government agencies, and the formation of the FOIPA LSU, which handles all FOIA/Privacy Act Litigation in RIDS.

---

or release the information.

[7] At this time, the FBI, through DOJ counsel, has been negotiating with plaintiff in order to reduce the scope of the request, and consequently the enormous impact the request in its current state would have on RIDS.

(28)   The FBI takes its responsibilities with regard to the administration of the

FOIA/Privacy Act program very seriously, and all reasonable efforts will be made to

continue to expedite plaintiff's request.

Pursuant to 28 U.S.C. § 1746, I declare the foregoing to be true and correct, and

that Exhibits 1 through 3 attached hereto are true and correct copies.

Executed this ___29th___ day of June, 2005.

DAVID M. HARDY
Section Chief
Record/Information Dissemination
 Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

–18–

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 07-656 (JDB) |
| | ) |
| **DEPARTMENT OF JUSTICE,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**O R D E R**

**UPON CONSIDERATION** of Plaintiff's motion for preliminary injunction,

Defendant's response, and the entire record, it is this ___ day of June 2007:

      **ORDERED** that Plaintiff's motion is granted; and it is

      **FURTHER ORDERED** that Defendant Department of Justice ("DOJ") and its

component the Federal Bureau of Investigation ("FBI") shall, within 20 calendar days,

complete the processing of no fewer than 1500 pages of agency records potentially

responsive to Plaintiff's March 12, 2007 FOIA request, and provide to Plaintiff copies of

all non-exempt material contained therein; and it is

      **FURTHER ORDERED** that Defendant DOJ and its component the FBI shall

thereafter complete the processing of 1500 pages every 15 calendar days, and provide to

Plaintiff all responsive non-exempt pages contained therein, until processing is complete;

and it is

      **FURTHER ORDERED** that Defendant DOJ shall provide Plaintiff with a

document index and declaration, as specified in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir.

1973), stating Defendant's justification for the withholding of any documents responsive to

Plaintiff's March 12, 2007 FOIA request to the FBI, no later than 15 calendar days after processing is complete; and it is

**FURTHER ORDERED** that Defendant DOJ shall file its motion for summary judgment no later than 45 calendar days after processing is complete.  No later than 15 calendar days thereafter, Plaintiff shall file its cross motion for summary judgment, if any, and/or its opposition to Defendant DOJ's motion for summary judgment.  No later than 15 calendar days thereafter, Defendant DOJ shall file its opposition to Plaintiff's cross-motion for summary judgment, if any, and/or its reply to Plaintiff's opposition.  No later than 15 calendar days thereafter, Plaintiff shall file its reply to Defendant DOJ's opposition to Plaintiff's cross-motion for summary judgment, if any.


_____                                    _____
Date                                                              United States District Judge

2