**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ELECTRONIC FRONTIER FOUNDATION,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  C.A. No. 07-656 (JDB) |
| | ) |
| **DEPARTMENT OF JUSTICE,** | ) |
| | ) |
| Defendant. | ) |
| | ) |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PLAINTIFF'S PROPOSAL FOR A FREEDOM OF INFORMATION ACT
PRODUCTION SCHEDULE**

Plaintiff Electronic Frontier Foundation ("EFF") respectfully submits this

supplemental memorandum in support of its proposal for a Freedom of Information Act

("FOIA") production schedule, which EFF filed with the Court on May 29, 2007.  In light

of significant new developments, which are set forth below, EFF respectfully reiterates its

request that the Court grant its motion for a preliminary injunction that has been pending

since April 10, 2007, and enter an order compelling Defendant Department of Justice

("DOJ") immediately to begin processing EFF's FOIA request in conformance with

EFF's production proposal.

**BACKGROUND**

EFF initiated this action on April 10, 2007, seeking to compel the expedited

processing of a March 12, 2007 FOIA request submitted to the Federal Bureau of

Investigation ("FBI") concerning the Bureau's abuse of National Security Letter

("NSL") investigative authority, which had been documented in a then-recent report by the

DOJ Inspector General.  The FBI had granted EFF's request for expedited processing on

March 30, 2007, agreeing that the request involved a "matter of widespread and

exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence" under 28 C.F.R. § 16.5(d)(1)(iv). However, the FBI not only failed to process the request in an expedited manner, but also to meet the statutory deadline for a standard, non-expedited FOIA request. Along with its complaint, EFF filed a motion to for preliminary injunction to compel expedited processing of its request, which Defendant DOJ opposed. EFF's motion is still pending before the Court. To date, the Bureau has failed to release a single page in response to EFF's request, and has been unwilling to provide EFF or the Court any estimate of when processing might be completed.

On May 21, 2006, this Court ordered the parties to confer and file either a joint proposal or competing proposals for a production schedule for EFF's FOIA request. The parties were unable to agree upon a mutually acceptable proposal, and so Defendant DOJ and EFF filed separate proposals for a production schedule on May 25, 2007 and May 29, 2007, respectively. EFF proposed the following:

- Defendant DOJ and its component the FBI shall, within 20 calendar days of this Court's Order, complete the processing of no fewer than 1500 pages of agency records potentially responsive to EFF's March 12, 2007 FOIA request, and provide to EFF copies of all non-exempt material contained therein;

- Defendant DOJ and its component the FBI shall thereafter complete the processing of 1500 pages every 15 calendar days, and provide to EFF all responsive non-exempt pages contained therein, until processing is complete.

- In an effort to minimize the number of exemption claims that must be litigated, Defendant DOJ shall produce a *Vaughn* index no later than 15 calendar days after processing is complete. EFF and Defendant DOJ shall then confer about the

2

possibility of removing any exemption claims from the scope of the litigation.

- No later than 45 calendar days after processing is complete, Defendant DOJ shall file its motion for summary judgment. No later than 15 calendar days thereafter, EFF shall file its cross motion for summary judgment, if any, and/or its opposition to Defendant DOJ's motion for summary judgment. No later than 15 calendar days thereafter, Defendant DOJ shall file its opposition to EFF's cross-motion for summary judgment, if any, and/or its reply to EFF's opposition. No later than 15 calendar days thereafter, EFF shall file its reply to Defendant DOJ's opposition to EFF's cross-motion for summary judgment, if any.

This morning, the *Washington Post* published an article on its front page reporting that a comprehensive internal FBI investigation has revealed far more NSL abuses than the Inspector General's report uncovered in March. John Solomon, *FBI Finds It Frequently Overstepped in Collecting Data*, Washington Post, June 14, 2007, at A1 (attached hereto as Exhibit 1). *Inter alia*, the *Post* reported:

> An internal FBI audit has found that the bureau potentially violated the law or agency rules more than 1,000 times while collecting data about domestic phone calls, e-mails and financial transactions in recent years, far more than was documented in a Justice Department report in March that ignited bipartisan congressional criticism.
>
> The new audit covers just 10 percent of the bureaus national security investigations since 2002, and so the mistakes in the FBI's domestic surveillance efforts probably number several thousand, bureau officials said in interviews. The earlier report found 22 violations in a much smaller sampling.
>
> *       *       *
>
> "The FBI's comprehensive audit of National Security Letter use across all field offices has confirmed the inspector general's findings that we had inadequate internal controls for use of an invaluable investigative tool, FBI General Counsel Valerie E. Caproni said. "Our internal audit examined a must larger sample than the inspector general's report last March, but we found similar percentages of NSLs that had errors."

