IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 07-656 (JDB) |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM AND AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

TONY WEST
Assistant Attorney General

CHANNING D. PHILLIPS
Acting United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director
ELISABETH LAYTON
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel: (202) 514-3489
Fax: (202) 616-8470
elisabeth.layton@usdoj.gov

Attorneys for Defendant

## INTRODUCTION

This case involves a Freedom of Information Act (FOIA) request that plaintiff, the Electronic Frontier Foundation (EFF) submitted to the Federal Bureau of Investigation (FBI), seeking records concerning the FBI's use of National Security Letters (NSLs), including "[a]ll records discussing or reporting violations or potential violations of statutes, Attorney General guidelines, and internal FBI policies governing the use of NSLs . . . ." Dkt. No. 1, ¶ 10. Defendant United States Department of Justice (DOJ or Department) moves the Court to enter summary judgment in defendant's favor pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.

As outlined in this memorandum and in the attached Seventh Declaration of David M. Hardy, the FBI conducted a thorough search to identify documents responsive to plaintiff's request and has released all responsive documents to plaintiff except for certain documents or portions of documents withheld based upon FOIA Exemptions 1, 2, 3, 4, 5, 6, 7(A), 7(C), 7(D), and 7(E). The FBI's application of these statutory exemptions was proper, and the FBI processed and released all reasonably segregable information. Accordingly, the Court should grant summary judgment in favor of defendant.

## BACKGROUND

National Security Letters (NSLs), which are the central subject of plaintiff's request, are investigative tools sometimes used by the FBI in counter-terrorism and counterintelligence investigations. Pursuant to authority contained in several federal statutes, the FBI may use NSLs in order to obtain information from third parties, such as telephone companies, financial institutions, internet service providers, and consumer credit agencies. In these letters, the FBI can direct third parties to provide customer account information and transactional records such as telephone billing

records.

The FBI uses NSLs for various purposes including, among others, obtaining evidence to support Foreign Intelligence Surveillance Act (FISA) applications for electronic surveillance, and developing communication or financial links among subjects of FBI investigations. *See* Seventh Declaration of David M. Hardy (Seventh Hardy Decl.) ¶ 7. The USA PATRIOT Act of 2001[1] changed the standard for obtaining an NSL and altered the FBI approval levels. Subsequently, NSLs have become increasingly important investigative tools in national security cases. *See id. ¶ 8.*

## PROCEDURAL HISTORY, AND FBI'S PROCESSING OF RESPONSIVE DOCUMENTS

The relevant background to defendant's motion, including a summary of the FBI's processing of responsive documents, as well as the relevant procedural history of this litigation, are set forth in Defendant's Statement of Material Facts as to Which There is No Genuine Issue, filed herewith, which defendant incorporates herein by reference.

## ARGUMENT

I.    **STATUTORY BACKGROUND AND STANDARD OF REVIEW**

A.    **FOIA Cases Generally**

The FOIA, 5 U.S.C. § 552, "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential." *Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). While the FOIA requires agency disclosure under

---

[1] The term "USA PATRIOT Act" is an acronym for the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001, Pub L. No. 107-56, 115 Stat. 272 (2001).

2

certain circumstances, it also recognizes "that public disclosure is not always in the public interest." *Baldridge v. Shapiro*, 455 U.S. 345, 352 (1982). Accordingly, the statute requires agencies to release documents responsive to a properly submitted request but also provides nine statutory exemptions to this general disclosure obligation. *See* 5 U.S.C. §§ 552(a)(3), (b)(1)-(b)(9). While the nine exemptions should be "narrowly construed," *FBI v. Abramson*, 456 U.S. 615, 630 (1982), the Supreme Court has made clear that courts must give them "meaningful reach and application." *John Doe Agency*, 493 U.S. at 152.

Typically, FOIA cases are resolved on motions for summary judgment. *See Harrison v. EOUSA*, 377 F. Supp. 2d 141, 145 (D.D.C. 2005). Courts review *de novo* the agency's use of a FOIA exemption to withhold information. *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). To sustain its burden of justifying nondisclosure, *see* 5 U.S.C. § 552(a)(4)(B), the agency must provide a declaration identifying the information at issue and the bases for the exemptions claimed. *See Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998). Agency declarations and indices are accorded presumptions of good faith, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and expertise, *Piper v. DOJ*, 294 F. Supp. 2d 16, 20 (D.D.C. 2003). "[S]ummary judgment is warranted on the basis of agency affidavits when the affidavits describe the justifications for nondisclosure with reasonably specific detail . . . and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Wolf*, 473 F.3d at 374 (internal quotation marks omitted). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Id.* at 374-75.

## B.   FOIA Cases Involving National Security

In evaluating the applicability of FOIA exemptions for purposes of deciding the instant

motion, the Court should be mindful that the information sought by Plaintiff "implicat[es] national security, a uniquely executive purview." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 926-27 (applying a "measure of deference to the executive" with respect to information withheld under Exemption 7); *see also Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security." (citation omitted)). "Indeed, both the Supreme Court and [D.C. Circuit] have expressly recognized the propriety of deference to the executive in the context of FOIA claims which implicate national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927.

Accordingly, courts have repeatedly emphasized that "weigh[ing] the variety of complex and subtle factors in determining whether disclosure of information may lead to an unacceptable risk of compromising the [Nation's] intelligence-gathering process" is a task best left to the Executive Branch, not the judiciary. *CIA v. Sims*, 471 U.S. 159, 180 (1985); *see Ctr. for Nat'l Sec. Studies*, 331 F.3d at 928 ("[T]he judiciary is in an extremely poor position to second-guess the executive's judgment in [the] area of national security."); *Larson*, 565 F.3d at 865 (same); *Krikorian*, 984 F.2d at 464 ("Judges . . . lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." (internal quotation marks omitted)). For this reason, the D.C. Circuit has recently and "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake searching judicial review." *Larson*, 565 F.3d at 865 (internal quotation marks omitted).

Therefore, "in conducting *de novo* review in the context of national security concerns, courts must accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Wolf*, 473 F.3d at 374 (internal quotation marks omitted); *see also*

*Krikorian*, 984 F.2d at 464 (noting deference to expertise of agencies engaged in national security and foreign policy).  In according such deference, "a reviewing court 'must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm.'"  *Wolf*, 473 F.3d at 374 (quoting *Halperin*, 629 F.2d at 149).

## II.   THE FBI HAS CONDUCTED A REASONABLE SEARCH FOR RESPONSIVE DOCUMENTS.

To demonstrate the adequacy of a search, an agency must "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  An adequate search does not mean that every conceivable responsive document will be discovered.  *See id.* ("There is no requirement that an agency search every record system."); *Allen v. United States Secret Serv.*, 335 F. Supp. 2d 95, 99 (D.D.C. 2004) (Sullivan, J.) ("While the agency's search must be reasonably calculated to produce the requested information, FOIA does not impose a requirement that every record be found.").  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984).

In evaluating the adequacy of a search, courts accord agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'"  *SafeCard Servs.*, 926 F.2d at 1200.  The statute does not require "meticulous documentation [of] the details of an epic search."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).  Instead, declarations that "explain in reasonable detail the scope and method

of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id.*

In this case, the FBI's search was reasonably calculated to uncover all documents responsive to EFF's FOIA request.  As explained in the first Declaration of David M. Hardy ("First Hardy Decl.")  submitted in this case, as a result of the extraordinary breadth of plaintiff's FOIA request in this case, the request did not lend itself readily to the searches that the FBI routinely conducts in response to FOIA requests seeking access to FBI investigative files.  *See* Declaration of David M. Hardy (Dkt. 5-2,) ¶ 21.  First, on March 29, 2007, RIDS conducted a standard search of records in the FBI's Central Record System (CRS), which consists of administrative, applicant, criminal, personal, and other files compiled for law enforcement purposes.  *See* Seventh Hardy Decl. ¶ 21. This search employed multiple variations of the term "National Security Letters" using the date parameters January 1, 2003 to March 29, 2007.  *See* First Hardy Decl. ¶ 23; Seventh Hardy Decl. ¶ 28.  The FBI was unable to locate any FBIHQ main files as a result of this search.  *See* Seventh Hardy Decl. ¶ 28.

The second search method that the FBI employed was an individualized inquiry of the offices at FBIHQ which were most likely to have documents potentially responsive to plaintiff's FOIA request.  First Hardy Decl. ¶¶ 24-25.   As explained in the first Declaration of David M. Hardy, RIDS prepared and circulated an Electronic Communication (EC) to offices including the following: the Director's Office, National Security Branch, Counterterrorism Division, Inspection Division, and the Office of the General Counsel. *Id.* at 24.   The EC directed personnel in each office to conduct a thorough search of their records for potentially responsive material, and requested that all personnel in those offices conduct a thorough search of documents in their

6

possession, including e-mails, for responsive records.  *See* Seventh Hardy Decl. ¶ 24.  Through this

search, a total of approximately 39,206 pages potentially responsible to plaintiff's request were

located.  *See id.* ¶ 5.

This was a thorough and adequate search that used "methods which can be reasonably

expected to produce the information requested."  *Ogelesby*, 920 F.2d at 68.  The steps the FBI took

to locate the information sought by plaintiff, as documented in detail in the First Hardy Declaration,

met defendant's obligation under FOIA.

## III.     THE FBI HAS PROPERLY WITHHELD RECORDS UNDER APPLICABLE FOIA EXEMPTIONS

### A.     The FBI Processed and Released All Reasonably Segregable Information from the Responsive Records.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any

person requesting such record after deletion of the portions which are exempt under this

subsection."  5 U.S.C. § 552(b).  This provision does not require disclosure of records in which the

non-exempt information that remains is meaningless.  *See Nat'l Sec. Archive Fund, Inc. v. CIA*, 402

F. Supp. 2d 211, 220-21 (D.D.C. 2005).

As required by FOIA, the FBI has provided all "reasonably segregable" responsive

information that is not protected by an exemption.  5 U.S.C. § 552(b).  The FBI processed all

documents "to achieve maximum disclosure consistent with the access provisions of the FOIA,"

and made every effort "to provide Plaintiff with all material in the public domain and with all

reasonably segregable portions of releasable material."  Seventh Hardy Decl. ¶ 31.  No reasonably

segregable, nonexempt portions were withheld.  *Id.*   The FBI indicated where any material was

withheld in the documents it released to Plaintiff and provided coded categories to indicate the

nature of any information withheld.  *See id.* ¶¶ 31-34.  All the material the FBI withheld is exempt from disclosure pursuant to FOIA exemptions or is so intertwined with protected material that segregation is not possible without revealing the very information that is exempt from disclosure. *See id.* ¶ 33.

