(b)(2)-6.[42]

### (b)(2)-7    Secure/Non-Secure Telephone or Facsimile Number of Non-FBI Federal Government Personnel

(67)    Exemption (b)(2)-7 has been asserted to protect internal telephone and facsimile numbers of non-FBI federal government personnel. Telephone and fax numbers are used by federal government personnel during the performance of their jobs, and in this particular set of documents the information relates to other federal government personnel who are working in concert with the FBI on significant national security and criminal investigations. Disclosure of these telephone and facsimile numbers could subject these individuals to harassing telephone calls or facsimiles which could disrupt official business, and impede the ability of these individuals to conduct and conclude functions related to the law enforcement investigations in a timely manner. Accordingly, because disclosure of these internal numbers could impede the effectiveness of the federal government employees' work, and may risk circumvention of the law, the FBI has properly withheld this information pursuant to Exemption (b)(2)-7.[43]

### (b)(2)-8    Confidential Source Symbol Number

(68)    Exemption (b)(2)-8 has been asserted to protect the permanent source symbol number of an FBI source. The FBI obtained information from a confidential source regarding a national security investigation. If the FBI were to disclose the confidential source symbol number of this informant, their identity could be ascertained by persons knowledgeable about this

---

[42] Exemption (b)(2)-6 has been asserted on the following pages: NSL VIO-10729, 10734, 10742-10743, 10746, 10750, 10755, and 10762.

[43] Exemption (b)(2)-7 has been asserted on the following page: NSL VIO-15349.

FBI investigation. Furthermore, if the FBI disclosed their identity, the informant, as well as their family, could be subjected to embarrassment, humiliation, and/or physical or mental harm.

(69)    Permanent symbol numbers are assigned to confidential informants who report information to the FBI on a regular basis pursuant to an "express" grant of confidentiality. The symbol numbers are used as an administrative reporting tool to protect the actual, sensitive identity of an informant in documents generated by the FBI. A symbol number consists of a two-letter abbreviation which identifies the particular FBI field office where the symbol-numbered source is operating or has operated, followed by a sequentially-assigned number. For example, using a fictitious symbol number, "NY 1234" for informant "JOHN DOE," the two letter abbreviation "NY" reveals that this is a source of the New York Field Office and the source is the 1,234[th] symbol-numbered source of that office. The symbol number would be used in all written reports in which DOE provided information to the FBI. Therefore, every time "NY 1234" was released, the reader of the document would know that the source behind the symbol number was the same individual reporting. Thus, every time "NY 1234" was used by the FBI in a record, the number would always identify JOHN DOE.

(70)    Release of these source symbol numbers would indicate both the scope and location of FBI informant coverage within a particular geographic area. If a particular symbol number such as "NY 1234" is released to the public at repeated times and in various documents, the identity of the source could be determined. Each release of information in which the symbol number is disclosed, reveals connections to dates, times, places, events and names from which the source's identity could be deduced. A person familiar with the facts being reported by DOE could easily identify NY 1234's identity as being JOHN DOE given enough instances in which NY 1234

44

provided information to the FBI. Releasing the symbol number would allow an individual with knowledge of such matters to extrapolate the source's true identity. This is especially true given the fact that regardless of the law enforcement investigative file in which the symbol number appears, NY 1234 would always be the symbol number used to protect the true identity of informant JOHN DOE. Thus, protection of these identifiers is essential to maintaining the integrity of the FBI's confidential source program where release could endanger the lives of informants or discourage cooperation by information sources, and in this case, the source symbol number has been protected pursuant to Exemption (b)(2)-8.[44]

### (b)(2)-9       Confidential Source File Number

(71)     Exemption (b)(2)-9 has been asserted in conjunction with Exemption (b)(7)(D)-4 to protect a confidential source file number assigned to an FBI confidential informant. Similar in usage to the confidential source symbol number, these confidential source file numbers are also assigned in sequential order to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality. The confidential source file is unique to the particular confidential informant and is used only in documentation relating to that particular informant.

(72)     Disclosure of confidential source file numbers at various times and in various documents could ultimately identify these sources since it would reveal the connections of confidential informants to the information provided by them. Repeated release of confidential source file numbers along with the information provided by these confidential informants would

---

[44] Exemption (b)(2)-8 has been asserted on the following page:  NSL VIO-27102.

narrow the possibilities of their true identities. This is especially true since each confidential

source file number is assigned to only one confidential informant.

(73)     The disclosure of the identity of this confidential source would have a chilling

effect on the activities and cooperation of other FBI confidential informants. It is only with the

understanding of complete confidentiality that the aid of such informants can be enlisted, and

only through this assurance of confidentiality that these informants can be persuaded to continue

their assistance in providing information to the FBI in the future. Accordingly, the disclosure of

this confidential source file number could reasonably be expected to identify a permanent

confidential source of the FBI. Therefore, this information has been appropriately protected from

disclosure pursuant to Exemption (b)(2)-9.[45]

## EXEMPTION (b)(3)
## INFORMATION PROTECTED BY STATUTE

(74)   5 U.S.C. § 552(b)(3) exempts from disclosure information which is specifically

exempted from disclosure by statute . . . provided that such statute

> (A) requires that the matters be withheld from the public in such a
> manner as to leave no discretion on the issue, or (B) establishes
> particular criteria for withholding or refers to particular types of
> matters to be withheld.

### (b)(3)          Federal Grand Jury Information (FRCP Rule 6(e))

(75)     Exemption (b)(3) has been asserted in conjunction with Rule 6(e) of the Federal

Rules of Criminal Procedure to withhold Federal Grand Jury information. It is well-established

that Rule (6)(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury

---

[45] Exemption (b)(2)-9 has been asserted on the following page: NSL VIO - 4.

material regardless of the substance in which the material is contained. In the NSL-related

Electronic Communication ("EC") responsive to plaintiff's request, only that information which

explicitly discloses a matter occurring before a Federal Grand Jury has been withheld pursuant to

Exemption (b)(3). Specifically, identifying information of an individual of investigative interest,

as well as a description of the specific records subpoenaed by the Federal Grand Jury, were

withheld pursuant to this exemption. Disclosure of this information would violate the secrecy of

the grand jury proceedings and could reveal the inner workings of the federal grand jury that

considered this case. Accordingly, the FBI has properly asserted FOIA Exemption (b)(3) to

withhold this information from disclosure.[46]

## EXEMPTION (b)(4)
## TRADE SECRETS AND COMMERCIAL OR FINANCIAL INFORMATION

### (b)(4)  Confidential Commercial Information

(76)    Exemption 4 of the FOIA protects "trade secrets and commercial or financial

information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4).

This exemption is intended to protect the interests of both the government and submitters of

information. Its very existence encourages submitters to voluntarily furnish useful commercial or

financial information to the government and provides the government with an assurance that

required submissions will be reliable. The exemption also affords protection to those submitters

who are required to furnish commercial or financial information to the government by

safeguarding them from the competitive disadvantages that could result from disclosure.

---

[46] Exemption (b)(3) has been asserted on the following page: NSL VIO-147. Exemption (b)(3), which had been applied to Grand Jury subpoena references on page NSL VIO-1700 has been withdrawn.

(77)     For purposes of Exemption 4, commercial information required to be furnished to the government is confidential if disclosure is likely to:  1) impair the government's ability to obtain necessary information in the future; or 2) cause substantial harm to the competitive position of the person from whom the information was obtained.  In this case, the FBI withheld the identities of telecommunications companies, internet service providers, credit reporting agencies and financial institutions which have provided information to the FBI as part of its national security and criminal investigations.  Exemption (b)(4)-1 has been asserted because disclosure of their identities would cause substantial harm to their competitive position. Specifically, business would be substantially harmed if their customers knew that the companies were furnishing information to the FBI.  The stigma of working with the FBI would cause customers to cancel the companies' services and file civil actions to prevent further disclosure of subscriber information.  Therefore, the FBI has properly withheld this information pursuant to Exemption (b)(4).[47]

---

[47] Exemption (b)(4) has been asserted on the following pages: SL VIO-25, 209, 498-499, 699-700, 900, 998-999, 1801, 1900-1901, 2301, 2495, 2497-2499, 2706, 2903-2904, 9850-9855, 10726-10727, 10730, 10735, 10739, 10743, 10747, 10752-10753, 10755-10757, 10759-10760, 10763-10765, 12352-12354, 12357-12359, 12361-12364, 12357-12368, 12372, 12395, 12406, 15354, 15357-15359, 15467, 15958-15969, 17947-17949, 17951, 17953, 17955, 17957, 17959, 19644, 19490, 20727, 22185, 23443-23445, 23450, 23454-23455, 27108, 29678-29679, 31448-31452, 31924-31932, 36332-36333, 36809-36810, 36820, 38438-38439, and 38441-38471.