3

*Id.*

This morning's article shows unequivocally that there is still a great urgency for EFF to obtain the records it seeks in this action. The FBI's recent audit makes clear that the FBI's abuse of NSL authority is a far greater and more widespread problem than the DOJ Inspector General's report initially indicated. Indeed, had the records EFF seeks been released earlier, they might have helped to illuminate the scope of the FBI's unlawful conduct, which the FBI long ago conceded is a "matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence." 28 C.F.R. § 16.5(d)(1)(iv). It is imperative that the requested information be made public as soon as possible to permit – for the first time – an *independent* assessment of the circumstances surrounding the Bureau's abuse of NSL authority.

Unfortunately, despite Defendant DOJ's acknowledgement that the processing of EFF's request should be expedited, it continues to languish more than three months after EFF first submitted it. The FBI's foot-dragging should not be entertained by the Court any longer. EFF reiterates that, in light of the demonstrated public interest in the material it seeks, the Court should compel Defendant DOJ and the FBI to begin processing and releasing material responsive to EFF's request in accordance with the schedule EFF has proposed.

## CONCLUSION

For the foregoing reasons, the Court should grant EFF's pending motion for a preliminary injunction, and order Defendant DOJ to immediately begin processing and releasing material in accordance with EFF's May 29, 2007 proposal for a FOIA production schedule.

Respectfully submitted,


/s/ *Marcia Hofmann*
MARCIA HOFMANN
D.C. Bar No. 484136

DAVID L. SOBEL
D.C. Bar No. 360418

ELECTRONIC FRONTIER FOUNDATION
1875 Connecticut Avenue NW
Suite 650
Washington, DC 20009
(202) 797-9009

Counsel for Plaintiff

# Exhibit 1

*Electronic Frontier Foundation v. Department of Justice*, C.A. No. 07-656 (JDB)

Supplemental Memorandum to Plaintiff's Proposal
for a Freedom of Information Act Production Schedule

# washingtonpost.com

# FBI Finds It Frequently Overstepped in Collecting Data

By John Solomon
Washington Post Staff Writer
Thursday, June 14, 2007; A01

Advertisement



Patents Matter.

An internal FBI audit has found that the bureau potentially violated the law or agency rules more than 1,000 times while collecting data about domestic phone calls, e-mails and financial transactions in recent years, far more than was documented in a Justice Department report in March that ignited bipartisan congressional criticism.

The new audit covers just 10 percent of the bureau's national security investigations since 2002, and so the mistakes in the FBI's domestic surveillance efforts probably number several thousand, bureau officials said in interviews. The earlier report found 22 violations in a much smaller sampling.

The vast majority of the new violations were instances in which telephone companies and Internet providers gave agents phone and e-mail records the agents did not request and were not authorized to collect. The agents retained the information anyway in their files, which mostly concerned suspected terrorist or espionage activities.

But two dozen of the newly-discovered violations involved agents' requests for information that U.S. law did not allow them to have, according to the audit results provided to The Washington Post. Only two such examples were identified earlier in the smaller sample.

FBI officials said the results confirmed what agency supervisors and outside critics feared, namely that many agents did not understand or follow the required legal procedures and paperwork requirements when collecting personal information with one of the most sensitive and powerful intelligence-gathering tools of the post-Sept. 11 era -- the National Security Letter, or NSL.

Such letters are uniformly secret and amount to nonnegotiable demands for personal information -- demands that are not reviewed in advance by a judge. After the 2001 terrorist attacks, Congress substantially eased the rules for issuing NSLs, requiring only that the bureau certify that the records are "sought for" or "relevant to" an investigation "to protect against international terrorism or clandestine intelligence activities."

The change -- combined with national anxiety about another domestic terrorist event -- led to an explosive growth in the use of the letters. More than 19,000 such letters were issued in 2005 seeking 47,000 pieces of information, mostly from telecommunications companies. But with this growth came abuse of the newly relaxed rules, a circumstance first revealed in the Justice Department's March report by Inspector General Glenn A. Fine.

"The FBI's comprehensive audit of National Security Letter use across all field offices has confirmed the inspector general's findings that we had inadequate internal controls for use of an invaluable investigative tool," FBI General Counsel Valerie E. Caproni said. "Our internal audit examined a much larger sample than the inspector general's report last March, but we found similar percentages of NSLs that had errors."

"Since March," Caproni added, "remedies addressing every aspect of the problem have been implemented or are well on the way."

Of the more than 1,000 violations uncovered by the new audit, about 700 involved telephone companies and other communications firms providing information that exceeded what the FBI's national security letters had sought. But rather than destroying the unsolicited data, agents in some instances issued new National Security Letters to ensure that they could keep the mistakenly provided information. Officials cited as an example the retention of an extra month's phone records, beyond the period specified by the agents.