### B.    The FBI Has Properly Withheld Information Pursuant to Exemption 1

The FBI properly withheld classified information pursuant to section 552(b)(1) of the FOIA ("Exemption 1").[2] Exemption 1 protects records that are: "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).   Section 1.1(a)(4) of Executive Order 12958 states that an agency may classify information that fits into one or more of the Executive Order's categories for classification when the appropriate classification authority "determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." E.O.  12958, as amended, § 1.2(a)(4).

An agency can demonstrate that it has properly withheld information under Exemption 1

---

[2] Exemption (b)(1) has been asserted on the following pages:  NSL VIO - 4-5, 7-9, 24-25, 99-100, 208-209, 298, 497-499, 699-701, 799, 900, 998-999, 1401, 1601, 1603, 1700-1701, 1801, 1900-1903, 1098-2100, 2299-2301, 2463, 2493, 2499, 9850-9855,10726-10727, 10729-10731, 10734-10736, 10738-10740, 10742-10744, 10746-10748, 10750-10753, 10755-10757, 10759-10760, 10762-10765, 12352-12354, 12356-12359, 12361-12369, 12372-12406, 14283-14285, 14287-14290, 14293-14294, 14296-14297, 15348, 15350-15355, 15357-15363, 15467, 17947, 17949, 17951, 17953, 17955, 17957, 17959, 19644, 20727, 20729, 20732-20733, 23443, 23447, 23450, 23454, 27101-27106, 27109, 29099-29100, 36819-36820, 38438-38439, 38441, and 38443-38471.  Exemption (b)(1) has been withdrawn from a statutory 33998, 34003, 36331-36334, 36336, 36805, 36809-36810, 35812, 36815-36817, citation which appears as footnote 2 on Bates-stamped page NSL VIO-1601

if it establishes that it has met the requirements of the Executive Order.  Substantively, the agency must show that the records at issue logically fall within the exemption—*i.e.*, that Executive Order 12958, as amended, authorizes the classification of the information at issue.  Procedurally, the agency must demonstrate that it followed the proper procedures in classifying the information.  *See Salisbury v. United States*, 690 F.2d 966, 970-73 (D.C. Cir. 1982); *Military Audit Project v. Casey*, 656 F.2d 724, 737-38 (D.C. Cir. 1981).  An agency meeting both tests is entitled to summary judgment.  *See, e.g., Abbotts v. Nuclear Regulatory Comm'n*, 766 F.2d 604, 606-08 (D.C. Cir. 1985); *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984).

Agency decisions to withhold classified information under the FOIA are reviewed *de novo* by the district court, and the agency bears the burden of proving its claim for exemption.  See 5 U.S.C. § 552(a)(4)(B); *Miller*, 730 F.2d at 776.  Nevertheless, because classification authorities have "unique insights" into the adverse effects that might result from public disclosure of classified information, courts must accord "substantial weight" to an agency's affidavits justifying classification.  *Military Audit Project*, 656 F.2d at 738 (emphasis omitted); *cf. Miller*, 730 F.2d at 776 (noting that court must "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record").  "[T]he court is not to conduct a detailed inquiry to decide whether it agrees with the agency's opinions." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980); *see Weissman v. CIA*, 565 F.2d 692, 697 (D.C. Cir. 1977) ("Few judges have the skill or experience to weigh the repercussions of disclosure of intelligence information.").

An agency can demonstrate that it has properly withheld information under Exemption 1 if the agency establishes that it has met the substantive and procedural requirements set forth in Executive Order 12958, as amended.  In this case, the Seventh Hardy Declaration demonstrates that

the FBI has adhered to the mandated procedures in determining that the information withheld under Exemption 1 is classified.  *See* Seventh Hardy Decl. ¶¶ 36 - 59.  The Attorney General has designated Mr. Hardy as an original classification and declassification authority.  *See* E.O. No. 12958, as amended, §§ 1.3, 3.1; Seventh  Hardy Decl. ¶ 2.  The classified information withheld here, which is under the control of the United States Government, contains information relating to intelligence activities, sources or methods, system capabilities and/or vulnerabilities, and foreign relations or foreign activities of the United States.  *See* E.O. No. 12958, as amended, § 1.4(c), (d), (g); Seventh Hardy Decl., ¶ 40.  Mr. Hardy determined that release of this information could cause serious damage to the national security of the United States and should therefore be classified at the "Secret" level.  *See* Seventh Hardy Decl. ¶¶ 40, 58-59.  Mr. Hardy made certain that all of the procedural and administrative requirements of Executive Order 12958, as amended, were followed, including proper identification and marking of documents.  *See* Seventh Hardy Decl. ¶¶ 37 - 40.

### Intelligence Activities, Sources and Methods

Much of the classified information withheld relates to intelligence activities, sources and methods.  *See* Seventh Hardy Decl. ¶¶ 41-56.  Information that reveals intelligence activities, sources or methods is exempt from disclosure pursuant to section 1.4(c) of Executive Order 12958, as amended, and FOIA Exemption 1.  As detailed in the Seventh Hardy Declaration, the FBI withheld seven categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to national security: (1) file numbers that are assigned to a specific intelligence activity or method; (2) designations for a foreign counterintelligence squad or unit which targets specific individuals or organizations of national security interest; (3) standard FBI terminology or phraseology which appears in the most recent FBI

10

investigation files; (4) information revealing the character of the case, in that it identifies the specific type of intelligence activity that is directed at a specific target and the identity of a target of national security interest; (5) an alpha designator inserted into file numbers at the end of an FBI classification number; (6) an acronym that identifies a specific intelligence method; and (7) identification of targets of foreign counterintelligence investigations. *See* Seventh Hardy Decl. ¶ 44.

### 1.     File numbers

The FBI withheld classified file numbers that are assigned to specific intelligence activities, the disclosure of which would lead to potential exposure of the particular intelligence activities or methods at issue. *See* Seventh Hardy Decl. ¶¶ 45-46.[3]   Disclosure of these file numbers could reveal information, including a geographical prefix or the identity of the originating office, that might allow a potential violator of national security laws to discover an intelligence activity or method, and thus can reasonably be expected to cause damage to national security. *See id.*

### 2.     Squad/Units

As stated in Mr. Hardy's declaration, the classified information withheld on certain pages includes designations for FBI foreign counterintelligence squads or the names of operational units which currently target specific individuals and organizations of national security interest. *See*

---

[3] Exemption (b)(1) has been asserted to protect file numbers on the following pages: NSL VIO - 4, 7, 24, 25, 100, 208-209, 298, 497-99, 699, 701, 799, 899, 1800, 1900-1903, 2098-99, 2299-2301, 9850-9855, 10726, 10734, 10738, 10742, 10746, 10750, 10755, 10759, 10762, 10764, 12352, 12356, 12357, 12361-63, 12367, 12372, 12379, 12386, 12395, 12406, 15351, 15354, 15358, 15467, 17949, 17951, 17955, 17957, 17959, 20757, 20733, 23447, 23450, 36333, 36805, 36817, 36819, 36441, and 38443-38471.

Seventh Hardy Decl. ¶ 47.[4]  Disclosure of these operations or the operational unit name could enable hostile intelligence services to associate a reference to such squads or operations units in any FBI document or investigation with FBI foreign counterintelligence activity, thus enabling the foreign intelligence service to determine the presence of the FBI's counterintelligence activity in a specific area.  *See* Seventh Hardy Decl. ¶ 47.   In addition, disclosure of operational unit names could reveal the existence of particular intelligence or counterintelligence operations, as well as the nature, objectives, scope, or thrust of such operations.  *See id.*  Such knowledge could provide potential or actual violators of the United States' national security laws a means to circumvent such laws and implement countermeasures that might make future operations more difficult or compromise ongoing planned intelligence operations.  *See id.*   This would severely disrupt the FBI's intelligence gathering capabilities and damage the FBI's efforts to detect and apprehend criminals and to fight the war on transnational terrorism.  *See id.*

### 3.      Standard Terminology/Phraseology

The classified information withheld on certain pages contains standard terminology or phraseology which appears in the most recent FBI investigative files.[5]   Disclosure of such information would, among other things, allow the target of an investigation to determine what information has been learned about him and what additional steps may be expected.  *See* Hardy Decl. ¶ 48.  If such information is superficial, the target may be alerted that he can continue his activities without fear of detection; conversely, if the information is substantial, its disclosure might

---

[4]  Exemption (b)(1) has been asserted to protect squad/unit information on the following pages: NSL VIO-2299, 20727, 20729, 20733, and 38438**.**

[5]  Exemption (b)(1) has been asserted to protect standard terminology and phraseology on the following pages: NSL VIO-4, 20727, and 20729.

prompt the target to alter his or her conduct to evade detection. *See id.*

### 4.    Character of the Case

The classified information withheld on certain pages[6] identifies the character of a case for a specific type of intelligence activity directed at a specific target of national security interest. Disclosure of this information could reasonably be expected to cause serious damage to national security, since it would disclose a particular intelligence or counterintelligence investigation, disclose the nature, scope or thrust of the investigation, and reveal how intelligence or counterintelligence information is acquired. *See* Seventh Hardy Decl. ¶ 49.

### 5.    Alpha Designator

The classified information withheld on certain pages[7] contains alpha designators, which are inserted into file numbers at the end of FBI classification numbers, to specify a subset of the file classification for record-keeping purposes. *See* Seventh Hardy Decl. ¶ 50. The disclosure of this information would identify an intelligence activity that is currently used to obtain information about an individual or organization of national security interest.