## EXEMPTION (b)(5)
## PRIVILEGED INFORMATION[48]

(78)   Exemption 5 allows the FBI to protect information contained in "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." This exemption has been construed to exempt those documents or information normally privileged in the civil discovery context, including, as is the case here, the attorney-client privilege and the deliberative process privilege. Generally, the attorney-client privilege protects confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice. This privilege encompasses any opinions given by an attorney to his client based upon and reflecting those facts, as well as communications between attorneys that reflect client-supplied information. The deliberative process privilege protects the internal deliberations of the government by exempting material that contains opinions, advice, evaluations, deliberations, policy formulation, proposals, conclusions or recommendations.

### (b)(5)-1        Attorney-Client Privilege

(79)   Exemption (b)(5)-1 has been asserted to protect material covered by the attorney-client privilege. The attorney-client privilege is appropriately asserted when legal advice of any kind is sought from a professional legal adviser in his or her capacity as such and the communications relating to that purpose are made in confidence by the client. The

---

[48] FOIA Exemption (b)(5) has been withdrawn from Bates-stamped pages NSL VIO 38441-38471. These pages remain withheld in full pursuant to Exemptions (b)(1), (b)(2)-1, (b)(4), (b)(6)-1,2, (b)(7)A), (b)(7)(C)-1,2, (b)(7)(D), and (b)(7)(E)-1.

communications are permanently protected from disclosure by the client or by the legal adviser unless the attorney-client protection is waived. This privilege encompasses confidential communications made to the attorney not only by decision-making personnel but also by lower-echelon employees who possess information relevant to an attorney's advice-rendering function. Disclosure of the two-way communications between FBI attorneys and their clients would impede the full disclosure of all of the information that relates to the client's reasons for seeking legal advice, which is necessary if the professional mission is to be accomplished. Exemption (b)(5)-1 has been applied to 84 pages.[49]

### *Description of Documents*

(80)    Exemption (b)(5)-1 has been asserted in conjunction with Exemptions (b)(2)-1 and (b)(7)(E)-1 to withhold portions of two e-mails dated September 7, 2005 and September 13, 2005 which consist of a field office's request and the FBI's Office of General Counsel's ("OGC") response regarding draft language proposed for use by the field offices in transactional NSLs to Internet Service Providers. (NSL VIO-2097-2098).

(81)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(2)-1, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(E)-1 to withhold portions of an e-mail string spanning from May 27, 2005 to June 2, 2005 between a member of the FBI's Counterterrorism Division ("CTD") and OGC, as well as among OGC attorneys requesting and discussing legal advice regarding the process for managing the use of emergency NSLs. (NSL VIO 2400-2402).

---

[49] Exemption (b)(5)-1 has been asserted on the following pages:  NSL VIO - 2097-2098, 2400-2402, 2405-2406, 2409-2412, 2462-2464, 2800, 2902-2904, 10744, 10751, 18651-18652, 18767,19726-19728, 19824, 20721, 28642, 28906-28907, 29099-29100, 29678-29680, 29833-29837, 31795, 31924-31925, 31928-31932, 33997-33999, 34001-34004, 36817 and 36911.

(82)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(2)-1, (b)(6)-1,

(b)(7)(C)-1, and (b)(7)(E)-1 to withhold portions of several e-mails ranging in date from July 8,

2005 to September 20, 2005.  These e-mails, which were exchanged between and among FBI

OGC attorneys and members of CTD, discussed issues and concerns regarding the use of

emergency letters to obtain NSLs.  (NSL VIO 2405-2406 and 2409-2412).

(83)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(6)-1 and

(b)(7)(C)-1 to withhold portions of an e-mail chain dated from December 1, 2005 to December

23, 2005.  These e-mails, which were exchanged between and among FBI OGC attorneys and

members of CTD, requested legal advice and discussed the process for obtaining NSLs.  (NSL

VIO 2462-2464).

(84)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(2)-1, (b)(6)-1,

(b)(7)(C)-1, and (b)(7)(E)-1 to withhold portions of an e-mail chain from June 20, 2006 to June

23, 2006 from an FBI employee to an OGC attorney seeking legal advice regarding whether an

NSL-related issue would be deemed reportable to the Intelligence Oversight Board "(IOB").

(NSL VIO 2800).

(85)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(2)-1, (b)(6)-1,

(b)(7)(C)-1, and (b)(7)(E)-1 to withhold portions of an e-mail chain dated from March 17, 2005

to April 4, 2005 between and among an OGC attorney and internal agency clients seeking advice

related to issues that arose in connection with the request for financial summary information as

part of a NSL.  (NSL VIO 2902-2904).

(86)    Exemption (b)(5)(1)-1 has been asserted in conjunction with (b)(6)-1 and

(b)(7)(C)-1 to withhold portions of two e-mails dated February 22, 2007 between an OGC

attorney and a member of CTD in which legal advice is sought and provided regarding the details of what needs to be reported to the IOB. (NSL VIO-18651-18652).

(87)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(6)-1 and (b)(7)(C)-1 to withhold portions of an e-mail from FBI counsel to an internal agency client dated March 19, 2007 regarding the process for reviewing NSLs. (NSL VIO-18767).

(88)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(6)-1 and (b)(7)(C)-1 to withhold e-mails spanning from November 10, 2005 to November 14, 2005, by and among FBI attorneys in which the use and scope of telephone NSLs is discussed. (NSL VIO-19726-19729 and 19824).

(89)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(5)-2, (b)(2)-1, (b)(7)(E)-1, (b)(6)-1, and (b)(7)(C)-1 to withhold an e-mail dated March 7, 2007 among FBI counsel and its internal agency client regarding advice and recommendations on implementing NSL policy and review procedures at a particular field office. (NSL VIO-20721).

(90)    Exemption (b)(5)-1 has been asserted for two e-mails dated March 21, 2007 between and among FBI counsel and internal agency clients regarding items to be reviewed by OGC for potential issues to be reported to the IOB and procedures for the review. (NSL VIO-28642).

(91)    Exemption (b)(5)-1 has been asserted in communications among FBI counsel and their clients in conjunction with (b)(5)-2, with respect to advice about potentially reportable IOB violations. (NSL VIO-28906-28907).

(92)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(1), (b)(2)-1, and (b)(7)(E)-1 to withhold portions of an e-mail chain dated from March 19, 2007 to March 20,

2007 between FBI counsel and FBI employees seeking and providing legal advice and analysis

regarding the retention, use and description of NSLs.  (NSL VIO-29099-29100).

(93)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(1), (b)(2)-1, (b)(4),

(b)(5)-2, (b)(6)-1, (b)(7)(C)-1, (b)(7)(D)-1 and (b)(7)(E)-1 to withhold a memorandum dated

November 9, 2006, from the OGC National Security Law Branch ("NSLB") Working Group to

then-NSLB Deputy General Counsel Julie Thomas with respect to NSL issues.  This memo

includes analysis, proposals, and deliberations among agency counsel.  (NSL VIO-29678-29680).

(94)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(2)-1, (b)(5)-2,

(b)(6)-1, (b)(7)(C)-1 and (b)(7)(E), to withhold certain portions of a series of e-mails from

October 19, 2006 to October 20, 2006 between and among OGC attorneys and internal agency

clients regarding the handling of overcollection of information through the use of NSLs.  These

withheld portions include advice, opinions, and discussion between and among attorneys in OGC

and their clients in the FBI's field offices.  (NSLVIO-29833-29837).

(95)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(6)-1 and (b)(7)(C)-1 to

withhold portions of an e-mail dated October 31, 2006 between FBI attorneys and its internal

agency clients in which legal advice is provided regarding NSL reporting requirements.  (NSL

VIO-31795).