Case agents are now told that they must identify mistakenly produced information and isolate it from investigative files. "Human errors will inevitably occur with third parties, but we now have a clear plan with clear lines of responsibility to ensure errant information that is mistakenly produced will be caught as it is produced and before it is added to any FBI database," Caproni said.

The FBI also found that in 14 investigations, counterintelligence agents using NSLs improperly gathered full credit reports from financial institutions, exercising authority provided by the USA Patriot Act but meant to be applied only in counterterrorism cases. In response, the bureau has distributed explicit instructions that "you can't gather full credit reports in counterintelligence cases," a senior FBI official said.

In 10 additional investigations, FBI agents used NSLs to request other information that the relevant laws did not allow them to obtain. Officials said that, for example, agents might have requested header information from e-mails -- such as the subject lines -- even though NSLs are supposed to be used to gather information only about the e-mails' senders and the recipients, not about their content.

The FBI audit also identified three dozen violations of rules requiring that NSLs be approved by senior officials and used only in authorized cases. In 10 instances, agents issued National Security Letters to collect personal data without tying the requests to specific, active investigations -- as the law requires -- either because, in each case, an investigative file had not been opened yet or the authorization for an investigation had expired without being renewed.

FBI officials said the audit found no evidence to date that any agent knowingly or willingly violated the laws or that supervisors encouraged such violations. The Justice Department's report estimated that agents made errors about 4 percent of the time and that third parties made mistakes about 3 percent of the time, they said. The FBI's audit, they noted, found a slightly higher error rate for agents -- about 5 percent -- and a substantially higher rate of third-party errors -- about 10 percent.

The officials said they are making widespread changes to ensure that the problems do not recur. Those changes include implementing a corporate-style, continuous, internal compliance program to review the bureau's policies, procedures and training, to provide regular monitoring of employees' work by supervisors in each office, and to conduct frequent audits to track compliance across the bureau.

The bureau is also trying to establish for NSLs clear lines of responsibility, which were lacking in the past, officials said. Agents who open counterterrorism and counterintelligence investigations have been told that

they are solely responsible for ensuring that they do not receive data they are not entitled to have.

The FBI audit did not turn up new instances in which another surveillance tool known as an Exigent Circumstance Letter had been abused, officials said. In a finding that prompted particularly strong concerns on Capitol Hill, the Justice Department had said such letters -- which are similar to NSLs but are meant to be used only in security emergencies -- had been invoked hundreds of times in "non-emergency circumstances" to obtain detailed phone records, mostly without the required links to active investigations.

Many of those letters were improperly dispatched by the bureau's Communications Analysis Unit, a central clearinghouse for the analysis of telephone records such as those gathered with the help of "exigent" letters and National Security Letters. Justice Department and FBI investigators are trying to determine if any FBI headquarters officials should be held accountable or punished for those abuses, and have begun advising agents of their due process rights during interviews.

The FBI audit will be completed in the coming weeks, and Congress will be briefed on the results, officials said. FBI officials said each potential violation will then be extensively reviewed by lawyers to determine if it must be reported to the Intelligence Oversight Board, a presidential panel of senior intelligence officials created to safeguard civil liberties.

The officials said the final tally of violations that are serious enough to be reported to the panel might be much less than the number turned up by the audit, noting that only five of the 22 potential violations identified by the Justice Department's inspector general this spring were ultimately deemed to be reportable.

"We expect that percentage will hold or be similar when we get through the hundreds of potential violations identified here," said a senior FBI official, who spoke on the condition of anonymity because the bureau's findings have not yet been made public.

## Post a Comment

Ad    Join the discussion. Sponsored by Cisco. welcome to the human network. CISCO

View all comments that have been posted about this article.

Your washingtonpost.com User ID, mchofman, will be displayed with your comment.

You must be logged in to leave a comment. Log in | Register

Submit

Comments that include profanity or personal attacks or other inappropriate comments or material will be removed from the site. Additionally, entries that are unsigned or contain "signatures" by someone other than the actual author will be removed. Finally, we will take steps to block users who violate any of our posting standards, terms of use or privacy policies or any other policies governing this site. Please review the full rules governing commentaries and discussions. You are fully responsible for the content that you post.

© 2007 The Washington Post Company

**Ads by Google**

**Free IE7 Download**
Google recommends upgrading to the new, safer Internet Explorer 7.
www.google.com/toolbar/ie7/

**Music For Downloading**
4 Million People Connected 100% Faster Downloads
www.unlimitedgamedownloads.com

**Want Faster Internet?**
Fight to Make A Faster Internet A Reality - Join the Movement
www.SpeedMatters.org/SpeedTest