---

[6]  Exemption (b)(1) has been asserted to protect information regarding the character of a case on the following pages: NSL VIO-1900-1903, 10726, 10729, 10734, 10738, 10746, 10759, 10762, 12357, 12363, 15358, and 24699.**.**

[7]  Exemption (b)(1) has been asserted to protect information regarding alpha designators on the following pages: NSL VIO - 4, 7, 24-25, 100, 208-209, 298, 497-499, 699, 701, 799, 899, 1800, 1900-1903, 2098-99, 2299-2300, 9850-55, 10726, 10729, 10734, 10738, 10742, 10746, 10750, 10755, 10759, 10762, 10764, 12456-57, 12361-63, 12367, 12372, 12379, 12386, 12395, 15350-51, 15354, 15358, 15467, 17949, 17953, 17955, 17959, 20733, 23447, 23450, 36333, 36805, 36817, 36819, 38441, 38443-38454, and 38456-38471.

### 6.      Acronyms

The classified information withheld on certain pages[8] contains an acronym that identifies

a specific intelligence method used by the FBI, disclosure of which would permit hostile analysts

to ascertain the specific nature of the FBI's investigations.  *See id.* at p 51.    Accordingly, it is

properly withheld.

### 7.      Foreign Counterintelligence Investigations

The classified information withheld on certain pages[9] identifies targets of current FBI

foreign counterintelligence investigations.  The disclosure of this information could reasonably be

expected to cause serious damage to the national security as it would: (a) reveal an actual

intelligence activity or method used by the FBI against a specific target; (b) disclose the particular

activity or method's intelligence gathering capabilities; and (c) provide an assessment of the

intelligence source penetration of a specific target during a specific time period.  *See* Seventh Hardy

Decl. ¶ 52.

### 8.      Intelligence Sources

---

[8]   Exemption (b)(1) has been asserted to protect information regarding the acronyms on the following pages: NSL VIO - 4, 2299, 20727, 20729, 27106.

[9]   Exemption (b)(1) has been asserted to protect against disclosure targets of foreign counterintelligence on the following pages: NSL VIO - 4, 7-9, 25, 498, 699, 799, 899-900, 997-999, 1401, 1601, 1700-1701, 1800-1801, 1900-1901, 2100, 2299-2300, 9851-9854, 10726, 10730-31, 10735-10736, 10738-40, 10742-43, 10746-48, 10751-53, 10756-57, 10759, 10762-65, 12352-54, 12357-59, 12364, 12366-69, 12400, 12406, 14283-14290, 14293-97, 15354-55, 15357, 15359-63, 17949, 17951, 17953, 17955, 17957, 17959, 23443-23454, 27103-27104, 27105-27106, 27109, 290999-29100, 33998, 36332-34, 36336, 36809, 36812, 36815-17, 36819-20, 38438-39, and 38441-38471.

14

The classified information withheld on certain pages[10] concerns intelligence sources, who are individuals who provided or currently provide information that partains to national security, the disclosure of which could reasonably be expected to result in damage to the FBI's intelligence and counterintelligence-gathering capabilities.   *See* Seventh Hardy Decl. ¶ 53.   The withheld information provided by or pertaining to such a source is specific in nature and, if disclosed, reasonably could be expected to reveal the identity of this source and cause damage to the national security, including the FBI's ability to protect and recruit intelligence sources in the future, since such disclosure can reasonably be expected to cause FBI intelligence sources to fear that their identities will be revealed, notwithstanding the FBI's express or implied assurance of confidentiality.  *See id.* ¶ 54-55.  This information is properly withheld because its release could cause serious damage to national security by discouraging both current and potential intelligence sources from providing information.  *See id.* ¶ 56.  Such an effect would severely hamper the FBI's law enforcement efforts to detect and apprehend those who seek to damage the national security. *See id.*

### Foreign Relations or Foreign Activities of the United States

The classified information withheld[11] also relates to foreign relations or foreign activities of the United States, and is exempt from disclosure under section 1.4(d) of Executive Order 12958, as amended, and FOIA Exemption 1.  The delicate liaison between the United States and these

---

[10]  Exemption (b)(1) has been asserted to protect against disclosure intelligence source information on the following pages:  NSL VIO - 4, 5, 999, 1601, 1603, 1900.

[11]  Exemption (b)(1) has been asserted to protect information concerning foreign relations or foreign activities of the U.S. on the following pages: NSL VIO - 4, 5, 7-9, 24-25, 699, 10726-27, 10729-31, 10734-35, 10738-40, 10742-10755, 10757, 10759-10765, and 15358.

15

foreign governments could be severely damaged if the United States were to disclose investigations that reveal elements of the United States' relations and activities with foreign governments.  As explained in the Seventh Hardy Declaration, unauthorized disclosure of such information can reasonably be expected to lead to diplomatic or economic retaliation against the United States; identify the target, scope, or time frame of U.S. intelligence activities in or concerning a foreign country; enable hostile entities to assess U.S. intelligence-gathering activities and devise countermeasures against those activities; or compromise cooperative foreign sources. *See* Seventh Hardy Decl. ¶ 57.

Thus, based on its detailed declaration and the absence of any evidence of bad faith, the FBI has properly withheld information pursuant to (b)(1).

### C.     The FBI Properly Withheld Information Pursuant to FOIA Exemption 2 (High) and Exemption 7(E)

The FBI properly withheld certain information pursuant to both section 552(b)(2) of the FOIA ("Exemption 2")(High) and section 552(b)(7)(E).  Information that is "related solely to the internal personnel rules and practices of an agency" is exempt from disclosure pursuant to Exemption 2.  5 U.S.C. § 552(b)(2)   Exemption 2 applies to materials "'used for predominantly internal purposes.'" *Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting *Crooker v. Bureau of Alcohol, Tobacco & Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (*en banc*)).  This exemption has been held to protect:  (1) information that, if released, would risk circumvention of agency regulations or statutes, *see Crooker*, 670 F.2d at 1074; and (2) "routine matters of merely internal interest," id. at 1069 (citation omitted).  The first category of information is protected under the so-called "high 2" exemption, while the second category is protected under the "low 2"

16

exemption.  *See Schiller*, 964 F.2d at 1207; *Wiesenfelder v. Riley*, 959 F. Supp. 532, 535 (D.D.C.

1997).  In this case, the FBI has properly withheld information based upon the "high 2"exemption.[12]

Exemption 2 (High) permits the withholding of information relating to the nature and

identity of information sources used in law enforcement and national security activities when

release of the information could help criminals evade detection.  *See, e.g., PHE, Inc. v. DOJ*, 983

F.2d 248, 251 (D.C. Cir. 1993) (holding that Exemption 2 authorized withholding of information

relating to the "specific documents, records and sources of information available to [FBI] Agents"

and concluding that "release of FBI guidelines as to what sources of information are available to

its agents might encourage violators to tamper with those sources of information and thus inhibit

investigative efforts"); *Dorsett v. Dep't of Treasury*, 307 F. Supp. 2d 28, 36 (D.D.C. 2004) (same

protection for information which "could be used to gain insight into the methods and criteria the

Secret Service utilizes to identify and investigate persons of interest, and could alter such

---

[12]  The pages on which Exemption (b)(2) (High) and Exemption 7(E) have been asserted are: NSL VIO-4-5, 7-9, 24-25, 99-101, 208-209, 298, 302, 401, 497-502, 600, 699-701, 799-801, 900-901, 998-1001, 1400-1402, 1500-1502, 1600-1604, 1800-1802, 1900-1903, 2098-2100, 2400-2402, 2405, 2409-2412, 2463, 2493, 2497-2499, 2603, 2702, 2705-2706, 2800, 2902-2904, 9850-9852, 9854-9855, 10726-10766, 12352-12372, 12379, 12386, 12395, 12400, 12406, 14283-14286, 14287-14290, 14293-14294, 14296-14297, 15350-15363, 15467, 15958-15969, 17947-17960, 18651, 18767-18768, 19726-19727, 20721, 20726-20729, 20731-20733, 22185, 23443-23447, 23449-23456, 27101-27108, 28642, 29099, 29678, 29833-29836, 31448-31451, 31795, 31924-31925, 31927-31932, 33994, 33996-34004, 36331-36336, 36805, 36807, 36809, 36811-36813, 36816-36820, 38437-38439, 38441, and 38443-38471.

The assertion of Exemption (b)(2), which had previously been applied to withhold Intelligence Oversight Board ("IOB") Case Numbers, has now been withdrawn.  This change applies to NSL VIO - 298, 401, 497, 600, 799, 899, 997, 1301, 1401, 1600, 1800, 23443, 23447, 23450, 23454, 36331, 36805, 36811, and 36814-36815, all of which are included in Exhibit Y. In addition, Exemption (b)(2) has been withdrawn from its previous application to protect an FBI employee's office room number at FBIHQ in NSL VIO-2401.  *See* Seventh Hardy Decl. at 34 n. 26.

individuals' behavior to avoid detection"); *Keys v. Dep't of Homeland Sec.,* 510 F. Supp. 2d 121, 127-28 (D.D.C. 2007) (Kay, M.J.) (similar).

A danger that disclosure of internal information may facilitate unauthorized intrusion into a system amounts to a risk of circumvention justifying withholding under Exemption 2 (high). *See, e.g., Singh v. FBI,* 547 F Supp. 2d 32, 44-45 (D.D.C. 2008) (Exemption 2 permitted agency to withhold information that could facilitate unauthorized access into computer systems used for investigations); *Boyd v. Bureau of Alcohol, Tobacco, Firearms & Explosives,* 496 F. Supp 2d 167, 171 (D.D.C. 2007) (similar protection for ATF's "law enforcement[] and firearms tracing databases").

In this case, the two requirements for invoking Exemption 2 (High) have been met. First, the information withheld by the FBI and described below relates to internal, investigative techniques and procedures for FBI investigations using NSLs. Second, release of this information could enable circumvention of the law, as explained below.

Because the records at issue here were compiled for law enforcement purposes, Exemption 7(E) protects from disclosure the same information that is protected by Exemption 2(high). Exemption 7(E) protects from disclosure information compiled for law enforcement purposes where release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions," or where it would "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes as well as techniques and procedures used to investigate crimes after they have been committed. *See, e.g.,*

18

*PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 250-51 (D.C. Cir. 1993) (holding that portions of FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)).