(96)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(4), (b)(2)-1, (b)(6)-1

(b)(7)(C)-1, (b)(7)(D)-4, and (b)(7)(E)-1 to withhold the text of two e-mails dated August 29,

2005 among FBI attorneys regarding a possible legal argument regarding telephone billing

inquiries.  (NSL VIO-31924).

(97)    Exemption (b)(5)-1 has been asserted to withhold portions of an e-mail dated

August 10, 2005 between FBI attorneys regarding interpretation of statutory language governing the issuance and scope of NSLs. (NSL VIO-31925).

(98)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(4), (b)(6)-1, (b)(7)(C)-1 and(b)(7)(D)-1 to withhold portions of an e-mail dated July 1, 2005 between FBI attorneys regarding legal advice for how to gain access to a communications provider's records. (NSL VIO- 31928).

(99)    Exemption (b)(5)-1 has been asserted in conjunction with (b)(2)-1, (b)(4), (b)(5)-2, (b)(6)-1, (b)(7)(C)-1, (b)(7)(D)-1 and (b)(7)(E)-1 to withhold portions of an e-mail dated June 30, 2005 in which FBI attorneys discussed whether a meeting among attorneys, a communications provider and a field office to discuss policies and statutes was appropriate. (NSL VIO-31929).

(100)   Exemption (b)(5)-1 has been asserted in conjunction with (b)(2)-1, (b)(4), (b)(5)-2, (b)(6)-1, (b)(7)(C)-1, (b)(7)(D)-1 and (b)(7)(E)-1 to withhold e-mails dated June 29, 2005 between FBI attorneys regarding issues surrounding a contract with a communications provider, the manner in which the provider responded to the FBI's request for records and possible ways to resolve the dispute. (NSL VIO-31930-31932)

(101)   Exemption (b)(5)-1 has been asserted to withhold portions of two e-mails dated October 31, 2006 among OGC and its internal agency clients regarding the type of information to be reported to the IOB. (NSL VIO-33996)

(102)   Exemption (b)(5)-1 has been asserted in conjunction with (b)(1),(b)(2)-1, (b)(5)-2, (b)(6)-1, (b)(7)(C)-1 and (b)(7)(E)-1 to withhold portions of e-mails all dated October 31, 2006 between FBI attorneys regarding procedures used in NSL reporting and how to properly follow

54

AG guidelines and proper use of internal memoranda when requesting the use of an NSL. (NSL VIO-33997-33999 and 34001-34004)

(103)   Exemption (b)(5)-1 has been asserted in conjunction with (b)(5)-2, (b)(6)-4 and (b)(7)(C)-4 to withhold portions of a memorandum dated May 20, 2004 from an FBI attorney to the General Counsel seeking advice regarding the FBI's position on issues involving litigation pertaining to the use of an NSL. (NSL VIO-36911).

### *Rationale for Withholding*

(104)   As a whole, the redactions taken pursuant to Exemption 5, the attorney-client privilege, reflect communications between and among FBI counsel and the FBI's clients and employees seeking and/or providing legal advice with respect to the FBI's use of NSLs as part of its national security and criminal investigations.   All of these communications were made in confidence, using the FBI's secure, internal computer system.   Disclosure of the two-way communications between the FBI attorneys and their clients would impede the full disclosure to FBI attorneys of all of the information that relates to their internal clients' reasons for seeking legal advice.   Such full communication is necessary in order to ensure that sound legal advice is provided.

### (b)(5)-2        Deliberative Process Privilege

(105)   The deliberative process privilege protects the internal deliberations of an agency by exempting from release recommendations, analyses, speculation and other non-factual information prepared in anticipation of agency decision-making.   The general purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions.   Thus, material that contains or was prepared in connection with the formulation of opinions, advice,

55

evaluations, deliberations, policy formulation, proposals, conclusions or recommendations may properly be withheld. Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision. If agency personnel knew that their preliminary opinions, evaluations and comments would be released for public consumption, they might be more circumspect in what they put in writing, and thereby, impede a candid discussion of the issues surrounding a decision.

### *Description of Documents*

(106)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(6)-1 and (b)(7)(C)-1 to withhold portions of two e-mails dated February 22, 2007 between an OGC attorney and a member of CTD providing legal advice regarding the details of what needs to be reported to the IOB as a possible violation of law, regulation, Attorney General guidance, or agency policy. (NSL VIO-18651-18652).

(107)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(2)-1, (b)(6)-1, (b)(7(C)-1, and (b)(7)(E)-1 to withhold portions of an e-mail chain dated from March 15, 2007 to March 19, 2007 between and among FBI attorneys and employees discussing policy guidance regarding NSL processes. (NSL VIO-18767-18769).

(108)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(1), (b)(4), (b)(6)-1, (b)(7(C)-1, and (b)(7)(D)-1 to withhold portions of two e-mails dated April 19, 2004 between an OGC attorney and an FBI Special Agent providing information for preparation of language to be used in seeking records from a communications provider. (NSL VIO -19644).

(109)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(6)-1 and (b)(7(C)-1

to withhold e-mails dated from November 10, 2005 to November 14, 2005 by and among FBI attorneys discussing the use and scope of telephone NSLs, discussing and analyzing case law relevant to the use of NSLs, and providing draft language to be used as guidance by internal agency clients when preparing NSLs. (NSL VIO-19726-19729, 19824).

(110)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(2)-1, (b)(5)-1, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(E)-1 to withhold an e-mail chain dated March 7, 2007 among FBI counsel and its internal agency client regarding advice and recommendations on implementing policies related to NSLs at a particular field office. (NSL VIO - 20721).

(111)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(1), (b)(2)-1, (b)(4), (b)(6)-1, (b)(7)(A), (b)(7)(C)-1, and (b)(7)(D)-1 to withhold an internal memorandum from the Inspection Division to the Directors Office, the National Security Branch and CTD discussing the review of the use of NSLs by the communications analysis unit ("CAU") and the electronic surveillance operations and sharing unit ("EOPS") from 2003-2005. (NSL VIO-20725-20734).

(112)   Exemption (b)(5)-2 has been asserted with respect to two e-mails dated March 21, 2007 between and among FBI counsel and its employees, providing legal guidance regarding items to be reviewed by OGC for potential IOBs and procedures for the review. (NSL VIO - 28642).

(113)   Exemption (b)(5)-2 has been asserted with respect to a letter dated March 28, 2006, from the then-NSLB Deputy General Counsel and counsel to the IOB seeking agreement on the reporting requirements to be used when third-parties make mistakes in the collection of information pursuant to an NSL. (NSL VIO-28707-28708.)

(114)   Exemption (b)(5)-2 has been asserted in communications among FBI

57

counsel and their clients in conjunction with (b)(5)-1, with respect to advice about potentially reportable IOB violations.  (NSL VIO-28906-28907).

(115)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(1), (b)(2)-1, and (b)(7)(E)-1 to withhold portions of an e-mail chain dated from March 19, 2007 to March 20, 2007 between OGC attorneys and FBI employees seeking and providing legal advice and analysis regarding the retention, use and description of NSLs.  (NSL VIO - 29099-29100).

(116)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(2)-1, (b)(4), (b)(5)-1, (b)(6)-1, (b)(7)(C)-1, (b)(7)(D)-1, and (b)(7)(E)-1 to withhold a memorandum dated November 9, 2006, from the NSLB Working Group to Deputy General Counsel Julie Thomas with respect to NSL issues.  This memo includes analysis, proposals, and deliberation between the agency and its counsel. (NSL VIO - 29678-29680).

(117)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(5)-1, (b)(2)-1, (b)(7)(E), (b)(6)-1, and (b)(7)(C)-1 to withhold certain portions of a string of e-mails dated October 19, 2006 to October 20, 2006 among OGC attorneys and internal agency clients regarding the handling of overcollection of information through the use of NSLs.  These withheld portions include advice, opinions, and discussion.  (NSL VIO - 29833-29837).

(118)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(4), (b)(7)(D)-1, (b)(6)-1, (b)(7)(C)-1, (b)(2)-1, and (b)(7)(E)-1 to withhold certain portions of a string of e-mails dated November 8, 2006 and February 20, 21, and 27, 2007 regarding discussion, analysis, and deliberation about issuing NSLs and the definitions of certain terminology related to electronic communication transactional records.  (NSL VIO - 31448-31452).