Exemption 7(E) applies even when the identity of the techniques have been disclosed, but the manner and circumstances of the techniques are not generally known, or the disclosure of the details could reduce or even nullify their effectiveness.  *See Blanton v. Dep't of Justice*, 63 F. Supp. 2d 35, 50 (D.D.C. 1999); *Coleman*, 13 F. Supp. 2d 75, 83 (D.D.C. 1998) (same).  And Exemption 7(E) does not require a particular determination of harm that would result from the records or information within its coverage; rather, the exemption protects categories of the information described.  *Smith v. Bureau of Alcohol, Tobacco and Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) ("Exemption 7(E) provides categorical protection to information related to law enforcement techniques"); *Fisher v. Dep't of Justice*, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991) (Richey, J.), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992) (same).

## 1.      Investigative Techniques and Procedures

The FBI has asserted Exemption 2 (High), in conjunction with Exemption (b)(7)(E), to protect information pertaining to FBI investigative techniques and procedures, the disclosure of which may lead to circumvention of the law.  Within this category are the following nine subcategories of information which relate to investigative techniques and procedures:

(a) *Identities of FBI Field Offices Referenced in NSLs,*[13] *and the identity of a squad or unit*

---

[13]  Exemptions (b)(2) (high) and (b)(7)(E) have been asserted on the following pages to protect this category of information: NSL VIO - 4-5, 7-9, 24-25, 99-101, 147, 208-209, 298, 302, 401, 497-502, 600, 699-701, 799-801, 900-901, 998-1000, 1400-1402, 1500-1502, 1600-1604, 1800-1802, 1900-1903, 2097-2100, 2497-2499, 2800, 2902-2904, 9850-9852, 9854-9855, 10726-10736, 10738, 10740, 10742, 10744-10751, 10753, 10755, 10757, 10759-10762,

*involved in a National Security Investigation.*[14]   This information would allow a potential criminal to piece together seemingly random bits of information to form a mosaic as to how the FBI concentrates its NSL efforts.  This could foster circumvention of the particular geographic areas and/or the activities of the specific squad or unit involved in the investigation.

   (b) *Internet "World Wide Web" or "www" addresses and e-mail addresses of individuals under investigation.*[15]   Release of this type of information would allow individuals to learn the specific e-mail accounts under investigation; armed with this knowledge, they could use other individual e-mail accounts that were not under surveillance.   Individuals seeking to evade investigation could also determine which domain or internet carriers were under surveillance and could use other domains or carriers to avoid detection and circumvent the law.

   (c) *Type of investigation, Preliminary or Full Field Investigation, when referenced with an actual investigation and not in general discussion.*[16]   Release of this type of information would

---

12352-12372, 12379, 12386, 12395, 12400, 12406, 15350-15363, 15467, 18767-18768, 19726-19727, 20721, 23443-23447, 23449-23456, 28642, 29833-29836, 31795, 31924-31925, 31927-31930, 31932, 33996-33997, 33999-34003, 36805, 36807, 36809, 36811-36813, and 36817-36820.

   [14]   Exemptions (b)(2) and (7)(E) have been asserted on the following pages to protect this category of information: NSL VIO - 9850-9852, 10729, 10737, 10741, 10745, 10754-10755, 10758-10759, 10762-10766, 12352-12355, 12363, 15356, 18651, and 20727.

   [15]  Exemptions b(2) and 7(E) have been asserted on the following pages to protect this category of information: NSL VIO - 9850-9852, 10727, 10730-10731, 10739, 10743-10744, 10747-10748, 10751-10753, 10756-10757, 10760, 10762-10764, and 12353-12354.

   [16] Exemptions b(2) and 7(E) have been asserted on the following pages to protect this category of information: NSL VIO - 4-5, 7-9, 99-100, 208-209, 298, 497-498, 699-701, 799, 998, 1401-1402, 1800, 2098-2100, 2409-2412, 2493, 2497-2499, 2703, 2706, 9850-9852, 10734, 10738, 10742, 10746, 10750, 10755, 10759, 10762, 12353-12359, 12366-12367, 15354, 15358-15360, 15467, 23443, 23447, 23450, 23455, 36332, 36805, 36809, 36812-36813, 36816, 36819-36820.

allow individuals to know the types of activities that would trigger a full investigation as opposed to a preliminary investigation and, thus, might cause them to alter/adjust their behavior accordingly. Moreover, the knowledge that a specific activity in general warrants investigation could likewise cause individuals to adjust their behavior to avoid detection.

(d) *The specific procedures used during an investigation of an internet website and/or of an email account.*[17]  Release of this information would allow individuals to learn the specific types of internet and e-mail activity which are under surveillance or which would trigger a potential investigation, and could cause them to alter their behavior accordingly in order to avoid detection.

(e) *Number of carriers involved in NSL investigations and the number of phone numbers under investigation.*[18]  Release of this information may allow individuals to detect the scope of the NSL program and modify their behavior according to statistical probability.  For example, a lower number of carriers may suggest that the more common carriers are the ones involved in an investigation and individuals seeking to circumvent FBI investigations the system may then use smaller or lesser-known carriers to conduct their illicit activities in an effort to evade detection by law enforcement.

(f) *The number of NSLs issued during a particular year for a specific investigative file or for specific types of NSLs.*[19]  This information, if it were to be released, would reveal details about

---

[17]  Exemptions b(2) and 7(E) have been asserted on the following pages to protect this category of information: NSL VIO - 2098-2100, 2702, 2705, 9850, 10763-10764, and  29678.

[18]  Exemptiond b(2) and 7(E) have been asserted on the following pages to protect this category of information: NSL VIO - 7-9, 24-25, 998, 1000, 1800, 12361-12362, 12395, 15355, 15357, and 33994.

[19]  Exemptions b(2) and 7(E) have been asserted pages to protect this category of information on the following pages: NSL: NSL VIO-14283-14285, 14287-14290, 14293-14294,

the specific law enforcement techniques and procedures used in the NSL program that might allow individuals to circumvent detection.

(g) *Procedures involved in implementation of an Interim Policy of the Attorney General's Guidelines for National Security Investigations and Full Investigations.*   Release of this information, which includes practical advice on implementing law enforcement procedures, could encourage individuals who seek to circumvent detection to alter their behavior so that they would not engage in the specific activities that would trigger these law enforcement procedures.

(h) *The identity -- and explanation -- of a computer system utilized during national security investigations.*[20]   Release of the details of a computer system used by the FBI in its national security investigations would divulge a specific law enforcement technique that could allow an individual to alter his behavior in order to avoid detection by the particular system or the information that the system captures.

(i) *Copy of a proprietary agreement for services with a telecommunications firm which includes the scope of work, period of performance and references a classified statement of work.*[21] Publicly identifying the companies and scope of the work would reveal the specific law enforcement techniques which the FBI has employed; knowledge of this information could  allow an individual to circumvent detection by altering his behavior accordingly.   Accordingly, because release of all of the foregoing information could reasonably be expected to impede the FBI's effectiveness of its

---

14296-14297, VIO-15348, 15350-15351, 20726-20729, 38437-38439, and 38441.

[20]  Exemption (b)(2) and 7(E) have been asserted to protect this category of information on the following pages: NSL VIO - 7-9, and 29099-29100.

[21]  Exemptions (b)(2) and 7(E) have been asserted to protect this category of information on the following pages: NSL VIO-15958-15969, and 22185.

law enforcement techniques and procedures and potentially aid in circumvention of the law, the FBI

has properly withheld this information pursuant to Exemption (b)(2)-1.

### 2.        Certain Internal Telephone and Facsimile Numbers

The FBI has properly withheld certain internal telephone and facsimile numbers of FBI

personnel pursuant to Exemptions 2(High) 7(E ) because disclosure of such information, which is

used by FBI personnel while working on significant national security and criminal investigations,

could impede the FBI's effectiveness and may risk circumvention of the law. [22] *See* Seventh Hardy

Decl. ¶ 62.  Disclosure of these telephone and facsimile numbers could subject FBI personnel to

harassing telephone calls which could disrupt official business.  *See id.*

### 3.        FBI File Numbers

 The FBI withheld FBI file numbers, which are significant internal administrative

management tools used to organize case-related information.[23]  These file numbers are purely

internal identifiers, used for administrative control and information retrieval.  *See* Seventh Hardy

Decl. ¶ 63.  A file number reveals the type of investigation contained in a particular file, because

each investigation is assigned to a particular file number series (for example the "190" file series

---

[22] Exemptions b(2)(High) and 7(E) have been asserted to protect certain internal
telephone and facsimile numbers on the following pages: NSL VIO-4, 7, 24, 99, 208, 298, 401,
497, 600, 699, 799, 1401, 1600, 1701, 1800, 1900, 1902, 2098, 2299-2300, 2409-2412, 2491,
2501, 2707, 2800, 2904, 3107, 3109, 10726, 10728, 10731, 10736, 10738, 10742, 10744, 10746,
10748, 10750, 10755, 10757, 10759, 10761-10762, 10765, 12352-12357, 12359-12360,
12362-12363, 12367, 12372, 12379, 12386, 12395, 12400, 12406, 15347-15349, 15352, 15354,
15358, 15360, 15467, 19645, 23443, 23447, 23450, 23454, 27100, 28642, 28708, 29100, 29400,
31925, 31927, 31930, 33994-33996, 34001, 36805, 36811, 36817, 36819, and 38437.

[23] Exemptions (b)(2) and 7(E) have been asserted on the following pages to protect FBI
file numbers:  NSL VIO-99-100, 208, 298, 498, 699, 701, 799, 1800, 1901-1903, 2098, and
2463.

designates FOIA/Privacy Act matters at the administrative stage).  *See id.*   Individuals who learn

that the FBI had worked on a particular type of investigation could use that information to adjust

their behavior to evade detection and circumvent particular techniques employed in that

investigation.  Accordingly, this material has been appropriately withheld pursuant to Exemption

(b)(2).

### 4.        Secure FBI Address

The FBI has properly asserted Exemption 2 as to certain pages[24] in order to protect the

identity of a secure FBI facility where the FBI conducts investigations and collects investigative and

source material.  *See* Seventh Hardy Decl. ¶ 64.  Release of this information would pose a threat

to the physical safety of FBI employees, thereby impeding the FBI's operations and potentially

aiding in the circumvention of the law.  Accordingly, the FBI has properly withheld these records

pursuant to Exemption (b)(2).