(119)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(4), b(7)(D)-1,

58

(b)(6), and (b)(7)(C) to withhold portions of an email dated August 25, 2005 between FBI attorneys regarding whether or not to draft a new section of a statute. (NSL VIO- 31924)

(120)   Exemption (b)(5)-2 has been asserted to withhold portions of an email dated August 10, 2005 between FBI attorneys regarding interpretation of statutory language governing the issuance and scope of NSLs. (NSL VIO- 31925)

(121)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(4) and (b)(7)(D)-1 to withhold portions of e-mails dated July 1, 2005 and July 8, 2005 between FBI attorneys regarding the appropriate language to use in drafting a request to communication providers. (NSL VIO- 31926-31928)

(122)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(2)-1, (b)(4), (b)(5)-1, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(E)-1 to withhold portions of e-mails dated June 29, 2005 and June 30, 2005 between FBI attorneys regarding whether a meeting between attorneys, a communications provider and a field office to discuss policies and statutes was appropriate. (NSL VIO 31929).

(123)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(2)-1, (b)(4), (b)(5)-1, (b)(6)-1, (b)(7)(C)-1, and (b)(7)(E)-1 to withhold portions of an e-mail dated June 29, 2005 between FBI attorneys regarding the manner in which a communications provider was providing the records requested and possible ways to remedy the problem. (NSL VIO - 31931).

(124)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(6)-1 and (b)(7)(C)-1 to withhold portions of an e-mail dated April 12, 2006 between FBI attorneys regarding possible changes that need to be made to internal memoranda used in connection with requesting an NSL

as a result of the Patriot Act. (NSL VIO 33994).

(125)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(5)-2, (b)(6)-1 and (b)(7)(C)-1 to withhold portions of an email dated October 31, 2006 between FBI attorneys and internal agency clients regarding the type of information to be reported to the IOB. (NSL VIO-33996)

(126)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(1), (b)(2)-1, (b)(5)-1, (b)(6)-1, (b)(7)(C)-1 and (b)(7)(E)-1 to withhold portions of e-mails all dated October 31, 2006 between FBI attorneys regarding procedures used in NSL reporting and how to properly follow Attorney General guidelines and proper use of internal memoranda when requesting the use of an NSL. (NSL VIO-33997-33999; 34001-34004).

(127)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(5)-1, (b)(6)-4 and (b)(7)(C)-4 to withhold portions of a memorandum dated May 20, 2004 from an FBI employee to the General Counsel seeking advice regarding the FBI's position on issues involving litigation pertaining to the use of an NSL. (NSL VIO-36911).

(128)   Exemption (b)(5)-2 has been asserted in conjunction with (b)(2)-1 and 2, (b)(4), (b)(6)-1, (b)(7)(C)-1, and (b)(7)(D)-1 to withhold a draft memorandum dated March 6, 2007 from the CAU to the General Counsel of the Inspection division regarding the results of the FBI's internal review of its communication information requests for potential violations to be reported to the IOB. (NSL VIO-38437-38440).

### *Rationale for Withholding*

(129)   As a whole, the redactions taken pursuant to Exemption 5, the deliberative process privilege, reflect an internal, on-going dialogue among and between FBI personnel with

regard to the FBI's use and reporting requirements regarding its use of NSLs in its investigations. This internal dialogue is reflected in ECs (internal memoranda) regarding the use of NSLs, draft reports regarding the audits conducted regarding the FBI's use of NSLs, and many e-mail deliberations and discussions among and between federal agency personnel regarding these materials.

(130)   This dialogue is both (a) "predecisional" - antecedent to the adoption of agency policy, and (b) "deliberative" - the numerous ECs and e-mail trails and exchanges reflect a continuous set of deliberations, including the give and take of the consultative process, with regard to the shaping and evaluation of the FBI's use of NSLs. All of the material withheld pursuant to Exemption (b)(5)-2 -- whether withheld in full or in part -- reflects a fluid, continuous and on-going deliberative set of discussions among decision makers and contributors to the FBI's NSL policy.

(131)   The FBI has appropriately asserted Exemption 5, the deliberative process privilege, to protect these candid internal discussions concerning these evolving policies and procedures. The release of the redacted information is likely to chill full, frank, and open internal discussions -- a chilling effect which is all the more dangerous given the important national security interest at stake -- the use of NSLs in the FBI's counterterrorism and counterintelligence investigations. As a result, the FBI has appropriately withheld information pursuant to Exemption (b)(5)-2.[50]

---

[50] Exemption (b)(5)-2 is cited on the following pages:  NSL VIO-18651-18652, 18767-18769, 19644, 19726-19728, 19824, 20721, 20725-20734, 28642, 28707-28708, 28906-28907, 29099-29100, 29678, 29833-29837, 31448-31452, 31924-31929, 31931, 33994, 33997-33999, 34001-34001, 36911 and 38437-38440.

## EXEMPTION (b)(7) THRESHOLD

(132)   Exemption (b)(7) of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could reasonably be expected to cause one of the harms enumerated in the subpart of the exemption. See 5 U.S.C. § 552(b)(7). In this case, the harm that could reasonably be expected to result from disclosure concerns an ongoing law enforcement investigation, the invasion of personal privacy, revelation of the identity of confidential sources, and revelation of sensitive law enforcement techniques.

(133)   Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. Law enforcement agencies such as the FBI must demonstrate that the records at issue are related to the enforcement of federal laws and that the enforcement activity is within the law enforcement duty of that agency. All of the records responsive to plaintiff's request pertain to NSLs, which are essential investigative tools utilized by the FBI to conduct national security investigations. An NSL may be used to request financial records; identity of financial institutions; consumer identifying information; full credit reports in international terrorism investigations and telephone subscriber information; toll billing records; electronic communications subscriber information; and electronic communication transactional records.[51] Thus, there is no doubt that the documents contained in this FOIA release fall within the law

---

[51] The Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3414(a)(5); The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681u(a), (b) and 1681v; and the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2709.

enforcement duties of the FBI, and that the information readily meets the threshold requirement

of Exemption (b)(7). The remaining inquiries are whether its disclosure could reasonably be

expected to jeopardize pending law enforcement proceedings; could reasonably be expected to

constitute an unwarranted invasion of personal privacy; could reveal the identity of confidential

sources; and could reveal investigative techniques and procedures.

### EXEMPTIONS (b)(6) AND (b)(7)(C) CLEARLY UNWARRANTED AND UNWARRANTED INVASION OF PERSONAL PRIVACY

(134)  5 U.S.C. § 552(b)(6) exempts from disclosure:

> personnel and medical files and similar files when the disclosure of such
> information would constitute a clearly unwarranted invasion of personal privacy.

(135)  5 U.S.C. § 552 (b)(7)(C) exempts from disclosure:

> records or information compiled for law enforcement purposes, but
> only to the extent that the production of such law enforcement
> records or information . . . could reasonably be expected to
> constitute an unwarranted invasion of personal privacy.[52]

(136)  When withholding information pursuant to these exemptions, the FBI is required

to balance the privacy interests of the individuals mentioned in these records against any public

interest in disclosure. In asserting these exemptions, each item of information was examined to

determine the nature and strength of the privacy interest of any individual whose name and/or

---

[52] The practice of the FBI is to assert Exemption (b)(6) in conjunction with Exemption (b)(7)(C). Although the balancing test for Exemption (b)(6) uses "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption (b)(7)(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under the analysis of both exemptions.

identifying information appears in the documents at issue.  In making this analysis, the public

interest was determined to any information which would shed light on the FBI's performance of

its mission to uphold and enforce federal criminal laws and protect the national security of the

United States and/or how the information would shed light on the FBI's performance of its

mandated statutory duties.  In each instance where information was withheld, it was determined

that individual privacy rights outweighed the public interest.  The only recognized public interest

is that which sheds light on the operations and activities of the federal government.  The FBI

concluded that the information should be withheld under Exemptions (b)(6) and (b)(7)(C) and

determined that the individuals' privacy interests were not outweighed by any public interest in

disclosure.  Every effort has been made to release all segregable information contained in these

records without invading the privacy interests of these individuals.