### 5.        The FBI  Properly Withheld Secure Intranet and E-Mail Addresses of FBI Employees.

The FBI has properly withheld certain pages[25] pursuant to Exemption (b)(2) to protect secure

intranet or e-mail addresses of FBI employees.  Secure internal e-ail and web site addresses are

routinely used by FBI personnel during the performance of their jobs.  *See* Seventh Hardy Decl. ¶

65.  Disclosing this information would reveal vulnerable internal information and impede the

effective use of the FBI's internal e-mail system.  Disclosure could result in unauthorized persons

---

[24]  Exemption (b)(2) has been asserted to protect the identity of a secure FBI facility on the following pages:  NSL VIO-1600 and 2299.

[25]  Exemption (b)(2) has been asserted to protect secure intranet and e-mail addresses of FBI employees on the following pages:  NSL VIO-2602, 2606, 2707, 28642, and 31449.

gaining access to, and possibly tampering with, the FBI's internal computer system without detection. *See id.* Accordingly, because disclosure of this information could result in impeding the FBI's effectiveness, the FBI has properly withheld this information pursuant to Exemption (b)(2).

### 6.     Code Name of FBI Investigation

The FBI has properly withheld FBI investigation code names from certain pages.[26] These code names are assigned internally to investigations, and reflect the investigation's subject. *See* Hardy Decl. ¶ 66. Release of this information would reveal the focus of the FBI's investigation, which could enable criminals to alter their behavior to avoid detection and inhibit the FBI's law enforcement efforts. *See id.*

### 7.     Secure/Non-Secure Telephone or Facsimile Numbers of Non-FBI Federal Government Personnel

The FBI has properly withheld internal telephone and facsimile numbers of non-FBI federal government personnel who have worked with the FBI on significant national security and criminal investigations.[27] *See* Seventh Hardy Decl. ¶ 67. Disclosure of these telephone and facsimile numbers would subject these personnel to harassing telephone calls or facsimiles which could, in turn, impede the ability of government personnel to perform law enforcement investigations. *See id.* Because disclosure of this information could both impede the effectiveness of non-governmental and government employees' work and risk possible circumvention of the law, these

---

[26] Exemption (b)(2) has been asserted on the following pages to protect a code name: NSL VIO-10729, 10734, 10742-10743, 10746, 10750, 10755, and 10762.

[27] Exemption (b)(2) has been asserted to protect the specified telephone number and facsimile number on the following page:  NSL VIO-15349.

records have been properly withheld pursuant the FOIA Exemption (b)(2)(High).

### 8.     Confidential Source Symbol Number.

The FBI has properly invoked Exemption 2(High) in withholding confidential source symbol numbers.[28]  If the FBI were to disclose confidential source symbol numbers identifying confidential sources, the identity of those sources could be ascertained by people knowledgeable about the particular investigation, who could, in turn, use the information to circumvent the law. In addition, release of these source symbol numbers would disclose to the public the scope and location of FBI informant coverage within a particular geographic area, also enabling circumvention of the law.

### 9.     Confidential Source File Number

The FBI has properly invoked Exemption 2 (High) in withholding confidential source file numbers assigned to FBI confidential informants.[29]  These file numbers are unique to particular confidential informants.  *See* Seventh Hardy Decl. ¶ 72.  Repeated disclosures of these numbers, unique to the confidential sources, could narrow the possible true identities associated with each source file number, thus raising the possibility that the identity of the confidential source would be revealed.  *See id.*   Any such revelation, or potential revelation, of the identity of a confidential source, would have a chilling effect on the cooperation of other FBI confidential informants.  *See id.* ¶ 73.

### D.     The FBI Has Properly Withheld Information Pursuant to FOIA Exemption 3

---

[28]  Exemption (b)(2)-8 has been asserted on the following page:  NSL VIO-27102.

[29]  Exemption (b)(2)-9 has been asserted on the following page: NSL VIO - 4.

Exemption 3 incorporates nondisclosure provisions contained in other federal statutes.  5 U.S.C. § 552(b)(3); *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989).  Exemption 3 applies to matters "specifically exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).  Under Exemption 3, judicial review is limited to whether (1) the withholding statute qualifies as an Exemption 3 statute,  and (2) the records fall within the statute's scope.  *Sims*, 471 U.S. at 167; *Fitzgibbon v. CIA,* 911 F.2d 755, 761 (D.C. Cir. 1990).

Evaluating whether documents are properly withheld under Exemption 3 presents considerations "distinct and apart from the other eight exemptions."  *Fitzgibbon*, 911 F.2d at 761 (quoting *Ass'n of Retired R.R. Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)). When Congress has enacted statutes that particularly identify certain categories of information that are exempt from public disclosure notwithstanding the requirements of FOIA, Congress makes "manifest" its intent to require the withholding of documents falling within the terms of those statutes. *Fitzgibbon*, 911 F.2d at 762.  Thus, "'Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage.'" *Fitzgibbon*, 911 F.2d at 761-62 (quoting *Ass'n of Retired R.R. Workers*, 830 F.2d at 336).

Here, the FBI relied upon Rule 6(e) of the Federal Rules of Criminal Procedure to withhold

27

Federal Grand Jury information.[30]  *See* Seventh Hardy Decl. ¶ 75.  It is well-established that, pursuant to Rule 6(e), the secrecy of grand jury material is broadly protected.  *See id.*  Here, both identifying information of an individual of investigative interest and a description of the specific records subpoenaed by a Federal Grand Jury were withheld pursuant to Exemption(3).  *See id.* Disclosure of this information would violate the well-established secrecy of grand jury proceedings and could reveal the inner workings of that federal grand jury.  *See id.*

E.    **The FBI Has Properly Withheld Information Pursuant to FOIA Exemption 4**

FOIA Exemption (4) protects records from disclosure that contain "commercial or financial information obtained from a person" that is "privileged or confidential." 5 U.S.C. § 552(b)(4).  To fall within the exemption, records must contain information that is (1) commercial or financial in character, (2) obtained from a person, and (3) privileged or confidential.

Courts have recognized that the terms "commercial and financial" information should be given their "ordinary meanings" and merely require that the submitter has a "commercial interest" in the records.  *Pub. Citizen Health Research Group v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983) (citing *Washington Post Co. v. Dep't of Health & Human Servs.*, 690 F.2d 252, 266 (D.C. Cir.1982) and *Bd. of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 403 (D.C. Cir.1980)); *Am. Airlines, Inc. v. Nat'l Mediation Bd.*, 588 F.2d 863, 870 (2d Cir. 1978) ("'Commercial' surely means pertaining or relating to or dealing with commerce.").

The test for determining whether private commercial information is "privileged or

---

[30]  Exemption (b)(3) has been asserted on page NSL VIO-147. While Exemption (b)(3) had previously been asserted on page NSL VIO - 1700, that assertion has been withdrawn, and NSL VIO-147 has been substituted in the sample as an exemplar of a page on which (b)(3) was properly asserted.

28

confidential" for purposes of Exemption 4 is set forth in *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765 (D.C. Cir. 1974).  Under *National Parks*, information is "confidential" for purposes of Exemption 4 if disclosure is likely either "(1) to impair the Government's ability to obtain necessary information in the future," or "(2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  498 F.2d at 770; *see also Nadler v. FDIC*, 92 F.3d 93, 96 (2d Cir. 1996); *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1113 (9th Cir. 1994); *Acumenics Research & Tech. v. Dep't of Justice*, 843 F.2d 800, 807 (4th Cir. 1988). This test recognizes that Exemption 4 protects both the government's interest in the continued availability and reliability of information from third parties, as well as the submitter's interests in the confidentiality of commercial or financial information.  *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 877-79 (D.C. Cir. 1992).

While a submitter's views are not especially germane to the first ("impairment") prong of this test, *see Gen. Elec. Co. v. NRC*, 750 F.2d 1394, 1402 (7th Cir. 1984) (the question of whether disclosure will impair government information-gathering is a "quintessentially managerial judgment" of the agency), a submitter's input could be determinative as to the "competitive harm" prong.  To satisfy this prong, the decision-maker need not find actual competitive harm; evidence of "actual competition and a likelihood of substantial competitive injury" is sufficient.  *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1152 (D.C. Cir. 1987).

Here, the FBI has withheld the identities of telecommunications companies, internet service providers, credit reporting agencies, and financial institutions, all of which have provided information to the FBI as part of its national security and criminal investigations.  *See* Seventh

Hardy Decl. ¶ 77.[31]   Because each of these businesses would likely suffer substantial competitive harm if they were identified as having provided customer information to the FBI, their identities were deemed by the FBI  to be privileged and confidential.  *See id.*   If customers of each of these businesses knew that the companies were working with the FBI, providing the FBI with information about the customers' financial transactions and private communications, it would likely cause each business competitive harm in the form of canceled subscriptions and also lawsuits seeking to prevent further disclosure of the information they have provided.  *See* Hardy Decl. ¶ 77.

F.         **The FBI Has Properly Withheld Information Pursuant to FOIA Exemption 5**

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5).  The exemption ensures that members of the public cannot obtain through FOIA what they could not ordinarily obtain through discovery in a lawsuit against the agency.  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Within Exemption 5 are "the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege."  *Rockwell Intern. Corp. v. DOJ*, 235 F.3d 598, 601 (D.C. Cir. 2001).  Two of these privileges—the deliberative process privilege and attorney-client privilege—have been properly asserted by the FBI in this case.

---

[31]  Exemption (b)(4) has been asserted on the following pages:  NSL VIO-25, 209, 498-499, 699-700, 900, 998-999, 1801, 1900-1901, 2301, 2495, 2497-2499, 2706, 2903-2904, 9850-9855, 10726-10727, 10730, 10735, 10739, 10743, 10747, 10752-10753, 10755-10757, 10759-10760, 10763-10765, 12352-12354, 12357-12359, 12361-12364, 12357-12368, 12372, 12395, 12406, 15354, 15357-15359, 15467, 15958-15969, 17947-17949, 17951, 17953, 17955, 17957, 17959, 19644, 20727, 22185, 23443-23445, 23450, 23454-23455, 27108, 31448-31452, 31924-31932, 36332-36333, 36809-36810, 36820, 38438-38439, 38441, and 38443-38471.