### (b)(6)-1 and (b)(7)(C)-1:  Names and/or Identifying Information of FBI Special Agents and Support Personnel

(137)    Exemptions (b)(6)-1 and (b)(7)(C)-1 have been asserted to protect the names and

identifying information (such as telephone numbers or extensions) of FBI Special Agents

("SAs") who were responsible for conducting, supervising, and/or monitoring the investigative

activities relating to NSLs, as well as FBI support personnel involved in review of NSL

violations.  These responsibilities include reviewing and analyzing materials compiled as a result

of, or in accordance with, investigations.  Assignments of SAs to any particular investigation are

not made based on the Special Agent's choice.  Publicity (adverse or otherwise) regarding any

particular investigation to which SAs have been assigned may seriously prejudice their

effectiveness in conducting other investigations.  The privacy consideration is also to protect FBI

64

SAs and former SAs, as individuals, from unnecessary, unofficial questioning as to the conduct

of this or other investigations, whether or not they are currently employed by the FBI. FBI SAs

conduct official inquiries into various criminal and national security violations and NSLs are one

investigatory tool used by SAs in conducting such investigations. FBI Special Agents come into

contact with all strata of society by conducting searches, making arrests, and reviewing and

analyzing evidence, all of which result in reasonable but nonetheless serious disturbances to

people and their lives. It is possible for an individual targeted by such law enforcement actions

to carry a grudge which may last for years. Individuals harboring such grudges may seek revenge

on the agents and other federal employees involved in a particular investigation. The publicity

associated with the release of an agent's identity in connection with a particular investigation

could trigger hostility toward a particular agent. In this case, the FBI can identify no discernible

public interest in disclosing the names and identifying information of FBI SAs to the public.

Because disclosure of this information would constitute a clearly unwarranted invasion of

personal privacy and could reasonably be expected to constitute an unwarranted invasion of

personal privacy, and because the individuals' privacy interests are not outweighed by any public

interest in disclosure, the information described above has been withheld pursuant to Exemptions

(b)(6) and (b)(7)(C).

(138) The names of FBI support employees are also withheld pursuant to FOIA

Exemption (b)(6)-1 and (b)(7)(C)-1. These employees were assigned to handle tasks related to

investigations requiring NSLs. Additionally, other support employees, including but not limited

to attorneys with OGC, were involved in the internal review of the processes involved in

issuance of NSLs in conjunction with the Inspector General's report. They were, and possibly

65

are, in positions of access to information regarding official law enforcement investigations, and

therefore could become targets of harassing inquiries for unauthorized access to investigations if

their identities were released.  These individuals maintain substantial privacy interests in not

having their identities disclosed.  The FBI can identify no discernible public interest in the

disclosure of this information because the disclosure of the names and identifying information of

FBI support employees, including OGC attorneys, would not shed light on the operations and

activities of the FBI.  Thus, disclosure of this information would constitute a clearly unwarranted

invasion of personal privacy and could reasonably be expected to constitute an unwarranted

invasion of personal privacy.[53]

### (b)(6)-2 and (b)(7)(C)-2:  Names and/or Identifying Information of Third Parties of Investigative Interest

(139)   Exemptions (b)(6)-2 and (b)(7)(C)-2 have been asserted to protect the names and

identifying information of third parties who are of investigative interest to the FBI and/or other

law enforcement agencies.  Identifying information withheld concerning these third parties

---

[53]  Exemptions (b)(6)-1 and (b)(7)(C)-1 have been asserted on the following pages: NSL VIO-4-5, 7-9, 24-26, 99, 147, 208, 210, 298-301, 401, 497-500, 600, 699-700, 799, 900, 997, 1001, 1301, 1400-1401, 1500-1501, 1600, 1604, 1700-1701, 1800, 1900-1902, 2097-2099, 2299-2300, 2400-2402, 2406, 2800, 2902-2904, 3107-3111, 4528, 9512-9513, 9850, 10726, 10728-10729, 10731-10736, 10738, 10740, 10742, 10744-10746, 10748-10750, 10753, 10755, 10757-10759, 10761-10762, 10766, 12352-12357, 12359-12363, 12366-12369, 12372, 12379, 12386, 12395, 12400, 12406, 15347-15349, 15351-15352, 15354-15359, 15467, 18651-18652, 18767-18769, 19490, 19644, 19726-19729, 19823-19824, 20721, 20725-20726, 20728-20730, 20822-20823, 22185, 23443, 23446-23450, 23452, 23454, 23456, 27100, 28642, 28906, 29099-29100, 29399-29400, 29680, 29833-29837, 31448-31452, 31795-31796, 31924-31925, 31927-31932, 33994-33999, 34001-34004, 36331-36332, 36336, 36805, 36807-36809, 36811-36812, 36814, 36819-36820, 36911, 38437, 38440-38441, and 38443-39471.

includes addresses, dates of birth, Social Security Numbers, and other personal information.

Being linked with any law enforcement investigation carries a strong negative connotation and a

stigma. Release of the identities of these individuals to the public could subject them to

harassment or embarrassment, as well as undue public attention. Accordingly, the FBI has

determined that these individuals maintain a substantial privacy interest in not having their

identities disclosed. In making a determination concerning whether to release the names and

personal information concerning these third parties, the public's interest in disclosure was

balanced against the individual's right to privacy. The FBI could identify no discernible public

interest in the disclosure of this information because the disclosure of the third parties' names

and identifying information would not shed light on the operations and activities of the FBI.

Accordingly, the FBI concluded that the disclosure of this information would constitute a clearly

unwarranted invasion of personal privacy and could reasonably be expected to constitute an

unwarranted invasion of personal privacy, and accordingly, properly withheld this information

pursuant to Exemptions (b)(6)-2 and (b)(7)(C)-1.[54]

### (b)(6)-3 and (b)(7)(C)-3:   Names and/or Identifying Information Concerning Third Parties Merely Mentioned

(140)   Exemptions (b)(6)-3 and (b)(7)(C)-3 have been asserted to withhold the names

and identifying information of third parties merely mentioned in documents concerning the

---

[54] Exemptions (b)(6)-2 and (b)(7)(C)-2 have been asserted on the following pages: NSL VIO-25-26, 147, 298, 300, 497-499, 699-700, 799, 997-998, 1601, 1700-1701, 1800, 1900-1901, 9512-9513, 9850-9855, 10726-10735, 10739, 10742-10743, 10746-10747, 10750-10753, 10755-10756, 10759-10760, 10762, 10764, 12353-12354, 12358-12359, 12363-12369, 15354-15355, 15467, 23443, 23447, 23454, 36805, 36809-36810, 36812, 36815-36818, 38438, 38441-38443, and 38445-38471.

issuance and review of NSLs. These individuals were not of investigative interest to the FBI.
These third parties maintain legitimate privacy interests in not having this information disclosed.
If the FBI disclosed their names and other personal information, the disclosure would reveal that
these third parties were connected with the FBI investigations involving NSLs. Disclosure of
these third parties' names and identifying information in connection with the FBI's investigations
related to national security carries an extremely negative connotation. Disclosure of their
identities would subject these individuals to possible harassment or criticism and focus
derogatory inferences and suspicion on them. Accordingly, the FBI determined that these third
parties maintained a substantial privacy interest in not having information about them disclosed.
After identifying the substantial privacy interests these individuals maintain, the FBI balanced
their right to privacy against the public interest in the disclosure. The FBI could identify no
discernible public interest in the disclosure of this information because the disclosure of the third
parties' names and identifying information would not shed light on the operations and activities
of the FBI. Thus, disclosure of this information would constitute a clearly unwarranted invasion
of personal privacy and could reasonably be expected to constitute an unwarranted invasion of
personal privacy.[55]

### (b)(6)-4 and (b)(7)(C)-4:   Names and/or Identifying Information Concerning Non-FBI Federal Government Personnel

(141)   Exemptions (b)(6)-4 and (b)(7)(C)-4 have been asserted to protect the names and
identifying information of one Internal Revenue Service ("IRS") employee and two DOJ

---

[55] Exemptions (b)(6)-3 and (b)(7)(C)-3 have been asserted on the following pages: NSL
VIO-498, 700, 1401, 1700 and 10747.

employees. The relevant inquiry here is whether public access to this information would violate a viable privacy interest of these individuals and whether there is a public interest in releasing their identities. Disclosure of their identifying information could subject these employees to unwanted inquiries and harassment which would constitute a clearly unwarranted invasion of their personal privacy. The rationale for protecting non-FBI federal employees is the same as that for FBI employees.