1.     **The FBI Properly Withheld Information Pursuant to the Attorney-Client Privilege [32]**

The attorney-client privilege protects confidential communications made between attorneys and their clients when the communications are made for the purpose of securing legal advice or services.  *See In re Sealed Case*, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  A government agency, like a private party, "needs . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors."  *In re Lindsey*, 148 F.3d 1100, 1105 (D.C. Cir. 1998).  The attorney-client privilege encompasses situations in which an attorney's counsel is sought on a legal matter, and applies both to a client's disclosures to an attorney and an attorney's communications to a client.  *See Coastal States*, 617 F.2d at 862.  Accordingly, the privilege applies in the context of federal agencies, in which agency clients and agency attorneys have privileged attorney-client relationships.  *See id.* at 863.

In the instant case, the FBI properly withheld material protected by the attorney-client privilege pursuant to Exemption 5.  Generally speaking, the material withheld consists of internal e-mails or memoranda either (1) among attorneys within the FBI's Office of the General Counsel ("OGC"); or (2) between OGC attorneys and FBI personnel outside OGC, including but not limited to the Counterterrorism Division.  *See, e.g.*, Seventh Hardy Decl. ¶¶80-104.[33]  Taken as a whole, the redaction asserted pursuant to Exemption 5, the attorney-client privilege, reflect

---

[32]  Exemption (b)(5) has been asserted on the following page, based on the attorney-client privilege:  NSL VIO-2098, 2400-2402, 2405, 2409-2412, 2462-2464, 2800, 2902-2904, 10744, 10751, 18651-18652, 18767,19726-19728, 19824, 20721, 28642, 28906-28907, 29099-29100, 29678, 29833-29837, 31795, 31924-31925, 31928-31932, 33997-33999, 34001-34004, 36817, 36911, 38441, and 38443-38471.

[33]  See Seventh Hardy Decl. ¶¶ 80-104 for a detailed, document-by-document description of the redactions made pursuant to the attorney-client privilege.

communications between and among FBI counsel and the FBI's clients and employees seeking

and/or providing legal advice regarding the FBI's use of NSLs as part of its national security and

criminal investigations.  Seventh Hardy Decl. ¶ 104.  All of these communications were made in

confidence, using the FBI's secure, internal computer system.  *Id.*  Disclosure of the

communications between the FBI attorneys and their clients would impede the full disclosure to FBI

attorneys of all the information that relates to their internal clients' reasons for seeking legal advice.

*Id.*  Such full communication is necessary in order to ensure that sound legla advice is provided.

### 2. The FBI Properly Withheld Information Pursuant to the Deliberative Process Privilege[34]

The deliberative process privilege applies to "decisionmaking of executive officials

generally," and protects documents containing deliberations that are part of the process by which

government decisions are formulated.  *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir.

1997).  The purpose of the deliberative process privilege is to encourage frank discussion of legal

and policy issues within the government, and to protect against public confusion resulting from

disclosure of reasons and rationales that were not ultimately the bases for the agency's action. *See,

e.g., Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993); *Russell v. Dep't of the Air Force*, 682

F.2d 1045, 1048 (D.C. Cir. 1982).  It is premised upon the notion that "[h]uman experience teaches

that those who expect public dissemination of their remarks may well temper candor with a concern

---

[34] Exemption (b)(5)-2, deliberative process, is cited on the following pages:  NSL VIO-18651-18652, 18767-18769, 19644, 19726-19728, 19824, 20721, 20725-20734, 28642, 28707-28708, 28906-28907, 29099-29100, 29678, 29833-29837, 31448-31452, 31924-31929, 31931, 33994, 33997-33999, 34001-34001, 36911 and 38437-38440.

FOIA Exemption (b)(5) has been withdrawn from Bates-stamped pages NSL VIO 38441-38471.  These pages remain withheld in full pursuant to Exemptions (b)(1), (b)(2)(High), (b)(4), (b)(6), (b)(7)A), (b)(7)(C),  (b)(7)(D), and (b)(7)(E).

32

for appearances . . . to the detriment of the decision making process." Sears, Roebuck & Co., 421 US. at 150-51.

To come within the scope of the deliberative process privilege, a document must be both "predecisional and deliberative." *Coastal States*, 617 F.2d at 866 . A document is "predecisional" if "it was generated before the adoption of an agency policy" and "deliberative" if "it reflects the give-and-take of the consultative process." *Id.* (emphasis omitted).  The privilege therefore applies to "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.; see also Sears, Roebuck & Co.*, 421 U.S. at 150; *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987).

The records withheld by the FBI pursuant to the deliberative process privilege  fit squarely within the scope of this exemption.  First, the documents qualify as "inter-agency or intra-agency memorandums or letters" because they are communications of agency officials that were between and among agency officials and not shared outside the FBI.  *See* Seventh Hardy Decl. ¶¶ 105-31. Second, the documents  reflect recommendations or express opinions on legal or policy matters. *See id.*  For example, the FBI has asserted Exemption (b)(5) based on deliberative process in withholding pre-decisional documents including the following: FBI internal e-mails, FBI internal memoranda, correspondence between  the FBI's General Counsel and her staff seeking agreement on interpretation of certain Intelligence Oversight Board (IOB) reporting requirements, and internal e-mails among FBI employees and attorneys regarding requirements for reporting potential violations to the IOB.  *See, e.g.*, Seventh Hardy Decl. ¶¶ 106 - 131.  A great deal of the material withheld pursuant Exemption (b)(5) based on the deliberative process privilege shares common

33

characteristics.  Most of the documents are internal emails among FBI employees and/or attorneys and most contain discussions of appropriate interpretations of statutes, regulations, policy, or guidance regarding NSLs.  *See id.*  For example, portions of one e-mail withheld pursuant to this exemption were "between and among FBI attorneys and employees discussing policy guidance regarding NSL processes.  *See* Seventh Hardy Decl. ¶ 107 (discussing NSL VIO-18767-18769).

As is evident from a review of the materials accompanying the Seventh Hardy Declaration, the remaining records as to which the deliberative process privilege forms the basis for the assertion of Exemption (b)(5) are similarly pre-decisional discussions of policy related to the use of NSLs among FBI employees.  *See* Seventh Hardy Decl. ¶¶ 105-131.   The redactions the FBI has made pursuant to Exemption 5, the deliberative process privilege, "reflect an internal, ongoing dialogue among and between FBI personnel with regard to the FBI's use and reporting requirements regarding its use of NSLs in its investigations."  Seventh Hardy Decl. ¶ 129.

G.    **The FBI Has Properly Withheld Information Pursuant to FOIA Exemptions 6 and 7(C).**

The FBI properly withheld personal identifying information of FBI support personnel, FBI special agents, and third parties of investigative interest from portions of documents pursuant to both Exemption 6 and Exemption 7(C).  Exemptions 6 and 7(C) protect the privacy of individuals from unwarranted invasion.  The applicability of both of these exemptions requires the agency to balance the relevant individual privacy rights against the public interest in disclosure.   The balancing analysis to be conducted under both of these exemptions is similar.  *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991); *Beck v. Dep't of Justice*, 997 F.2d 1489, 1492 (D.C. Cir. 1993) .  However where, as here, the records at issue are compiled for law enforcement purposes, the analysis

34

under Exemption 7(C) tilts further in favor of nondisclosure.  *Id.; see also Summers v. DOJ,* 517 F.

Supp. 2d 231, 243 (D.D.C.  2007) (While its language is similar to Exemption 6, Exemption 7(C)

places an even lower burden on the agency to justify withholding  information.); *accord  Elliott v.*

*FBI,* 2007 WL 1303595, *4 (D.D.C. 2007). .

The Supreme Court has adopted a broad construction of the privacy interests protected by

these exemptions, rejecting a "cramped notion of personal privacy" and emphasizing that "privacy

encompass[es] the individual's control of information concerning his or her person."  *DOJ v.*

*Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763 (1989).  Privacy is of particular

importance in the FOIA context because a disclosure required by FOIA is a disclosure to the public

at large.  *See, e.g., Painting & Drywall Work Pres. Fund, Inc. v. HUD*, 936 F.2d 1300,

1302 (D.C. Cir. 1991).

Exemption 6 allows for the withholding of information about individuals in "personnel and

medical files and similar files" when the disclosure of such information "would constitute a clearly

unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6); *see also Dep't of State v.*

*Washington Post Co.*, 456 U.S. 595, 599-600 (1982) ("[T]he primary concern of Congress in drafting

Exemption 6 was to provide for the confidentiality of personal matters.").  For this exemption to

apply, the information at issue must be maintained in a government file and "appl[y] to a particular

individual." *Id.* at 602.  Once these threshold requirements are met, Exemption 6 requires the agency

to balance the individual's right to privacy against the public's interest in disclosure.  *See Dep't of*

*Defense v. Fed. Labor Relations Auth. (FLRA)*, 510 U.S. 487, 495 (1994); *Reed v. NLRB*, 927 F.2d

1249, 1251 (D.C. Cir. 1991); *see also Favish v. Natl' Archives & Record Admin.*, 541 U.S. 1057

(2004) (privacy interest of family of president's deputy counsel who died of apparent suicide

35

outweighed public interest in disclosure of death-scene photographs taken by police investigators,)

"The privacy interest protected by Exemption 6 'encompass[es] the individual's control of information concerning his or her person.'" *FLRA*, 510 U.S. at 500 (quoting *Reporters Comm.*, 489 U.S. at 763). In contrast, "the only relevant public interest in the [Exemption 6] balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Id.* at 497 (quoting *Reporters Comm.*, 489 U.S. at 773).

In order for material to be withheld under Exemption 7(C), the material protected must be "compiled for law enforcement purposes.[35]   "In assessing whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Jefferson v. DOJ*, 284 F.3d 172, 176-77 (D.C. Cir. 2002). The range of law enforcement purposes falling within the scope of Exemption 7 includes government national security and counterterrorism activities. *See, e.g., Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 926 (D.C. Cir. 2003); *Kidder v. FBI*, 517 F. Supp. 2d 17, 27 (D.D.C. 2007). Furthermore, the FBI, as a law enforcement agency, is entitled to deference when it identifies material as having been compiled for law enforcement purposes under Exemption 7.  See *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1999). Here, "[a]ll of the records responsive to plaintiff's request pertain to NSLs, which are essential investigative tools utilized by the FBI to conduct national security investigations. . . . Thus, there is no doubt that the documents contained in this FOIA release fall within the law

---

[35]   This same threshold requirement that "records or information must be compiled for law enforcement purposes" 5 U.S.C. § 552(b)(7), applies equally to Exemptions 7(D) and 7(E) and, for the reasons explained, is satisfied.

enforcement duties of the FBI, and that the information readily meets the threshold requirement of

Exemption (b)(7)."  Seventh Hardy Decl. ¶ 133.