(142) In balancing the legitimate privacy interest of these individuals against any public interest in disclosure, the FBI determined that there is a lack of any bona fide public interest in disclosing this information because it will not shed light on the operations and activities of the Federal Government. Accordingly, disclosure of this information would constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy.[56]

### (b)(6)-5 and (b)(7)(C)-5: Names and/or Identifying Information of Third Parties Who Provided Information to the FBI

(143) Exemption (b)(6)-5 and (b)(7)(C)-5 have been asserted to protect the names and identifying information of individuals who provided information to the FBI in connection with investigations using NSLs. These individuals work for telecommunication corporations, financial institutions, credit reporting agencies, and internet service providers. Identifying information withheld concerning these third parties includes names, name of employer, and work phone numbers and addresses.

---

[56] Exemptions (b)(6)-4 and (b)(7)(C)-4 have been asserted on the following pages: NSL VIO-2706, 15349, 15351, and 36911.

(144)   The FBI uses NSLs to obtain documents from third party businesses that prosecutors and agents obtain in criminal investigations with grand jury subpoenas. NSL authority is derived from several federal statutes. See supra ¶¶ 7-8. These statutes mandate that a third party business provide certain information. An employee of a third party business could be harassed, intimidated, or threatened with legal, economic reprisal or possible physical harm if his or her identity was revealed. To surmount these obstacles, persons providing information to the FBI must be assured that their names and personal identifying information will be held in the strictest confidence. The continued access by the FBI to persons willing to honestly relate pertinent facts bearing upon a particular investigation far outweighs any benefit the public might derive from being furnished the names of those who cooperated with the FBI.

(145)   Thus, the FBI has determined that the third-party sources maintain a substantial privacy interest in not having their identities disclosed. After identifying the substantial privacy interests of these third parties, the FBI balanced their right to privacy against the public interest in the disclosure. The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of these third parties' names and identifying information would not shed light on the operations and activities of the FBI. Accordingly, disclosure of this information would constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy.[57]

_____

[57] Exemptions (b)(6)-5 and (b)(7)(C)-5 have been asserted on the following pages: NSL VIO-1900, 2301, 2495, 2706, 10726, 10730, 10735, 10759, 10763, 12352-12354, 12357-12358, 12363-12364, 12367-12368, 15354-15355, 15358, 15467, 17949-17960, 20727, and 22185.

### (b)(6)-6 and (b)(7)(C)-6:   Names and/or Identifying Information Regarding a Third Party Victim

(146)   Exemptions (b)(6)-6 and (b)(7)(C)-6 have been asserted to protect the name, professional title and locale information of a victim of a crime.  To release a victim's identity could cause harm to the victim, such as personal distress or embarrassment.  Thus, there is a strong privacy interest in the protection of such personal information.  The FBI could identify no discernible public interest in the disclosure of this information because the disclosure of the victim's name and identifying information would not shed light on the operations and activities of the FBI.  Thus, disclosure of this information would constitute a clearly unwarranted invasion of personal privacy and could reasonably be expected to constitute an unwarranted invasion of personal privacy.[58]

### (b)(6)-7 and (b)(7)(C)-7:   Name and/or Identifying Information Concerning a Commercial Institution Employees

(147)   Exemptions (b)(6)-7 and (b)(7)(C)-7 have been asserted to withhold the name and title of commercial employees of telecommunications providers who had contracts with, and who provided information to the FBI as a result of an NSL.  These individuals represented their employers in their official capacities, and to identify them could subject them to unofficial inquiries not anticipated by their contact with the FBI.  Disclosing their name or other identifying information could subject them to unnecessary public attention, harassment, retaliation, and/or physical harm.  There is no public interest to be served by releasing the identities of these

---

[58]  Exemptions (b)(6)-6 and (b)(7)(C)-6 have been asserted on the following pages: NSL VIO-10743 and 10747.

individuals.  Accordingly, the FBI concluded that disclosure of this information would constitute

a clearly unwarranted invasion of personal privacy and could reasonably be expected to

constitute an unwarranted invasion of personal privacy.[59]

## EXEMPTION (b)(7)(A)
## PENDING LAW ENFORCEMENT PROCEEDINGS

(148)   5 U.S.C. § 552 (b)(7)(A) exempts from disclosure:

> records or information compiled for law enforcement purposes, but only to the
> extent that the production of such law enforcement records or information . . .
> could reasonably be expected to interfere with enforcement proceedings.

(149)   Application of this exemption requires:  the existence of law enforcement records;

a pending or prospective law enforcement proceeding; and a determination that release of the

information could reasonably be expected to interfere with the enforcement proceeding.

Typically, the FBI asserts Exemption (b)(7)(A) for a variety of different documents in an

investigative file, which the FBI then groups into functional categories and describes in greater

detail.  In this case, however, the FBI has asserted Exemption (b)(7)(A) in a limited fashion to

protect the names and file numbers of pending FBI investigations.  The release of the file number

and name of an on-going FBI investigation not only could result not only in the acknowledgment

of the existence of the investigation but also in the identification of suspects and thus jeopardize

the investigation.  The FBI has applied Exemption (b)(7)(A) to protect the file numbers and

names of these open investigations.[60]

---

[59] Exemptions (b)(6)-7 and (b)(7)(C)-7 have been asserted on the following pages: NSL
VIO-998, 15958, and 15960-15961.

[60] Exemptions (b)(7)(A) has been asserted on the following pages: NSL VIO-208-209,
497, 799, 900, 997, 1800, 2098-2100, 2299-2301, 9512-9513, 10726-10727, 10729-10731,
10734-10735, 10738-10740, 10742-10743, 10746-10748, 10750-10753, 10755-10757, 10759-

## EXEMPTION  (b)(7)(D)
## CONFIDENTIAL SOURCE INFORMATION

(150)   5 U.S.C. § 552 (b)(7)(D) provides protection for:
records or information compiled for law enforcement purposes, but
only to the extent that the production of such law enforcement
records or information . . . could reasonably be expected to disclose
the identity of a confidential source, including a State, local or
foreign agency or authority or any private institution which
furnished information on a confidential basis, and, in the case of a
record or information compiled by a criminal law enforcement
authority in the course of a criminal investigation or by an agency
conducting a lawful national security intelligence investigation,
information furnished by a confidential source.

(151)   Numerous informants report to the FBI on a regular basis and are informants in

the common meaning of the term.  Some of the sources provide information under an express

assurance of confidentiality.  Further, during the course of an investigation, other individuals are

interviewed under circumstances from which an assurance of confidentiality can reasonably be

inferred.  These individuals are considered to be confidential informants or sources since they

furnish information only with the understanding that their identities and the information provided

will not be divulged outside the FBI.  Information provided by these individuals is singular in

nature, and if released, could reveal their identity.  The FBI has learned through experience that

individuals who assist, cooperate with and provide information to the FBI must be free to do so

without fear of reprisal.  The FBI has also learned that individuals who provide information to

the FBI must be free to furnish that information with complete candor and without the

understandable tendency to hedge or withhold information because of fear that their names or

---

10760, 10762-10765, 12352-12354, 12356-12358, 12361-12369, 12379, 12386, 12395, 12406,
15361-15363, 19490, 19644, 20727, 20729, 20732-20733, 38438-38439, 38441-38446 and
38448-38471.

73

their cooperation with the FBI will later be made public. Individuals who provide information to the FBI should be secure in the knowledge that their assistance and their identities will be held in confidence. The release of a source's identity would forever eliminate that source as a future means of obtaining information. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources.

### (b)(7)(D)-1   Names and/or Identifying Information Provided by a Corporate Entity or an Individual Under an Express Assurance of Confidentiality

(152)    An NSL is an administrative demand for documents or records that can be made by the FBI during a predicated investigation relevant to a threat to the national security. In most instances, the standard for issuing an NSL is relevance to an authorized investigation to protect against international terrorism or clandestine intelligence activities. In some investigations, disclosure of the use of an NSL could endanger national security, interfere with a criminal, counterterrorism, or counterintelligence investigation, interfere with diplomatic relations, or endanger the life or physical safety of a person.