### 1.    The FBI Properly Withheld Names and/or Identifying Information

#### a.    Names and/or Identifying Information of FBI Support Personnel and Special Agents[36]

The FBI properly applied Exemption 6 to documents that identify FBI support personnel and

Special Agents.  The FBI properly applied Exemptions 6 and 7(C) to records that identify FBI

Special Agents (SAs) who were responsible for conducting, supervising, and/or monitoring

investigative activities related to NSLs, as well as FBI support personnel involved in review of NSL

violations. *See* Seventh Hardy Decl.¶  137.  The assignments of SAs to any particular investigation

are  made based upon the SAs' choice. *Id.*  Any negative publicity associated with a particular

investigation to which an SA is assigned may seriously prejudice that SA's effectiveness in

conducting other investigations.   *Id.* In addition, privacy considerations support protecting SAs and

former SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or

other investigations, which could subject them to annoyance or harassment in either their official or

private lives.'" *Lewis-Bey v. DOJ*, 595 F. Supp. 2d 120, 134-35 (D.D.C. 2009) (Kessler, J.) (quoting

---

[36] Exemptions (b)(6)  and (b)(7)(c) have been asserted on the following pages: NSL VIO-4-5, 7-9, 24-26, 99, 208, 210, 298-301, 401, 497-500, 600, 699-700, 799, 900, 1001, 1400-1401, 1500-1501, 1600, 1604, 1700-1701, 1800, 1900-1902, 2098-2099, 2299-2300, 2400-2402, 2800, 2902-2904, 3107-3111, 4528, 9512-9513, 9850, 10726, 10728-10729, 10731-10736, 10738, 10740, 10742, 10744-10746, 10748-10750, 10753, 10755, 10757-10759, 10761-10762, 10766, 12352-12357, 12359-12363, 12366-12369, 12372, 12379, 12386, 12395, 12400, 12406, 15347-15349, 15351-15352, 15354-15359, 15467, 18651-18652, 18767-18769, 19644, 19726-19729, 19823-19824, 20721, 20725-20726, 20728-20730, 22185, 23443, 23446-23450, 23452, 23454, 23456, 27100, 28642, 28906, 29099-29100, 29399-29400, 29833-29837, 31448-31452, 31795, 31924-31925, 31927-31932, 33994-33999, 34001-34004, 36331-36332, 36336, 36805, 36807-36809, 36811-36812, 36814, 36819-36820, 36911, 38437, 38440-38441, and 38443-39471.

*Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980)).   Accordingly, withholding the specified information in the documents to protect the privacy interests of these government employees is justified under Exemptions 6 and 7(c).

Similarly, the names of FBI support employees have also been withheld pursuant to Exemptions 6 and 7(c).   These employees were assigned to handle tasks related to investigations requiring NSLs.   *See* Seventh Hardy Decl. ¶ 138.   In addition, other support employees, including some attorneys within OGC were involved in the internal review of the processes involved in issuance of NSLs. *Id.*   Because these individuals may be in positions with access to information regarding official law enforcement investigations, they could become targets of harassing inquiries for unauthorized access to investigation files. *Id.*   Accordingly, "disclosure of this information could reasonably be expected to constitute an unwarranted invasion of their personal privacy,*" Lewis-Bey*, 595 F. Supp. 2d at 134-35 and, as with the SAs, withholding the specified documents to protect the privacy interests of these government employees is justified under Exemptions 6 and 7(c).

      b.    <u>Names and/or Identifying Information of Third Parties of Investigative Interest[37]</u>

The FBI also properly withheld information to protect the names and identifying information of third parties of investigative interest pursuant to Exemption 6.   The material withheld includes the names, dates of birth, Social Security Numbers, and other personal information.   See Seventh

---

[37]   Exemptions (b)(6)-2 and (b)(7)(C)-2 have been asserted on the following pages: NSL VIO-25, 298, 300, 497-499, 699-700, 799, 998, 1601, 1700-1701, 1800, 1900-1901, 9850-9855, 10727-10735, 10739, 10742-10743, 10746-10747, 10750-10753, 10755-10756, 10759-10760, 10762, 10764, 12353-12354, 12358-12359, 12363-12369, 15354-15355, 15467, 23443, 23447, 23454, 36805, 36809-36810, 36812, 36815-36818, 38438, 38441, 38443 and 38445-38471.

Hardy Decl. ¶ 139.   As explained in the Seventh Hardy Declaration, "[b]eing linked with any law enforcement investigation carries a strong negative connotation and a stigma.   Release of the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention."   Seventh Hardy Decl. ¶ 139; Those whose names may surface in an FBI investigation, even if they are not targets, have strong personal privacy interests.   *See Fitzgibbon*, 911 F.2d 755, 767 (D.C. Cir. 1990), *Quinon v. FBI*, 86 F.3d 1222; (D.C. Cir. 1996); *see also Nation Magazine v. United States Customs Serv.*, 71 F.3d 885, 896 (D.C. Cir. 1995) (portions of law enforcement investigatory records that would reveal the identities of subject witnesses, or informants are categorically exempt from disclosure under FOIA).   The FBI could identify no discernible public interest in the disclosure of this personal information because the disclosure of third parties' names and identifying information would not shed light on the operations and activities of the FBI.   *Id.* Therefore, the FBI concluded that the disclosure of this information would constitute a clearly unwarranted invasion of privacy and, accordingly, properly withheld this information pursuant to Exemptions 6 and 7(c).

In sum, the FBI's withholdings under Exemptions 6 and 7(C) were proper.   First, all of the withheld information in this instance is maintained in government files and "applies to a particular individual."   *Washington Post Co.*, 456 U.S. at 602; *see* Seventh Hardy Decl. ¶ 133 ("there is no doubt that the documents contained in this FOIA release fall within the law enforcement duties of the FBI, and that the information readily meets the threshold requirements of Exemption (b)(7).") Second, this personal information would not "'she[d] light on [the FBI's] performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"   *FLRA*, 510 U.S. at 497 (quoting *Reporters Comm.*, 489 U.S. at 773).   By contrast, the individuals to whom the

information pertains have "substantial privacy interests in not having their identities disclosed." Seventh Hardy Decl. ¶ 140.   Accordingly, the balance of interests required by Exemption 6 and Exemption 7(c) militates in favor of the withholdings made in this case.

          c.     <u>Names and/or Identifying Information Concerning Third Parties Merely Mentioned,[38] non-FBI Government Personnel,[39] Third Parties Who Provided Information to the FBI,[40] and Third Party Victims,[41] and Name and/or Identifying Information Concerning a Commercial Institution Employee.[42]</u>

For the same reasons set forth above, the balance of interests required by Exemptions 6 and 7(C) weighs in favor of the withholdings made in these categories. Each of these categories of third parties have legitimate privacy interests in not having their names disclosed as mentioned in an FBI investigation involving national security issues.   Moreover, the FBI could identify no discernible public interest in the disclosure of this information because the disclosure of the third parties' names and identifying information would not shed light on the operations and activities of the FBI. Therefore, disclosure of the withheld information would constitute a clearly unwarranted invasion of personal privacy.  *See* Seventh Hardy Decl. ¶¶ 139-147.

---

[38]  Exemptions (b)(6) and (b)(7)(C) have been asserted on the following pages: NSL VIO-498, 700, 1401,1700m  and 10747.

[39]  Exemptions (b)(6)and (b)(7)(C) have been asserted on the following pages: NSL VIO-2706, 15349, 15351, and 36911.

[40]  Exemptions (b)(6) and (b)(7)(C) have been asserted on the following pages: NSL VIO-1900, 2301, 2495, 2706, 10726, 10730, 10735, 10763, 12352-54, 12357-58, 12363-64, 12367-68, 15354-55, 15358, 15467, 17949-17960, 20727, and 22185.

[41]  Exemptions (b)(6) and (b)(7)(C) have been asserted on the following pages: NSL VIO-10743 and 10747.

[42]Exemptions (b)(6) and (b)(7)(C) have been asserted on the following pages: NSL VIO-998, 15958, and 15960-15961

### H.   The FBI Has Properly Withheld Information Pursuant to FOIA Exemption 7(A)

The FBI has properly withheld the names and file numbers of pending FBI investigations pursuant to Exemption 7(A).[43]  *See* Seventh Hardy Decl. ¶ 149.  Exemption 7(A) of FOIA permits the withholding of: (1) "records or information"; (2) "compiled for law enforcement purposes;" (3) the disclosure of which "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  Congress enacted Exemption 7(A) because it "'recognized that law enforcement agencies had legitimate needs to keep certain records confidential, lest the agencies be hindered in their investigations or placed at a disadvantage when it came time to present their cases'" in court.  *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 156 (1989) (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)).  To satisfy its burden justifying the applicability of this exemption, the government need only demonstrate that (1) a law enforcement proceeding is pending or prospective, and (2) release of the information could reasonably be expected to cause some articulable harm to the proceeding.  *See Robbins Tire & Rubber Co.*, 437 U.S. at 224.