(153)    In this instance, numerous corporate entities, and named individuals working for those corporations, have provided information to the FBI as a result of NSLs. These sources consist of telecommunications companies, internet service providers, credit reporting agencies, and financial institutions. These sources provide valuable information that is detailed and singular in nature. Disclosure of the identity of a confidential source who or which was expressly promised confidentiality has wider implications. If the FBI disclosed the identities of confidential sources that entered into express agreements, that revelation would have a chilling effect on the activities and cooperation of other FBI confidential sources. The FBI has found that

74

it is only with the assurance of complete confidentiality that the aid of such sources can be

enlisted, and only through this confidence that these sources can be persuaded to continue

providing valuable assistance in the future. Thus, the identity of, and the information provided

by sources who were expressly promised confidentiality were properly withheld pursuant to

FOIA Exemption (b)(7)(D)-1.[61]

### (b)(7)(D)-2   Foreign Government Agency Information (Express Confidentiality)

(154)   Exemption (b)(7)(D)-2 has been asserted to exempt from disclosure the name and

other identifying information of a foreign government agency which provided information and

cooperated with the FBI under an express assurance of confidentiality. This foreign government

agency cooperated with the FBI and provided valuable information with the express

understanding that its identity and any information which would tend to identify it would only be

used for law enforcement purposes and would not be released to the public.

(155)   The FBI has protected both the identity of this foreign government agency and

any specific information provided by it which could possibly reveal its identity. The FBI has

worked very closely with foreign government agencies who have become partners with the FBI

in its criminal, counterterrorism and national security investigations. These foreign government

agencies have requested information from and have provided information to the FBI. Because of

---

[61] Exemptions (b)(7)(D)-1 is asserted on the following pages: NSL VIO-4-5, 7-9, 25, 209, 498-499, 699-700, 900, 998-999, 1501, 1601, 1603, 1801, 1900-1901, 2301, 2495, 2497-2499, 2706, 2903-2904, 9850-9855, 10726-10727, 10735, 10739, 10743-10744, 10747, 10751-10753, 10755-10757, 10759-10760, 10763-10765, 12352-12353, 12357-12359, 12361-12364, 12367-12368, 12372, 12379, 12395, 12400, 12406, 15354, 15357-15359, 15467, 15958-15969, 17947, 17949, 17951, 17953, 17955, 17957, 17959, 19490, 19644, 20727-20728, 22185, 23443-23445, 23451, 23455-23456, 27108, 29678-29679, 31448-31452, 31924-31932, 36332-36333, 36805, 36809-36810, 36817, 36820, 38437-38438, 38441, 38442-38447 and 38449-38471.

the sensitive nature of the information provided by this foreign government agency and the FBI's

express assurance to keep this information confidential, this foreign government agency has a

reasonable expectation that its identity and the information and assistance that it provided to the

FBI would remain expressly confidential.  Disclosure of the identity of this foreign government

agency and the information that it provided would have a chilling effect on the FBI's future

relationship with this foreign government agency, as such disclosure could result in its refusal to

cooperate with the FBI in future investigations.  Furthermore, disclosure of the identity of this

foreign government agency would have a chilling effect on the FBI's relationships with other

cooperative foreign government agencies.  Accordingly, since the disclosure of this information

could reasonably be expected to disclose the identity of this cooperative foreign government

agency which provided information to the FBI under an express assurance of confidentiality, the

FBI has properly asserted FOIA Exemption (b)(7)(D)-2 to protect the name and other identifying

information of this foreign government agency.[62]

### (b)(7)(D)-3    Names and/or Identifying Information Provided by an Individual Under an Implied Assurance of Confidentiality

(156)    Exemption (b)(7)(D)-3 has been asserted to protect the names, identifying

information for, and information provided by, third parties to the FBI or other law enforcement

agencies in the investigative files under an implied assurance of confidentiality.  These third

parties provided information concerning the activities of individuals who were of interest to the

FBI in its investigations related to potential threats to national security.  These third party sources

provided specific detailed information that is singular in nature concerning the activities of the

---

[62] Exemption (b)(7)(D)-2 has been asserted on the following page:  NSL VIO-38439.

subjects of the FBI's national security investigations. The disclosure of the identities of these individuals could have disastrous consequences. These third parties provided information of value to the FBI concerning these investigations, and in doing so, have placed themselves in harm's way should the subjects of these investigations become aware of the third parties' cooperation with the FBI. The information the third parties provided under an implied assurance of confidentiality warrants the protection of the third party names as well as the singular information they provided. Thus, the FBI has properly asserted FOIA Exemption (b)(7)(D)-3 to protect the name and other identifying information of these individuals. [63]

### (b)(7)(D)-4   Confidential Source File Number

(157)   Exemption (b)(7)(D)-4 has been asserted in conjunction with (b)(2)-9 to protect the informant file number of a permanent confidential symbol number source of the FBI. Similar in usage to the confidential source symbol number, these confidential source file numbers are also assigned in sequential order to confidential informants who report information to the FBI on a regular basis pursuant to an express assurance of confidentiality. The confidential source file is unique to the particular confidential informant and is used only in documentation relating to that particular informant.

(158)   Disclosure of confidential source file numbers at various times and in various documents could ultimately identify these sources since it would reveal the connections of confidential informants to the information provided by them. Repeated release of confidential source file numbers along with the information provided by these confidential informants would

---

[63] Exemption (b)(7)(D)-3 is asserted on the following pages: NSL VIO-12354 and 12358.

77

narrow the possibilities of their true identities. This is especially true since each confidential

source file number is assigned to only one confidential informant.

(159)   The disclosure of the identity of this confidential source would have a chilling

effect on the activities and cooperation of both current and future FBI confidential informants. It

is only with the understanding of complete confidentiality that the aid of such informants can be

enlisted, and only through this assurance of confidentiality that these informants can be

persuaded to continue their assistance in providing information to the FBI in the future.

Accordingly, the disclosure of this confidential source file number could reasonably be expected

to identify a permanent confidential source of the FBI. Therefore, this information has been

appropriately protected from disclosure pursuant to Exemption (b)(7)(D)-4.[64]

## EXEMPTION (b)(7)(E)
## INVESTIGATIVE TECHNIQUES AND PROCEDURES

(160)   5 U.S.C. § 552 (b)(7)(E) provides for the withholding of:

> law enforcement records which would disclose techniques and
> procedures for law enforcement investigations or prosecutions,
> or would disclose guidelines for law enforcement investigations
> or prosecutions if such disclosure could reasonably be expected
> to risk circumvention of the law.

### (b)(7)(E)-1   Information Pertaining to FBI Investigative Techniques and Procedures

(161)   Exemption (b)(7)(E)-1 has been asserted in conjunction with Exemption (b)(2)-1

to protect procedures and techniques used by FBI agents to conduct national security

investigations. The (b)(7)(E)-1 Exemption has been applied to the same documents to which the

---

[64] Exemption (b)(7)(D)-4 is asserted on the following pages: NSL VIO-4.

(b)(2)-1 Exemption was applied. See supra ¶61. This exemption is applied to the following nine

sub-categories of information:

> (a) *Identities of FBI Field Offices referenced in NSLs, in documents referencing*
>
> *NSLs[65] and the identity of a squad or unit involved in a National Security*
>
> *investigation.[66]* This information would allow a potential criminal to piece
>
> together seemingly random bits of information to form a mosaic as to how the FBI
>
> concentrates its NSL efforts. This could foster circumvention of the particular
>
> geographic areas and/or the activities of the specific squad or unit involved in the
>
> investigation.
>
> (b) *Internet "World Wide Web" or "www" addresses and e-mail addresses of*
>
> *individuals under investigation.[67]* Release of this type of information would allow
>
> individuals to learn the specific e-mail accounts under investigation; armed with
>
> this knowledge they could use other individual e-mail accounts that were not

---

[65] Exemption (b)(7)(E)-1, category (a), has been asserted on the following pages: NSL VIO - 4-5, 7-9, 24-25, 99-101, 147, 208-209, 298, 302, 401, 497-502, 600, 699-701, 799-801, 900-901, 998-1000, 1400-1402, 1500-1502, 1600-1604, 1800-1802, 1900-1903, 2097-2100, 2497-2499, 2800, 2902-2904, 9850-9852, 9854-9855, 10726-10736, 10738, 10740, 10742, 10744-10751, 10753, 10755, 10757, 10759-10762, 12352-12372, 12379, 12386, 12395, 12400, 12406, 15350-15363, 15467, 18767-18768, 19726-19727, 20721, 23443-23447, 23449-23456, 28642, 29833-29836, 31795, 31924-31925, 31927-31930, 31932, 33996-33997, 33999-34003, 36805, 36807, 36809, 36811-36813, 36817-36820.