Courts have long accepted that Congress intended Exemption 7(A) to apply whenever the government's case could be harmed by the premature release of evidence or information, or when disclosure could impede an ongoing enforcement proceeding, including through the appeal of those proceedings.  *See, e.g., Robbins Tire and Rubber Co.*, 437 U.S. at 232 ("[T]he release of information in investigatory files prior to the completion of an actual, contemplated enforcement proceeding was

---

[43]   Exemptions (b)(7)(A) has been asserted on the following pages: NSL VIO-208-209, 497, 799, 900, 1800, 2098-2100, 2299-2301, 10726-10727, 10729-10731, 10734-10735, 10738-10740, 10742-10743, 10746-10748, 10750-10753, 10755-10757, 10759-10760, 10762-10765, 12352-12354, 12356-12358, 12361-12369, 12379, 12386, 12395, 12406, 15361-15363, 19644, 20727, 20729, 20732-20733, 38438-38439, 38441, 38443-38446 and 38448-38471.

precisely the kind of interference that Congress continued to want to protect against."); *Ctr. For Nat'l Sec. Studies*, 331 F.3d at 926 [("Exemption 7(A) does not require a presently pending 'enforcement proceeding'"; it is sufficient that ongoing investigations are likely to lead to such proceedings); *Swan v. SEC*, 96 F.3d 498, 500 (D.C. Cir. 1996) (documents exempt under 7(A) where disclosure "could reveal much about the focus and scope of the Commission's investigation"); *Mendoza v. DEA*, 465 F. Supp. 2d 5, 11 (D.D.C. 2006) ("Exemption 7(A) is properly applied to criminal investigative files of an ongoing criminal investigation"); *Timken Co. v. U.S. Customs Service*, 531 F. Supp. 194 (D.D.C. 1981) (Exemption 7(A) remains applicable as long as determination could be appealed).

Moreover, the Government's burden in demonstrating interference with law enforcement proceedings under Exemption 7(A) has been significantly relaxed by Congress. Section 552(b)(7)(A) originally provided for the withholding of information that "would interfere with enforcement proceedings," but the Freedom of Information Reform Act of 1986 amended that language and replaced it with the phrase "could reasonably be expected to interfere with" enforcement proceedings. *See* Pub. L. No. 99-570 § 1802, 100 Stat. 3207. Courts have repeatedly recognized that this change in the statutory language substantially broadens the scope of the exemption. *See, e.g., Alyeska Pipeline Service Co. v. Environmental Protection Agency*, 856 F.2d 309, 311 n.18 (D.C. Cir. 1988) ( that district court's improper reliance on pre-amendment version of Exemption 7(A) "required EPA to meet a higher standard than FOIA now demands"); *Gould Inc. v. GSA*, 688 F. Supp. 689, 703 n.33 (D.D.C. 1988) ("The 1986 amendments relaxed the standard . . . by requiring the government to show merely that production of the requested records "could reasonably be expected" to interfere with enforcement proceedings.")

Finally, it is well-established that the applicability of Exemption 7(A) may be demonstrated

generically, based on the category of records involved, rather than on a document-by-document basis. *See Robbins Tire*, 437 U.S. at 236. Thus, courts have routinely accepted affidavits in Exemption 7(A) cases that specify the distinct, generic categories of documents at issue and the harm that could result from their release, rather than requiring extensive, detailed itemizations of each document. *See, e.g., Spannaus v. Dep't of Justice*, 813 F.2d 1285, 1288 (4th Cir. 1987) ("The Supreme Court has rejected the argument that [Exemption 7(A)] requires particularized showings of interference, holding instead that the Government may justify nondisclosure in a generic fashion.").

For the reasons explained above, the FBI is asserting Exemption 7(A) to protect the names and file numbers of pending FBI investigations. *See* Seventh Hardy Decl. ¶ 149. Release of the names or file-numbers of ongoing FBI investigations could result not only in the acknowledgment of the existence of the investigation but also in the identification of suspects, and thus jeopardize the investigation. *See* Seventh Hardy Decl. ¶ 149. Accordingly, the FBI has properly applied Exemption 7(A) to protect the file numbers and names of such investigations.

## I.     The FBI Has Properly Withheld Information Pursuant to FOIA Exemption 7(D)

I       The identity of FBI informants is entitled to the protection of 5 U.S.C. § 552(b)(7)(D), which permits the withholding or redacting of law enforcement records, the release of which "could reasonably be expected to disclose the identity of a confidential source . . . and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source." Unlike 7(C), Exemption 7(D) requires no balancing of public and private interests. *See Dow Jones & Co. v. DOJ*, 917 F.2d 571, 575-76 (D.C. Cir. 1990).

Exemption 7(D) applies if the agency establishes that a source has provided information

43

under either an express or implied promise of confidentiality.  *See Williams v. FBI*, 69 F.3d 1155,

1159 (D.C. Cir. 1995).  A confidential source is one who "provided information under an express

assurance of confidentiality or in circumstances from which such an assurance could be reasonably

inferred."  *Dep't of Justice v.. Landano*, 508 U.S. 165, 172 (1993).  An implied assurance of

confidentiality could be found "when circumstances such as the nature of the crime investigated and

the witness' relation to it support an inference of confidentiality."  *Id.* at 179, 181.  In such

circumstances, the Government is entitled to a presumption of inferred confidentiality.  *Id.  See also,*

*e.g., Mays v. DEA*, 234 F.3d 1324, 1337 (D.C. Cir. 2000) (inference of implied confidentiality for

sources to conspiracy to distribute cocaine, which "is typically a violent enterprise, in which a

reputation for retaliating against informants is a valuable asset"); *Williams v. F.B.I.*, 69 F.3d 1155

(D.C. Cir.1995) (inference of confidentiality found for sources to the crimes of  rebellion or

insurrection, seditious conspiracy, and advocating overthrow of the government).

        In the context of FBI investigations related to national security, as in other law enforcement

investigations, the use of confidential sources is common and important.  In its investigations

involving NSLs, the FBI relies on both confidential sources who receive an express assurance of

confidentiality and on other sources who are "interviewed under circumstances from which an

assurance of confidentiality can reasonably be inferred." *Id.* ¶ 151.  The information provided by

confidential sources generally "is singular in nature and, if released, could reveal their identity."

Seventh Hardy Decl. ¶ 151.  As explained in more detail below, the information provided by such

sources can often only be obtained through an assurance of confidentiality.

        **1.        Names and/or Identifying Information Provided by a Corporate Entity**

**or An Individual Under an Express Assurance fo Confidentiality**[44]

The FBI often issues NSLs to telecommunications companies, internet service providers, credit reporting agencies, and financial institutions. Therefore, numerous corporate entities, and named individuals working for those corporations, have provided information to the FBI as a result of NSLs. Seventh Hardy Decl. ¶ 152.  The information provided by these entities is often detailed and singular in nature.  *Id.*  Disclosure of the identity of a confidential source could not only be damaging to a particular investigation, and the FBI's relationship with that source in the future, but could also have a chilling effect on the cooperation of other confidential sources.  *Id.*  The FBI's experience has been that the assurance of complete confidentiality is necessary in order to enlist  the assistance of confidential sources and to persuade  such sources to continue providing valuable assistance in the future.  *Id.*

## 2.      Foreign Government Agency Information[45]

The FBI has withheld information on one page pursuant to Exemption 7(D) because that information was provided by a foreign government agency under an express assurance of confidentiality.  Seventh Hardy Decl. ¶ 154.  The foreign government's cooperation with the FBI, and provision of valuable information that, if disclosed, would tend to identify its source, was

---

[44]    Exemptions (b)(7)(D)-1 is asserted on the following pages: NSL VIO-4-5, 7-9, 25, 209, 498-499, 699-700, 900, 998-999, 1501, 1601, 1603, 1801, 1900-1901, 2301, 2495, 2497-2499, 2706, 2903-2904, 9850-9855, 10726-10727, 10735, 10739, 10743-10744, 10747, 10751-10753, 10755-10757, 10759-10760, 10763-10765, 12352-12353, 12357-12359, 12361-12364, 12367-12368, 12372, 12379, 12395, 12400, 12406, 15354, 15357-15359, 15467, 15958-15969, 17947, 17949, 17951, 17953, 17955, 17957, 17959, 19644, 20727-20728, 22185, 23443-23445, 23451, 23455-23456, 27108, 31448-31452, 31924-31932, 36332-36333, 36805, 36809-36810, 36817, 36820, 38437-38438, 38441, 38443-38447 and 38449-38471.

[45]    Exemption (7)(D) has been asserted to protect foreign government agency information provided under an express assurance of confidentiality on page NSL VIO-38439.

45

contingent upon an express assurance that the information would be used only for law enforcement purposes and would not be released to the public.  Disclosure of this information would have a chilling effect upon both the FBI's relationship with this particular foreign government agency and a broader implication for its relationships with other foreign government agencies.  *Id*. ¶ 155.

### 3.    Names and/or Identifying Information Provided by an Individual Under an Implied Assurance of Confidentiality[46]

The FBI has withheld information the names and other identifying information provided to the FBI or other law enforcement agencies under an implied assurance of confidentiality.  These particular third parties "provided specific detailed information that is singular in nature concerning the activities of the subjects of the FBI's national security investigations."  Seventh Hardy Decl. ¶ 156.  By providing this information, which has been "of value to the FBI," these sources have "placed themselves in harm's way should the subjects of these investigations become aware of the third parties' cooperation with the FBI."  *Id.*  This exemption is asserted to protect both the singular information provided by the third parties' names and other identifying information.  *Id.*

### 4.    Confidential Source File Number[47]

The FBI has asserted Exemption (b)(7)(D) to protect the informant file number of a permanent confidential symbol number source of the FBI.  *See* Seventh Hardy Decl. ¶ 157 Similar Confidential source file numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality.  *See id.*  Disclosure

---

[46]  This exemption is asserted on the following pages: NSL VIO-12354 and NSL VIO-12358.

[47]  Exemption (b)(7)(D) is asserted as to information provided by source symbol numbered informants on the following page: NSL VIO-4.

46

of a confidential source file number in multiple times and in multiple documents could ultimately identify the confidential sources themselves, because such disclosure would reveal the connections of confidential informants to the information they have provided. *See id.* ¶ 158. Furthermore, such a disclosure would have a chilling effect on the activities and cooperation of other sources, whose cooperation depends on the assurance of confidentiality. *Id.* For these reasons, the FBI's assertion of Exemption 7(D) for this information is proper.

## CONCLUSION

For the reasons set forth above, as well as for the reasons articulated in the Seventh Declaration of David M. Hardy, the defendant respectfully requests that the Court grant summary judgment in favor of the Defendant.

Dated: December 24, 2009

Respectfully submitted,

TONY WEST
Assistant Attorney General

CHANNING D. PHILLIPS
Acting United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director

*/s Elisabeth Layton*
ELISABETH LAYTON
D.C. Bar No. 462227
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W.
Washington, DC  20530
Tel: (202) 514-3489
Fax: (202) 616-8470

Attorneys for Defendant

47