[66] Exemption b(7)(E)-1, category (a), has been asserted on the following pages: NSL VIO - 9850-9852, 10729, 10737, 10741, 10745, 10754-10755, 10758-10759, 10762-10766, 12352-12355, 12363, 15356, 18651, 20727.

[67] Exemption b(7)(E)-1, category (b), has been asserted on the following pages: NSL VIO - 9850-9852, 10727, 10730-10731, 10739, 10743-10744, 10747-10748, 10751-10753, 10756-10757, 10760, 10762-10764, 12353-12354.

under surveillance.  Individuals wanting to evade the investigation could also determine which domain or internet carriers were under surveillance and could use other domains or carriers to avoid detection and circumvent the law.

(c) *The type of investigation, Preliminary or Full Field Investigation, when referenced with an actual investigation and not in general discussion.*[68]  Release of this type of information would allow individuals to know the types of activities that would trigger a full investigation as opposed to a preliminary investigation and, thus, might cause them to alter/adjust their behavior accordingly.  Moreover, the knowledge that specific activity in general warrants investigation could likewise cause individuals to adjust their behavior to avoid detection.

(d) *The specific procedures used during an investigation of an internet website and/or of an e-mail account.*[69]  Release of this information would allow individuals to know the specific types of internet and e-mail activity which are under surveillance or which would trigger investigation, and could cause them to alter their behavior accordingly in order to avoid detection.

(e) *The number of carriers involved in NSL investigations and the number of*

---

[68] Exemption b(7)(E)-1, category (c), has been asserted on the following pages: NSL VIO - 4-5, 7-9, 99-100, 208-209, 298, 497-498, 699-701, 799, 998, 1401-1402, 1800, 2098-2100, 2409-2412, 2493, 2497-2499, 2703, 2706, 9850-9852, 10734, 10738, 10742, 10746, 10750, 10755, 10759, 10762, 12353-12359, 12366-12367, 15354, 15358-15360, 15467, 23443, 23447, 23450, 23455, 36332, 36805, 36809, 36812-36813, 36816, 36819-36820.

[69] Exemption b(7)(E)-1, category (d), has been asserted on the following pages: NSL VIO - 2098-2100, 2702, 2705, 9850, 10763-10764, 29678.

*phone numbers under investigation.*[70]  Release of this information may allow

individuals to detect the scope of the NSL program and modify their behavior

according to statistical probability.  For example, a lower number of carriers may

suggest that the more common carriers are the ones involved in an investigation

and individuals seeking to circumvent FBI investigations may then use smaller or

lesser-known carriers to conduct their illicit activities in an effort to evade

detection by law enforcement.

(f) *The number of NSLs issued during a particular year for a specific investigative*

*file or for specific types of NSLs.*[71]  This information, if it were to be released,

would reveal the size, scope and frequency of the NSL program.  Armed with this

information, individuals seeking to circumvent detection would be able to piece

the information into a mosaic that reveals the specific law enforcement techniques

and procedures used in the entire NSL program.

(g)  *The procedures involved in implementation of an Interim Policy of the*

*Attorney General's Guidelines for National Security Investigations and Full*

*Investigations.*[72]  Release of this information, which includes practical advice on

---

[70]  Exemption (b)(7)(E)-1, category (e), has been asserted on the following pages: NSL VIO - 7-9, 24-25, 998, 1000, 1800, 12361-12362, 12395, 15355, 15357, 33994.

[71]  Exemption (b)(7)(E)-1, category (f), has been asserted on the following pages: NSL VIO - 14283-14285, 14287-14290, 14293-14294, 14296-14297, 15348, 15350-15351, 15352-15353, 20726-20729, 38438-38439, 38441.

[72]  Exemption (b)(7)(E)-1, category (g) has been asserted on the following pages: NSL VIO - 2400-2402, 2405-2406, 2463, 2493, 2497-2499, 12353, 12364, 20731-20733, 27101-27108, 33998, and 34001-34004.

implementing law enforcement procedures, could encourage individuals who seek to circumvent detection to alter their behavior so that they would not engage in the specific activities that would trigger these law enforcement procedures.

(h) *The identity -- and explanation -- of computer system utilized during national security investigations.*[73] Release of the details of a computer system used by the FBI in its national security investigations, including the existence of the system itself, would divulge a specific law enforcement technique that could allow an individual to alter his behavior in order to avoid detection by the particular system or the information that the system captures.

(i) *A copy of a proprietary agreement for services with a telecommunications firm which includes the Scope of Work, Period of Performance and references a classified Statement of Work.*[74] Publicly identifying the companies and scope of the work would reveal the specific law enforcement techniques which the FBI has employed; knowledge of this information could allow an individual to circumvent detection by altering his behavior accordingly.

Because release of all of the forgoing information could reasonably be expected to impede the FBI's effectiveness of its law enforcement techniques and procedures and potentially aid in circumvention of the law, the FBI has properly withheld this information pursuant to

---

[73] Exemption (b)(7)(E)-1, category (h) has been asserted on the following pages: NSL VIO - 8-9, 29099-29100.

[74] Exemption (b)(7)(E)-1, category (i) has been asserted on the following pages: NSL VIO-15958-15969, 22185.

Exemption (b)(7)(E).[75]

## CONCLUSION

(162)  The FBI has processed and released all reasonably segregable information from the records responsive to plaintiff's request to the FBI.  The remaining information has been withheld pursuant to FOIA Exemptions 1, 2, 3, 4, 5, 6, 7(A), 7(C), 7(D) and 7(E), 5 U.S.C. §§ 552 (b)(1), (b)(2), (b)(3), (b)(4), (b)(5), (b)(6), (b)(7)(A), (b)(7)(C), and (b)(7)(D) and (b)7(E). The FBI has carefully examined the responsive documents and has determined that the information withheld from plaintiff, if disclosed, could reasonably be expected to cause serious damage to national security; could reasonably be expected to reveal internal administrative information; could reveal Federal Grand Jury information protected by statute, could divulge confidential commercial information; could reveal privileged information; could cause unwarranted and clearly unwarranted invasion of the personal privacy interest of third parties; could interfere with law enforcement proceedings; could disclose the identities of and information provided by confidential sources; and could disclose techniques and procedures of law enforcement investigations.  Accordingly, the FBI has released all reasonably segregable, non-exempt information to plaintiff in response to its FOIA request.

---

[75] Exemption (b)(7)(E)-1 has been asserted in the aggregate on the following pages: NSL VIO-4-5, 7-9, 24-25, 99-101, 208-209, 298, 302, 401, 497-502, 600, 699-701, 799-801, 900-901, 998-1001, 1400-1402, 1500-1502, 1600-1604, 1800-1802, 1900-1903, 2098-2100, 2400-2402, 2405, 2409-2412, 2463, 2493, 2497-2499, 2603, 2702, 2705-2706, 2800, 2902-2904, 9850-9852, 9854-9855, 10726-10766, 12352-12372, 12379, 12386, 12395, 12400, 12406, 14283-14286, 14287-14290, 14293-14294, 14296-14297, 15350-15363, 15467, 15958-15969, 17947-17960, 18651, 18767-18768, 19726-19727, 20721, 20726-20729, 20731-20733, 22185, 23443-23447, 23449-23456, 27101-27108, 28642, 29099, 29678, 29833-29836, 31448-31451, 31795, 31924-31925, 31927-31932, 33994, 33996-34004, 36331-36336, 36805, 36807, 36809, 36811-36813, 36816-36820, 38437-38439, 38441, and 38443-38471.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A through Y attached hereto are true and correct copies.

Executed this 24ᵗʰ day of December, 2009.

DAVID M. HARDY
Section Chief
Records/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Winchester, Virginia

84